# Exhibit C

# US Department of Justice Testing Accommodations

**U.S. Department of Justice**
**Civil Rights Division**
*Disability Rights Section*







Provided By:
Pacific ADA Center
1-800-949-4232 (Voice/TTY)
(510) 285-5600 (Voice/TTY)
adatech@adapacific.org
www.adapacific.org

# Testing Accommodations

Standardized examinations and other high-stakes tests are gateways to educational and employment opportunities. Whether seeking admission to a high school, college, or graduate program, or attempting to obtain a professional license or certification for a trade, it is difficult to achieve such goals without sitting for some kind of standardized exam or high-stakes test. While many testing entities have made efforts to ensure equal opportunity for individuals with disabilities, the Department continues to receive questions and complaints relating to excessive and burdensome documentation demands, failures to provide needed testing accommodations, and failures to respond to requests for testing accommodations in a timely manner.

The Americans with Disabilities Act (ADA) ensures that individuals with disabilities have the opportunity to fairly compete for and pursue such opportunities by requiring testing entities to offer exams in a manner accessible to persons with disabilities. When needed testing accommodations are provided, test-takers can demonstrate their true aptitude.

The Department of Justice (Department) published revised final regulations implementing the ADA for title II (State and local government services) and title III (public accommodations and commercial facilities) on September 15, 2010. These rules clarify and refine issues that have arisen over the past 20 years and contain new and updated requirements.

## Overview

This publication provides technical assistance on testing accommodations for individuals with disabilities who take standardized exams and other high-stakes tests. It addresses the obligations of testing entities, which include private, state, or local government entities that offer exams related to applications, licensing, certification, or credentialing for secondary (high school), postsecondary (college and graduate school), professional (law, medicine, etc.), or trade (cosmetology, electrician, etc.) purposes. Who is entitled to testing accommodations, what types of testing accommodations must be provided, and what documentation may be required of the person requesting testing accommodations are also discussed.

# What Kinds Of Tests Are Covered?

**Exams administered by any private, state, or local government entity related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes are covered by the ADA and testing accommodations, pursuant to the ADA, must be provided.[1]**

Examples of covered exams include:

- High school equivalency exams (such as the GED);
- High school entrance exams (such as the SSAT or ISEE);
- College entrance exams (such as the SAT or ACT);
- Exams for admission to professional schools (such as the LSAT or MCAT);
- Admissions exams for graduate schools (such as the GRE or GMAT); and
- Licensing exams for trade purposes (such as cosmetology) or professional purposes (such as bar exams or medical licensing exams, including clinical assessments).

# What Are Testing Accommodations?

**Testing accommodations are changes to the regular testing environment and auxiliary aids and services[2] that allow individuals with disabilities to demonstrate their true aptitude or achievement level on standardized exams or other high-stakes tests.**

Examples of the wide range of testing accommodations that may be required include:

- Braille or large-print exam booklets;
- Screen reading technology;
- Scribes to transfer answers to Scantron bubble sheets or record dictated notes and essays;
- Extended time;
- Wheelchair-accessible testing stations;
- Distraction-free rooms;
- Physical prompts (such as for individuals with hearing impairments); and
- Permission to bring and take medications during the exam (for example, for individuals with diabetes who must monitor their blood sugar and administer insulin).

---

[1] This document does not address how the requirements or protections, as applicable, of Title II of the ADA, Section 504 of the Rehabilitation Act, the assessment provisions in the Elementary and Secondary Education Act (ESEA) and the Individuals with Disabilities Education Act (IDEA), and their implementing regulations, apply to, or interact with, the administration of state-wide and district-wide assessments to students with disabilities conducted by public educational entities.

[2] *See* 28 C.F.R. §§ 36.303(b), 36.309(b)(3) (providing non-exhaustive lists of auxiliary aids and services).

# Who Is Eligible To Receive Testing Accommodations?

**Individuals with disabilities are eligible to receive necessary testing accommodations.** Under the ADA, an individual with a disability is a person who has a physical or mental impairment that substantially limits a major life activity (such as seeing, hearing, learning, reading, concentrating, or thinking) or a major bodily function (such as the neurological, endocrine, or digestive system). The determination of whether an individual has a disability generally should not demand extensive analysis and must be made without regard to any positive effects of measures such as medication, medical supplies or equipment, low-vision devices (other than ordinary eyeglasses or contact lenses), prosthetics, hearing aids and cochlear implants, or mobility devices. However, negative effects, such as side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

**A substantial limitation of a major life activity may be based on the extent to which the impairment affects the condition, manner, or duration in which the individual performs the major life activity.** To be "substantially limited" in a major life activity does not require that the person be unable to perform the activity. In determining whether an individual is substantially limited in a major life activity, it may be useful to consider, when compared to most people in the general population, the conditions under which the individual performs the activity or the manner in which the activity is performed. It may also be useful to consider the length of time an individual can perform a major life activity or the length of time it takes an individual to perform a major life activity, as compared to most people in the general population. For example:

- The condition or manner under which an individual who has had a hand amputated performs manual tasks may be more cumbersome, or require more effort or time, than the way most people in the general population would perform the same tasks.
- The condition or manner under which someone with coronary artery disease performs the major life activity of walking would be substantially limited if the individual experiences shortness of breath and fatigue when walking distances that most people could walk without experiencing such effects.
- A person whose back or leg impairment precludes him or her from sitting for more than two hours without significant pain would be substantially limited in sitting, because most people can sit for more than two hours without significant pain.

