UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2022 MAR 21  A 11: 5⁹

| | |
|---|---|
| **JASON A. ZANGARA** ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO._____ |
| ) | |
| v. ) | |
| ) | |
| ) | |
| **National Board of Medical Examiners (NBME)** ) | |
| ) | |
| Defendants. ) | |

---

### PLAINTIFFS BRIEF IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF

---

```
JASON A. ZANGARA PRO SE
573 SIDORSKE AVENUE
MANVILLE, NJ 08835
(908)672-0626
ATTORNEY FOR PLAINTIFF


Jason A. Zangara, Pro Se
On the Brief
```

## STATEMENT OF THE ISSUE

"The NBME, together with the Federation of State Medical Boards of the United States, Inc., offers the USMLE. The USMLE is a standardized multiple-choice test administered in three parts, or "Steps". The USMLE was designed as a licensing exam meant to assess an examinee's understanding of, and ability to apply, concepts and principles that are important in health and disease and constitute the basis of safe and effective patient care. In order to obtain a license to practice medicine in the United States, an examinee must obtain a passing score on all three Steps of the USMLE. Prior to May 1999, the USMLE was provided in a written format. Since May 1999, the USMLE has been given in a computerized format. After an examinee takes the USMLE, the NBME sends a score report to the examinee. Although the USMLE was designed for use as a licensing exam, it is common practice for residency and fellowship programs to use USMLE test scores in evaluating candidates for admission to their programs. At an examinee's request, the NBME will send a USMLE score transcript to third parties designated by the examinee, including residency and internship programs and state licensing authorities." quoting Doe v. National Bd. of Med. Exam'rs, 199 F.3d 146, 154-155 (3d Cir. 1999)

Plaintiff is a third year medical student at Caribbean Medical University and is required to take the USMLE exams. However in order to sit for these examination, Plaintiff is required to receive a "passing score" on examinations administered by Defendant (NBME) such as the Comprehensive Basic Science Exam. (See Complaint "Exhibit B")These exams are administered via computer at Parametric testing centers and scored in a manner outlined by Defendant which decides "Passing" or "Failing" solely by grading on a curve and using percentiles . (See Complaint "Exhibit B")

1

Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder and multiple learning disabilities dating back to second grade almost 30 years ago. (See Complaint "Exhibit A") Plaintiff has attempted exams administered by Defendants multiple times but has not passed because these exams, Plaintiff believes are not accounting for his disabilities since they are not graded upon what he knows, but only how he compares to others who have taken the exams. (See Complaint "Exhibit B") This grading practice appears to not be in compliance with the requirements of the Americans with Disabilities Act ("ADA"), Pub.L. 101-336, Title III, 42 U.S.C. § 12181 et seq. which requires examinations to "reflect the applicant's aptitude and knowledge, rather than the limitations or manifestations of the applicant's disability" (See Complaint "Exhibit C")

Plaintiff has commenced this action to obtain an Injunction against Defendants to prevent them from scoring his exams and others exams solely on the bases of comparison to others because the current such practice does not "reflect the applicant's aptitude and knowledge, rather than the limitations or manifestations of the applicant's disability"

## LEGAL ARGUMENT

When a party applies for an Injunction, the Federal Courts weigh four (4) factors in determining whether to grant a preliminary injunction: "(A) The likelihood that the applicant will prevail on the merits at the final hearing; (B) The extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (C) The extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (D) The public interest." Opticians Ass'n. of America v. Independent Opticians of America, 920 F.2nd 187, 191-192 (3rd Cir. 1990); Pappan Enterprises, Inc. v. Hardees Food Systems, Inc., 143 F.3d 800, 803 (3rd Cir. 1998); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 330 (D.N.J.

1997)."Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc).

## SUCCESS ON THE MERITS

Plaintiff believes that he will prevail on the merits do to the circumstances present before this court which is mainly that Defendant are grading his exams on the bases of comparison to others and not his knowledge or amplitude. Plaintiff has shown that he meets the requirements of being disabled under the Americans with Disabilities Act ("ADA"), as detailed by medical records and reports (See Complaint "Exhibit A"). Plaintiff has also shown that his exams are directly compared to others which does not show his knowledge of the material being tested, only his comparison to others (See Complaint "Exhibit B"). This does not confirm with the requirements of the Americans with Disabilities Act ("ADA"), Pub.L. 101-336, Title III, 42 U.S.C. § 12181 et seq. which requires the exams to evaluate what he knows and not the manifestations of his disability.

This is best explained in Doe v. National Bd. of Med. Exam'rs, 199 F.3d 146, 154-155 (3d Cir. 1999) in which examinations must be offered in an accessible manner, which means that they must be offered in such a way as to "best ensure" that the examination results reflect the applicant's aptitude and knowledge, rather than the limitations or manifestations of the applicant's disability. As this Court stated, Section 309 "mandates changes to examinations –

3

'alternative accessible arrangements,' 42 U.S.C. 12189 – so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them." Doe, 199 F.3d at 156 (emphasis added). That is the standard that applies in the context of professional examinations.

