

**Jason A. Zangara, MPH, MA, FF/NREMT, AIFireE**

573 Sidorske Avenue
Manville, NJ 08835
(908) 672-0626
firefighterjazzyj@yahoo.com

RECEIVED

SEP 0 7 2022

AT 8:30_____M
WILLIAM T. WALSH
CLERK

September 6, 2022

**VIA UPS OVERNIGHT**

**Clerk's Office**
District Court of New Jersey
Clarkson S. Fisher U.S. Court House
402 East State Street
Room 2020
Trenton, NJ 08608

Re: **Zangara v. National Board of Medical Examiners Civil No. 3:22-cv-01559-GC-LHG**

Dear Sir / Madam,

 Please find enclosed for filing the following documents and attachments:

1. Reply Brief to Defendants Motion to Dismiss

2. Exhibits in Support of Plaintiffs Brief

3. Certification of service

Please advise if you have any questions or require any additional information from me. Thank you for your immediate attention to this matter.

Very truly yours,

**Jason A. Zangara, Pro Se**
**Attorney for Plaintiff**

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RECEIVED**

SEP 0 7 2022

AT 8:30_____M
WILLIAM T. WALSH
CLERK

JASON A. ZANGARA                       )
                                       )
          Plaintiff,                   )          Civil No. 3:22-cv-01559-GC-LHG
                                       )
     v.                                )
                                       )
                                       )          **CERTIFICAION OF SERVICE**
                                       )
National Board of Medical Examiners (NBME)   )
                                       )


I, Jason A. Zangara, Pro Se, Attorney for Plaintiff, being of full age sworn and state that I am

serving the following documents:

> 1. Reply Brief to Defendants Motion to Dismiss
>
> 2. Exhibits in Support of Plaintiffs Brief
>
> 3. Cover Letter to Clerk
>
> 4. This certification of service

Upon the clerk of the District Court for the District of New Jersey at the following address via

UPS:

> **Clerk of the**
> **District Court of New Jersey**
> Clarkson S. Fisher U.S. Court House
> 402 East State Street
> Room 2020
> Trenton, NJ 08608

I also certify that I am also serving copies of the same documents upon the Defendants at

the following address:

**Perkins Coie**
1155 Avenue of the Americas
22nd Floor
New York, New York 10036-2711
Attorneys for Defendants

I further certify that the above statements are true and I am aware that if they are

willingly false, I am aware that I am subject to punishment.

Jason A. Zangara, Pro Se
573 Sidorske Avenue
Manville, N.J. 08835
(908) 672-0626
Attorney for Plaintiff

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JASON A. ZANGARA                              )
                                             )
        Plaintiff,                           )          Civil No. 3:22-cv-01559-GC-LHG
                                             )
    v.                                       )
                                             )
                                             )
National Board of Medical Examiners (NBME)   )
                                             )

---

## PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

---

JASON A. ZANGARA PRO SE
573 SIDORSKE AVENUE
MANVILLE, NJ 08835
(908)672-0626
ATTORNEY FOR PLAINTIFF

## Table of Contents

**Page**

Table of Authorities.................................................................................................iii

Introduction.............................................................................................................1

Argument.................................................................................................................3

I.   The Motion to Dismiss Pursuant to Rule 12(b) Has Already Been Decided
     by this Court and the Judge Presiding over this Case.....................................3

II.   Response to Defendants Arguments...............................................................9

III.   Time Barred Part I.......................................................................................10

IV.   Time Barred Part II......................................................................................12

V.   Response to "C. Fails to state a claim under the ADA" Part I.....................15

VI.   Response to "C. Fails to state a claim under the ADA" Part II...................20

VII.   Response to "Mr. Zangara fails to allege he is disabled within the meaning
        of the ADA"..............................................................................................22

VIII.   Response to: "Mr. Zangara's conclusory allegations with respect to any
         examination other than the CBSE fail to state a claim with respect to those
         examinations
         &
         Mr. Zangara's allegations with respect to the "grading" of the CBSE are
         conclusory and implausible, and do not comply with Rule 8 pleading
         standards".................................................................................................35

IX.   28 C.F.R. §36.309 Applicability To Exams Themselves.............................39

X.     Response to "Mr Zangara's allegation about "grading on a curve' is refuted by his own exhibits"..................................................................................42

XI.    The Score Report Submitted by Defendants.............................................46

XII.   The Standard for a Motion to Dismiss......................................................49

XIII.  Response to Defendants Claims of Improper Jurisdiction.......................51

XIV.   Supplemental Argument to Section VIII

       VIII. Response to: "Mr. Zangara's conclusory allegations with respect to any

       examination other than the CBSE fail to state a claim with respect to those

       examinations

       &

       Mr. Zangara's allegations with respect to the "grading" of the CBSE are

       conclusory and implausible, and do not comply with Rule 8 pleading

       standards"..................................................................................................53

Conclusion.............................................................................................................62

## Table of Authorities

**Cases**                                                                                           **Pages**

Albertson's, Inc. v. Kirkingburg,
527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)....................................................................59

Alfaro Motors, Inc. v. Ward,
814 F.2d 883, 887 (2d Cir. 1987)...........................................................................................9

Allah v. Seiverling,
229 F.3d 220, 223 (3d Cir. 2000).........................................................................................4,5

Amfac Mortgage Corp. v. Arizona Mall,
583 F.2d 426 (9th Cir.1978).................................................................................................33

Anderson v. City of Bessemer City, N.C.,
470 U.S. 564, 573 (1985) ....................................................................................................38

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................3, 4,5,24,44,49,50

Bartlett v. New York State Bd. of Law Examiners,
156 F.3d 321 (2d Cir. 1998)................................................................................................58

Bartlett v. New York State Bd. of Law Examiners,
2 F. Supp. 2d 388 (S.D.N.Y. 1997).....................................................................................58

Bartlett v. New York State Bd. of Law Examiners,
226 F.3d 69 (2d Cir. 2000)...........................................................................................59,61

Bartlett v. New York State Board of Law Examiners,
527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999) ............................................58

Bartlett v. New York State Board of Law Examiners,
93 Civ. 4986 (SS) (S.D.N.Y. Aug. 15, 2001).....................................................................60

Batterton v. Francis,
432 U.S. 416, 425, n.9, 97 S. Ct. 2399, 53 L. Ed.2d 448 (1977)....................................40

Beam v. IPCO Corp.,
838 F.2d 242, 244 (7th Cir.1988) .......................................................................................34

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................................4,5,8,9,29,49,50

Biank v. Nat'l Bd. of Med. Examiners,
130 F. Supp. 2d 986, 988 (N.D. Ill. 2000) .......................................................................................52

Boggi v. Med. Rev. & Accrediting Council,
415 F. App'x 411, 414 (3d Cir. 2011)........................................................................17,18,20,27,52

Bragdon v. Abbott,
524 U.S. 624, 642, 118 S. Ct. 2196, 141 L. Ed.2d 540 (1998)......................................................40

California Pub. Employee Ret. Sys. v. The Chubb Corp.,
394 F.3d 126, 143 (3d Cir. 2004) ...................................................................................................8

Carter v. Greenhow,
114 U.S. 317, 29 L. ed. 202, 5 Sup. Ct. Rep. 928, 962 (1885)......................................................51

Carter v. Stanton,
405 U.S. 669, 92 S. Ct. 1232 (1972)............................................................................................. 49

CG v. Pa. Dep't of Educ.,
734 F.3d 229, 234 (3d Cir. 2013)...................................................................................................38

Chester County Interm. Unit v. Pa. Blue Shield,
896 F.2d 808 (3d Cir. 1990) ..........................................................................................................33

Chrysler Corp. v. Brown,
441 U.S. 281, 302-303, 99 S. Ct. 1705, 60 L. Ed.2d 208 (1979).................................................. 40

Cooper v. Pate,
378 U.S. 546 (1964)........................................................................................................................50

Cortec Industries, Inc. v. Sum Holding LP,
949 F.2d 42 (2d Cir. 1991) .............................................................................................................34

Decker v. Massey-Ferguson, Ltd.,
681 F.2d 111, 113 (2d Cir.1982).....................................................................................................34

Denton Construction Co. v. Missouri Portland Cement Co., 507 F.Supp. 53, 54 (E.D.Mo.)
vacated on other grounds, 659 F.2d 873 (8th Cir.1981) (per curiam)............................................34

Detar v. U.S. Gov't,
Civil Action No. 2:13-cv-01499 (W.D. Pa. Feb. 7, 2014)............................................................... 6

Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority,
539 F.3d 199 (3d Cir. 2008) ...............................................................................................13,14,51

Doe v. Nat'l Bd. of Med. Exam'rs,
199 F.3d 146, 155 (3d Cir. 1999) ........................................................................................17,20

Emrich v. Touche Ross & Co.,
846 F.2d 1190, 1198 (9th Cir.1988)...........................................................................................33

Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.,
246 F.3d 850, 854 (6th Cir. 2001) .............................................................................................30

Erickson v. Pardus,
551 U.S. 89, 93 (2007)................................................................................................................8

Fair Wind Sailing, Inc. v. Dempster,
764 F.3d 303, 308 n.3 (3d Cir. 2014) .......................................................................................4,5

Fishback v. Western Union Tel. Co.,
161 U.S. 96, 16 S.Ct. 506, 40 L. Ed. 630 (1896).......................................................................51

Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009)...........................................................3,4,5,27,28,30,51

Gelman v. State Farm Mut. Auto. Ins. Co.,
583 F.3d 187, 190 (3d Cir. 2009) ..............................................................................................3

Goldman v. Belden,
754 F.2d 1059 (2d Cir. 1985).....................................................................................................34

Goldsmith v. CBS TV Broad. Inc.,
Civil Action No. 2:13-cv-00478 (W.D. Pa. Mar. 26, 2015)........................................................ 6

Gonzales v. Nat'l Bd. of Med. Exam'rs,
225 F.3d 620, 629 (6th Cir.2000)...............................................................................................36

Graff v. Subbiah Cardiology Associates, Ltd.
No. 08-207, 2008 WL 2312671 (W.D.Pa. June 4, 2008)...........................................................23

Grayson v. Mayview State Hosp.,
293 F3d 103, 110, n. 10 (3d Cir. 2002)....................................................................................6,8

Green v. Murphy,
Civ. No. 21-11852 (GC)(DEA) (D.N.J. July 5, 2022)..............................................................4,49

Growth Horizons, Inc. v. Delaware Cty.,
983 F.2d 1277, 1281 (3d Cir. 1993) ..........................................................................................51

vi

Hagans v. Lavine,
415 U. S. 528, 536-537 (1974) ....................................................51

Haines v. Kerner,
404 U.S. 519
(1972)....................................................................................................4

Halt v. Indiana Manufacturing Co.,
176 U.S. 68, 20 S.Ct. 272, 44 L. Ed. 374 (1900)............................................51

Hoover v. Wells Fargo Bank,
Civil Action No. 2:14-cv-00139 (W.D. Pa. Mar. 3, 2014)................................7

Horsley v. Feldt,
304 F.3d 1125 (11th Cir. 2002)....................................................34

Hughes v Rowe
449 U.S. 5 (1980) ....................................................51

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1426 (3d Cir.1997)....................................................33

In re iAnthus Capital Holdings Sec. Litig.,
20-CV-3135 (LAK) (S.D.N.Y. Aug. 30, 2021)....................................................33

Jackson v. Brown,
460 Fed. Appx. 77, 79 n.2 (3d Cir. 2012)....................................................7

Johnson v. Trump,
Civ. No. 21-13353 (GC)(TJB) (D.N.Y. May 5, 2022)....................................5,6,49

Jones v. Bock,
127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007)....................................................8

Karipicis v. Ace Gaming LLC,
Civil Action No. 09-3321 (D.N.J. Jun. 9, 2010) ....................................30,31,32

Love v. Law Sch. Admissions Council, Inc.,
513 F. Supp. 2d 206, 223 (E.D. Pa. 2007) ....................................................52

Lum v. Bank of America,
361 F.3d 217 (3d Cir. 2004)....................................................33

Mala v. Crown Bay Marina, Inc.,
704 F.3d 239, 245 (3d Cir. 2013) ....................................................3,4,5

*Malleus v. George*,
641 F.3d 560, 563 (3d Cir. 2011)..................................................................................3

*McTernan v. City of York Penn*,
577 F.3d 521 (3d Cir. 2009).....................................................................................49,50

*Morse v. Lower Merion School Dist.*,
132 F.3d 902, 906 (3d Cir. 1997)................................................................................9

*Mosura v. Huber*,
Civil Action No. 2:14-cv-00108 (W.D. Pa. Mar. 3, 2014).............................................. 7

*Murphy v. United Parcel Serv.*,
527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999)..............................................59

*Neitzke v. Williams*,
490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)..........................................8

*New York State Bd. of Law Examiners v. Bartlett*,
527 U.S. 1031-32, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999)......................................... 59

*Northern Indiana Gun & Outdoor Shows v. City of South Bend*,
163 F.3d 449 (7th Cir. 1998)....................................................................................35

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581, 597-598, 119 S. Ct. 2176, 2185-2186, 144  L. Ed.2d 540 (1999) ........................40

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir. 1994).....................................................................................33

*Papasan v. Attain*,
478 U.S. 265, 286 (1986)..........................................................................................9

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
139 S. Ct. 2051, 2055, 204 L. Ed.2d 433 (2019)...........................................................40

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
510 U.S. 1042, 114 S. Ct. 687, 126 L. Ed. 2d 655 (1994)..............................................33

*Philips v. Co. of Alleghany*,
515 F.3d 224, 234-35 (3d Cir. 2008)........................................................................8,50

*Picking v. Pennsylvania R. Co.*,
151 F.2d 240 (3d Cir. 1945).....................................................................................51

Pleasants v. Greenhow,
114 U.S. 323, 29 L. ed. 204, 5 Sup. Ct. Rep. 931, 962 (1885)........................................................51

Powell v. National Board of Medical Examiners,
364 F.3d 79, 85 (2d Cir. 2004).................................................................................................. 22

Powell v. Ridge,
189 F.3d 387, 394 (3d Cir. 1999) ...............................................................................................29

Price v. Nat'l Bd. of Med. Exam'rs,
966 F.Supp. 419 (S.D.W.Va. June 6, 1997).................................................................................52

Quiller v. Barclays American/Credit, Inc.,
727 F.2d 1067 (11th Cir.1984), cert. denied,
476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986)..............................................................33

Ramey v. District
141, 378 F.3d 269, 279 n. 4 (2d Cir. 2004) ..................................................................................14

Ramsay v. Nat. Bd. of Medical Examiners
968 F.3d 251 (3d Cir. 2020) ....................................................10,21,22,23,26,27,41,54,55,56,60,61

Ramsay v. Nat'l Bd. of Med. Examiners,
CIVIL ACTION NO. 19-CV-2002 (E.D. Pa. Dec. 30, 2019)......................................................9,51

