**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 13-4544

DAVID RAWDIN, M.D.,
Appellant

v.

THE AMERICAN BOARD OF PEDIATRICS

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06781)
District Judge:  Hon. Juan R. Sanchez

Argued: July 8, 2014

Before:  SMITH, VANASKIE, and SHWARTZ, Circuit Judges

(Opinion Filed: September 3, 2014 )

OPINION

Robert F. Morris [ARGUED]
Joshua J. Knepp
Morris & Clemm
527 Plymouth Road
Suite 416
Plymouth Meeting, PA 19462
    Counsel for Appellant David Rawdin

Sangjoon Han [ARGUED]
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004

Anthony J. Sun
Covington & Burling
620 Eighth Avenue
New York, NY 10018
      Counsel for Amicus The American Association of People with Disabilities; The
      Association on Higher Education And Disability; The Bazelon Center For Mental
      Health Law; The Council of Parent Attorneys and Advocates; Disability Rights
      Advocates; Everyone Reading Inc.; Eye To Eye Inc.; The International Dyslexia
      Association; The National Council On Independent Living; The National
      Disability Rights Network; and The Center For Law and Education

Jennifer L. Eichhorn [ARGUED]
Mark L. Gross
Teresa Kwong
United States Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Ben Franklin Station
Washington, DC 20044
      Counsel for Amicus United States

Christopher B. Sullivan [ARGUED]
Price Parkinson & Kerr
5742 West Harold Gatty Drive
Salt Lake City, UT 84116

Jeffrey P. Bates, Esq.
Abrahams, Loewenstein & Bushman
Three Parkway, Suite 1300
16th & Cherry Streets
Philadelphia, PA 19103

Douglas P. Farr, Esq.
Snell & Wilmer
15 West South Temple
Suite 1200
Salt Lake City, UT 84101

Samantha L. Kane, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street
Suite 2300
Philadelphia, PA 19103
   Counsel for Appellee American Board of Pediatrics


SHWARTZ, Circuit Judge.

   David Rawdin sued the American Board of Pediatrics (ABP), seeking equitable

relief based on ABP's alleged failure to accommodate his disability in violation of Title

III of the Americans with Disabilities Act (ADA).  He asserts that he is disabled due to a

memory impairment and is entitled to an alteration to the multiple choice exam used as

part of the ABP's certification process.  Because Rawdin has not shown he is entitled to

the relief he seeks, we will affirm the judgment in favor of ABP.

I

   While attending college, Rawdin was diagnosed with Posterior Fossa

Ependymoma, a type of brain tumor.  After brain surgery, chemotherapy, and radiation

therapy, Rawdin completed college and graduated from medical school.  He, however,

twice failed Step III of the United States Medical Licensing Exam (USMLE), which used

a multiple choice format.

   After failing the second time, Rawdin felt something was amiss and saw a

neuropsychologist, who concluded that Rawdin had a cognitive impairment, likely due to

the treatment he received for his brain tumor, that impacted his memory retrieval system,

and that this impairment likely gave him trouble on the multiple choice exam.

3

Not long after the neurological evaluation, Rawdin's tumor recurred and he had to undergo further surgical treatment. After surgery, Rawdin experienced multiple complications, requiring him to leave the medical profession for four years. Upon his return, and based on the neuropsychologist's diagnosis, Rawdin requested accommodations when taking Step III for the third time. His request was granted and he was provided the following accommodations: (1) double time to take the exam, (2) an individual testing room, and (3) "off the clock" breaks. With these accommodations, Rawdin passed Step III on his third attempt and received his Pennsylvania medical license in 2000. He thereafter completed a pediatric residency and began practicing at the Children's Hospital of Philadelphia (CHOP). Rawdin flourished at CHOP, successfully treating over 10,000 babies.

CHOP required its physicians to obtain "board certification" within five years of joining the hospital. JA 7. ABP is the only organization that certifies pediatricians. To receive certification from ABP, a physician must, among other things: (1) complete three years of pediatric training; (2) pass a peer and patient review; and (3) pass a multiple choice exam known as the General Pediatrics Certifying Examination (the Exam).

The Exam consists of four sections and 335 multiple choice questions.[1] Each question is "cue- or story-based and contextual, providing the test-taker with a scenario

---

[1] ABP develops the Exam through a series of phases that involves identifying the thirty-five subjects to be tested, allotting the percent of the Exam devoted to each subject, and having subject-matter experts write questions. The questions are then edited and reviewed at two consecutive annual meetings. An expert for ABP testified that the development cost for the 2011–2012 exam was $3,500 per question and that, on average, it takes two years from the time a question is first submitted until it appears on the exam.

and asking for the most likely diagnosis, treatment, or next step."[2] JA 8, 372-73, 753.
The examinee must select the correct answer from five choices. The multiple choice
format facilitates the testing of a breadth of knowledge in only seven hours, does not rely
on the subjective judgments of graders, and is more reliable[3] than other exam forms.

