No. 13-4544

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

DAVID RAWDIN,

Plaintiff-Appellant

v.

AMERICAN BOARD OF PEDIATRICS,

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING NEITHER PARTY

JOCELYN SAMUELS
 Acting Assistant Attorney General

MARK L. GROSS
TERESA KWONG
 Attorneys
 U.S. Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C. 20044-4403
 (202) 514-4757

# TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ..................................................................1

STATEMENT OF THE ISSUE...........................................................................2

STATEMENT OF THE CASE............................................................................3

      1.    *Background* ....................................................................3

      2.    *Procedural History*.......................................................8

SUMMARY OF THE ARGUMENT .....................................................................10

ARGUMENT

      THE DISTRICT COURT APPEARS TO HAVE
      APPLIED AN INCORRECT STANDARD FOR
      DETERMINING WHETHER ABP OFFERS THE
      EXAM IN A MANNER ACCESSIBLE TO INDIVIDUALS
      WITH DISABILITIES .....................................................................12

      A.    *Standard Of Review* ....................................................12

      B.    *Statutory And Regulatory Requirements*....................................12

      C.    *The "Best Ensure" Standard Applies To Testing
          Accommodations Claims*.............................................14

CONCLUSION ..........................................................................23

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Auer* v. *Robbins*, 519 U.S. 452 (1997) ........................................................................16

*Bonnette* v. *District of Columbia Ct. of Appeals*,
    796 F. Supp. 2d 164 (D.D.C. 2011) .........................................................18, 21

*Bragdon* v. *Abbott*, 524 U.S. 624 (1998) .................................................................18

*Chase Bank USA, N.A.* v. *McCoy*, 131 S. Ct. 871 (2011) .......................................16

*Chevron, U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)...............................................................................12, 18

*Doe* v. *National Bd. of Med. Exam'rs*,
    199 F.3d 146 (3d Cir. 1999) ....................................................... 15-16, 19, 21

*Enyart* v. *National Conf. of Bar Exam'rs*, 630 F.3d 1153 (9th Cir.),
    cert. denied, 132 S. Ct. 366 (2011) ............................................................ 17-18

*Jones* v. *National Conf. of Bar Exam'rs*,
    476 F. App'x 957 (2d Cir. 2012) .....................................................................2

*NAACP* v. *City of Bayonne*, 134 F.3d 113 (3d Cir. 1998)......................................12

*Rawdin* v. *American Bd. of Pediatrics*, No. 12-6781,
    2013 WL 5948074 (E.D. Pa. Nov. 6, 2013) ..........................................*passim*

**STATUTES:**

Title III of the Americans with Disabilities Act of 1990,
    42 U.S.C. 12101 *et seq* ................................................................................1
    42 U.S.C. 12112(b)(1)-(7) ...........................................................................20
    42 U.S.C. 12112(b)(5) ..................................................................................20
    42 U.S.C. 12112(b)(7) ..................................................................................20
    42 U.S.C. 12182..................................................................................... 14-15

**STATUTES (continued):**                                    **PAGE**

42 U.S.C. 12182(a) .......................................................................................... 13

42 U.S.C. 12182(b) .......................................................................................... 13

42 U.S.C. 12182(b)(2)(A)(i)-(v) ....................................................................... 20

42 U.S.C. 12182(b)(2)(A)(ii) ........................................................................... 13

42 U.S.C. 12186(b) ...................................................................................... 1, 13

42 U.S.C. 12188(b) ............................................................................................ 1

42 U.S.C. 12189 ....................................................................................... 2, 10, 13

42 U.S.C. 12201(a) .......................................................................................... 17

**REGULATIONS:**

28 C.F.R. Pt. 35, App. B, Subpart C ............................................................... 17

28 C.F.R. 36.309 .................................................................................... 8, 13, 21

28 C.F.R. 36.309(b)(1)(i) ........................................................................ *passim*

29 C.F.R. 1630.11 ............................................................................................ 20

34 C.F.R. 104.42(b)(3) (1980) ......................................................................... 17

45 C.F.R. 84.44(c) (1977) ................................................................................ 17

**MISCELLANEOUS:**

Americans with Disabilities Act, ADA Title III Technical
    Assistance Manual, III-4.6100 (1993), *available at*
    www.ada.gov/taman3.html ............................................................................ 19

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 13-4544

DAVID RAWDIN,

Plaintiff-Appellant

v.

