Civil Action No. 09-3321
United States District Court, D. New Jersey

# Karipidis v. Ace Gaming LLC

Decided Jun 9, 2010

Civil Action No. 09-3321.

June 9, 2010

## OPINION

JOSEPH RODRIGUEZ, Senior District Judge

Presently before the Court is a Motion to Dismiss filed by Defendants, ACE Gaming LLC, doing business as Pinnacle Atlantic City ("Ace Gaming"), Pinnacle Entertainment, Inc. ("Pinnacle"), and Charles Ford ("Ford") (collectively "Defendants" or "Ace Gaming") pursuant to Fed.R.Civ.P. 12(b)(6). The Court considered the written submissions of the parties and heard oral argument on the motion on May 13, 2010. For the reasons expressed on the record that day, as well as those set forth below, Defendants' motion [Doc. Entry No. 8.] is granted.

## I. BACKGROUND

For the purpose of deciding this motion to dismiss, the facts alleged by the plaintiff in his Complaint are accepted as true. Plaintiff, Georgios Karipidis ("Karipidis" or "Plaintiff") is a white male of Greek ethnic origin who has a prosthesis of the right arm. (Compl. at ¶ 1.) In November, 2006 Karipidis was hired as a System Control Operator by Ace Gaming in Atlantic City, New Jersey.

2 However, in June *2 2007 Ace Gaming's Manager of Security, Charles Ford, informed Karipidis that his position was being eliminated and he was therefore discharged. (Compl. at ¶ 3.) Plaintiff did not provide the precise date he was discharged in his Complaint. When his employment was terminated, Plaintiff was qualified to continue as a System Control Operator; however, "Defendants advised Plaintiff that other non-disabled, American-born employees (with lesser qualifications and performance records) were being retained." (Compl. at ¶ 3.)

Karipidis alleges that Defendants' stated reason for his discharge was pretextual, and that he was discharged on the basis of his Greek ethnic origin as well as his disability. While employed by Ace, Karipidis was the subject of jokes and derogatory comments made by the Manager of Security, Charles Ford. (Compl. at ¶ 2.) On November 14, 2007, Plaintiff filed a Charge of Discrimination and a Verified Complaint with the New Jersey Division on Civil Rights ("DCR").[1] (Def.'s Ex.s B C.) In the Verified Complaint, Plaintiff stated that he was terminated on June, 11, 2007 on the basis of his disability in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12. (Def.'s Ex. C, ¶ 4d.) Karipidis did not allege that he was fired on the basis of his ethnic origin in his DCR filings.

[1] The Court received a copy of plaintiff's Right to Sue Notice issued by the Equal Employment Opportunity Commission, which was referenced in Plaintiff's opposition papers. That letter is dated March 22, 2010. It appears that there may have been difficulty initially locating this document.

Two years and one day later, on June 12, 2009, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division. In that Complaint, Plaintiff not only alleged that he was terminated in violation of the NJLAD, but also set forth federal

3   *3 discrimination claims. Furthermore, in addition to his disability discrimination claim, Plaintiff alleged that he was discriminated against on the basis of his ethnic origin, that he was victim of a hostile work environment based on his ethnicity and his disability, and that Defendants' are liable for failing to promote or compensate him at the level that was commensurate with his skills and seniority. The Complaint also contains a claim for breach of implied contract based on Defendants' "policy contained in their disseminated circulars of not tolerating discrimination in the workplace" as well as a claim for infliction of emotional distress and physical harm.

Defendants timely removed this case to federal court and now move to dismiss the Complaint for failure to a state claim upon which relief can be granted.

## II. STANDARD OF REVIEW

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed.R.Civ.P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)."Id. (internal

4   citations omitted). *4

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Oshiver v. Levin, Fishbein, Sedran Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). These allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, the Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")).

It is not necessary for the plaintiff to plead evidence.Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

5   In deciding a motion to dismiss, a court generally considers only the allegations *5 contained in the complaint, exhibits attached to the complaint, and matters of public record. However, "courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document." Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 781 (W.D.Pa. 2000) (citingPension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir. 1993)). This exception prevents a plaintiff with a

legally deficient claim from surviving a motion to dismiss by failing to attach a dispositive document on which it relied. Id.