**A person with a history of academic success may still be a person with a disability who is entitled to testing accommodations under the ADA.** A history of academic success does not mean that a person does not have a disability that requires testing accommodations. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more of the major life activities of reading, writing, speaking, or learning, because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population.

# What Testing Accommodations Must Be Provided?

**Testing entities must ensure that the test scores of individuals with disabilities accurately reflect the individual's aptitude or achievement level or whatever skill the exam or test is intended to measure.** A testing entity must administer its exam so that it accurately reflects an individual's aptitude, achievement level, or the skill that the exam purports to measure, rather than the individual's impairment (except where the impaired skill is one the exam purports to measure).[3]

- **Example:** An individual may be entitled to the use of a basic calculator during exams as a testing accommodation. If the objective of the test is to measure one's ability to solve algebra equations, for example, and the ability to perform basic math computations (e.g., addition, subtraction, multiplication, and division), is secondary to the objective of the test, then a basic calculator may be an appropriate testing accommodation. If, however, the objective of the test is to measure the individual's understanding of, and ability to perform, math computations, then it likely would not be appropriate to permit a calculator as a testing accommodation.

---

[3] Under Section 309 of the ADA, any person (including both public and private entities) that offers examinations related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes must offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Under regulations implementing this ADA provision, any private entity that offers such examinations must "assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309. Likewise, under regulations implementing title II of the ADA, public entities offering examinations must ensure that their exams do not provide qualified persons with disabilities with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, 28 C.F.R. § 35.130(b)(1)(iii), and may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(6). Both the title II and title III regulations also require public and private testing entities to provide modifications and auxiliary aids and services for individuals with disabilities unless the entity can demonstrate an applicable defense. 28 C.F.R. §§ 35.130(b)(7), 35.160(b), 35.164; 28 C.F.R. §§ 36.309(b)(1)(iv-vi), (b)(2), 36.309(b)(3).

# What Kind Of Documentation Is Sufficient To Support A Request For Testing Accommodations?

All testing entities must adhere to the following principles regarding what may and may not be required when a person with a disability requests a testing accommodation.

- **Documentation. Any documentation if required by a testing entity in support of a request for testing accommodations must be reasonable and limited to the need for the requested testing accommodations.** Requests for supporting documentation should be narrowly tailored to the information needed to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. Appropriate documentation will vary depending on the nature of the disability and the specific testing accommodation requested.

  Examples of types of documentation include:

  - Recommendations of qualified professionals;
  - Proof of past testing accommodations;
  - Observations by educators;
  - Results of psycho-educational or other professional evaluations;
  - An applicant's history of diagnosis; and
  - An applicant's statement of his or her history regarding testing accommodations.

  Depending on the particular testing accommodation request and the nature of the disability, however, a testing entity may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. If so, a testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation.

- **Past Testing Accommodations. Proof of past testing accommodations in similar test settings is generally sufficient to support a request for the same testing accommodations for a current standardized exam or other high-stakes test.**

  - **Past Testing Accommodations on Similar Standardized Exams or High-Stakes Tests.** If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate. So, for example, a person with a disability who receives a testing accommodation to sit for the SAT should generally get the same testing accommodation to take the GRE, LSAC, or MCAT.

5

- **Formal Public School Accommodations. If a candidate previously received testing accommodations under an Individualized Education Program (IEP)[4] or a Section 504 Plan,[5] he or she should generally receive the same testing accommodations for a current standardized exam or high-stakes test.** If a candidate shows the receipt of testing accommodations in his or her most recent IEP or Section 504 Plan, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant those same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate. This would include students with disabilities publicly-placed and funded in a private school under the IDEA or Section 504 placement procedures whose IEP or Section 504 Plan addresses needed testing accommodations.

    - **Example.** Where a student with a Section 504 Plan in place since middle school that includes the testing accommodations of extended time and a quiet room is seeking those same testing accommodations for a high-stakes test, and certifies that he or she still needs those testing accommodations, the testing entity receiving such documentation should generally grant the request.

- **Private School Testing Accommodations. If a candidate received testing accommodations in private school for similar tests under a formal policy, he or she should generally receive the same testing accommodations for a current standardized exam or high-stakes test.** Testing accommodations are generally provided to a parentally-placed private school student with disabilities pursuant to a formal policy and are documented for that particular student. If a candidate shows a consistent history of having received testing accommodations for similar tests, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant those same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.