Defendants have conceded that they are required to follow the Americans with Disabilities Act ("ADA"), in regards to testing so it's applicability to them is not and will not be in question. Indeed this case specifically "The National Board of Medical Examiners (NBME) provided testing accommodations to Doe when he took Step 1 and Step 2 of the United States Medical Licensing Examination (USMLE), as it concedes it is required to do under Title III of the Americans with Disabilities Act ("ADA"), Pub.L. 101-336, Title III, 42 U.S.C. § 12181 et seq. Doe v. National Bd. of Med. Exam'rs, 199 F.3d 146, 154-155 (3d Cir. 1999).

## THE EXTENT OF HARM TO PLAINTIFF

By not enjoining Defendants Plaintiff is suffering more and more by the day which is exactly the same as the court discusses in Rush v. National Board of Medical Examiners, 268 F. Supp.2d 673 (N.D. Tex. 2003) (See Complaint "Exhibit F") "Specifically, if a student does not pass the Step I exam before the beginning of his third year of medical school, he would normally need to drop out of school during his third year in order to study properly for the exam, thereby falling behind his peers. Students behind in their studies normally will not be offered the range and quality of residency or medical speciality options their peers will be offered. They will normally not be offered interviews for further study in the more competitive medical specialities, will not have the usual range of geographic or location (city and school) choices for remaining medical school programs which may be available, and will be delayed in completion of their medical training. There is no good way to remedy this injury. Timely Step I testing and passage

4

is required." quoting Rush v. National Board of Medical Examiners, 268 F. Supp.2d 673 (N.D. Tex. 2003) Therefore it is imperative that Defendants be enjoined from improperly grading Plaintiffs examinations by only comparing them to others.

## HARM TO DEFENDANTS

At this time, there does not appear to be any harm that could result to the Defendants as a result of being enjoined either on a temporary or permanent bases. Plaintiff isn't asking for a reduction or change in any of the requirements for "passing" these examinations resulting in unfair treatment. Defendants must be aware of the required level of knowledge or abilities someone must have to pass these exams. This is a huge responsibility which is deciding who has the knowledge base to be trusted with someone else's life in their hands. They have decided that knowledge base must reach a certain level and Plaintiff requests he be evaluated to that level, not a simple comparison to others. Defendants have been enjoined before so this is nothing new to them and such examples of this are including but not limited to cases such as Doe v. National Bd. of Med. Exam'rs, 199 F.3d 146, 154-155 (3d Cir. 1999); Rush v. National Board of Medical Examiners, 268 F. Supp.2d 673 (N.D. Tex. 2003)

## PUBLIC INTEREST

"The injunction will not disserve the public interest but will further the public interest in prohibiting discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability by fulfilling the ADA's requirement that entities offering licensing examinations provide reasonable accommodations to disabled individuals." Rush v. National Board of Medical Examiners, 268 F. Supp.2d 673 (N.D. Tex. 2003)

In addition to the argument to as to Plaintiff and others that are disabled being treated unfairly by the scoring of the exams, the Public also has substantial interest in this case and the

5

separation of the those of those who are "Disabled" and those who are not. Assuming Defendants try to make the argument that the current scoring is adequate and meets the requirements of the ADA, it has the potential to backfire and those being treated one day by the physicians could be affected. If 1000 students only took the exam and 50 of them were disabled and should have failed because their disabilities prevent them from performing their duties of a physician on the bases of inadequate academic knowledge, then the public are the one who are at risk.

This could happen in theory of the other 950 students not caring or putting in the effort to achieve higher scores on the exam. This lowers the Mean, Median and percentiles of the curve Defendants are using to score the exam. The decreased percentiles don't exclude the 50 students who took the exam and should have failed but now includes them. If the court were to stop this practice and those with disabilities were in fact scored on their own merit like Plaintiff as asking, then they could not have possibly "Passed" the exam. It would have been seen on their exams that they didn't meet the required standard, but in the current case, the required standard lowers and comes to them. This is the other side of the coin and why it must change.

## TEMPORARY RESTRAINING ORDER

Federal Rule of Civil Procedure 65 allows this Court to enter ex parte orders upon a clear showing that "immediate and irreparable injury, loss, or damage will result" FED. R. CIV. P. 65(b)(1)(A). Plaintiff requests and if this court will allow a Temporary Restraining Order to issue long with the Order to Show Cause. Plaintiff cannot take any more exams and cannot continue in his medical education until his exams can be scored properly. Therefore Defendants actions are causing immediate and irreparable injury every minute that Plaintiff is not advancing his education.

## CONCLUSION

In conclusion the Plaintiff respectfully requests that this Court grant his application for Injunctive Relief against the Defendants in order to stop the violations of the Americans with Disabilities Act and allow him to continue his medical education by scoring his exams on the bases of his achievement, not his comparison to others.

**Respectfully Submitted**

*[signature]*

**Jason A. Zangara, Pro Se**

**Attorney for the Plaintiff**