Rawdin v. Am. Bd. of Pediatrics
582 F. App'x 114 (3d Cir. 2014) .........................................................................................38,39,54

Rawdin v. Am. Bd. of Pediatrics,
985 F. Supp. 2d 636 (E.D. Pa. 2013) ...........................................................................35,36,38,39,54

Reiter v. Cooper,
507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).......................................................14

Roman v. Jeffes,
904 F.2d 192, 194 n.l (3d Cir. 1990).............................................................................................7

Rothberg v. LSAC,
300 F.Supp.2d 1093 (D.Colo. 2004)...........................................................................................52

Rumbin v. Ass'n of Am. Med. Colls.,
803 F.Supp.2d 83, 95 (D.Conn.2011) .........................................................................................36

Scheibe v. Nat'l Bd. of Med. Examiners,
Civ. A. No. 05-180, 2005 WL 1114497, at *3 (W.D. Wis. May 10, 2005) ....................................5

Schneller v. Able Home Care, Inc.,
389 Fed. Appx. 90, 92 (3d Cir. 1990)............................................................................................7

Schreane v. Seana,
506 F. App'x 120, 122 (3d Cir. 2012) .......................................................................................3,5

Schreane Sears,
506 F. App'x 120, 122 (3d Cir. 2012) .........................................................................................4

Scott v. Delaware Dept. of Family Services,
530 Fed. Appx. 129, 130 (3d Cir. 2013).......................................................................................6

Sinwell v. Shapp,
536 F.2d 15 (3d Cir. 1976).............................................................................................................7

Skelton v. New Jersey Dep't of Correction,
No. 19-18597, 2020 WL 6376652, at *12 (D.N.J. Oct. 30, 2020) .................................................27

Skidmore v. Swift & Co.,
323 U.S. 134, 139-140, 65 S. Ct. 161, 89 L. Ed.2d 124 (1944)......................................................41

Smith v. Borow,
No. 3: 19-cv-08553-GC-TJB (D.N.J. May 13, 2022).............................................................3,4,6,49

Spuck v. Fredric,
415 Fed. Appx. 358, 359 (3d Cir. 2011) .......................................................................................7

Sutton v. United Air Lines,
527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)...........................................................29,59

Swift Co. v. United States,
276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928)..................................................................14

Taylor v. Henderson,
632 F. App'x 70 (3d Cir. 2015).........................................................................................10,11,12

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179........................................................................33

Tourscher v. McCullough,
184 F.3d 236, 240 (3d Cir. 1999)...................................................................................................6

United States v. Sayward,
160 U.S. 493, 16 S.Ct. 371, 40 L. Ed. 508 (1895).......................................................................51

United States v. W.T. Grant Co.,
345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)...................................................14,51

Velez v. Cont'l Serv. Grp., Inc.,
Case No. 3:17-cv-02372 (M.D. Pa. Apr. 4, 2018)........................................................49,40

Watterson v. Page,
987 F.2d 1, 3-4 (1st Cir.1993).................................................................................33

**Statutes**

28 U.S.C. § 1331 ...............................................................................................38,51

28 U.S.C. § 1915(e)(2)..........................................................................................6

28 U.S.C. § 1915(e)(2)(B).................................................................................3,4,5,7

28 U.S.C. § 1915(e)(2)(B)(ii) ...........................................................................3,4,5

28 U.S.C. §1291.................................................................................................38

28 U.S.C. §1915 ............................................................................................5,6,7

28 U.S.C. §1915(a)..............................................................................................8

29 U.S.C. § 705(20)(B)........................................................................................29

42 U.S.C. §1983..............................................................................................5,9

42 U.S.C. § 12102(1)(A) ..............................................................................39,54,56,57

42 U.S.C. § 12102(2)...................................................................................23,25,26,28

42 U.S.C. § 12183(a)(2) .......................................................................................14

42 U.S.C. § 12189 ...........................................................................15,16,17,18,19,20,39

42 U.S.C. §12102(1)...........................................................................................23

42 U.S.C. § 12182................................................................................................22

**Regulations**

28 C.F.R. § 35.104(1)(i)(B) .....................................................................................52

28 C.F.R. § 36.105(d)(1)(v)..........................................................................39,54,55,57

28 C.F.R. §36.101(b) ..........................................................................................26

28 C.F.R. §36.309 ....................................................15,16,1819,20,21,41,54,55

28 C.F.R. §36.309 (b)(1)(i)................................................................................40,41

28 C.F.R. §36.309 (b)(1)(v)...............................................................................40

28 C.F.R. §36.309(b)(v)......................................................................................21

29 C.F.R. § 1630.2(j)...........................................................................................26

29 C.F.R. § 1630.2(j)(1).....................................................................................36,57

29 C.F.R. § 1630.2(j)(3)(i)..................................................................................58

29 C.F.R. § 1630.2(j)(4)(iii)...............................................................................61

29 C.F.R. §§ 1630.2(i), (j)(3)..............................................................................29

29 C.F.R. §1630.1(c)(4).......................................................................................26

29 CFR § 1630.2 .................................................................................................27

29 CFR § 1630.2  (j)(ii) .....................................................................................39

29 CFR § 1630.2 (g)(3).......................................................................................27

## Rules

Fed. R. Civ. P. 8(a)(1)..........................................................................................4

Fed. R. Civ. P. 8(a)(2)..........................................................................................4

Fed. R. Civ. P. 8(d)..............................................................................................4

Fed. R. Civ. P. 10(c) .......................................................................................32,34

Fed. R. Civ. P. 11.................................................................................................8

Fed. R. Civ. P.12(b)(6)...................................................................................3,6,7,33

Fed. R. Civ. P. 12(c)............................................................................................34

## **Publications**

Bowers, J. J., & Shindoll, R. R. (1989). A Comparison of the Angoff, Beuk, and Hofstee
Methods for Setting Apassing Score. Iowa City, IA: American College Testing
Program...................................................................................................................................45,46

Burr, S. A., Whittle, J., Fairclough, L. C., Coombes, L., & Todd, I. (2016). Modifying
Hofstee standard setting for assessments that vary in difficulty, and to determine boundaries
for different levels of achievement. BMC Medical Education, 16(1), 1-11.................................45

George, S., Haque, M. S., & Oyebode, F. (2006). Standard setting: comparison of
two methods. BMC medical education, 6(1), 1-6..........................................................................45

Park, Y. S., & Yang, E. B. (2015). Three controversies over item disclosure in
medical licensure examinations. Medical education online, 20(1), 28821....................................44

Wright & A. Miller, Federal Practice and Procedure § 1327, at 490-91 n. 18 (1969); id.
§ 1327, at 125 n. 18 (Supp.1984) ...............................................................................................34

Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)......................33

## **Introduction**

Plaintiff is a medical student with a documented, 30 year history of ADHD and Learning Disabilities who is required to take licensing exams administered by Defendant, the National Board of Medical Examiners (NBME). These examinations are designed and administered to compare Plaintiffs performance to others and that is the sole factor to decide if he "passes" or "fails". Plaintiff, a member of a protected class, was diagnosed on the basis of testing that shows he is not comparable to the general population. If he was, he would not be considered disabled under the Americans with Disabilities Act (ADA). He also would not have qualified for the "non mainstream" high school education as documented in the complaint. Plaintiff has problems including but not limited to: learning, concentrating, is easily distracted and with memory which are confirmed by the documentation attached to the complaint. Plaintiff takes medication daily and see his doctors one regular bases also as detailed in the complaint.

The issue at hand is that Plaintiff believes (and so do his professors) that he is competent to practice medicine based on is knowledge; but he is not being assessed at the "minimally competent" level on the exams. He is being assessed at a level much higher than required, which is compared to everyone else competing for residency training spots. Plaintiff has commenced this action solely for the purpose of getting Defendants to grade his exams on their own merit pursuant the ADA and the applicable regulations such as 28 C.F.R. 36.309. Plaintiff has not asked for anything other than this relief despite the impact of Defendants actions on his life.

Plaintiff believes the truth is that Defendants do not have a minimum standard that they could use to evaluate him because they just always compare the current group of test takers to the last. He believes that they know this and the damage that will be done to their organization and the entire system used to license doctors across the country if this gets out in the public.

Now realizing this, if Plaintiffs conclusion is correct, he uncovered something that is more than a discrimination case. This case has implications and affects every single person reading or even touching this brief along with all of their friends, family, coworkers, neighbors even the random people they pass on their way to work. The easiest defense for the Defendants would have been to respond to Plaintiffs complaint with an explanation that Plaintiff is wrong and they don't grade these exams by comparing exam scores. But they didn't do that, they didn't even attempt it. They seem to be fighting very hard to cover up this information.

Plaintiff asks whoever is reading this to look at the obvious  and ask yourself two questions (1) Does it really take a NYC Law Firm with an alleged yearly revenue of $1.9 Billion to win a court case against "a special Ed kid who's not even a lawyer"? (2) If it was me /my mom /my husband /my wife /my son / my daughter lying on the stretcher in the emergency room with a head injury; then the young neurosurgeon walks into the room and states you / they need an emergent  craniotomy and he has to open your /their head in the OR; Don't you want to make sure he passed his exams because he met the required standard to be trusted with your / their life; or is it ok with you that he scored the same as the rest of the medical students, who might have been out drinking the night before since they were done with their courses?

That's why this case should not be dismiss because in addition to Plaintiff asking to be treated objectively, it is in the public interest and the interest in everyone involved in this litigation; from the UPS cashier that accepts this brief to be sent to the clerk's office to the custodian that is cleaning the floors of the courthouse before oral arguments each day to find out how these exams are scored and to make sure Plaintiff is held to the correct standard.

## Argument

### I. The Motion to Dismiss Pursuant to Rule 12(b) Has already been decided by this court and the judge presiding over this case[1]

Defendants have brought motion to dismiss Plaintiffs claims pursuant to Rule 12(b) alleging that they are without merit. Plaintiff has applied for and has been granted permission to proceed  In Forma Pauperis and his complaint has been ordered to be filed (See Exhibit A). The presiding judge of this matter, Hon  Georgette Castner has effectively analyzed this complaint for deficiencies as she has done in the past for multiple other cases before making her decision. As Judge Castner explained in Smith v. Borow, No. 3: 19-cv-08553-GC-TJB (D.N.J. May 13, 2022).

"As noted in the September 10, 2020 decision granting Plaintiff's in forma pauperis application, the Court is required "to screen Smith's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)." (ECF No. 4 at 2-3.) "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012).
When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must `tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft    v. Iqbal, 556 U.S. 662, 675). "Second, the court should identify allegations that, `because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 556 U.S. at 679). The court must accept as true all well- pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).
Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." Malleus, 641 F.3d at 563 (quoting Iqbal, 556 U.S. at 679); see also Fowler, 578 F.3d at 211. A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. Gelman v. State Farm Mut. Auto.    Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Although courts construe pro se pleadings less stringently than formal pleadings drafted by attorneys, pro se litigants are still required to "allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

---

[1] Plaintiff was not aware of and did not intend to use his *In Forma Pauperis* status as a defense to a motion to dismiss. He did not discover the opinions of Judge Castner until after Defendants had filed their motion which is proven by Plaintiffs application being filed in March of 2022 and the order being granted in June of 2022. The opinions by Judge Caster were not written until May & July of 2022

Federal Rule of Civil Procedure 8 sets forth general rules of pleading, and requires (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(1); 8(a)(2); 8(d)" in Smith v. Borow, No. 3: 19-cv-08553-GC-TJB (D.N.J. May 13, 2022). (See Exhibit B).

This is the same standard she applied in Green v. Murphy, Civ. No. 21-11852

(GC)(DEA) (D.N.J. July 5, 2022). stating that:

'The Court must screen the allegations of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit

III. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). The PLRA directs a court to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane Sears, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege `sufficient factual matter' to show that the claim is facially plausible. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that   the defendant is liable for the misconduct alleged." Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers `labels or conclusions' or `a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Pro se pleadings, as always, are liberally construed. See Haines v. Kerner, 404 U.S. 519   (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted)." Green v. Murphy, Civ. No. 21-11852 (GC)(DEA) (D.N.J. July 5, 2022). (See Exhibit C).

Judge Castner correctly used the same standard again as she explains in <u>Johnson v.</u>

<u>Trump,</u> Civ. No. 21-13353 (GC)(TJB) (D.N.Y. May 5, 2022).

Plaintiff, Wendell Johnson ("Plaintiff" or "Johnson") is a state pretrial detainee proceeding pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Plaintiff's application to proceed in forma pauperis will be granted. At this time, this Court is required to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant.

III. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." <u>Schreane v. Seana</u>, 506 F. App'x 120, 122 (3d Cir. 2012) (citing <u>Allah v. Seiverling</u>, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. See <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable   for the misconduct alleged." <u>Fair Wind Sailing, Inc. v. Dempster</u>, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678), "[A] pleading that offers `labels or conclusions' or `a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at  555).

Pro se pleadings, as always, are liberally construed. See <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), Nevertheless, "pro se litigants still must allege sufficient facts in their        complaints to support a claim." <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d  Cir. 2013) (citation omitted). <u>Johnson v. Trump,</u> Civ. No. 21-13353 (GC)(TJB) (D.N.Y. May 5, 2022) (<u>See</u> Exhibit D)

Thus, § 1915(e) obligates the Court to engage in a screening process when a person

wishes to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. <u>See</u> <u>McCain v. Episcopal</u>

Hosp., 350 Fed.Appx. at 604. Sectionl 915(e)(2) applies to all in forma pauperis complaints, and

not just to prisoners. See Grayson v. Mayview State Hosp., 293 F3d 103, 110, n. 10 (3d Cir.

2002) A district court is obligated to review a complaint in a civil action in which a litigant is

proceeding in forma pauperis, 28 U.S.C. § 1915(e)(2), or seeks redress against a governmental

employee or entity, 28 U.S.C. § 1915A. The Court is required to identify cognizable claims and

to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This action is subject to sua sponte

screening for dismissal under both 28 U.S.C. §§ 1915(e)(2) and 1915A because Plaintiff is

proceeding in forma pauperis and is also seeking redress from governmental officers and

employees. This screening obligation is in force whether the IFP plaintiff is a prisoner or not.