Rawdin sat for the Exam five times and failed each time. After he failed the
second time, his neuropsychologist reevaluated him using intelligence, academic
achievement, neuropsychological, personality, and behavior tests. His scores showed that
his memory was weak as compared to his overall intelligence, but was within the normal
range. The neuropsychologist found that Rawdin's memory was not "efficient" and that
he struggled when asked to retrieve information out of context. JA 10, 215.[4]

A second neuropsychologist, Dr. Edward Moss, who has assisted other doctors
struggling with their training, reviewed the neurological test results. He similarly
described Rawdin's specific impairment as difficulty pulling "together on command

---

[2] Here is an example:

> A 16-month-old boy has recurrent diarrhea. He passes three to six liquid stools per day. Results of stool testing for routine bacterial pathogens, *Clostridium difficile* toxin, *Giardia*, and rotavirus have been negative. Family history includes autoimmune thyroiditis in the mother and type 1 diabetes in a cousin.
> Physical findings include height at the 50th percentile (consistent with previous measurements) and weight at the 5th percentile (formerly at the 25 percentile). The abdomen is distended and tympanitic, with hyperactive bowel sounds.
> Results of which of the following will most likely be helpful in establishing the diagnosis?
>
> A. Anti-tissue transglutaminase antibody titer
> B. Sweat chloride test
> C. Sucrose breath hydrogen test
> D. Fecal elastase activity
> E. Fecal α1-antitrypsin concentration

JA 943.

[3] An exam is psychometrically "reliable" if its results are "consistent across test-takers." JA 17.

[4] The neuropsychologist diagnosed Rawdin with "Cognitive Disorder Not Otherwise Specified," which is a residual diagnosis for a cognitive disorder that does not meet the criteria for a specific disorder. JA 10.

discre[te] bits of unrelated information," which he opined was the kind of task an

examinee faces on a multiple choice exam.  JA 494, 581.  Moss acknowledged, however,

that he was not familiar with the Exam and was not trained as a psychometrician.  Moss

nonetheless opined that if Rawdin were tested in another format, he might "perform at a

higher level."  JA 497.  Moss agreed that while Rawdin's memory was weak as compared

to his overall intelligence, it fell within the average range.[5]

By the time Rawdin reached the five-year deadline to receive his certification, he

still had not passed the Exam and faced termination at CHOP.  Due to Rawdin's excellent

performance and a letter from Moss explaining Rawdin's impairment, however, CHOP

gave Rawdin an extra year to obtain his certification.  Rawdin again took the Exam but

failed, and was terminated in January 2010.

In 2010, Rawdin wrote to ABP, explaining his impairment and requesting an

alternative means of certification.  In response, ABP informed Rawdin that it could not

waive the Exam, offer an alternative format, or certify a doctor who had not passed the

Exam, as this would "fundamentally alter the nature of the certification process," JA 12,

148, but suggested that he request accommodations under the ADA.

In April 2011, Rawdin applied to take the Exam again.  For the first time, his

neuropsychologist informed ABP of Rawdin's diagnosis and requested the following

accommodations: (1) extended time; (2) a quiet setting; (3) advance knowledge of the

subjects covered on each part of the Exam; (4) access to reference materials (i.e., making

---

[5] A third expert who reviewed Rawdin's records also concluded that Rawdin's memory scores were weak relative to his other scores, but his memory scores were within the normal range.

the Exam "open-book"); (5) short breaks; and (6) an essay format. ABP granted

Rawdin's request for additional time, a quiet setting, and short breaks, but denied his

request for "advance knowledge" of the topics and "open-book" accommodations

because "these accommodations would not allow ABP to adequately, reliably, and

validly test Dr. Rawdin's knowledge." JA 13, 422-25. ABP also determined that an

essay exam would take an unreasonably long time to construct (over two years), would

be prohibitively expensive, and would not meet its reliability and validity standards.

Rawdin failed the 2011 Exam.

In December 2012, Rawdin filed suit against ABP, and subsequently filed a

motion for a preliminary injunction directing ABP to grant him immediate board

certification without having to pass the Exam, or, in the alternative, to provide him with

an open-book format, essay format, or evaluation in a clinical setting. With the parties

consent, the District Court consolidated the preliminary injunction hearing with a bench

trial on the merits, and found that Rawdin was not entitled to relief because: (1) Rawdin

was not disabled; and (2) Rawdin was not entitled to the requested accommodations

because they (a) were unreasonable and (b) would fundamentally alter the Exam or

impose an undue burden on ABP. Rawdin appeals.

$$II^6$$

---

[6] The District Court exercised jurisdiction under 28 U.S.C. § 1331 and this Court has jurisdiction under 28 U.S.C. § 1291. After a bench trial, we review a district court's findings of fact for clear error and its legal conclusions de novo. CG v. Pa. Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013). If certain fact findings are unchallenged, this Court may "accept the findings as true." Id. A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quotation marks omitted).