AMERICAN BOARD OF PEDIATRICS,

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING NEITHER PARTY

**INTEREST OF THE UNITED STATES**

The United States has responsibility for the enforcement of Title III of the

Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq*. See 42 U.S.C.

12188(b).  Pursuant to 42 U.S.C. 12186(b), the Department of Justice has issued

regulations to carry out the provisions of Title III.  This case presents the issue of

the proper interpretation of Section 309 of Title III, and its implementing

regulation, 28 C.F.R. 36.309(b)(1)(i).  Section 309 requires that licensing

examinations be offered in a manner "accessible to persons with disabilities."  42

- 2 -

U.S.C. 12189.  The regulation requires that such examinations be administered so as to "best ensure" that the exam results reflect the applicant's aptitude or achievement level and not the manifestations of the individual's disability. Because this case concerns the proper interpretation of our regulation, the United States has a significant interest in participating as an amicus.  The United States previously filed an amicus brief addressing the "best ensure" standard in *Jones* v. *National Conference of Bar Examiners*, 476 F. App'x 957 (2d Cir. 2012), arguing that the "best ensure" standard, rather than the generalized "reasonable accommodation" standard, applies in the testing context.

## STATEMENT OF THE ISSUE

The United States will address the following issue:

Whether testing accommodation claims under Section 309 of the Americans with Disabilities Act (ADA), 42 U.S.C. 12189, should be analyzed under the "best ensure" standard of Section 309's implementing regulation, which requires testing entities to offer examinations in a manner accessible to persons with disabilities so as to "best ensure" that "the examination results accurately reflect the individual[s'] aptitude or achievement level[s]," rather than the limitations of their disabilities, 28 C.F.R. 36.309(b)(1)(i).

- 3 -

# STATEMENT OF THE CASE

*1.    Background*

a. Plaintiff-appellant Dr. David Rawdin is a licensed pediatrician. In 1987, while in college, Dr. Rawdin was diagnosed with a brain tumor. See Joint Appendix (JA) 303 (7/29/13 Trial Tr.). He underwent brain surgery to remove the tumor, followed by chemotherapy and radiation therapy. JA 303-305. Although he subsequently started experiencing difficulty taking multiple choice examinations, he graduated from college and then medical school in 1994. JA 304-306.

To obtain his medical license, Dr. Rawdin had to pass the United States Medical Licensing Examination (USMLE), which consists of three steps. JA 306. Each step includes multiple choice questions. JA 306-307. He passed the first two steps while in medical school. JA 306. Dr. Rawdin took the Step 3 exam after graduating from medical school, and failed it twice. JA 306. After his second failure in 1996, Dr. Rawdin was evaluated by a neuropsychologist, Dr. Laura Slap-Shelton. JA 307. She concluded that, as a result of his tumor and treatment, Dr. Rawdin sustained a cognitive impairment that significantly impaired his memory retrieval system – in particular, his verbal retrieval function and visual memory system. JA 68 (5/2/2011 Letter from Dr. Slap-Shelton to ABP). She found,

- 4 -

however, that his memory impairment affected only his ability to answer multiple choice questions, and not his clinical ability to practice medicine. JA 68.

At about this time, Dr. Rawdin's brain tumor recurred, again requiring surgery and treatment. JA 308. Due to complications, Dr. Rawdin left his surgical residency for four years. JA 309-310. When he returned in 2000, he changed his residency from surgery to pediatrics. JA 310. He also applied to take the Step 3 exam again in 1999, and requested and received testing accommodations for the first time. JA 313. He was given double time to take the exam, an individual testing room, and breaks during the exam. JA 59 (11/29/1999 Confirmation of Test Accommodations), 313-314. Dr. Rawdin passed the exam and earned his medical license in 2000. JA 49 (Complaint), 313.

Thereafter, Dr. Rawdin completed his residency and, in 2003, started his clinical practice at the Children's Hospital of Philadelphia (CHOP). JA 314-315. Dr. Rawdin had an exemplary performance record at CHOP, serving in many capacities, including Assistant Director of CHOP's nursery and as a clinical professor at the hospital. JA 315-321; see also JA 295-297.

b. CHOP's by-laws require physicians employed by the hospital to be board certified in their specialties within five years of employment. JA 298-299. Dr. Rawdin satisfied all the requirements for board certification for pediatrics, except for passing a multiple choice exam known as the General Pediatrics Certifying

- 5 -

Exam (the Exam). JA 412-413. The Exam, given annually, consists of 335

multiple choice questions that provide hypothetical scenarios and ask the

individual to select the most likely diagnosis, treatment, or next step. JA 372-373,

420.