In Arizmendi v. Lawson, 914 F Supp 1157 (E.D.Pa. 1996), a federal employee brought an employment discrimination claim. The defendants moved to dismiss under Rule 12(b)(6) claiming that the plaintiff failed to timely pursue relief. The court stated that in resolving a Rule 12(b)(6) motion, it is proper to look beyond the complaint to matters of public record, including records and letters of official actions or decisions of government agencies and administrative bodies. Id. at 1160-61. That court took cognizance of a right to appeal or sue letter issued by the Equal Employment Opportunity Commission, the authenticity of which was not disputed. Id. at 1161. That letter was attached to the government's motion and contained pertinent dates and stated it was a letter decision of a government agency. Id.

Here, Defendants ask this Court to refer to factual contentions contained in the Plaintiff's administrative filings for purposes of a statute of limitations defense. Because a precise date of termination was not included by Plaintiff in his Complaint, and because it is also necessary to refer to these documents in order to determine whether the *6 plaintiff exhausted his administrative remedies, the Court will take judicial notice of the Verified Complaint and Charge of Discrimination filed with the DCR.

## III. ANALYSIS

Defendants make four arguments in support of the motion to dismiss. First, Defendants assert that the Plaintiff's State law claims alleging discrimination under the NJLAD and for infliction of emotional and physical distress are time-barred, as the statute of limitations on these claims has run. Second, Defendants argue that the Plaintiff's Federal Law claims alleging ethnic origin discrimination must be dismissed because Karipidis failed to exhaust his administrative remedies, and furthermore Plaintiff failed to properly plead satisfaction of the administrative exhaustion requirement as to his disability discrimination claim. Third, Defendants contend that Plaintiff's disability discrimination claim must be dismissed for failure to state a claim as a matter of law under the ADA. And fourth, Defendants argue that Plaintiff's common law claim for breach of implied contract must be dismissed as duplicative of the statutory remedy available to Plaintiff under the NJLAD. These arguments are addressed in turn.

## A. Statute of Limitations

Defendants assert that Plaintiff's State law discrimination claims (contained in Counts I and II) and claim for infliction of emotional distress and physical harm (contained in Count IV) are time barred under the two-year statute of limitations period applicable to such claims. The statute of limitations governs the period during which a *7 party may bring a suit. For claims arising under the NJLAD a plaintiff has two years from the date of the employee's discharge to file a claim of discrimination. Montells v. Haynes, 133 N.J. 282, 627 A.2d 654, 660 (1993) (establishing a two year statute of limitations for all NJLAD claims). Likewise, Plaintiff's claim for infliction of emotional distress and physical harm is also subject to a two year statute of limitations. N.J. Stat. Ann. § 2A:14-2. Here in order to determine whether Plaintiff's claims are time barred, the Court must: (1) define "date of discharge" for purposes of the analysis; (2) determine when Karipidis was discharged; and (3) ensure that Karipidis filed his claim within the statute of limitations.

In Alderiso v. Medical Ctr. of Ocean Co., the New Jersey Supreme Court defined the date of discharge as the "last day for which the employee is paid a regular salary or wage." 167 N.J. 191, 770 A.2d 275, 280 (2001). Furthermore, that court explained that for computation purposes, the first day counted is the day after the date of discharge. Id. at 282; see also Bocobo v. Radiology Consultants of S. Jersey, P.A., No. 02-1697, 2005 WL 3158053, at *12 (D.N.J. Nov. 21, 2005). In

Alderiso, the plaintiff's date of discharge was January 15, 1997; therefore, the one year limitations period there began January 16, 1997 and ended January 15, 1998. Alderiso, 770 A.2d at 282. The Court there determined that a complaint filed on January 16, 1998, would be outside the applicable limitations window by one day. Id. [2] *8

> [2] Because it was an issue of first impression, the New Jersey Court concluded that its determination that a cause of action for wrongful discharge accrues on the employee's date of discharge would only apply on a prospective basis. Alderiso, 770 A.2d at 283. Therefore, Alderiso's claim was not barred by the statute of limitations. Id.