    - **Example.** A private school student received a large-print test and a scribe as testing accommodations on similar tests throughout high school pursuant to a formal, documented accommodation policy and plan. Where the student provides documentation of receiving these testing accommodations, and certifies that he or she still needs the testing accommodations due to disability, a testing entity should generally grant the candidate's request for the same testing accommodations without requesting further documentation.

- **First Time Requests or Informal Classroom Testing Accommodations. An absence of previous formal testing accommodations does not preclude a candidate from

---

[4] An IEP contains the special education and related services and supplementary aids and services provided to an eligible student with a disability under Part B of the IDEA, 20 U.S.C. §§ 1400 *et seq.* and 34 C.F.R. part 300.

[5] A Section 504 Plan could contain the regular or special education and related aids and services provided pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and 34 C.F.R. part 104.

**receiving testing accommodations.** Candidates who are individuals with disabilities and have never previously received testing accommodations may also be entitled to receive them for a current standardized exam or high-stakes test. In the absence of documentation of prior testing accommodations, testing entities should consider the entirety of a candidate's history, including informal testing accommodations, to determine whether that history indicates a current need for testing accommodations.

- **Example.** A high school senior is in a car accident that results in a severe concussion. The report from the treating specialist says that the student has post-concussion syndrome that may take up to a year to resolve, and that while his brain is healing he will need extended time and a quiet room when taking exams. Although the student has never previously received testing accommodations, he may nevertheless be entitled to the requested testing accommodations for standardized exams and high-stakes tests as long as the post-concussion syndrome persists.

- **Example.** A student with a diagnosis of ADHD and an anxiety disorder received informal, undocumented testing accommodations throughout high school, including time to complete tests after school or at lunchtime. In support of a request for extended time on a standardized exam, the student provides documentation of her diagnoses and their effects on test-taking in the form of a doctor's letter; a statement explaining her history of informal classroom accommodations for the stated disabilities; and certifies that she still needs extended time due to her disabilities. Although the student has never previously received testing accommodations through an IEP, Section 504 Plan, or a formal private school policy, she may nevertheless be entitled to extended time for the standardized exam.

- **Qualified Professionals. Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations.** Qualified professionals are licensed or otherwise properly credentialed and possess expertise in the disability for which modifications or accommodations are sought. Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation. A testing entity should generally accept such documentation and provide the recommended testing accommodation without further inquiry.

  - Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment. This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations.

  - A qualified professional's decision not to provide results from a specific test or evaluation instrument should not preclude approval of a request for testing accommodations where the documentation provided by the candidate, in its entirety, demonstrates that the candidate has a disability and needs a requested testing

7

accommodation. For example, if a candidate submits documentation from a qualified professional that demonstrates a consistent history of a reading disorder diagnosis and that recommends the candidate receive double time on standardized exams based on a personal evaluation of the candidate, a testing entity should provide the candidate with double time. This is true even if the qualified professional does not include every test or subtest score preferred by the testing entity in the psychoeducational or neuropsychological report.

## How Quickly Should A Testing Entity Respond To A Request For Testing Accommodations?

**A testing entity must respond in a timely manner to requests for testing accommodations so as to ensure equal opportunity for individuals with disabilities.** Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test.[6] In addition, the process should provide applicants with a reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle. Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities.

## How Should Testing Entities Report Test Scores for Test-Takers Receiving Disability-Related Accommodations?

**Testing entities should report accommodated scores in the same way they report scores generally.** Testing entities must not decline to report scores for test-takers with disabilities receiving accommodations under the ADA.

**Flagging policies that impede individuals with disabilities from fairly competing for and pursuing educational and employment opportunities are prohibited by the ADA.** "Flagging" is the policy of annotating test scores or otherwise reporting scores in a manner that indicates the exam was taken with a testing accommodation. Flagging announces to anyone receiving the exam scores that the test-taker has a disability and suggests that the scores are not valid or deserved. Flagging also discourages test-takers with disabilities from exercising their right to testing accommodations under the ADA for fear of discrimination. Flagging must not be used to circumvent the requirement that testing entities provide testing accommodations for persons with disabilities and ensure that the test results for persons with disabilities reflect their abilities, not their disabilities.

**To view model testing accommodation practices and for more information about the ADA, please visit our website or call our toll-free number:**

---

[6] Testing entities must offer examinations to individuals with disabilities in as timely a manner as offered to others and should not impose earlier registration deadlines on those seeking testing accommodations.

8

- **ADA Website**: www.ADA.gov
- **ADA Information Line:** 800-514-0301 (Voice) and 800-514-0383 (TTY); M-W, F 9:30 a.m. – 5:30 p.m., Th 12:30 p.m. – 5:30 p.m. (Eastern Time)
- **Model Testing Accommodation Practices Resulting From Recent Litigation:** http://www.ada.gov/lsac_best_practices_report.docx

For persons with disabilities, this publication is available in alternate formats.

Duplication of this document is encouraged.