The standard utilized by Judge Castner to evaluate Plaintiffs complaint along with  Smith

v. Borow, Green v. Murphy and Johnson v. Trump was the same standard that applies to a

motion filed under Rule 12 (b). All of these opinions and rulings are in line with both the Third

Circuit of Appeals and other District Courts. "The legal standard for dismissing a complaint for

failure to state a claim pursuant to § 1915(e)(2)(B)(ii) or § 1915A(b)(l) is identical to the legal

standard used when ruling on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); Scott v. Delaware

Dept. of Family Services, 530 Fed. Appx. 129, 130 (3d Cir. 2013) "Detar v. U.S. Gov't, Civil

Action No. 2:13-cv-01499 (W.D. Pa. Feb. 7, 2014) , also Goldsmith v. CBS TV Broad. Inc.,

Civil Action No. 2:13-cv-00478 (W.D. Pa. Mar. 26, 2015) (In the past, this Court has explained

that the legal standard for dismissing a complaint for failure to state a claim pursuant to §

1915(e)(2)(B)(ii) or § 1915A(b)(1) is identical to the legal standard used when ruling on a

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)) Mosura v. Huber, Civil

Action No. 2:14-cv-00108 (W.D. Pa. Mar. 3, 2014) ; Hoover v. Wells Fargo Bank, Civil Action

No. 2:14-cv-00139 (W.D. Pa. Mar. 3, 2014)( In this context, that means that the Court is to apply

the same standard that it would apply in evaluating a Motion to Dismiss a civil complaint under

Fed. R. Civ. P. 12(b)(6), giving due consideration that as a pro se litigant, the Plaintiff is held to

a somewhat less precise and demanding pleading standard.)

Evaluating motions to proceed in forma pauperis under 28 U.S.C. § 1915 is a two-step

process. See Roman v. Jeffes, 904 F.2d 192, 194 n.l (3d Cir. 1990). "First, the district court

evaluates a litigant's financial status and determines whether (s)he is eligible to proceed in forma

pauperis under § 1915(a). Second the court assesses the complaint under [§ 1915(e)(2)] to

determine whether it is frivolous." Id. (citing Sinwell v. Shapp, 536 F.2d 15 (3d Cir. 1976)); see

also Schneller v. Able Home Care, Inc., 389 Fed. Appx. 90, 92 (3d Cir. 1990). Therefore, only

after the district court grants the request to proceed in forma pauperis may it dismiss the

complaint as legally frivolous. See Jackson v. Brown, 460 Fed. Appx. 77, 79 n.2 (3d Cir. 2012)

("As a procedural matter, therefore, the District Court should have addressed Jackson's [in forma

pauperis] motion before dismissing the complaint as frivolous, rather than deny the [in forma

pauperis] motion as moot after dismissal."); Spuck v. Fredric, 415 Fed. Appx. 358, 359 (3d Cir.

2011) ("When a complaint is submitted along with an [in forma pauperis] application, the

complaint is not deemed filed unless and until [in forma pauperis] status is granted. [...] In that

situation, the District Court must first rule on the [in forma pauperis] application and, only if it

grants the application, proceed to determine whether the complaint should be dismissed under 28

U.S.C. § 1915(e)(2)(B).").

This statute "is designed largely to discourage the filing of, and waste of, judicial and private resources upon baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (stating that"[dismissals on these grounds are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints"). While the original statute permitted sua sponte dismissal only if an action was frivolous or malicious, Congress included failure to state a claim and seeking monetary relief from a defendant immune from suit as additional grounds for sua sponte dismissal of in forma pauperis cases. Jones v. Bock, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007); § 1915(e)(2)(B) (2000 ed.); 28 U.S.C.

However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

In reviewing a pro se plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the pro se plaintiff See Erickson v. Pardus, 551 U.S. 89, 93 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906

(3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. <u>Bell</u>

<u>Atlantic Corp.</u>, 550 U.S. at 555 (citing <u>Papasan v. Attain</u>, 478 U.S. 265, 286 (1986)).

Additionally, a civil rights claim "must contain specific allegations of fact which indicate a

deprivation of constitutional rights; allegations which are nothing more than broad, simple and

conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v.

Ward, 814 F.2d 883, 887 (2d Cir. 1987).

## II. Response to Defendants Arguments

Before Plaintiff responds to Defendants arguments individually, he brings the courts

attention to a case from the Eastern District of Pennsylvania. The Plaintiff  Ramsay was a

medical student with ADHD & Learning Disabilities who applied to the court for an injunction

against the Defendant National Board of Medical Examiners for testing accommodations. It was

granted by the District Court and Affirmed by the Third Circuit of Appeals.

In this current case Plaintiff , who is also a medical student with ADHD & Learning

Disabilities has commenced an action against the same Defendants , The National Board of

Medical Examiners. Just like Ramsay asking the court for an injunction for testing

accommodations, Plaintiff is asking for in injunction to stop the illegal practice of comparing his

test scores against a reference population and not considering them on their own merit.

It seems that this case mirrors what is happening before this court and addresses many

issues raised in Defendants motion to dismiss. It was affirmed by the Third Circuit which is the

Court of Appeals for this Court so it appears to be Precedential Case law. See <u>Ramsay v. Nat'l</u>

<u>Bd. of Med. Examiners,</u> Civil Action No. 19-CV-2002 (E.D. Pa. Dec. 30, 2019) attached (<u>See</u>

Exhibit E) along with  Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020).

(See Exhibit F)

### III. Time Barred Part I

Defendants have attempted to use a Third Circuit opinion as an attempt to state statute of

limitations defense. They are trying to claim that even though Plaintiff took an exam in February

and attached it to his complaint in which the score violates the law, he can't take action against

them because the other times Plaintiff he didn't complain about it. Nothing, could be more of a

misrepresentation of what is reality and what is the truth. First, Congress never would have

intended at the creation of any law that someone couldn't file an action in court when the incident

happened month before. Second, no branch of this government could possibly come to that

conclusion and refuse to sanction a violation. Third, any High School or College student that has

taken a Business Law course ( Plaintiff included) knows that a Statues of Limitation is the time

when the act happens until you have to get to the courthouse and file your papers.

Defendants cite a case, but the case turned out to be the exact opposite of what they

stated. The case is Taylor v. Henderson, 632 F. App'x 70 (3d Cir. 2015) which states as follows:

- Taylor was serving life in prison for crimes he committed in the 1970's

- He was out on Parole in 2004, then back in jail off Parole when he tested positive for
  cocaine

- He applied for Parole again in 2008 and was denied for substance abuse which was
  documented by the Parole Board

- He claimed that he suffered from substance abuse caused by his PTSD and didn't know until 2009[2]

- The Prison would not allow him to obtain treatment for his disorders while in prison

- He needs to be on Parole to participate the PTSD treatment program from Department of Veteran Affairs

- He applied again in 2012 and 2014 and was denied for his history of substance abuse

- He filed suit alleging among other things that the Parole Board was violating the ADA by not allowing him to obtain Parole in 2008, 2012 and 2014 and enroll in the VA program, because of his history of substance abuse.

- The Board moved to dismiss on grounds including that the claims were barred by the statue of limitations since he knew about the substance caused by his PTSD in 2009, but waited until 2012 to file suit which was granted by the District Court.

The Third Circuit on appeal stated the following:

"Taylor alleges that he learned of the link between his substance abuse and PTSD in 2009 but did not file suit until 2012. Taylor, however, could not have challenged the Board's 2008 decision on the basis of information that was not before the Board at that time .Taylor submitted this information to the Board at his next opportunity to apply for parole, the Board denied that application in 2012, and Taylor filed suit shortly thereafter.     He later sought to further amend his complaint to challenge the Board's 2014 denial on this basis as well. Thus, it appears that Taylor raised these claims within two years of their accrual." Taylor v. Henderson, 632 F. App'x 70 (3d Cir. 2015)

They then affirmed, then vacated and remanded the claims back to the District Court:

"For these reasons, we will affirm the District Court's dismissal of Taylor's claim  that the Board denied him due process by relying on the nature of his offense. We also will affirm the District Court's dismissal of Taylor's claims that the Board denied him due process and violated the ADA by relying on his prior substance abuse per se. We will vacate the denial of those claims to the extent that they challenge the Board's alleged reliance on this factor in light of the specific information that Taylor provided in the parole applications that the Board denied in 2012

---

[2] In this current matter, Plaintiff was not aware that the Defendants conduct was violating the law until  2021 and he is prepared to testify to state the same.

and 2014, and we will remand those claims for further consideration. Because Taylor's motion for leave to further amend his complaint does not appear futile to that extent and no longer is moot in light of our ruling, we will vacate the District Court's denial of that motion as well." Taylor v. Henderson,  632 F. App'x 70 (3d Cir. 2015).(See Exhibit G)

Taylor pursued three separate denials of Parole 2008, 2012 and 2014 and this was remanded back to the District Court when dismissal was attempted. As the appeals court realized, each denial is a new claim as the same case in this matter, each time Plaintiff  has or will take a new exam, each time his exam is scored illegally, gives rise to a another claim. Plaintiff has attached an exam taken in the complaint that was taken in 2022 and since the complaint was filed in March a month later, Plaintiff is well within any statute of limitation.

### IV. Time Barred Part II

Plaintiff was going to end this argument here, but he realized that there are two separate issues here that are here before this court; and Defendants have attempted to claim that they are related when they are not, at least in their brief. This is why Plaintiff has left the original argument he made in this brief regarding of Statute of Limitations and added a separate part II so it can be shown that Defendants arguments do not apply at all to why Plaintiff has come the court. The complaint states that Plaintiff has been trying to pass the Comprehensive Basic Science Exam for the past 6 years and he has attached his most recent attempt in February 2022 to the complaint. If, Plaintiff was pursuing a claim for damages which he has not, the two years statute of limitations argument could have been weak and his damages could have been limited.

However, Plaintiff has stated in his complaint:

'These exams have recently been changed to "Pass/ Fail" but they are still graded on a curve....Grading these exams on a curve or in comparison to others does not in any way test my proficiency to become a physician..."

Its paying attention to the details in Plaintiffs complaint that revels what the facts are and what the purpose of this action is. Plaintiff has asked the court in the relief section of the complaint:

"I request that the Defendants.... be enjoined from grading my exams...on a curve and deciding passing of failing based on comparing me to others....I request that my exams that I....will take in the future be evaluated on their own merit and not in comparison to other test takers..."

Plaintiff has been taking exams but has asked this court to enjoin the Defendants from grading his exams (in violation of the ADA by comparing him to others) in the future on the new exam. As stated in the complaint, the exam scoring has changed from a digit score to a "Pass/Fail" score. That means the multiple exams Plaintiff took prior cannot be taken into account for the statue of limitations exams, since they are two different exams scored two different ways. The scoring change as posted on the Defendants website did not happen until January 2022.

Plaintiff has located a case that supports this, as it was the holding of the case. It appears that the statue of limitations is based on the state personal injury statute of limitation; however the second part of the holding is that it does not begin to accrue until the change or alteration is completed to the act in question. Meaning, the new scoring system was not in place while Plaintiff took the old exams but was in place for only about a month when he filed this action.

The case is Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008)[3]. This matter involved the renovation of a transit station and the failure to add elevators for those who are disabled to access. The District Court dismissed the complaint claiming that the statue of limitations began to run when Plaintiff knew the plans would not include the elevators. The Third Circuit reversed and stated:

---

[3] Plaintiff has included copies of the cases he cites, please read the arguments first.

"we hold that the "structure and text of the statute," Andrews, 534 U.S. at 28, 122 S.Ct. 441, evince Congress's intention that claims under § 12147(a) accrue "upon the completion of . . . alterations" to public transportation facilities. Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008)

This case involving Title II of the ADA also had its application to Title III of the ADA

explained by the court:

"This interpretation comports with a similar provision in Title III of the ADA (dealing with public accommodations):"[Discrimination . . . includes — with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(2) (emphasis added). Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008)
        The court also explained that a Plaintiff could apply for an injunction in such a case but

they were not required too since the act had not actually happened to violate the law yet:

"our interpretation of § 12147(a) does not prevent an entity like DIA from seeking an injunction prior to the commencement of construction to prevent threatened ADA violations. See 43A C.J.S. Injunction § 8 ("A preliminary injunction is an anticipatory remedy which prevents the perpetration of a threatened wrong. . . ."); United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Swift Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928). Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008)


Neither is his statute of limitations limited by him not applying for an injunction in such a

case as also explained by the court

"It does not follow, however, that a claim for relief on the merits under § 12147(a) accrues as soon as claims for declaratory and injunctive relief accrue. Ramey v. District 141, 378 F.3d 269, 279 n. 4 (2d Cir. 2004) ("[T]he possibility of maintaining a preliminary injunction proceeding does not trigger the statute of limitations."); see Reiter v. Cooper, 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008) (See Exhibit H)


This case is exactly what is happening in this matter and states clearly that Plaintiff could

have applied for an Injunction when it was posted that the scoring of the exams were changing or

apply for an Injunction when the scoring of the exams <u>did</u> change. Plaintiff stated it changed in his complaint and requests the same relief in the same circumstances.

### V. Response to "C. Fails to state a claim under the ADA" Part I

The next section of this argument, Plaintiff asks the court and the reader to pay attention <u>very</u>, <u>very</u>, <u>carefully</u> to what has been submitted to the court on the part of the Defendants on page 11 of their brief as explained here. Plaintiff will separate it for the reader. Please, read this step by step before doing any additional readings or research.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- The brief first states:

    A specific provision in Title III of the ADA applies to private entities offering certain types of examinations. See 42 U.S.C. § 12189. Section 12189 provides as follows:

    > Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

- The above statement is correct, this is 42 U.S.C. § 12189

    > Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.
    > (Pub. L. 101–336, title III, § 309, July 26, 1990, 104 Stat. 365.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- The brief then states

    Mr. Zangara cites the regulation that implements this provision in his Complaint.

See Complaint at 5 (discussing 28 C.F.R. § 36.309);

- This is correct, Plaintiffs complaint does discuss. § 36.309

*************************************************************************

- Please do not read the next line in Defendants brief for now we will come back to it.

- Plaintiffs complaint mentions . §36.309 which states:

  The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills

*************************************************************************

- A case is then cited in an attempt to make the reader think the "309" in the case stands for

  the same "309" in Plaintiffs complaint creating a "bait & switch"

- The "309" in the case that is about to be cited references different nomenclature for

  section 42 U.S.C. § 12189, also called "section 309". <u>Not</u> §36.309 that Plaintiff cited

  from the DOJ regulations.

particular individual with a disability.

**SEC. 309. EXAMINATIONS AND COURSES.**                              42 USC 12189

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

**SEC. 310. EFFECTIVE DATE.**                                       42 USC 12181

(a) GENERAL RULE.—Except as provided in subsections (b) and (c), this title shall become effective 18 months after the date of the enactment of this Act.

(b) CIVIL ACTIONS.—Except for any civil action brought for a violation of section 303, no civil action shall be brought for any act or omission described in section 302 which occurs—

(1) during the first 6 months after the effective date, against businesses that employ 25 or fewer employees and have gross receipts of $1,000,000 or less; and

(2) during the first year after the effective date, against businesses that employ 10 or fewer employees and have gross receipts of $500,000 or less.

(c) EXCEPTION.—Sections 302(a) for purposes of section 302(b)(2) (B) and (C) only, 304(a) for purposes of section 304(b)(3) only, 304(b)(3), 305, and 306 shall take effect on the date of the enactment of this Act.