Congress enacted the ADA to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). Title III of the ADA specifically prohibits public accommodations, including testing entities, from engaging in disability discrimination. 42 U.S.C. §§ 12181-12189. Title III contains a section governing testing entities, which provides:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. The purpose of this section is "to assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." H.R. Rep. No. 101–485(III), at 68–69 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 491–92. Section 12189 applies to ABP because it is an entity that "offers examinations or courses related to . . . certification, or credentialing for . . . professional . . . purposes."

The Attorney General is charged with issuing regulations for all non-transportation provisions of Title III, including issuing accessibility standards that testing entities must follow.[7] Under this authority, the Attorney General issued a regulation implementing § 12189, which defines the obligation of testing entities:

---

[7] "Congress did not incorporate [the] 'reasonable accommodation' standard" that applies to cases arising under the employment provisions under Title I "into § 12189." Enyart v. Nat'l Conference of Bar Exam'rs, Inc., 630 F.3d 1153, 1162 (9th Cir. 2011); Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 155 (3d Cir. 1999); Bonnette v. D.C. Court of Appeals, 796 F. Supp. 2d 164, 182 (D.D.C. 2011); 42 U.S.C.§12112(b)(5)(A).

> Any private entity offering an examination covered by this section must assure that . . . [t]he examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills . . . .

28 C.F.R. § 36.309(b)(1)(i) (emphasis added).

We will assume without deciding that Rawdin is disabled under the ADA.[8] We therefore next address whether his disability entitles him to protection under § 36.309(b)(1)(i).[9]

Even if Rawdin's impairment fell within the categories of disabilities that the regulation covers, ABP has shown that the Exam "best ensures" that its results will accurately reflect Rawdin's aptitude rather than his disability. 28 C.F.R. § 36.309(b)(1)(i). According to his experts, Rawdin's disability impairs his ability to recall information out of context. It follows, then, that ABP is required to "best ensure" that the Exam reflects Rawdin's aptitude and not his difficulty recalling information out

---

[8] The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).

[9] Congress directed the DOJ to promulgate regulations implementing Title III, 42 U.S.C. § 12186(b), and, as a result, such regulations are "entitled to substantial deference," Helen L. v. DiDario, 46 F.3d 325, 331-32 (3d Cir. 1995), and "given controlling weight unless [they are] arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc., v. Natural Res. Defense Council, Inc., 467 U.S. 837, 844 (1984)). Thus, we must consider "whether the [agency's] rule is a 'reasonable interpretation'" of the statute. Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 714 (2011) (quoting Chevron, 467 U.S. at 844).

Section 12189 requires entities like ABP to offer exams in a manner "accessible" to disabled people or to offer "alternative accessible arrangements." 42 U.S.C. § 12189. As this Court observed in Doe, "the notion of accessibility . . . mandates changes to examinations . . . so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them." Doe, 199 F.3d at 156. Section 36.309(b)(1)(i)'s "best ensure" standard accomplishes this goal and hence is a reasonable interpretation of § 12189's accessibility requirement as it requires testing entities to "provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to the same degree as nondisabled people taking the exam." Enyart, 630 F.3d at 1162. For this reason, the "DOJ's regulation is not based upon an impermissible construction of § 12189," and thus § 36.309 is entitled to deference. Id. at 1163; Jones v. Nat'l Conference of Bar Exam'rs, 801 F. Supp. 2d 270, 284 (D. Vt. 2011); Bonnette, 796 F. Supp. 2d at 183-85.

of context.  ABP provided example questions and testimony that show that it satisfies this standard since the Exam does not require an examinee to recall information out of context.  JA 753 (testimony that the Exam does not require an examinee "to dredge up the answer from nowhere and write it down" and that the questions provide "context"); JA 373 (testimony that the questions are "contextual" and present the examinee with a "scenario"); JA 420 (testimony that the questions are "constructed in a way that an individual is presented with a clinical vignette").  Rawdin failed to present any evidence refuting ABP's characterization of the exam questions as contextual and cue- and story-based.  Indeed, his only expert, Dr. Moss, admitted that he knew nothing about the Exam's questions, layout, or format, and that he is not a psychometrician and has never developed an exam.  Given Moss's lack of familiarity with the Exam and testing generally, it was not clearly erroneous for the District Court to discount his testimony and credit the testimony of witnesses who were familiar with the Exam and testing generally.

III

Like the District Court, we acknowledge Rawdin's impressive clinical talents but conclude that the record and law do not provide a basis for relief.  Thus, we will affirm the judgment.