The Exam is designed, administered and scored by defendant-appellee

American Board of Pediatrics (ABP), an independent, non-profit organization that

is one of the 24 certifying boards of the American Board of Medical Specialists.

JA 100 (Memorandum of Law in Opp'n to Pl.'s Mot. for Preliminary and

Permanent Injunction), 408, 417. Board certification is a credential that signifies a

high level of physician competence. JA 408, 418-419. Hospitals and private

practices often require board certification when hiring pediatricians. JA 325-330.

Although board certification is not required in order to practice, only about 15-20%

of pediatricians nationwide are not board certified. JA 417-418.

Dr. Rawdin took and failed the Exam in 2004, 2006, 2008, and 2009. JA

321, 324. Because he was unable to obtain board certification, CHOP terminated

Dr. Rawdin's employment in January 2010. JA 298, 318, 325.

c. In October 2007, after Dr. Rawdin failed the Exam for the second time,

he was reevaluated by Dr. Slap-Shelton, who gave Dr. Rawdin a series of

neuropsychological tests, including an intelligence test. JA 323. The results

revealed a 21-point difference between Dr. Rawdin's verbal IQ and performance

- 6 -

IQ.  JA 622 (2007 Report of Neuropsychological Evaluation).  Although Dr.

Rawdin's scores were not below average, Dr. Slap-Shelton concluded that the

21-point difference showed that Dr. Rawdin's ability to retrieve information from

his memory after seeing or reading it was impaired.  JA 627-628.  Furthermore, the

results of every memory test taken by Dr. Rawdin showed that Dr. Rawdin's

memory was not efficient, especially when he was asked to retrieve information

out of context.  JA 627-628.

Dr. Rawdin consulted with a second neuropsychologist, Dr. Edward Moss,

in July 2008.  JA 323-324.  Dr. Moss reviewed the results of the neurological tests

performed by Dr. Slap-Shelton, and concluded that Dr. Rawdin has a declarative

memory impairment directly related to his brain tumor and treatment.  JA 606

(2/25/13 Moss Report); see also JA 487-488 (Moss Dep.).  Dr. Moss agreed with

Dr. Slap-Shelton that Dr. Rawdin's verbal and visual memory was impaired when

compared to his IQ, and his memory was not efficient, particularly when retrieving

information out of context.  JA 606; see also JA 492-497.

In September 2010, Dr. Rawdin wrote to ABP regarding his difficulties with

passing the Exam and requested an alternative certification method.  JA 144-145.

ABP responded that it could not waive the Exam requirement but suggested that

Dr. Rawdin request a testing accommodation.  JA 148.

- 7 -

In 2011, Dr. Rawdin applied to take the Exam again and requested testing accommodations recommended by neuropsychologist Dr. Slap-Shelton.  JA 61-69, 338.  Attached to his request was a letter from Dr. Slap-Shelton, discussing Dr. Rawdin's memory retrieval impairment and requesting the following testing accommodations:  (1) extended time; (2) a quiet setting; (3) advance knowledge of the material covered on the Exam; (4) access to reference material during the exam; (5) short breaks every half hour; and (6) an essay format instead of multiple choice for the Exam.  JA 68-69.

ABP granted Dr. Rawdin's accommodation request for extended time, a quiet setting, and frequent breaks, but denied the rest.  JA 71 (6/9/11 Letter from ABP to Dr. Rawdin).  ABP stated at trial that it simply gave Dr. Rawdin the same testing accommodations that he got when he took the Step 3 examination in 1999.  JA 422-423.  According to ABP, allowing Dr. Rawdin access to the exam questions beforehand or to reference materials during the Exam would not allow ABP to adequately, reliably, and validly test Dr. Rawdin's knowledge.  JA 388, 405.  ABP also stated that changing the format of the Exam would take a significant amount of time and be prohibitively expensive, and a different format would not meet the reliability and validity standards required by other national accrediting boards.  JA 399-401, 405.  Dr. Rawdin failed the Exam for the fifth time in 2011.  JA 343, 347.