Karipidis failed to provide a precise date of discharge in his Complaint. (Compl. at ¶ 3.) However, in the Charge of Discrimination and Verified Complaint Plaintiff filed with the DCR, Karipidis specifically stated that he was terminated on June 11, 2007.[3] Therefore, the applicable filing period includes June 12, 2007 through June 11, 2009. June 12, 2009, the day that Karipidis filed his Complaint in the Superior Court, falls outside the applicable limitations window, and just as the plaintiff in Alderiso fell short by one day, so does this plaintiff. (Def.'s Ex. B at ¶ 4d.).[4]

> [3] As discussed in the previous section, the Court may consider administrative filings for purposes of this motion to dismiss.
>
> [4] Moreover, filing a claim with the DCR does not toll the statute of limitations. Unlike Title VII, the NJLAD does not require a claimant to seek an administrative remedy before proceeding with a judicial remedy. Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 684 A.2d 1385, 1389 (1996). A plaintiff may nevertheless elect to seek administrative relief instead of, or prior to, seeking judicial redress; however, the statute of limitations for filing judicial claims is not tolled by the filing of an administrative claim with the DCR. See Omogbehin v. Dimensions Intern., Inc., 2009 WL 2222927, at *3 (D.N.J. Jul 22, 2009) (citing Sylvester v. Unisys Corp., 1999 WL 167725, at *6 (E.D.Pa. Mar. 25, 1999) (holding that "filing a DCR complaint does not toll the statute of limitations for filing an NJLAD suit in court")).

At oral argument Plaintiff's counsel explained that the terms of Karipidis's employment with Pinnacle Entertainment provided that he would be given thirty days notice prior to termination of his employment.[5] Therefore, counsel argued that on the June 11, 2007, the date that Karipidis alleged in his Verified Complaint to the DCR that *9 he was discharged, should not be considered the final date of his employment for the purposes of a statute of limitations defense. Counsel argued that in light of the employment contract the Court should consider Karipidis an employee of the Defendants for an additional thirty days after the June 11th termination meeting. The Court rejects this reasoning.[6] The factual allegations set forth by the plaintiff in his Complaint and administrative filings establish a date of discharge as June 11, 2007.

> [5] At oral argument the Court accepted and entered into the record a letter agreement between Mr. Karipidis and Pinnacle Entertainment dated Oct. 20, 2006, which disclosed terms and conditions of Karipidis's offer of employment during Pinnacle's "Transition Period." That letter stated that, "All employees working during the Transition Period will be given at least a thirty (30) day notice period prior to employment termination." The letter was the focus of discussion during oral argument and the Court believed it necessary to preserve a copy for the record.
>
> [6] Failure to comply with terms of an employment contract could arguably give rise to a cause of action; however, that is

well beyond the scope of this Motion to Dismiss.

Based on the information before the Court, Plaintiff's State law claims are barred by the statute of limitations. Accordingly, Plaintiff's discrimination claims under the NJLAD contained in Counts I and II are dismissed without prejudice. Furthermore, Count IV containing Plaintiff's claim for infliction of emotional distress and physical harm is dismissed without prejudice. If Plaintiff seeks leave to amend his Complaint in order to correct his date of discharge, he may only do so if there is a good faith basis on which to do so.

## B. Failure to Exhaust Administrative Remedies

Next Defendants allege that Plaintiff's federal claims must be dismissed for failure to present all claims for administrative review prior to bringing this lawsuit.

Before bringing a claim under federal anti-discrimination statutes, a plaintiff must exhaust his administrative remedies. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (holding that, under Title VII, plaintiffs must exhaust their *10 administrative remedies "before they will be allowed access to federal judicial relief") (citing 42 U.S.C. § 2000e-5(c)). A claimant must first file a Charge of Discrimination with the EEOC within 180 days after the alleged unlawful employment discrimination occurred or within 300 days, when the state has created an agency to hear employment discrimination claims. See Cardenas v. Massey, 269 F.3d 251, 255 n. 2 (3d Cir. 2001). New Jersey has such an agency, the DCR; therefore, a New Jersey claimant has 300 days to file a charge of discrimination. Anderson v. DSM N.V., 589 F.Supp.2d 528, 535 (D.N.J. 2008). Only upon receipt of a Right to Sue notice from the EEOC, may a plaintiff initiate a lawsuit based on the same claim asserted in an administrative charge. Ruehl v. Viacom, Inc., 500 F.3d 375, 386 n. 14 (3d Cir. 1997). The purpose of this administrative exhaustion requirement is to afford the EEOC (or the State agency) the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court. Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976).