16

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- The next line of the brief states:

    see also Boggi v. Med. Rev. & Accrediting Council, 415 F. App'x 411,

    414 (3d Cir. 2011) ("the District Court properly assessed [the pro se plaintiff's]

    ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam)

- The <u>first</u> part of the trap is to get you to see what is written at the top of the page of

    the case which states:

    "Holding that plaintiff failed to state a viable ADA claim against any of the "non-

    entity defendants" that were sued in their individual capacities"

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- Further down in the opinion it states what they want you to see which is the <u>second</u>

    part of the trap

    We first note that, given Boggi's pro se status, the District Court properly
    assessed his ADA claims under section 309 of Title III, 42 U.S.C. § 12189. See
    <u>Doe v. Nat'l Bd. of Med. Exam'rs</u>, 199 F.3d 146, 155 (3d Cir. 1999). We also note
    that Boggi's complaint provides uncontroverted allegations that Boggi suffers
    from Attention Deficit Hyperactivity Disorder (ADHD), and that he received
    adverse test results from MRAC because it perceived Boggi to suffer from certain
    psychiatric impairments.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- The <u>third</u> part of the trap is when you see the "cheese" sitting on the trap they want

    you to take which is seeing <u>Doe v. Nat'l Bd. of Med. Exam'rs,</u>

- When you take it, and read <u>Doe v. Nat'l Bd. of Med. Exam'rs</u> you will see that it is

    about "flagging " "exam" results referencing and applying section 309 of Title III, 42

    U.S.C. § 12189

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- The breadcrumbs have been laid, the trap is in front of you and they are expecting you to take the cheese and trip the trap. What they put in front of you and want you to think is:

  1. Plaintiff cites this statute  42 U.S.C. § 12189

     Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

  2. They say "See in his complaint it's called §36.309"

     "See Complaint at 5 (discussing 28 C.F.R. § 36.309)"

  3. They then cite a case

     see also <u>Boggi v. Med. Rev. & Accrediting Council</u>, 415 F. App'x 411, 414 (3d Cir. 2011) ("the District Court properly assessed [the pro se plaintiff's] ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam)

  4. You open the case and see

     "Holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities"

  5. Your mind (and that's what they wanted) was being lead to believe that:

     "the District Court properly assessed [the pro se plaintiff's] ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam)  and the court issued the  "Holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities"

  6. So they want the reader to believe this is true to claim Plaintiff does not have a claim

  7. What they are trying to do is divert your attention away from the fact that Plaintiff cited the DOJ Regulation that implements 42 U.S.C. § 12189, which

is cited completely as 28 C.F.R. §36.309 both in the complaint and attached in the exhibit marked "c" on the 4th page of the document

8. They then expect that when you check you will read part (a) of 28 C.F.R. §36.309 and think since its worded the same as the original statue, 42 U.S.C. § 12189 they are the same or interchangeable

 (a) General. Any private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

9. Part (b)is what Plaintiff listed in his complaint and what is attached. 28 C.F.R. §36.309

(b) Examinations.

 (1) Any private entity offering an examination covered by this section must assure that -

(i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure);

10. "309" is the old name for , 42 U.S.C. § 12189

**SEC. 309. EXAMINATIONS AND COURSES.**     42 USC 12189.

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

**SEC. 310. EFFECTIVE DATE.**     42 USC 12181 note.

(a) GENERAL RULE.—Except as provided in subsections (b) and (c), this title shall become effective 18 months after the date of the enactment of this Act.

(b) CIVIL ACTIONS.—Except for any civil action brought for a violation of section 303, no civil action shall be brought for any act or omission described in section 302 which occurs—

 (1) during the first 6 months after the effective date, against businesses that employ 25 or fewer employees and have gross receipts of $1,000,000 or less; and

 (2) during the first year after the effective date, against businesses that employ 10 or fewer employees and have gross receipts of $500,000 or less.

(c) EXCEPTION.—Sections 302(a) for purposes of section 302(b)(2) (B) and (C) only, 304(a) for purposes of section 304(b)(3) only, 304(b)(3), 305, and 306 shall take effect on the date of the enactment of this Act.

11. The last part of this is they want you to see that their "309" is listed in Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 155 (3d Cir. 1999), but it's the same "309" that identifies 42 U.S.C. § 12189 not Not §36.309 that Plaintiff cited from the DOJ regulations.

12. So the argument, is nothing more than an attempt to mislead the reader into believing Plaintiffs claim isn't valid.

Boggi v. Med. Rev. & Accrediting Council, 415 F. App'x 411, 414 (3d Cir. 2011) (See Exhibit I)

Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 155 (3d Cir. 1999) (See Exhibit J)

### VI. Response to "C. Fails to state a claim under the ADA" Part II

Plaintiff will address is the foot note on the bottom of page 11 of the Defendants brief to establish his cause of action. The foot note states:

"Mr. Zangara's Complaint does not address accessibility of the CBSE —i.e., the place and manner in which it was administered. It addresses the way in which the exam is allegedly scored. NBME denies that Mr. Zangara's dissatisfaction with NBME's alleged scoring methodology constitutes a cognizable claim under Section 12189. It is not addressing this issue at this time, however, given the other deficiencies in Mr. Zangara's Complaint." Defendants complaint, footnote page 11.

Plaintiff has brought this claim under the DOJ regulation that implements 42 U.S.C. § 12189 which is 28 C.F.R. §36.309 and states as follows:

"The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills"

Please notice the part of the regulation that states....... the examination results accurately reflect the individual's aptitude or achievement level..... and Results means scoring. Plaintiff just made an entire lengthy argument stating that Defendants keep leaving out the second part of the regulation only citing the similar wording of  42 U.S.C. § 12189.

As explained in <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020)

(<u>See</u> Exhibit F)[4]

"Furthermore, 28 C.F.R. §36.309, the regulation which specifically governs the giving of

"Examinations and Courses" states the following in relevant part:

(a) General. Any private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

(b) Examinations. (1) Any private entity offering an examination covered by this section must assure that --

(i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills (except where those skills are the factors that the examination purports to measure);.................

(v) When considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred to as a Section 504 Plan)." quoting <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020)

As stated in Ramsay " Finally, we also find that Defendant ran afoul of 28 C.F.R.

§36.309(b)(v) which requires that "[w]hen considering requests for ... accommodations ... the

[testing]entity give[]considerable weight to documentation of past modifications,

accommodations, or auxiliary aids or services received in similar testing situations..." Again, it

does not appear from the record that NBME gave any consideration, much less the "considerable

---

[4] Notice that the Ramsay Case fits this case before the court so well that Plaintiff can quote entire paragraphs at a time using the words of the judges without modifications to argue the case for him.

weight" required to Ms. Ramsay's past record of having received accommodations." [5] Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

### VII. Response to: Mr. Zangara fails to allege he is disabled within the meaning of the ADA.

"The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis" .quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020) (See Exhibit F)

"As stated, Plaintiff here is alleging that NBME violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12182 .......In general, these Acts provide the following in pertinent part:

It should be noted that Defendant long ago conceded that its services constitute a public accommodation covered by title III of the ADA. See, e.g., Powell v. National Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004). Defendant also does not dispute that it is subject to this portion of the ADA here,

§12182. Prohibition of discrimination by public accommodations.

(a) General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.........Under the ADA, "[t]he term 'disability means, with respect to an individual

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

---

[5] As it can been seen by the statute itself and in the opinion of the court there are multiple sections of 28 C.F.R. §36.309 covering multiple topics.

42 U.S.C. §12102(1). "Major life activities," in turn, "include but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2). Under Section 504 of the RHA, an "[i]ndividual with a disability" is defined to mean in general "any individual who-(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and

quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020).

As detailed by the court in Ramsey above, which "Defendant long ago conceded that its services constitute a public accommodation covered by title III of the ADA. See, e.g., Powell v. National Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004). Defendant also d[id] not dispute that it is subject to this portion of the ADA "Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

In order to be disabled under the ADA, Plaintiff must have a physical or mental impairment that substantially limited his abilities to perform "Major life activities," in turn, "include but are not limited to.....performing manual tasks...., .........learning, reading, concentrating, thinking, communicating....." 42 U.S.C. §12102(2). Plaintiff has alleged in the compliant that he has had documented treatment for ADHD and learning disabilities for the past 30 years and will make all records available upon request. He has also included the most recent extensive Neurophysiologic evaluation detailing his disabilities and concerns[6] The evaluation (found at exhibit A of the complaint) states;

- Plaintiff has concerns of cognitive decline, difficulty with multi tasking, distractibility, difficulty focusing, difficulty acquiring information from lectures and books, even with

---

[6] has submitted to this court. Of the 30 years of medical records, school records, IEP's, medical records and other documents Plaintiff has, he has submitted the one document, with the most detailed explanations and testing he has to support his claim.

the mitigation effects of Vyvanse medication & after trails of other medications including Strattera, Adderall and Concerta

- Neurophysiologic Evaluation Findings (Pertinent) :

  1. Test of Memory Malingering (TOMM) - Of note his failure on trial 1 of the TOMM may be due to a genuine visual memory disorder due to his similar poor performance

  2. Sensory/ Motor Dominate right hand motor control Mildly impaired

  3. IQ scores within normal limits with VCI < PRI 14 **significant**

  4. Attention/ Processing Speed[7]

     Autonomic mental processing speed: **Severely Impaired**

     Controlled mental processing speed : **Severely Impaired**

  5. Higher Order Integrative Functioning

     Mental flexibility:

       Inhibition: **Severely Impaired**

       Inhibition / Switching: **Severely Impaired**

     Abstract Reasoning:

       Unstructured Problem Solving/ Fluid Reasoning: **well below expectation**

       Total Errors: **Severely Impaired**

       Conceptual Responses: **Severely Impaired**

     Initiation/ Generation: **Severely Impaired**

  6. Memory

     Visual Memory

---

[7] Plaintiff will list only extreme or relevant values in this brief for all values please see the report

Immediate rote visual memory: **Severely Impaired**

Delayed rote visual memory: **Severely Impaired**

Immediate incidental visual memory: **Severely Impaired**

Delayed incidental visual memory: **Severely Impaired**

Delayed recognition memory discrimination: **Severely Impaired**

Summary

The Patient...with prior dx of ADHD....complaints of memory loss...is an individual...who shows

dysfunction of executive functioning and visual memory...complex attention is impaired...despite

being on ADHD mediation at the time of testing. executive dysfunction is seen in aspects of

behavior inhibition, unstructured problem solving and phonemic fluency.....visual memory is

grossly impaired...

Impression

Overall the results of current testing are abnormal and indicate frontal and non-dominant

temporal lobe dysfunction. Executive dysfunction appears compatible with his history of

inattention and disorganization.

In order to be disabled under the ADA, Plaintiff must have a physical or mental

impairment that substantially limited his abilities to perform "Major life activities," in turn,

"include but are not limited to.....performing manual tasks...., ......learning, reading,

concentrating, thinking, communicating....." 42 U.S.C. §12102(2).

Plaintiff has shown that as he stated in the complaint that he has ADHD and learning

disabilities, he attached the report that he obtained when he went to the Neurophysiologist. He

told the Neurophysiologist how these issues were impacting his life. The Neurophysiologic

25

testing confirmed over multiple tests that Plaintiff sufferers from executive dysfunction, impaired motor control in his right hand confirming a deficit in the left temporal lobe of his brain[8]

In addition to this, it was discovered that Plaintiff has an issue with visual memory. This mirrors the Ramsay case as "Plaintiff [Ramsay] has a history of having struggled with reading, visual perception, focus and attention beginning at least in the first or second grade" Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020) In this matter Plaintiff had concerns of cognitive decline, difficulty with multi tasking, distractibility, difficulty focusing, difficulty acquiring information from lectures and books as stated prior. Therefore, Plaintiff both meets the definition of a disability under the ADA and has shown how it affects his  "Major life activities...[that] ...include but are not limited to.....performing manual tasks...., ......learning, reading, concentrating, thinking, communicating....." 42 U.S.C. §12102(2).

"[I]t was the stated goal of Congress in enacting the ADA Amendments Act to make it easier for individuals with disabilities to obtain protection under the Act and to mandate that the definition of "disability" "be construed broadly in favor of expansive coverage." See, 29 C.F.R. §1630.1(c)(4), 1630.2(j), and 28 C.F.R. §36.101(b). The  Regulations clearly state that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." And, "[t]he question of whether an individual meets the definition of disability under this part should not demand extensive analysis." Id.(emphasis added). In re-analyzing the results of the numerous diagnostic tests that were administered,[and attached to the complaint, NBME] did just that. They thus focused on whether Plaintiff met the definition of disability, rather than whether the covered entity had complied

---

[8] A simple Google search can be done to learn the right hand is controlled by the left side of the brain, which is where Plaintiffs dysfunction is.

with their obligations under the Act(s). Indeed, although NBME may not have liked the terminology used in the implementing regulations, despite its registered objections, the foregoing language is what was enacted and it is this language which must be followed" quoting <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020)

 The Defendants claim that Plaintiff has not "alleged that he is substantially limited in any major life activities". This is blatantly false as Plaintiff has detailed this in the previous section with the information that was included in the evaluation attached to the complaint.  As the court stated in <u>Ramsay</u>, 29 CFR § 1630.2 was applicable to the same Defendants in this matter, NBME as stated above. Since Plaintiff challenging the scoring of the exams, he does not believe this is a responsible accommodation case. In that aspect Plaintiff  is not required to show how his impairment impacts his life (even though he has). See 29 CFR § 1630.2 (g)(3):

 "Where an individual is not challenging a covered entity's failure to make reasonable accommodations and does not require a reasonable accommodation, it is generally unnecessary to proceed under the "actual disability" or "record of" prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. In these cases, the evaluation of coverage can be made solely under the "regarded as" prong of the definition of disability, which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. An individual may choose, however, to proceed under the "actual disability" and/or "record of" prong regardless of whether the individual is challenging a covered entity's failure to make reasonable accommodations or requires a reasonable accommodation.

 Defendants then claim that <u>Boggi v. Med. Rev. & Accrediting Council</u>, 415 F. App'x 411, 414 (3d Cir. 2011) (<u>Skelton v. New Jersey Dep't of Correction</u>, No. 19-18597, 2020 WL 6376652, at *12 (D.N.J. Oct. 30, 2020) somehow demand that Plaintiffs claim be dismissed for not alleging he has a disability. They also state that <u>Karipidis</u> distinguished <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009), claiming <u>Fowler</u> does not apply.