- 8 -

2.    *Procedural History*

In 2012, Dr. Rawdin filed this action against ABP, alleging that ABP

violated Section 309 of the ADA, 42 U.S.C. 12189, and its implementing

regulation, 28 C.F.R. 36.309, by failing to administer the Exam in a way that

makes the Exam accessible to individuals with disabilities and best ensures that the

results of the Exam measure plaintiff's knowledge, rather than reflect the

limitations of his disability.  JA 53 (Complaint).  Dr. Rawdin filed a motion for a

preliminary and permanent injunction, asking the court to order ABP to grant him

board certification without requiring him to pass the Exam or, alternatively, to

order ABP to provide a testing accommodation in the form of an alternate exam

format, such as an open-book examination, essay examination, or an evaluation in

a clinical setting.  See *Rawdin* v. *American Bd. of Pediatrics*, No. 12-6781, 2013

WL 5948074, at *9 (E.D. Pa. Nov. 6, 2013).

The district court conducted a hearing on Dr. Rawdin's preliminary

injunction motion on July 29, 2013, at which both parties represented that they had

presented all the evidence they intended to produce.  See *Rawdin*, 2013 WL

5948074, at *6.  Thereafter, with the parties' consent, the district court converted

the hearing into a trial on the merits.  *Id.* at *6.

On November 6, 2013, the district court denied Dr. Rawdin's request for

injunctive relief.  See *Rawdin*, 2013 WL 5948074, at *20.  The court first held that

- 9 -

Dr. Rawdin is not a person with a disability covered by the ADA, because, the court found, his memory loss does not substantially limit the major life activities Dr. Rawdin identified – test-taking and working. *Id*. at *14-15. The court found that his brain injury does not reduce his abilities below that of an average person, and so he is not "substantially limited" in a major life function. *Ibid*. In other words, the court held that Dr. Rawdin's memory loss was significant only when compared to his own intellectual abilities. The court further held that his memory loss does not affect his ability to take a multiple choice examination in the nature of the test administered by ABP, and that he is not substantially impaired in the major life function of "working." *Ibid*.

The court also held that even if Dr. Rawdin has a disability for purposes of the ADA, the changes to the Exam he requested are not reasonable accommodations. See *Rawdin*, 2013 WL 5948074, at *17-18. The court stated that the testing accommodations he requested – allowing him to refer to reference sources during the exam, changing the format of the Exam to an essay test, or evaluating his clinical abilities in lieu of a multiple choice exam – amount to a fundamental alteration of the test. *Ibid*. The court agreed with ABP's argument that the type of test Dr. Rawdin requested would not accurately test what the multiple choice test does – the test-taker's ability to retain and apply principles of pediatric medicine. *Ibid*. ABP argued that it was testing his knowledge, and that

the alterations he proposed would not test those abilities as well as the current test does. *Ibid*. The court found that the ABP had established that altering the test, or letting Dr. Rawdin take an open-book test, would actually lower the standard for certification. *Id*. at *16-17.

In addition, the court credited ABP's argument that the closed book nature of the examination measures the knowledge of the test-taker "without access to reference material," while an open book test measures research ability, but not the amount of knowledge the test-taker has and can prove. See *Rawdin*, 2013 WL 5948074, at *19. The court held that it owed some deference to the pedagogical expertise of the organization. *Id*. at *17-18. The court also held that ABP established that devising a new test would be an undue burden based on the cost of developing a new examination in a different format, or even just developing new questions. *Id*. at *19. Finally, the court noted that ABP already had provided some accommodations, such as extra time, a different classroom atmosphere, and breaks during the test-taking. *Id*. at *18-19.

## SUMMARY OF THE ARGUMENT

Testing accommodation claims under Section 309 of the ADA, 42 U.S.C. 12189, should be analyzed under the "best ensure" standard of Section 309's implementing regulation, 28 C.F.R. 36.309(b)(1)(i), rather than under the more lenient "reasonableness" standard found in some other provisions of the ADA.