Where a plaintiff fails to file an administrative charge in connection with a claim of employment discrimination prior to filing suit, thereby precluding administrative review of such a claim, that claim will be barred in a subsequent suit. Id. In addition a plaintiff must affirmatively plead fulfillment of the administrative exhaustion requirement as well as receipt of the right to sue notice within his complaint. In Robinson v. Dalton, the Third Circuit stated that "[a] complainant does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or *11 resolution." 107 F.3d 1018, 1022 (3d Cir. 1997). Furthermore, only claims that are "fairly within the scope of the prior administrative complaint, or the investigation arising therefrom" can be considered to have been exhausted. Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). Where an underlying administrative charge fails to allege claims asserted in a subsequently filed federal complaint, those claims are barred. Webb v. City of Philadelphia, 562 F.3d 256, 262-63 (3d Cir. 2009).

In Webb a police officer brought a Title VII action against the City of Philadelphia alleging religious and sex discrimination. The Third Circuit affirmed the District Court's dismissal of Webb's sex discrimination claim because Webb failed to administratively exhaust that claim. Webb only filed a charge of religious discrimination with the EEOC, and nothing in her EEOC claim incorporated sex discrimination. Id. at 263. The Third Circuit held that Webb's claim of sex discrimination was not sufficiently related to her religious discrimination claim to give notice or to excuse her failure to administratively exhaust it. Id.

This case is similar to Webb. In his Verified Complaint, Karipidis alleged that he was discharged because of his disability, prosthesis of the right arm, in violation of the NJLAD. Karipidis did not allege any facts that could fairly be said to incorporate a claim of ethnic origin discrimination, hostile work environment, or the failure to promote. It would amount to "an administrative bypass" to rule otherwise. Webb, 562 F.3d at 263. While federal ADA claims can be said to be within the scope of his DCR filings, the Court finds that Karipidis failed to administratively exhaust the remaining federal claims. Accordingly, Karipidis's claims of ethnic origin discrimination, hostile work *12 environment, and failure to promote are dismissed with prejudice.

Despite the conclusion that Plaintiff satisfied the administrative exhaustion requirement for his ADA claim for wrongful discharge, Defendants are correct that Plaintiff is required to — and yet did not — affirmatively plead exhaustion of his administrative remedies. Therefore, Karipidis did not state a claim upon which relief can be granted.[7] The Plaintiff may seek leave to file a curative amended Complaint that affirmatively pleads satisfaction of this requirement. Accordingly, Plaintiff's claim that he was unlawfully discharged in violation of the ADA is dismissed without prejudice for failure to plead exhaustion of administrative remedies.

> [7] Plaintiff does not argue that he has satisfied the administrative exhaustion requirements anywhere in his complaint.

## C. Failure to State a Claim Under the Americans with Disabilities Act

The Court now turns to the merits of Plaintiff's remaining federal claim: that he was unlawfully discharged because of his disability, which he defines as prosthesis of the right arm, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a). Defendants move to dismiss this claim, contending that Plaintiff has not alleged sufficient facts to support a *prima facie* case of discriminatory termination.

The ADA prohibits employment discrimination on the basis of a disability providing:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*13 42 U.S.C. § 12112(a).

In order to state a *prima facie* case of disability discrimination under the ADA a plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). First, Defendants argue that Karipidis fails to allege that he is disabled within the meaning of the ADA. Then, in the alternative, Defendants contend that even if the Court considers Karipidis disabled within the meaning the ADA, he cannot satisfy the third prong of the test: that he suffered an adverse employment decision as a result of discrimination.