They cite <u>Karipidis</u> and state

"The Karipidis court distinguished <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009), where the Third Circuit held that "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading," id. at 214 (citation omitted), because in Fowler the plaintiff "was injured on the job; thus her employer was already aware of her disability." 2010 WL 2521209, at *8 n.9. This case is not an employment discrimination case, and NBME has no independent knowledge of which major life activities (if any) are relevant to Mr. Zangara's claim. The Fowler approach therefore does not apply to this case." Defendants brief page 13

They then use one statement made by the court in Boggi;

'See also Boggi, 415 F. App'x at 415 (post Fowler opinion where Third Circuit affirmed dismissal of ADA claim based on plaintiff's failure to allege a substantial limitation in a major life activity). Defendants brief page 13

They went fishing for this:

"Nevertheless, Boggi's complaint fails to contain any allegations suggesting that his ADHD substantially limits his ability to work, read, write, or engage in any other major life activity. See 42 U.S.C. § 12102(2). Indeed, Boggi disavows such a notion in his complaint.

There is no clear rational of how or why this court made this statement in its opinion.

Why would the Third Circuit not address that? Because it was a Section 1983 and it was

dismissed for the parities not acting under the color of the law. See <u>Boggi</u> (Holding that plaintiff

failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in

their individual capacities) As the holding is written across the top of the opinion, the Defendants

alleged holding is not and nothing more than another misrepresentation of the case. They are

attempting to get the reader to see key words and think that is somehow applies to this case such

as "ADHD" "ADA" "NBME" "Testing". This legal fantasy is not what the rest of the world is

living in and they are attempting to get you to buy into it; As Plaintiff showed in the prior

argument about the deception Defendants attempted with trying to apply Boggi to the DOJ

regulation 28 C.F.R. 309 claiming they dismissed the case on those grounds.

The reason they have gone through all of this is the damage that Fowler, if read completely does to their case. They state "'See also Boggi, 415 F. App'x at 415 (post Fowler opinion..." trying to get you to infer that Fowler was wrong and Boggi and Defendants "random comment theory" is correct. The Third Circuit detailed the application of two other cases (Defendants have quoted also, but incompletely) that this court is familiar with: Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The whole point of the Fowler case was to incorporate Bell Atlatic Corp. & Twombly into pleading a disability discrimination case under the ADA. As the court stated:

"At this stage of the litigation, the District Court should have focused on the appropriate threshold question — namely whether Fowler pleaded she is an individual with a disability. The District Court and UPMC instead focused on what Fowler can "prove," apparently maintaining that since she cannot prove she is disabled she cannot sustain a prima facie failure-to-transfer claim. A determination whether a prima facie case has been made, however, is an evidentiary inquiry — it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination. . See Powell v. Ridge, 189 F.3d 387, 394 (3d Cir. 1999) (overruled on other grounds). Even post- Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element." See Graff v. Subbiah Cardiology Associates, Ltd. No. 08-207, 2008 WL 2312671 (W.D.Pa. June 4, 2008) citing Phillips, 515 F.3d at 234. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim. Powell, 189 at 394.


Fowler is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations. Her complaint identifies an impairment, of which UPMC allegedly was aware and alleges that such impairment constitutes a disability under the Rehabilitation Act. Furthermore, her alleged limitation to sedentary work plausibly suggests that she might be substantially limited in the major life activity of working. See 29 U.S.C. § 705(20)(B); 29 C.F.R. §§ 1630.2(i), (j)(3); cf. Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("When the major life activity under consideration [in a disability discrimination suit] is that of working, the statutory phrase `substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). Of course, Fowler must ultimately prove that she is substantially limited in a recognized major life activity to prevail on her claim. At the pleading stage, however, Fowler's allegation regarding disability is sufficient. See Equal

Employment Opportunity Comm'n v. J.H. Routh Packing Co., 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."). This is so even after Twombly and Iqbal."

The court the ends the opinion with:

"As we have stated before, standards of pleading are not the same as standards of proof. Phillips, 515 F.3d at 246. We express no opinion on whether Fowler will ultimately be able to prove her claims. We will vacate the order dismissing Fowler's cause, and remand for further proceedings, albeit not as a class action. "

Fowler v. UpMC Shadyside, 578 F.3d 203 (3d Cir. 2009)(See Exhibit O)

As it can be seen, Fowler is the correct case to be used in Plaintiffs, not Defendants favor as it explains in detail how it should be applied. The random comment in this section about "the employer knowing" can be removed entirely and the analysis by the court does not change. It is irrelevant that this was an employment matter or the employer knew of anything. This is the same type of analysis that the Supreme Court used in Ashcroft applying it such a broad spectrum of cases. Therefore Fowler is the standard that should be applied to this case and Plaintiff respectfully requests that the court consider the doctrine of stare decisis; not whatever legal theory Defendants are attempting to put forth.

On top of that, Plaintiff will show even if this court chooses to rely on Karipidis , Defendants claims are still without merit.

Defendants  cite Karipidis v. Ace Gaming LLC claiming on page 13 of their brief that:

"He does not, however, allege that he is substantially limited in any major life activities, and this "creates a defect in the Complaint." See Karipidis v. ACE Gaming LLC, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010)"

30

Defendants write "creates a defect in the Complaint" and stop, but this is not the correct

representation of the case. The issue relating to the Defendants statement is explained by the

District Judge in Karipidis:

"Plaintiff's Complaint states that he has a "prosthesis of the right arm." (Compl. at ¶ 1.)
He does not allege that this impairment substantially limits one or more major life activity, **or
that there was a record of the impairment,** or that he was regarded as having such an
impairment. The Court is left to determine whether by simply stating his impairment, Plaintiff
satisfactorily alleges he is a disabled person within the meaning of the ADA."

Quoting <u>Karipidis v. Ace Gaming LLC</u>, Civil Action No. 09-3321 (D.N.J. Jun. 9, 2010)

Defendants statement is put into context here:

"By simply stating that the plaintiff lives with an injury, illness or impairment without alleging
that the impairment substantially limits a major life activity creates a defect in the Complaint.
The Court acknowledges that Karipidis does not need to set forth a detailed description of the
limitations his alleged disability presents; however, he still must provide facts that state a claim
of disability under of the law. Karipidis has failed to do so here."

In this action, <u>Karipidis</u> made the statement then said nothing to back it up. Plaintiff on

the other hand meets the second part of this courts requirement:

**", or that there was a record of the impairment,"**

As Plaintiff has written in the complaint itself:

"I have been diagnosed with ADHD and Learning Disabilities since elementary school in which
I have been treated for the past 30 years. I see the physician on a regular bases and take
medications daily. I have included the most recent testing results (See Attached Exhibit A)

When you read the report attached to the complaint it shows how Plaintiffs disabilities
affect his life :

- Plaintiff has concerns of cognitive decline, difficulty with multi tasking, distractibility,
  difficulty focusing, difficulty acquiring information from lectures and books, even with
  the mitigation effects of Vyvanse medication & after trails of other medications including
  Strattera, Adderall and Concerta
- The Patient...with prior dx of ADHD....complaints of memory loss...is an
  individual...who shows dysfunction of executive functioning and visual
  memory...complex attention is impaired...despite being on ADHD mediation at the time

of testing. executive dysfunction is seen in aspects of behavior inhibition, unstructured problem solving and phonemic fluency.....visual memory is grossly impaired...

- Overall the results of current testing are abnormal and indicate frontal and non-dominant temporal lobe dysfunction. Executive dysfunction appears compatible with his history of inattention and disorganization.

Plaintiff has therefore satisfied the requirements of this District Court under the proper

application of the opinion even though he is not required; since it is an unpublished opinion. See

Karipidis v. Ace Gaming LLC, Civil Action No. 09-3321 (D.N.J. Jun. 9, 2010) (See Exhibit N)

Furthermore, another reason the Defendants claims "Plaintiff must plead how his

disability effects his life" is again meritless based on the information contained in the in the

complaint and its attachments. Again, the report at exhibit A of the Complaint contains the

following statements:

- Plaintiff has concerns of cognitive decline, difficulty with multi tasking, distractibility, difficulty focusing, difficulty acquiring information from lectures and books, even with the mitigation effects of Vyvanse medication & after trails of other medications including Strattera, Adderall and Concerta
- The Patient...with prior dx of ADHD....complaints of memory loss...is an individual...who shows dysfunction of executive functioning and visual memory...complex attention is impaired...despite being on ADHD mediation at the time of testing. executive dysfunction is seen in aspects of behavior inhibition, unstructured problem solving and phonemic fluency.....visual memory is grossly impaired...
- Overall the results of current testing are abnormal and indicate frontal and non-dominant temporal lobe dysfunction. Executive dysfunction appears compatible with his history of inattention and disorganization.

Plaintiff has attached documentation to the complaint detailing as much as possible about

his disabilities (attached as exhibit A of the complaint) in which all of its contents are part of the

pleading. As stated in F.R.C.P. Rule 10 (c) "A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes." Therefore, "To survive such a motion, the

"complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." In determining whether this standard is met, the Court accepts as true all

factual allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor. In addition, the Court may consider **"any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."** quoting In re iAnthus Capital Holdings Sec. Litig., 20-CV-3135 (LAK) (S.D.N.Y. Aug. 30, 2021);"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)." In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint and documents that form the basis of a claim" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 510 U.S. 1042, 114 S. Ct. 687, 126 L. Ed. 2d 655 (1994);  Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004); Chester County Interm. Unit v. Pa. Blue Shield, 896 F.2d 808 (3d Cir. 1990)( "The exhibits were properly considered by the district court in granting the motion to dismiss. See Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067 (11th Cir.1984), cert. denied, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986); Amfac Mortgage Corp. v. Arizona Mall, 583 F.2d 426 (9th Cir.1978); Fed.R.Civ.P. 10(c) ("a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")"; Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint " See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir.1993); Emrich v. Touche

Ross & Co., 846 F.2d 1190, 1198 (9th Cir.1988);"[A]Rule 12(b)(6) motion is addressed to the

face of the pleading. The pleading is deemed to include any document attached to it as an

exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference. Denton

Construction Co. v. Missouri Portland Cement Co., 507 F.Supp. 53, 54 (E.D.Mo.), vacated on

other grounds, 659 F.2d 873 (8th Cir.1981) (per curiam); see 5 C. Wright & A. Miller, Federal

Practice and Procedure § 1327, at 490-91 n. 18 (1969); id. § 1327, at 125 n. 18 (Supp.1984)

(citing Denton Construction Co. v. Missouri Portland Cement Co. and Decker v. Massey-

Ferguson, Ltd., 681 F.2d 111, 113 (2d Cir.1982))" Goldman v. Belden, 754 F.2d 1059 (2d Cir.

1985); "Rule 10(c) provides: "Statements in a pleading may be adopted by reference in a

different part of the same pleading or in another pleading or in any motion. A copy of any

written instrument which is an exhibit to a pleading is a part thereof for all purposes."

Fed.R.Civ.P. 10(c). Relying on Rule 10(c), we have held that the complaint is deemed to include

any written instrument attached to it as an exhibit or any statements or documents incorporated

in it by reference"; Cortec Industries, Inc. v. Sum Holding LP, 949 F.2d 42 (2d Cir. 1991); "We

recognize, of course, that the "written instrument" provision of Rule 10(c) ("[a] copy of any

written instrument which is an exhibit to a pleading is a part thereof for all purposes") is

applicable to pleadings" Horsley v. Feldt, 304 F.3d 1125 (11th Cir. 2002); "The pleadings

include the complaint, the answer, and any written instruments attached as exhibits. Fed.R.Civ.P.

10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all

purposes."); see, e.g., Warzon, 60 F.3d at 1237 (stating that exhibits attached to the complaint are

incorporated into the pleading for purposes of Rule 12(c) motions); cf. Beam v. IPCO Corp., 838

F.2d 242, 244 (7th Cir.1988) (stating that exhibits attached to the complaint are incorporated into

the pleading for purposes of Rule 12(b) motions)" <u>Northern Indiana Gun & Outdoor Shows v. City of South Bend</u>, 163 F.3d 449 (7th Cir. 1998).

Concluding Plaintiff has shown <u>both</u> that he is not required <u>and</u> that he has plead the required information for a claim under the ADA.

> **VIII. Response to: Mr. Zangara's conclusory allegations with respect to any examination other than the CBSE fail to state a claim with respect to those examinations**
> **&**
> **Mr. Zangara's allegations with respect to the "grading" of the CBSE are conclusory and implausible, and do not comply with Rule 8 pleading standards**

Plaintiff brings another case to the attention of the court which is <u>Rawdin v. Am. Bd. of Pediatrics</u>, 985 F. Supp. 2d 636 (E.D. Pa. 2013)[9] This case is from the District Court of Pennsylvania so it has no precedential value, but **the rational and reasoning behind the judges determination is why it applies** to this case supporting multiple positions of the Plaintiff.

Rawdin is a physician that attempted to obtain an injunction against the American Board of Pediatrics without having to pass the board exam. Aside from being an obviously inappropriate request since this board grants board certification to physicians, and claimed that his request for accommodations were denied when he wanted the whole format of the exam to be changed from multiple choice to essay. Most importantly, the court denied the injunction since he didn't meet the definition of disabled. The key is **why** the judge said that Rawdin didn't meet the definition of disabled and **how** he came to that conclusion.

Plaintiff is not going to discuss the entire background of this case as he has attached a copy so the information is available. The short is Rawdin was treated for a brain tumor and stated the effects of the tumor or the chemotherapy was the reason for him not being able to pass the

---

[9] Plaintiff has included a copy, please read the arguments first

exam so he moved for the injunction. However the court found him not to be disabled after he

received Neurophysiologic testing (just as Plaintiff has done already)

First, "Dr. Rawdin [took] a number of tests, including an intelligence test, the Wechsler

Adult Intelligence Scale–III (WAIS–III); an academic achievement test, the Woodcock Johnson–

III Tests of Achievement (WJ–III ACH); a series of neuropsychological tests;  and personality

and behavior tests. Dr. Rawdin's scores placed him into the superior range or high average range

on most of the tests" Rawdin v. Am. Bd. of Pediatrics, 985 F. Supp. 2d 636 (E.D. Pa. 2013)

The judge then determined that:

"Because the evidence does not show Dr. Rawdin's test-taking abilities are lower than
those of the average person in the general population, the Court cannot find Rawdin is
substantially limited in the major life activity of test-taking. The test results from Dr. Rawdin's
October 2007 psychological evaluation show a relative impairment between his overall IQ and
his results related specifically to his memory. Despite this relative impairment, however, his test
scores are all either in the average or above average range. Both Dr. Rawdin's treating
neuropsychologist, Dr. Slap–Shelton, and his expert witness, Dr. Moss, focus on his relative
weaknesses as compared to his high IQ score overall, but, as discussed above, a relative
impairment is not enough to qualify Dr. Rawdin as disabled because **the Court must compare
his test scores and test-taking ability against the general population** and not against his own
expected capabilities. 29 C.F.R. § 1630.2(j); see also Gonzales v. Nat'l Bd. of Med. Exam'rs, 225
F.3d 620, 629 (6th Cir.2000)(**finding a medical student was not substantially limited in the
major life activity of reading where the clinical tests demonstrated he "read as well as the
average person"**); Rumbin v. Ass'n of Am. Med. Colls., 803 F.Supp.2d 83, 95 (D.Conn.2011)
(**determining the plaintiff was not substantially limited as compared to the general
population because the record lacked any evidence regarding whether his reading skills
were unusual or the extent to which his skills departed from the norm**). The objective
measures of Dr. Rawdin's cognitive function placed him within normal ranges. In her report, Dr.
Slap–Shelton concluded Dr. Rawdin's test results indicated weak verbal and visual memory, but
she conceded his results fell within in the average range and stated these test results were weak
only in comparison to his full scale IQ. See Healy, 870 F.Supp.2d at 620 ("**By definition,
'average' is not 'substantially limited.'** ").quoting  Rawdin v. Am. Bd. of Pediatrics, 985 F.
Supp. 2d 636 (E.D. Pa. 2013)

The District Court held that Rawdin was not disabled under the ADA because his test

results were comparable to the general population. Plaintiff has addressed his Neurophysiologic

testing in the prior arguments and has shown that he meets the definition of disabled under the ADA. On that note, Plaintiff asks a question;

> *"If this court were to rule that Plaintiff is disabled but then he takes an exam and scores in the range of a general population can't the Defendants ask the court to vacate that ruling then appeal and succeed if it's not vacated?????"*

Plaintiff believes the answer would be yes for everyone reading this brief since he would no longer be disabled under the ADA. The significance is this - If Plaintiff could pass the exams from NBME he would no longer be disabled under the ADA since passing all of them is decided by comparison to those of the general population not meeting a minimum standard. This is the entire point of bringing this action against Defendants is that they are asking those that are disabled to do something that they cannot do otherwise they wouldn't be disabled anymore.