- 11 -

The district court appears to have conflated the "best ensure" and
"reasonableness" standards in analyzing Dr. Rawdin's testing accommodation
claim.  The court acknowledged that Section 309 specifically addresses
professional examinations, and provides that they must be offered in a manner that
is "accessible to persons with disabilities."  See *Rawdin* v. *American Bd. of
Pediatrics*, No. 12-6781, 2013 WL 5948074, at *16 (E.D. Pa. Nov. 6, 2013).   In
discussing the testing accommodation requirements, the court also cited the "best
ensure" standard mandated by Section 309's implementing regulation.  See *id*. at
*16-17.  The district court mentioned these standards only in passing, however,
and gave no indication that it was actually applying them.  Instead, the court then
proceeded to evaluate the testing accommodations that Dr. Rawdin requested under
a "reasonableness" standard that is found in other provisions of the ADA, but does
not apply to examinations subject to Section 309 and that statute's implementing
regulations.  See *id*. at *16-18.

Section 309 does not use the term "reasonable," and the Department of
Justice's implementing regulation also does not contain a reasonableness standard.
Instead, the regulation explicitly states that the examination must be administered
so as to "best ensure" that the exam measures the applicant's achievement or
aptitude, rather than reflects the limitations of the individual's disability.  28 C.F.R.
36.309(b)(1)(i).  Because the regulation is a reasonable construction of the statute

- 12 -

and therefore is entitled to deference under *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), it follows that the "best ensure" standard in the regulation is an authoritative interpretation of the statute and applies in this case. The more generalized "reasonableness" standard, used in other provisions of Title III and the ADA, does not override the more specific and demanding regulation directed at disability-based discrimination in testing.[1]

## ARGUMENT

### THE DISTRICT COURT APPEARS TO HAVE APPLIED AN INCORRECT STANDARD FOR DETERMINING WHETHER ABP OFFERS THE EXAM IN A MANNER ACCESSIBLE TO INDIVIDUALS WITH DISABILITIES

*A.*   *Standard Of Review*

This Court reviews the district court's findings of fact for clear error and its conclusions of law de novo. See *NAACP* v. *City of Bayonne*, 134 F.3d 113 (3d Cir. 1998).

*B.*   *Statutory And Regulatory Requirements*

Title III of the ADA prohibits discrimination against individuals with disabilities by public accommodations, *i.e.*, private entities offering various services to the public. It does so in several distinct anti-discrimination provisions. Section 302(a) contains a general prohibition on discrimination. 42 U.S.C.

---

[1] This brief does not address other issues in the case.

- 13 -

12182(a).  Section 302(b) contains numerous more specific provisions addressing

various activities and actions that constitute disability discrimination.  42 U.S.C.

12182(b).  Among these is the failure to make "reasonable modifications" in

policies, practices, or procedures when such modifications are necessary to afford

services to individuals with disabilities unless the entity can demonstrate that the

modifications would fundamentally alter the nature of the services.  42 U.S.C.

12182(b)(2)(A)(ii).

A separate section of Title III addresses the provision of professional and

licensing examinations.  Section 309 provides:

> Any person that offers examinations or courses related to applications,
> licensing, certification, or credentialing for secondary or post-
> secondary education, professional, or trade purposes shall offer such
> examinations or courses *in a place and manner accessible to persons
> with disabilities* or offer alternative accessible arrangements for such
> individuals.

42 U.S.C. 12189 (emphasis added).  The term "accessible" is not defined in the

statute.

The Attorney General is charged with issuing regulations to carry out the

provisions of Title III, including Section 309.  42 U.S.C. 12186(b).  Pursuant to

that statutory authority, the Department promulgated 28 C.F.R. 36.309, which

addresses "[e]xaminations and courses."  Section 36.309(b)(1)(i) defines the

obligations of testing entities offering examinations:

- 14 -

> Any private entity offering an examination covered by this section must assure that * * * [t]he examination is selected and administered so as to *best ensure* that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure).

28 C.F.R. 36.309(b)(1)(i) (emphasis added).

C.   *The "Best Ensure" Standard Applies To Testing Accommodations Claims*

The district court appears to have conflated the "best ensure" standard with the "reasonableness" standard under 42 U.S.C. 12182.  See *Rawdin* v. *American Bd. of Pediatrics*, No. 12-6781, 2013 WL 5948074, at *10, *16-17 (E.D. Pa. Nov. 6, 2013).   This was error because (1) the term "accessible" in Section 309 is ambiguous; (2) the "best ensure" standard in the implementing regulation is a reasonable construction of the statute and is entitled to *Chevron* deference; (3) the specific "best ensure" standard directed at examinations applies over the more generalized "reasonableness" standard contained elsewhere in the ADA; (4) applying a reasonableness standard to testing would read out of the ADA numerous provisions more narrowly tailored to disability discrimination in specific contexts, including testing; and (5) the "best ensure" requirement is a more stringent standard than "reasonableness."