### 1. Disabled within the meaning of the ADA

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more . . . major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. §

12102(2); Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir. 2000). Plaintiff bears the burden of establishing that he meets this definition.[8] *14

> [8] In 2008 the ADA underwent significant amendment. The ADA Amendments Act of 2008 expanded the definition of "disability" under the ADA, explaining that the definition of disability shall be construed in favor of broad coverage of individuals. However, the amendments, effective Jan. 1, 2009 cannot be applied retroactively to conduct that preceded its effective date. Kania v. Potter, No. 09-1326, 2009 WL 4918013 (3d Cir. Dec. 22, 2009); Zahavi v. PNC Financial Servs. Group, No. 07-376, 2009 WL 904699 (W.D.Pa. March 31, 2009); Supinski v. United Parcel Service, Inc., No. 06-0793, 2010 WL 569842 (M.D.Pa. February 11, 2010); Walstrom v. City of Altoona, No. 3:2006-81, 2008 WL 5411091 (W.D.Pa. Dec. 29, 2008). Because Plaintiff's claim involves events occurring before the effective date of the ADA Amendments Act, Plaintiff's claims are analyzed under the ADA.

Plaintiff's Complaint states that he has a "prosthesis of the right arm." (Compl. at ¶ 1.) He does not allege that this impairment substantially limits one or more major life activity, or that there was a record of the impairment, or that he was regarded as having such an impairment. The Court is left to determine whether by simply stating his impairment, Plaintiff satisfactorily alleges he is a disabled person within the meaning of the ADA.

After the Supreme Court's decision in Ashcroft v. Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To prevent dismissal, a plaintiff must set out sufficient factual matter to show that the claim is facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "All civil complaints must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Id. (quoting Iqbal, 129 S.Ct. at 1949).

In order to determine whether the plaintiff met its burden at this early pleading stage, district courts conduct a two-part analysis. Fowler, 578 F.3d at 210. First, the Court separates out factual allegations from legal conclusions and accepts the factual elements as true. Id. at 210-11. Next, the court must determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at *15 211. The complaint must show entitlement to relief with its facts. Id. However, the Fowler court also clarified that in an employment discrimination suit, "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading." Id. at 214 (quoting Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co., 246 F.3d 850, 854 (6th Cir. 2001)). "[A] plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Fowler v. UPMC Shadyside, 578 F.3d 203, (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)) A plaintiff is not required, at this early pleading stage, to go into particulars about the life activity affected by an alleged disability or detail the nature of his substantial limitations. Fowler, 578 F.3d at 213.

However, even though the Plaintiff need not plead the substantial limitation in great detail at this stage of litigation, several courts have dismissed ADA disability claims because the plaintiff failed to adequately plead his disability. See, e.g., Dave v. Lanier, No. 08-0856, 2010 U.S. Dist. LEXIS 9540 at *17-18 (D.D.C. Feb. 3, 2010) (dismissing because plaintiff failed to state how his shoulder injury and asthma substantially limited a major life activity); Van Der Poel v. Mannheim Auto Auction, No. 08-5607, 2009 WL 1754598, at *1

(E.D.Pa. June 18, 2009) (dismissing partially because plaintiff failed to show how cardiomyopathy and high blood pressure substantially limited a major life activity); Dean v. Westchester County P.R.C., 309 F. Supp. 2d 587, 593-96 (S.D.N.Y. 2004) (dismissing for plaintiff's failure to show that his depression *16 substantially limited a major life activity); Matheson v. Virgin Islands Cmty. Bank Corp., 297 F.Supp.2d 819, 828 (D.V.I. 2003); (finding plaintiff's statement of his disability too vague and undefined); David v. AMR Servs. Corp., 191 F.R.D. 89, 90 (D.V.I. 2000) (dismissing in part because plaintiff failed to state how his high blood pressure substantially limited a major life activity).[9] By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint. The Court acknowledges that Karipidis does not need to set forth a *detailed* description of the limitations his alleged disability presents; however, he still must provide facts that state a claim of disability under of the law. Karipidis has failed to do so here.

---

[9] The court in Fowler reached a contrary result holding that the plaintiff had sufficiently notified her employer of her disability and was not required to show how that disability substantially limited a major life activity. Fowler, 578 F.3d at 213. However, in that case the plaintiff was injured on the job; thus her employer was already aware of her disability. Id. at 206, 213.