As Plaintiff has specifically stated this in his complaint:

- "Grading these exams on a curve or in comparison to others does not in any way test my proficiency to become a physician."

- "NBME will not allow me and others to 'pass' because I do not compare the same as others who took the exam."

- "NBME will not give me and others the chance to have our exams graded to assess how much we actually know."

- "I should not be compared to a reference group of however many people [took] the same exam two years ago. That does nothing to show if I am competent."

- "Those with disabilities will most likely [drop] out."

- "People with true learning disabilities will have lower abilities to do things to begin with and there will always be a gap between what they can do and what others can do."

- "Here, by grading on a curve those who are disabled will always score lower."

Aren't these statements copied directly from Plaintiffs complaint and Defendants Brief? It

seems that they are. Defendants then claim that:

"The bulk of Mr. Zangara's allegations—and the bases for his purported ADA
claim—are vague, speculative, and conclusory opinions about NBME's purported
"grading" methodology for the CBSE and its alleged impact on Mr. Zangara and
individuals with learning disabilities"

So then the Judge in the Pennsylvania District Court (according to Defendants) filled his

opinion with " vague, speculative, and conclusory opinions about [the tests administered and

their] purported "grading" methodology for "a number of tests, including an intelligence test, the

Wechsler Adult Intelligence Scale–III (WAIS–III); an academic achievement test, the Woodcock

Johnson–III Tests of Achievement (WJ–III ACH); a series of neuropsychological tests; and

personality and behavior tests" quoting  Rawdin v. Am. Bd. of Pediatrics, 985 F. Supp. 2d 636

(E.D. Pa. 2013).

If this was the case an appeals court like the Third Circuit would caught this and

corrected it right? This case was appealed and an opinion was rendered with this written in one

of the footnotes:

"The District Court exercised jurisdiction under 28 U.S.C. § 1331 and this Court has
jurisdiction under 28 U.S.C. § 1291. After a bench trial, we review a district court's findings of
fact for clear error and its legal conclusions de novo. CG v. Pa. Dep't of Educ., 734 F.3d 229,
234 (3d Cir. 2013). If certain fact findings are unchallenged, this Court may "accept the findings
as true." Id. A "finding is 'clearly erroneous' when although there is evidence to support it, the
reviewing court on the entire evidence is left with the definite and firm conviction that a mistake
has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985)
(quotation marks omitted)"  Rawdin v. Am. Bd. of Pediatrics 582 F. App'x 114 (3d Cir. 2014)

As the opinion states, the Third Circuit assumed for argument sake that Rawdin was

disabled but then stated "Even if Rawdin's impairment fell within the categories of disabilities

that the regulation covers, ABP has shown that the Exam "best ensures" that its results will

38

accurately reflect Rawdin's aptitude rather than his disability" Rawdin v. Am. Bd. of Pediatrics 582 F. App'x 114 (3d Cir. 2014) . If it was so much of an outlandish theory the Circuit Judges would have addressed it.

Rawdin v. Am. Bd. of Pediatrics, 985 F. Supp. 2d 636 (E.D. Pa. 2013) (See Exhibit K)

Rawdin v. Am. Bd. of Pediatrics 582 F. App'x 114 (3d Cir. 2014) (See Exhibit L)

In addition to Rawdin Defendants have even conceded this point on page 12 of their brief stating: "To be disabled under the ADA, Mr. Zangara must have a physical or mental impairment that substantially limits him in one or more major life activities as compared to most people in the general population. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105(d)(1)(v);" (See page 12 of Defendants Brief).

In addition to even this, the same thing is written in 29 CFR § 1630.2  (j)(ii);

"An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."
Therefore what Plaintiff has stated in the complaint matches what (1) the District Judge

in Rawdin said affirmed by the Third Circuit, (2) It matches with what the other federal courts stated in the cases Plaintiff has cited above, (3) it matches the Defendants statement with citations in their brief  and (4) matches 29 CFR § 1630.2  (j)(ii) . Concluding Plaintiffs "vague, speculative, and conclusory opinions about NBME's purported "grading"" are not "vague, speculative, and conclusory" at all.

### IX. 28 C.F.R. §36.309 Applicability To Exams Themselves

Despite Defendants disbelief that Plaintiff has a claim with the way the examination is scored, the courts have found otherwise. Defendants keep thinking that Plaintiff is attempting to use 42 U.S.C. § 12189 as the sole basis for this claim as stated on page 11 of their brief. They

then say they are not addressing it at this time and deny Plaintiff has any action biased on the scoring but they don't make any arguments to back it up.

One of those things was detailed by the courts as stated in Ramsay that 28 C.F.R. §36.309 was that they applied 28 C.F.R. §36.309 (b)(1)(v). When applying this regulation. The Judge in Rawdin addressed 28 C.F.R. §36.309 (b)(1)(i) but did so briefly applying it to the test itself and not applying the "reasonable" standard it as stringently as the Department of Justice wanted it applied. The court explained in Ramsay the DOJ had the responsibility for creating this regulation and their judgment was to be taken by the courts as proper guidance.

"In applying the foregoing to the case at hand, we note that insofar as the above-quoted regulations are "the equivalent[s] of a 'legislative rule' ... issued by an agency pursuant to statutory authority," they thus have the 'force and effect' of law." PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2055, 204 L. Ed.2d 433 (2019)(quoting Chrysler Corp. v. Brown, 441 U.S. 281, 302-303, 99 S. Ct. 1705, 60 L. Ed.2d 208 (1979) and Batterton v. Francis, 432 U.S. 416, 425, n.9, 97 S. Ct. 2399, 53 L. Ed.2d 448 (1977)). At the very minimum, the regulations are "entitled to substantial deference" and "given controlling weight" unless "it can be shown that they are arbitrary, capricious, or manifestly contrary to the statute." See, n. 8, supra. See also, Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597-598, 119 S. Ct. 2176, 2185-2186, 144  L. Ed.2d 540 (1999)("Because the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, ... its views warrant respect") and Bragdon v. Abbott, 524 U.S. 624, 642, 118 S. Ct. 2196, 141 L. Ed.2d 540 (1998)("It is enough to observe that the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for

40

guidance'"(quoting <u>Skidmore v. Swift & Co</u>., 323 U.S. 134, 139-140, 65 S. Ct. 161, 89 L. Ed.2d

124 (1944)). quoting <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020)

Since the Judge in <u>Rawdin</u> didn't address the "reasonable" standard as the DOJ would

have liked, they brief the Third Circuit on appeal explaining among other things that a "best

ensure" standard was required. They agreed and stated:

"Section 36.309(b)(1)(i)'s "best ensure" standard accomplishes this goal and hence is a
reasonable interpretation of § 12189's accessibility requirement as it requires testing entities to
"provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to
the same degree as nondisabled people taking the exam." Enyart, 630 F.3d at 1162. For this
reason, the "DOJ's regulation is not based upon an impermissible construction of § 12189," and
thus § 36.309 is entitled to deference" <u>Rawdin v. Am. Bd. of Pediatrics</u> 582 F. App'x 114 (3d
Cir. 2014)

The brief from the DOJ provided its application of 28 C.F.R. 36.309 to test results in

which they stated:

"28 C.F.R. 36.309 require testing entities to do more than simply provide reasonable
accommodations. An accommodation offered by a testing entity can be "reasonable," even
though it does not "best ensure" that the exam results reflect an individual's ability rather than
disability. The ordinary meaning of "reasonableness" suggests that an accommodation can be
reasonable even if it is not the best alternative. Furthermore, Section 309 and its implementing
regulation shift the burden away from the plaintiff, requiring him to identify and request
reasonable accommodations, and onto the testing entity to develop and administer the
examination in a way that will best ensure the results accurately reflect that individual's aptitude
or achievement level, rather than disability. If the plaintiff can show that the results of the
examination reflect his disability, rather than his skill or knowledge, the "best ensure" standard
requires the testing entity to determine whether there is a testing alternative that, while still
testing the same factors or knowledge the test is designed to measure, permits the person with a
disability the opportunity to demonstrate the abilities measured by the test, as opposed to a test
that reflects the manifestations of his disability. (See DOJ Brief at Exhibit M)

As Plaintiff has stated in his complaint, he is entitled to have his exam scored on its own

merit to decide if he meets the standards to practice medicine. How he scores compared to others

is not a measurement of what he knows or if he met that standard, but only how he compares.

The "best ensure" standard required by the DOJ entities him to this relief against Defendants.

Plaintiff s complaint does not contain "naked assertions" since Plaintiff has just written over 5 pages citing statues, regulations cases and court opinions based on the few statements in his complaint mentioned as bullet points above. It would not be possible to do that if these things were "naked assertions" since there wouldn't be anything to back them up!

### X. Response to: Mr. Zangara's allegation about "grading on a curve" is refuted by his own exhibits

Defendants have stated that they are not addressing Plaintiffs "dissatisfaction with NBME's alleged scoring methodology..at this time" as stated on page 11 of their brief

> "NBME denies that Mr. Zangara's dissatisfaction with NBME's alleged scoring methodology constitutes a cognizable claim under Section 12189. It is not addressing this issue at this time"

The question is, "why would they do that?" If they felt their "scoring methodology" was correct, based on scientific data that showed: (1) It was not created to compare Plaintiffs score against others (2) It didn't fail a certain number of people (3) It didn't have the potential to discriminate against those who are disabled, they could have disposed of this case already. They could have raised it as an affirmative defense. Why brief 20 pages, conduct hours of legal research and go through all the trouble?

The answer is that as soon as they name the methodology they use to score all of their exams (CBSE, CCSE, shelf exams, USMLE Steps 1,2,&3) in court documents, it becomes an admission . They do not want to document even the name of their scoring methodology because as soon as they do its game over as soon as anyone researches how it is utilized. However, the question before the court is, did the Plaintiff plead this information correctly?

Plaintiff has used both the terms "on a curve" and "my score compared to others" in his complaint. As attached to the complaint the sample score report clearly shows a bell curve on the

42

first page with along with the terms "Percentile Rank" "Mean" & "SD" (For Standard Deviation).

These are, terms used to describe a classic bell curve in statistics.

Plaintiff has specifically stated this in his complaint the following statements:

- "Grading these exams on a curve or in comparison to others does not in

  any way test my proficiency to become a physician."

- "NBME will not allow me and others to 'pass' because I do not compare

  the same as others who took the exam."

- "NBME will not give me and others the chance to have our exams graded

  to assess how much we actually know."

- "I should not be compared to a reference group of however many people [took] the same

  exam two years ago. That does nothing to show if I am competent.

- "NBME grades on a curve so [those] with a low score automatically fail."

- "You cannot grade on a curve without failing people on purpose."

- "Those with disabilities will most likely [drop] out."

- "Even though 70% shows they are competent, you still fail because the OTHERS score

  higher and you have to score with them."

- "People with true learning disabilities will have lower abilities to do things to begin with

  and there will always be a gap between what they can do and what others can do."

- "Here, by grading on a curve those who are disabled will always score lower."

Plaintiff made these statements knowing that there was a very high likelihood that this

how the exam is scored, and as this court is aware, Plaintiff is not required to prove his entire

case in the complaint. He is however required to present a complaint that  "must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 73 Fed. R. Serv. 3d 837 (2009)

Based on his statements in his complaint, if all taken as true do present a reasonable inference that Defendants are liable. Plaintiff is not the only one who believes that the exam is set up by Defendants so that certain numbers or classes of people fail automatically. It turns Defendants utilize the Angoff and Hofstee (and possibly others) methods in scoring as explained in *Three controversies over item disclosure in medical licensure examinations*[10]:

**"the United State Medical Licensure Examination (USMLE), administered by the National Board of Medical Examiners (NBME), has turned to the Angoff and Hofstee methods in determining cut score.** The former approach involves a group of subject matter experts setting minimal qualifying requirements (in terms of test score) for a successful candidate, who will later be certified as a medical doctor. The Board's opinion serves as a foundation for the evaluation of each test item and a reference for determining cut score. The latter method asks judges to determine minimum/maximum acceptable scores, along with minimum/maximum fail rates, which serve as the key parameters in determining the final cut score"[11]

As for one of these methods, the Angoff method, is explained in Standard setting: comparison of two methods. BMC medical education,

" In the Angoff method a panel of judges examines each multiple-choice item or item on a checklist (for OSCEs) and estimates the probability that the "minimally competent" or "borderline" candidate would answer the item correctly. Then the scores are discussed in the group and consensus is reached if possible. This stage is avoided in the modified approach. Each judge's estimate scores on all items are added up and averaged and the test standard is the average of these means for all the judges. Each standard- setting method has its advantages and disadvantages, and there is no gold standard. The norm reference methods are easy to use and understand, can easily be explained to trainees and variations in test difficulty are automatically corrected for as the pass mark is influenced by the performance of the examinee cohort, The

---

[10] Regardless of the date of references Plaintiff cites, he still accuses Defendants of using these scoring methods on all their current examinations (CBSE, CCSE, NBME Shelf Exams, USMLE Steps 1, 2, &3) even with new scoring on some of them as stated in the complaint.