- 15 -

1.  This Court has held that Section 309 of the ADA and DOJ's
implementing regulation, rather than 42 U.S.C. 12182's more general prohibitions
against discrimination in public accommodations, apply to professional
examinations.  See *Doe* v. *National Bd. of Med. Exam'rs*, 199 F.3d 146, 154-155
(3d Cir. 1999).  Together, Section 309 and the implementing regulation provide
that such examinations must be offered in an accessible manner, which means that
they must be offered in such a way as to "best ensure" that the examination results
reflect the applicant's aptitude and knowledge, rather than the limitations or
manifestations of the applicant's disability.  As this Court stated, Section 309
"mandates changes to examinations – 'alternative accessible arrangements,' 42
U.S.C. 12189 – *so that disabled people who are disadvantaged by certain features*
*of standardized examinations may take the examinations without those features*
*that disadvantage them*."  *Doe*, 199 F.3d at 156 (emphasis added).  That is the
standard that applies in the context of professional examinations.

Here, the term "accessible" in Section 309 could have various meanings,
including "accessible at any cost," the "best access available under the
circumstances," or "capable of being accessed" even if the access is not effective
or meaningful.  The term itself does not suggest what "accessibility" should mean
in specific circumstances.  Nothing about the term "accessible" compels the district
court's conclusion (and ABP's assertion) that a testing entity must simply provide

- 16 -

what the testing entity considers a "reasonable" accommodation.  See *Rawdin*,
2013 WL 5948074, at *16-17.  Because the term is ambiguous, the Department's
construction of that term in its regulation is entitled to controlling weight, unless it
is arbitrary, capricious, or manifestly contrary to the statute.  See *Chase Bank USA,
N.A.* v. *McCoy*, 131 S. Ct. 871, 880 (2011) (stating a court must defer to the
Department's reading of its own regulation "unless that interpretation is 'plainly
erroneous or inconsistent with the regulation'" (quoting *Auer* v. *Robbins*, 519 U.S.
452, 461 (1997)).

The DOJ regulation – and its "best ensure" standard – is a reasonable
construction of the statute and therefore is entitled to *Chevron* deference and
controlling weight.  Indeed, this Court's interpretation of Section 309 is consistent
with the regulation, stating that Section 309 "mandates changes to examinations –
'alternative accessible arrangements,' * * * – so that disabled people who are
disadvantaged by certain features of standardized examinations may take the
examinations without those features that disadvantage them."  *Doe*, 199 F.3d at
156.  Similarly, as the Ninth Circuit stated in a nearly identical case, "[o]ne
reasonable reading of [Section 309's] requirement that entities make licensing
exams 'accessible' is that such entities must provide disabled people with an equal
opportunity to demonstrate their knowledge or abilities to the same degree as

- 17 -

nondisabled people taking the exam." *Enyart* v. *National Conf. of Bar Exam'rs*, 630 F.3d 1153, 1162 (9th Cir.), cert. denied, 132 S. Ct. 366 (2011).

Moreover, DOJ's regulation implementing Section 309 was adopted from, and applies the same standard contained in, regulations under the Rehabilitation Act (predating the ADA) that address testing in other contexts and contain a "best ensure" standard. See 34 C.F.R. 104.42(b)(3) (1980) (Department of Education regulation under Section 504 of the Rehabilitation Act applying to college admission tests and providing that they must be "selected and administered so as best to ensure that * * * the test results accurately reflect the applicant's aptitude or achievement level * * * rather than * * * the applicant's [disability]"); 45 C.F.R. 84.44(c) (1977) (Health and Human Services regulation addressing postsecondary school examinations at federally funded schools applying similar "best ensure" standard). The ADA must be interpreted to grant at least as much protection as provided by the Rehabilitation Act. See 42 U.S.C. 12201(a); 28 C.F.R. Pt. 35, App. B, Subpart C.