## 2. Adverse employment decision as a result of discrimination

Second, Karipidis's Complaint is defective in another respect. Plaintiff failed to satisfy the third element of a *prima facie* case for disability discrimination, which requires that Plaintiff show he suffered an adverse employment decision as a result of discrimination. Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998). Plaintiff's general claim that he was terminated for discriminatory reasons is too broad to put the opposing party on notice of his claims and fails to show that he is entitled to relief. *17

While a court confronted with a Rule 12(b)(6) motion accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmovant, legal conclusions receive no such deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently `permit the court to infer more than the mere possibility of misconduct.'"Guirguis v. Movers Specialty Servs., Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

In Guirguis, the Third Circuit affirmed the District Court's dismissal of Guirguis's employment discrimination claim where, Guirguis, who was of Arab descent and a native of Egypt, asserted that his employer terminated his employment on the basis of his national origin. Id. at 775. The Third Circuit conducted a de novo review and held that the Guirguis's complaint failed to cross the threshold established by the Supreme Court in Twombly and Iqbal. Id. at 776. In his complaint Guirguis alleged that he was "an Egyptian native of Arab descent, that Movers discharged him, and that his termination occurred in violation of his civil rights." Id. The Third Circuit held that those statements amounted to unsupported legal conclusions and were inadequate to surmount a Rule 12(b)(6) motion. Id. Furthermore the court agreed that the complaint never intimated why Guirguis believed that national origin motivated Movers' actions. Id.

While Karipidis provides more information than Guirguis did, his disability discrimination claim is nevertheless insufficient because he also failed to allege the *18 element of causation. Karipidis stated in Count I of his Complaint that:

In or about June 2007 plaintiff was advised by Defendant's Manager of Security that his position was being eliminated. Plaintiff contends that he was duly qualified to continue in that position. Defendants, however, terminated his position but instead later advised plaintiff that other non-disabled, American-born employees (with lesser qualifications and performance records) were being retained.

(Compl. at Count I ¶ 3.) Plaintiff has not alleged that those "non-disabled employees" retained by Defendants worked in the same (allegedly eliminated) position as Plaintiff did. Furthermore Plaintiff's allegation that he was subject to a hostile work environment based on his disability does not serve to show he suffered an adverse employment decision as a result of discrimination (See Compl. at Count I ¶ 9.) Even when the Court regards all factual allegations as true, as it is required to do on a motion to dismiss, the Complaint is deficient. These facts alone fail to state a claim that Karipidis suffered an adverse employment decision as a result of discrimination. Plaintiff's claims of disability discrimination are dismissed without prejudice.

## D. Duplicative Claims

Finally, Karipidis alleges that Defendants' actions constitute a breach of an implied contract pursuant to Defendants' policy contained in their disseminated circulars of not tolerating discrimination in the workplace. (Compl. at Count III, ¶ 3.) Defendants argue that this claim should be dismissed on the ground that it is duplicative of the statutory remedy available to the plaintiff under the NJLAD.[10] *19

[10] Defendants also argued that Plaintiff's emotional and physical distress claims should be dismissed on the ground that they are duplicative; however, those claims are barred by application of the statute of limitations.

Defendants are correct that Plaintiff's common law breach of contract claim seeks to vindicate the same rights as those recognized by the NJLAD. It appears that the true nature of this claim is wrongful discharge. Furthermore, as the Defendants point out, this type of common law claim has been consistently rejected under these circumstances throughout this Circuit. See Monaco v. American General Assur. Co., 359 F.3d 296, 308-09 (3d Cir. 2004);Santiago v. City of Vineland, 107 F.Supp.2d 512, 568 (D.N.J., 2000); Mardini v. Viking Freight, Inc., 92 F.Supp.2d 378, 383-84 (D.N.J., 1999). For example, in Monaco v. American General Assur. Co., 359 F.3d 296, 309 (3d Cir. 2004) the Third Circuit stated that "New Jersey law does not provide a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the NJLAD." In that case an employee also sought to bring a claim for breach of contract based on general language in an employee handbook when he was allegedly illegally discharged. Just as that court rejected Monaco's claims as duplicative of the statutory remedies available, this Court will dismiss Karipidis's breach of implied contract claim. Karipidis's common law claim for breach of implied contract is dismissed with prejudice.

## IV. CONCLUSION

For these reasons, as well as those expressed on the record during oral argument, the Defendants' motion to dismiss [Doc. Entry No. 8.] is granted. An appropriate Order shall follow.

Karipidis v. Ace Gaming LLC   Civil Action No. 09-3321 (D.N.J. Jun. 9, 2010)

 casetext