[11] Park, Y. S., & Yang, E. B. (2015). Three controversies over item disclosure in medical licensure examinations. *Medical education online*, *20*(1), 28821.

drawbacks of these methods are that some examinees will always fail irrespective of their performance, students can deliberately influence the pass score and that the pass score is not known in advance"[12]

Regarding the Angoff method, "One issue is that content experts who qualify as judges tend to think of examinees who are average or above average, rather than those who are only minimally competent. If the concept of "minimal competence" is not clear to judges, estimates of performance would be likely to reflect that for average or above average examinees and result in an unrealistically high standard"[13].

As Plaintiff has stated in his complaint and in this brief, he cannot be compared with an average population otherwise he wouldn't be disabled und the ADA.  Also See the complaint: *"Those with disabilities will most likely [drop] out." "Even though 70% shows they are competent, you still fail because the OTHERS score higher and you have to score with them." "People with true learning disabilities will have lower abilities to do things to begin with and there will always be a gap between what they can do and what others can do."*

**"The essence of the classical Hofstee method is that <u>judges decide on the minimum and maximum failure rate</u> and acceptable pass mark"** [14] "The Hofstee method will fail to produce a passing score if the judges' estimates fall entirely above or below the **<u>score curve.</u>** If the judges' estimate of the **<u>highest acceptable failure</u>** rate is lower than the actual percent of the examinee group who would fail at the score representing judges' estimate of the lowest acceptable passing score, the line that is supposed to intersect the score curve will instead lie entirely under it. Likewise, if the judges' estimate of the **<u>lowest acceptable failure rate</u>** is higher

[12] George, S., Haque, M. S., & Oyebode, F. (2006). Standard setting: comparison of two methods. *BMC medical education*, 6(1), 1-6.
[13] Bowers, J. J., & Shindoll, R. R. (1989). *A Comparison of the Angoff, Beuk, and Hofstee Methods for Setting Apassing Score*. Iowa City, IA: American College Testing Program.
[14] Burr, S. A., Whittle, J., Fairclough, L. C., Coombes, L., & Todd, I. (2016). Modifying Hofstee standard setting for assessments that vary in difficulty, and to determine boundaries for different levels of achievement. *BMC Medical Education*, 16(1), 1-11.

than the actual percent of the examinee group who would fail at the score representing the judges' estimate of the highest acceptable passing score, the line that is supposed to intersect the **score curve** will instead lie entirely above it[15]

See Plaintiffs complaint: *"Grading these exams on a **curve** or in comparison to others does not in any way test my proficiency to become a physician." "NBME will not allow me and others to 'pass' because I do not compare the same as others who took the exam." "NBME will not give me and others the chance to have our exams graded to assess how much we actually know." "NBME grades on a curve so [those] with a low score automatically fail." "You cannot grade on a **curve** without failing people on purpose." "Those with disabilities will most likely [drop] out."*

Plaintiff has made all of these allegations against Defendants and as you can see they **are not** some kind of delusion. Plaintiffs allegations are more then supported that the use of these and all of the scoring used by Defendants have no proof that they are not discriminatory against those with disabilities despite their alleged success with a normal population. A disabled population which Plaintiff is a part of documented for over 30 years is not the same as a normal population.

### XI. The Score Report Submitted by Defendants

What Defendants do next is beyond words and outright wrong, aside from a blunt disregard of the rules of evidence offering unsworn statements and documents. Defendants attempt another "bait and switch" this time of the evidence pertaining to this case. They cite the document attached to Plaintiffs complaint at exhibit D the state "here is an updated copy at this link". There is no law, rule, court opinion , precedent, code or regulation that allows someone

---

[15] Bowers, J. J., & Shindoll, R. R. (1989). *A Comparison of the Angoff, Beuk, and Hofstee Methods for Setting Apassing Score*. Iowa City, IA: American College Testing Program.

who has been accused of something to submit "an updated one" created after litigation is in progress, that replaces the original and gets them off the hook. This is precisely what the Defendants are trying to do.

As the court is aware the scoring of the exams is one of the main issues of disputed material facts in this case. Therefore Defendants cannot "fast talk" or "explain" their way out of it until their representatives are sitting a deposition answering Plaintiff's questions; **not in a brief**. The fraud that they are trying to commit is say that the scoring is something totality different then Plaintiff had attached to his complaint and presented to this court. It is a disputed material fact of "*what*" the first page of Defendants scores actually mean.

The Defendants have submitted an "updated" report the court claiming it was used in early 2022. As you can see the changes marked from the top sections of both documents that Plaintiff has included directly in to this brief. The first one being the original one submitted with the complaint and the "updated one" submitted by Defendants is the second (See next page)



See the wording here?

See the date here?

**SUBJECT EXAMINATION PROGRAM**

COMPREHENSIVE BASIC SCIENCE EXAMINATION

EXAMINEE PERFORMANCE REPORT

NBME

ID: 000000000
Name: Student A
00000 - Generic Medical School

Test Date: 03/01/2022

**Total Equated Percent Correct Score: 78**

The chart below represents the performance of a 2020 national cohort of students from LCME-accredited medical schools. Your score is shown along with a range that corresponds to low passing performance (above but near the passing standard) on the United States Medical Licensing Examination® (USMLE®) Step 1.

**Based on your performance on this CBSE, your estimated probability of passing Step 1 if you test within a week is 99%.**

This one is what is attached to Plaintiffs Complaint

Defendants removed the date otherwise the court would see it was changed after they were served with Plaintiffs Complaint

Defendants have added:

"Your total equated percent correct (EPC)"

"on this CBSE exam"

**SUBJECT EXAMINATION PROGRAM**

COMPREHENSIVE BASIC SCIENCE EXAMINATION (CBSE)

EXAMINEE PERFORMANCE REPORT

NBME

ID: 000000000
Name: Student A
00000 - Generic Medical School

**Total Equated Percent Correct Score: 59**
Test Date: Month Day, Year

The chart below represents the performance of a 2020 national cohort of students from LCME-accredited medical schools. Your total equated percent correct (EPC) score on this CBSE exam is shown along with a range that corresponds to low passing performance (above but near the minimum passing score) on the United States Medical Licensing Examination® (USMLE®) Step 1.

**Based on your performance on this CBSE, your estimated probability of passing Step 1 if you test within a week is 75%.**

This one is the one submitted by Defendants that they changed

They changed the numbers to make you think it is legit

The Defendants however, did not think though because they obviously didn't realize that even though they were served in early July; **Plaintiffs documents were already in the courts possession on March 18, 2022 as shown by dates on the documents (the UPS overnight receipt) and the filings in the clerk's office; so this "updated document" wasn't created yet**[16]

## XII. The Standard for Motion to Dismiss

As Plaintiff has detailed in his first argument, this court is well aware of the appropriate standard to decide this motion and others pursuant to Rule 12(b) See eg Johnson v. Trump, Dist. Court, D. New Jersey 2022;  Green v. Murphy, Dist. Court, D. New Jersey 2022; Smith v. Borow, Dist. Court, D. New Jersey 2022. However, he will brief the court since he does not see that the Defendants have mentioned the correct standard in their brief.

The standard for a motion to dismiss pursuant to Rule 12(b) changed after the Supreme Courts cases Bell Atlantic Corp v. Twombly, 550 U.S. 433 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). This standard was explained in detail by the Third Circuit in McTernan v. City of York Penn, 577 F.3d 521 (3d Cir. 2009), therefore McTernan is the applicable standard to this case. The judge in a case from the Middle District of Pennsylvania explains the application well and that case is Velez v. Cont'l Serv. Grp., Inc., Case No. 3:17-cv-02372 (M.D. Pa. Apr. 4, 2018). As explained by Judge Conaboy:

"We consider here Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure (Doc. 8). The motion has been fully briefed by the parties (Docs. 9, 11, and 12) and is now ripe for disposition.

---

[16] To the best of Plaintiffs knowledge, only the matters in the pleadings and exhibits are to be considered on a motion to dismiss pursuant to Rule 12(b) or the motion get converted to Summary Judgment. See *Carter v. Stanton*, 405 U.S. 669, 92 S. Ct. 1232 (1972) (Holding that a district court that considers matters outside the pleadings is required to convert a Rule 12(b) motion into one for summary judgment) Plaintiff has not been notified as required that this is a Summary Judgment motion; nor has he briefed or submitted the necessary information to the court along with any evidence or statements he may have. Therefore, so he will assume the court will disregard the unsworn statements Defendants have made on pages 17-19;

I. Operative Legal Standard.

In McTernan v. City of York, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in Bell Atlantic Corp v. Twombly, 550 U.S. 433 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Moreover, it continued, "[d]etermining whether a complaint states a possible claim for relief will ... be a context-specific task that requires the reviewing Court to draw on its traditional experience and common sense." Id. (citation omitted).

McTernan, 577 F.3d at 530. The Third Circuit discussed the effect of Twombly and Iqbal in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before McTernan, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

[D]istrict Courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949.] Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the Plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege a Plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Philips v. Co. of Alleghany, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the Court to infer more that the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be a "context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." Id. at 1950.
Fowler, supra, at 210-11.

Velez v. Cont'l Serv. Grp., Inc., Case No. 3:17-cv-02372 (M.D. Pa. Apr. 4, 2018).(See Exhibit P)

"[A] complaint survives a motion to dismiss if it contains sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)"Taking as true the allegations of the complaint, as they

must be on a motion to dismiss, the complaint stated a cause of action, and it [would be an] error

to dismiss it" Cooper v. Pate, 378 U.S. 546 (1964). "The allegations of a Complaint prepared by

a pro se are generally taken as true for purposes of motion to dismiss." Hughes v Rowe 449 U.S.

5 (1980),66 L Ed 2d 163, 101 S Ct 173 "Where a plaintiff pleads pro se in a suit for protection of

civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to

technicalities." Picking v. Pennsylvania R. Co., 151 F.2d 240 (3d Cir. 1945)

### XIII. Response to Defendants Claims of Improper Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331; United States v.

Sayward, 160 U.S. 493, 16 S.Ct. 371, 40 L. Ed. 508 (1895); Fishback v. Western Union Tel. Co.,

161 U.S. 96, 16 S.Ct. 506, 40 L. Ed. 630 (1896); Halt v. Indiana Manufacturing Co., 176 U.S.

68, 20 S.Ct. 272, 44 L. Ed. 374 (1900).[The District and] "Circuit courts ha[ve] jurisdiction of all

cases arising under the Constitution and laws of the United States; and …review [actions]

alleged to be repugnant to the Constitution or laws of the United States." Carter v. Greenhow,

114 U.S. 317, 29 L. ed. 202, 5 Sup. Ct. Rep. 928, 962 (1885); Pleasants v. Greenhow, 114 U.S.

323, 29 L. ed. 204, 5 Sup. Ct. Rep. 931, 962 (1885). "See Hagans v. Lavine, 415 U. S. 528, 536-

537 (1974) (complaint that fails to state a claim may not be dismissed for want of subject-matter

jurisdiction unless it is frivolous)". Ramsay v. Nat'l Bd. of Med. Examiners, CIVIL ACTION

NO. 19-CV-2002 (E.D. Pa. Dec. 30, 2019) See Disabled in Action of Pennsylvania v.

Southeastern Pennsylvania Transportation Authority, 539 F.3d 199 (3d Cir. 2008); Growth

Horizons, Inc. v. Delaware Cty., 983 F.2d 1277, 1281 (3d Cir. 1993) (explaining that a district

court has federal question jurisdiction in a case where a plaintiff makes a non-frivolous

allegation that she is entitled to relief under the U.S. Constitution or a federal statute) "The

District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because Fowler's causes of

action arise under federal law. Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)

This action is based on Plaintiff having covered disabilities under the ADA and Defendant NBME conducting examinations in direct violation of the ADA. "Federal courts have consistently recognized that ADHD and learning disabilities are impairments under the ADA. See, e.g., Rothberg v. LSAC, 300 F.Supp.2d 1093 (D.Colo. 2004); Bartlett v. N.Y. State Bd. of Law Exam'rs, 2001 WL 930792 (S.D.N.Y. Aug. 15, 2001); Price v. Nat'l Bd. of Med. Exam'rs, 966 F.Supp. 419 (S.D.W.Va. June 6, 1997).Learning disabilities and ADHD are clearly impairments within the meaning of the ADA. The DOJ regulations specifically provide that learning disabilities are mental impairments under the Act. 28 C.F.R. § 35.104(1)(i)(B) ("The phrase physical or mental impairment means . . . [a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."). Love v. Law School Admission Council, Inc., 513 F. Supp. 2d 206 (E.D. Pa. 2007)

As stated in a prior case, Defendants are required to comply with the ADA  "Neither NBME nor MRAC argue that they fall outside the scope of the ADA and the law is clear that both entities must comply. See Love v. Law Sch. Admissions Council, Inc., 513 F. Supp. 2d 206, 223 (E.D. Pa. 2007) (finding that private, non-profit entity responsible for administering test required for admission to law school had to comply with ADA); see also Scheibe v. Nat'l Bd. of Med. Examiners, Civ. A. No. 05-180, 2005 WL 1114497, at *3 (W.D. Wis. May 10, 2005) (citing cases concluding that NBME is subject to ADA); Biank v. Nat'l Bd. of Med. Examiners, 130 F. Supp. 2d 986, 988 (N.D. Ill. 2000) (holding that NBME, "as a private entity offering examinations related to licensing, is subject to ADA under Section 12189") quoting Boggi v. Med. Rev. & Accrediting Council, 415 F. App'x 411, 414 (3d Cir. 2011)

As this case under the ADA is a Federal Issue, it has been plead properly in Plaintiffs

Complaint. As stated on page 3 of Plaintiffs complaint (on the pro se form created by the court);

Plaintiff was asked:

*II. Basis for Jurisdiction*

*Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.*

*What is the basis for federal court jurisdiction? (check all that apply)*

*Fill out the paragraphs in this section that apply to this case.*

*A. If the Basis for Jurisdiction Is a Federal Question*

*List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case*

As it can be seen in the complaint Plaintiff checked "Federal Question" and wrote " The

Americans with Disabilities Act (ADA). Therefore this court has jurisdiction and the Defendants

were notified by the complaint properly.

### XIV. Supplemental Argument to Section VIII

**VIII. Response to: Mr. Zangara's conclusory allegations with respect to any examination other than the CBSE fail to state a claim with respect to those examinations**
**&**
**Mr. Zangara's allegations with respect to the "grading" of the CBSE are conclusory and implausible, and do not comply with Rule 8 pleading standards**

Plaintiff believes he has made a solid argument in section VIII of this brief as he stated

based on Rawdin and other cases that in order to be disabled, he cannot be compared to a normal

population. This is stated in his complaint and the reason he has filed this action to prevent

Defendants from grading his exam by comparing them to the general population and not grading

them on their own merit. Defendants have conceded this in their brief in which they state:

"To be disabled under the ADA, Mr. Zangara must have a physical or mental impairment that
substantially limits him in one or more major life activities as compared to most people in the
general population. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105(d)(1)(v);" (See page 12 of
Defendants Brief).