The DOJ regulation also reflects the special challenges to the establishment of a level playing field in the administration of professional examinations. In this regard, it is reasonable that a heightened standard applies in the context of such high-stakes testing because, for many kinds of tests, how well a person performs on a test may become an arbitrary barrier to a job the individual could perform

well.  Once an individual passes an examination, his or her performance may be

acceptable over a wider range of satisfactory performance levels and, if deficient,

may be subject to remediation or training over time.  Therefore, it is critical that a

test-taker's disability detrimentally affect his score to the least extent possible.

For these reasons, the regulation's "best ensure" standard is a reasonable

construction of Section 309 and, as such, is the authoritative interpretation of that

statute.  See generally *Bragdon* v. *Abbott*, 524 U.S. 624, 646 (1998) ("As the

agency directed by Congress to issue implementing regulations * * * and to

enforce Title III in court, * * * the Department's views [in its regulations] are

entitled to deference.") (citing *Chevron*, 467 U.S. at 844).

Other courts that have addressed this issue on similar facts reached the same

conclusion.  See *Enyart*, 630 F.3d at 1162-1163 (rejecting argument by the

National Conference of Bar Examiners (NCBE) that 28 C.F.R. 36.309(b)(1)(i) was

invalid because it imposed an obligation beyond the statute, stating "DOJ's

regulation is not based upon an impermissible construction of [Section 309], so this

court affords *Chevron* deference to 28 C.F.R. 36.309 and applies the regulation's

'best ensure' standard"); see also *Bonnette* v. *District of Columbia Ct. of Appeals*,

796 F. Supp. 2d 164, 181 (D.D.C. 2011) (rejecting NCBE's argument that the "best

ensure" requirement in the regulation "exceeds the clear limits of the ADA and is

not entitled to deference," concluding that the statutory requirement "is sufficiently

- 19 -

ambiguous that the Court must respect the Justice Department's interpretive

regulations").  See also Americans with Disabilities Act, ADA Title III Technical

Assistance Manual, III-4.6100 (1993), *available at* www.ada.gov/taman3.html

(addressing examinations).

2.  There is no basis not to apply the "best ensure" standard to professional

examinations covered by Section 309.  Despite the district court's reference to

Section 309 and the implementing regulation, it nonetheless evaluated Dr.

Rawdin's requested testing accommodation under a "reasonableness" standard.

See *Rawdin*, 2013 WL 5948074, at *16-17.  But as set forth above, Section 309

and the implementing regulation do not apply that lesser standard, which is used in

other provisions of Title III and the ADA, but require the application of the more

stringent "best ensure" standard.  The more generalized and more lenient

reasonableness standard contained elsewhere in the ADA does not override the

more specific regulatory guidance directed at testing under Section 309.  See *Doe*,

199 F.3d at 155 (stating that under the "specific governs the general" canon of

statutory construction, the more specific Section 309, rather than Section 302,

applies in the context of examinations).

The district court's analysis is incorrect and essentially reads out of the ADA

numerous provisions carefully directed to address disability discrimination in

specific contexts, including examinations.  Title I, which generally addresses

- 20 -

employment discrimination, contains seven different definitions of covered

"discrimination."  See 42 U.S.C. 12112(b)(5); see generally 42 U.S.C.

12112(b)(1)-(7).  Only one of these provisions expressly addresses employment

tests, and requires that such tests be administered "in the most effective manner to

ensure" that, for applicants with a sensory disability, the test accurately reflects the

skills or aptitude the test purports to measure, rather than reflecting the limitations

of the individual's disability.  42 U.S.C. 12112(b)(7); see also 29 C.F.R. 1630.11

(EEOC Title I regulation using similar language).  The language in this provision

is nearly identical to the "best ensure" standard in the Title III regulation

implementing Section 309, and similarly contemplates a standard more stringent

than "reasonable accommodation," when applied in the examinations context.

Furthermore, as noted above, Title III contains numerous provisions

addressing various forms of discrimination, such as imposing eligibility criteria

that screen out or tend to screen out an individual with a disability from fully and

equally enjoying, *inter alia*, public goods or services, and failing to make a

"reasonable modification" in policies, practices, or procedures when such

modifications are necessary to provide, *inter alia*, services and accommodations to

an individual with a disability, unless making the modification would result in a

fundamental alteration.  See generally 42 U.S.C. 12182(b)(2)(A)(i)-(v).  But Title

III also contains Section 309, which specifically addresses examinations and does

- 21 -

not use the term "reasonable." Section 309's implementing regulation applies the "best ensure" standard and also does not use the term "reasonable" as a standard for the necessary testing modifications and alterations.