This was discussed in detail in <u>Rawdin</u> by the District Judge in which his opinion was

affirmed on appeal to the Third Circuit.

<u>Rawdin v. Am. Bd. of Pediatrics</u>, 985 F. Supp. 2d 636 (E.D. Pa. 2013) (<u>See</u> Exhibit K)

<u>Rawdin v. Am. Bd. of Pediatrics</u> 582 F. App'x 114 (3d Cir. 2014) (<u>See</u> Exhibit L)

Plaintiff has decided to supplement these arguments in a new section instead of adding

them to the original section of this brief. The court rules prohibit him from saying why he choose

to do this as it would be unfair to Defendants to testify in his brief. As Defendants have stated on

page 12 of their brief:

*"Mr. Zangara must have a physical or mental impairment that substantially limits him in one or*
*more major life activities as compared to most people in the general population."*

Plaintiff has attached a Neuropsychological evaluation as exhibit a to his complaint.

Under the section "*Current Complaints*" the report states;

*"He has difficult acquiring information from books or lectures without multiple repetition"* .

Plaintiff has stated the grounds for his complaint is the ADA and 28 C.F.R. §36.309 in

which he cited a case <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020) in

which the court stated:

"Furthermore, 28 C.F.R. §36.309, the regulation which specifically governs the giving of

"Examinations and Courses" states the following in relevant part:..........

(b) Examinations. (1) Any private entity offering an examination covered by this section must assure that --

(i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills (except where those skills are the factors that the examination purports to measure);.................

In addition to addressing the applicability of  28 C.F.R. §36.309, the court addressed

another larger issue which became the holding of the case. The District Court granted an

Injunction against the Defendants requiring them to grant accommodations to Ramsay. The

Defendants applied to the Third Circuit and they affirmed the decision of the District court.

**The Defendants in this matter before this court are The National Board of Medical**

**Examiners were also the same Defendants in Ramsay,** referenced in the Third Circuit opinion

as "the board "or NBME. Since Plaintiff has already written  50+ pages of this brief  before

making this argument, he will highlight the important points of this case.

1.  Ramsay made the request for accommodations for Defendants NBME or "The board" as

    referenced by the court

2.  Defendants denied that request so she asked for reconsideration

3.  **"The Board provided Ramsay's file to outside expert Dr. Benjamin Lovett, who**
    **concluded that Ramsay did not show poor academic skills or impairments compared to**
    **the general population** and thus lacked a condition that would warrant accommodations.
    Based on Dr. Lovett's recommendation and further review, the Board denied Ramsay's
    request for reconsideration." quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251
    (3d Cir. 2020)

4.  **"The Board denied her request for extra testing time, again concluding that she had not**
    **shown she was substantially limited in any functions as compared to most people**

Ramsay sought reconsideration of the Board's denial. As additional support, she provided an evaluation by Dr. Robert D. Smith, a psychologist and neuropsychologist. Dr. Smith met with Ramsay, reviewed her records, and performed similar assessments. He reported that the assessments revealed that she had abnormally low abilities in processing information, writing, and reading, indicating dyslexia and ADHD. Among other things, his testing revealed that Ramsay, as compared to others in her age group, was in the fourth percentile in reading comprehension and fluency, second percentile in word reading speed, and first percentile in oral reading fluency." quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

5.  Ramsay the filed suit in District Court of an Injunction against NBME

6.  The **same Defendants NBME** in this **matter represented by the same law firm, Perkins Coie** argued: ***"that the District Court did not determine that Ramsay is substantially limited in comparison to most people in the general population*** " quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

7.  The Third Circuit Judges then stated **"the Court's finding that Ramsay's ADHD and dyslexia constituted a disability was based on evidence that these conditions substantially limit her reading and writing in comparison to most people."** quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

8.  The Third Circuit Judges finally state: **Accordingly, the District Court's reliance on evidence that Ramsay's reading, processing, and writing skills were abnormally low by multiple measures provided a sufficient comparison of her abilities to those of the general population to support the finding of disability**

(See Exhibit F) Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020) **(Holding that Plaintiffs test results were abnormally low by multiple measures, which provided a sufficient comparison of her abilities to those of the general population to support the finding of disability, regardless of her academic achievements)**

As Plaintiff has shown he cannot be compared to others on the exams offered by

Defendants because doing so makes him not disabled under the ADA. This position has been

stated **(1)** In multiple court opinions as detailed in Rawdin **(2)** It is written in 42 U.S.C. §

12102(1)(A) **and** 28 C.F.R. § 36.105(d)(1)(v); **(3)**The Defendants have used it in Ramsay to

deny her for her accommodations **and** raised it as a defense on appeal to the Third Circuit;

**(4)** The Third Circuit in Rawdin affirmed the decision of the District Judge **and** detailed it in

<u>Ramsay</u> that it was the correct standard to apply, finding Ramsay was disabled under the standard (5) The Defendants ave taken that position i n this litigation even citing in in two places *"To be disabled under the ADA, Mr. Zangara must have a physical or mental impairment that substantially limits him in one or more major life activities as compared to most people in the general population. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105(d)(1)(v);"* *(See page 12 of Defendants Brief)*. Therefore Plaintiff has proven that Defendants must grade his exams on their own merit deciding if he meets the minimum requirements to practice medicine, not in comparison to others.

The Defendants statement in their brief on page 14 claims that Plaintiffs claims are " vague, speculative, and conclusory"

*"The bulk of Mr. Zangara's allegations—and the bases for his purported ADA claim—are vague, speculative, and conclusory opinions about NBME's purported "grading" methodology for the CBSE and its alleged impact on Mr. Zangara and individuals with learning disabilities"*

Since Plaintiff has presented an abundance of arguments to support his statements, Defendants will next claim that he is still wrong. Therefore Plaintiff will show that his claims not only apply to the exams offered by Defendants for medicine, but also law, specifically the Bar exam. In a landmark case decided in favor of the Plaintiff , Marilyn Bartlett was attempting to take her bar exam. She was denied accommodations by the New York State Law Examiners. She filed suit and an injunction was granted in her favor by a Judge for the Southern District of New York. That judge, applied the same standard that Plaintiff in this matter has be stating and Defendants have admitted. As Judge Sotomayer stated in her opinion:

"With respect to most major life activities, the plaintiff is compared to **"the average person in the general population**." 29 C.F.R. § 1630.2(j)(1). Therefore, to determine whether plaintiff is substantially impaired in her reading, learning, or even test-taking, **I must decide whether, when compared to the average person in the general population**, plaintiff is substantially limited in these major life activities.

**However, when I consider whether plaintiff is substantially limited in the major life activity of working, an entirely different reference group must be utilized. No longer is plaintiff compared to the "average person in the general population." Instead, the relevant comparison group is "the average person having comparable training, skills and abilities**." 29 C.F.R. § 1630.2(j)(3)(i). This becomes a crucial distinction in a case such as this one, where plaintiff's history of self-accommodation has allowed her to achieve great accomplishments, one of which includes roughly average reading skills (on some measures) when compared to the general population.

When plaintiff is compared to persons of "comparable training, skills, and abilities," however, a completely different evaluation of plaintiff's abilities emerges. All of her tremendous accomplishments through self-accommodation to the side, **when compared to this population, plaintiff does not read like the average college student — much less the average law school student. When compared to this population, her reading skills (which when compared to the general population are barely average) are well below normal."** quoting Bartlett v. New York State Bd. of Law Examiners, 2 F. Supp. 2d 388 (S.D.N.Y. 1997)[17].

After finding that the Plaintiff was disabled under the ADA, the decision was appealed to

the Second Circuit by the Defendants and the court affirmed and remanded in part stating that:

"We agree, albeit for different reasons, with the district court's ultimate conclusion that Dr. Bartlett, who has fought an uphill battle with a reading disorder throughout her education, is among those for whom Congress provided protection under the ADA and the Rehabilitation Act." Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321 (2d Cir. 1998).

The Supreme Court granted certiorari and vacated and remanded See Bartlett v. New

York State Board of Law Examiners, 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790

(Supreme Court 1999) (No Opinion). The Second Circuit explained the reason why in the next

opinion:

We agreed that Bartlett was disabled, but on different grounds. In particular, in determining whether Bartlett was substantially limited with respect to reading, **we held that the district court should not have taken into account Bartlett's ability to "self-accommodate,"** stating that Bartlett's "history of self-accommodations, while allowing her to achieve roughly average reading skills (on some measures) when compared to the general population, do not take her outside of the protective provisions of the ADA." Id. at 329 (internal quotation marks omitted).

---

[17] Plaintiff has not included copies of the five Bartlett opinions with his brief due to the volume of paper that would be added to the amount he already has included with the other cases.

Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69 (2d Cir. 2000).

The Supreme Court granted certiorari and vacated and remanded in light of Sutton v. United Air Lines, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), Murphy v. United Parcel Serv., 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). See New York State Bd. of Law Examiners v. Bartlett, 527 U.S. 1031-32, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999) (mem.). We now hold that, although the district court properly considered corrective or mitigating measures such as Bartlett's self-accommodations, see, e. g., Albertson's, 527 U.S. at 565-66, 119 S.Ct. 2162, it nevertheless applied the wrong legal standard when it found that Bartlett was not substantially limited with respect to reading because she has "roughly average reading skills (on some measures) when compared to the general population." Bartlett I, 970 F.Supp. at 1120. It is not enough that Bartlett has average skills on "some" measures if her skills are below average on other measures to an extent that her ability to read is substantially limited"
Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69 (2d Cir. 2000).

The Second Circuit then held that: "we affirm the district court insofar as it (1) declined

to defer to the Board's determination that Bartlett does not suffer from a disability" Bartlett v.

New York State Bd. of Law Examiners, 226 F.3d 69 (2d Cir. 2000).

The matter was remanded back to the District Judge, who was no longer a District Judge,

but Supreme Court Justice Sotomayer, designated to complete her original case:

"After my opinion and order and the Second Circuit's first opinion issued in this case, the Supreme Court decided a series of cases in which it held that the corrective devices or mitigating measures employed by an individual are relevant to the determination of whether that individual is "substantially limited" in a major life activity. In Sutton, the lead case on this issue, the Supreme Court stated that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures — both positive and negative — must be taken into account when judging whether that person is 'substantially limited' in a major life activity." Sutton, 527 U.S. at 482; accord Murphy, 527 U.S. at 520; Albertson's, 527 U.S. at 565-66. The Supreme Court rejected the suggestion, however, that an individual's use of a — mitigating measure or corrective device is determinative of whether that individual is disabled............

...........I did not distinguish, as I now believe I should, between the mitigating measures plaintiff uses that affect her ability to read and those that merely assist her in functioning in her daily life. I also did not examine the negative effects of the mitigating measures plaintiff employs, as Sutton, Murphy, and Albertson's now make clear that I must. In sum, my analysis of the effect of plaintiff's use of "self-accommodations" must be more specific and precise than that of my first opinion and order. When applying this refined analysis, considering both the positive and

negative effects of the mitigating measures that affect plaintiff's ability to read, I conclude that plaintiff is substantially limited in the major life activity of reading when compared to most people...........

..............When I view the evidence as a whole, including both the positive and negative side effects of the mitigating measures plaintiff uses, **I find that plaintiff is substantially limited in the major life activity of reading when compared to most people**. All of plaintiff's experts agree that most people do not read with the level of difficulty experienced by plaintiff. (Gregg Aff. ¶ 25; Hagin Aff. ¶ 52; Moats Aff. ¶ 30; Mather Aff. ¶ 27.) The testimony of plaintiff and her experts have convinced me that "most people" can do the following things that are extremely difficult or impossible for plaintiff: read and write quickly and automatically, recognize words and letters automatically, develop a sight vocabulary, and form letters without consciously thinking what they look like" quoting Bartlett v. New York State Board of Law Examiners, 93 Civ. 4986 (SS) (S.D.N.Y. Aug. 15, 2001)

As it can be seen, to establish a diagnosis of a disability and be covered under the ADA, the person is compared to what they can't do compared to the normal population or most people used interchangeably. Even though Defendants are claiming that they are not liable and THEY decide who meets the definition of disabled, it is not what the law states. Just as they have stated that "Mr. Zangara fails to allege he is disabled within the meaning of the ADA" the courts have found a different conclusion on their repeated, baseless arguments. Thankfully, the Third Circuit has seen right through them:

"The  Regulations clearly state that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." And, "[t]he question of whether an individual meets the definition of disability under this part should not demand extensive analysis." Id.(emphasis added). **In re-analyzing the results of the numerous diagnostic tests that were administered,[and attached to the complaint, NBME] did just that. They thus focused on whether Plaintiff met the definition of disability, rather than whether the covered entity had complied with their obligations under the Act(s). Indeed, although NBME may not have liked the terminology used in the implementing regulations, despite its registered objections, the foregoing language is what was enacted and it is this language which must be followed"** quoting Ramsay v. Nat. Bd. of Medical Examiners 968 F.3d 251 (3d Cir. 2020)

"[The] NBME either discounted or disregarded entirely the admonition to focus on 'how a major life activity is substantially limited, and not on what outcomes an individual can achieve' and apparently ignored the example that 'someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.' 29 C.F.R. § 1630.2(j)(4)(iii). NBME's exclusive focus on Plaintiff's prior academic successes and her performance on the ACT and MCAT standardized examinations without accommodations was therefore improper ...." quoting <u>Ramsay v. Nat. Bd. of Medical Examiners</u> 968 F.3d 251 (3d Cir. 2020)

<u>Ironically</u>, the Defendants in this matter NBME (the National Board of Medical

Examiners) attempted to influance the Second Circuit in  <u>Bartlett v. New York State Bd. of Law</u>

<u>Examiners</u>, 226 F.3d 69 (2d Cir. 2000), when they appeared amici curiae claiming Bartlett was

not disabled under the ADA. This position was rejected and included in the opinion:

"In addition, the National Board of Medical Examiners and the Federation of State Medical Boards of the United States of America, Inc., as *amici curiae* on the initial appeal in this case, argued that the district court erred in failing to require a causal "nexus" between Bartlett's impairment and her purported substantial limitation with respect to working. We do not agree with the Board's arguments, but we find merit in the position of the *amici curiae."* See <u>Bartlett v. New York State Bd. of Law Examiners</u>, 226 F.3d 69 (2d Cir. 2000).

Therefore and concluding Plaintiffs claims are not *"vague, speculative, and conclusory*

*opinions about NBME's purported "grading" methodology for the CBSE and its alleged impact*

*on Mr. Zangara and individuals with learning disabilities"*

**Conclusion**

All of Defendants requests to have this claim dismissed should be denied for the reasons

contained in this brief as Plaintiff has shown he is entitled to relief.


Dated: 9/5/2022


Jason A. Zangara, MPH, MA
573 Sidorske Avenue
Manville, New Jersey 08835
(908) 672-0626
firefighterjazzyj@yahoo.com

Plaintiff, Pro Se

62