Therefore, the ADA does not apply a "reasonableness" standard in the testing context, and there is no basis for a court, as the district court appears to have done here, to apply the "reasonableness" standard to Dr. Rawdin's request for modifications. See *Doe*, 199 F.3d at 155 (stating "the rationale of the 'specific governs the general' canon counsels that we treat [S]ection 309 as Congress's specific definition of what Title III requires in the context of examinations"); *Bonnette*, 796 F. Supp. 2d at 182 (stating generalized "reasonable modification" standard does not override the more specific regulatory guidance relating to the testing context). The standard that the ADA applies in the context of examinations is the "best ensure" standard.

3. The distinction between the "best ensure" requirement and "reasonableness" standard is material. Section 309 and 28 C.F.R. 36.309 require testing entities to do more than simply provide reasonable accommodations. An accommodation offered by a testing entity can be "reasonable," even though it does not "best ensure" that the exam results reflect an individual's ability rather than disability. The ordinary meaning of "reasonableness" suggests that an accommodation can be reasonable even if it is not the best alternative.

- 22 -

Furthermore, Section 309 and its implementing regulation shift the burden away from the plaintiff, requiring him to identify and request reasonable accommodations, and onto the testing entity to develop and administer the examination in a way that will best ensure the results accurately reflect that individual's aptitude or achievement level, rather than disability.  If the plaintiff can show that the results of the examination reflect his disability, rather than his skill or knowledge, the "best ensure" standard requires the testing entity to determine whether there is a testing alternative that, while still testing the same factors or knowledge the test is designed to measure, permits the person with a disability the opportunity to demonstrate the abilities measured by the test, as opposed to a test that reflects the manifestations of his disability.  Although the district court recognized that ABP has the burden to "show it has considered alternative means to an allegedly discriminatory test," the court inappropriately relied on non-testing cases applying a reasonableness standard, in concluding that Rawdin's requested accommodations were "not reasonable." *Rawdin*, 2013 WL 5948074, at *17.

To the extent that ABP argues that equal access to an examination does not mean equal outcomes (JA 410), a plaintiff is not entitled to his requested testing accommodation simply because it is the accommodation he prefers.  Similarly, a plaintiff is not necessarily entitled to an examination format that will ensure his

- 23 -

success or maximize his score.  But the regulation requires that the examination be administered in a manner that best ensures that the examination results "accurately reflect the individual's aptitude or achievement level," 28 C.F.R. 36.309(b)(1)(i), and that is what a plaintiff is entitled to.

## CONCLUSION

If the Court reaches Dr. Rawdin's claim under Section 309, the Court should hold that the "best ensure" standard applies to testing accommodation claims.

Respectfully submitted,

JOCELYN SAMUELS
  Acting Assistant Attorney General

s/ Teresa Kwong
MARK L. GROSS
TERESA KWONG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-4757

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule 28.3(d), I hereby certify that I am a member of good

standing of the bar of this Court.

<div style="text-align: right;">

s/ Teresa Kwong
TERESA KWONG
Attorney

</div>

Date:  March 17, 2014

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief does not exceed the type-volume limitation imposed by Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(d). The brief was prepared using Microsoft Word 2007 and contains 4,896 words of proportionally spaced text. The type face is Times New Roman, 14-point font.

I also certify that the copy of this brief that has been electronically filed is an exact copy of what has been submitted to the Court in hard copy. I further certify that the electronic copy has been scanned with the most recent version of Trend Micro Office Scan Corporate Edition (version 8.0) and is virus-free.

<div style="margin-left:40%">

s/ Teresa Kwong
TERESA KWONG
 Attorney

</div>

Date: March 17, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014, I electronically filed the foregoing

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING

NEITHER PARTY with the Clerk of the Court for the United States Court of

Appeals for the Third Circuit by using the Appellate CM/ECF system and that ten

paper copies identical to the brief filed electronically were sent to the Clerk of the

Court by first class mail.  I further certify that counsel of record are CM/ECF

participants and will be served electronically by the Appellate CM/ECF system.

<div align="right">

s/ Teresa Kwong
TERESA KWONG
Attorney

</div>