No. 07-4285
United States Court of Appeals, Third Circuit

# Fowler v. UPMC Shadyside

578 F.3d 203 (3d Cir. 2009)
Decided Aug 18, 2009

No. 07-4285.

Argued May 20, 2009.

Filed August 18, 2009.

Appeal from the United States District Court for the Western District of Pennsylvania, Arthur J. Schwab, J. *204

204

Gregory G. Paul, Esq. (Argued), Equality at Work, Sewickley, PA, for Appellant.

Pamela G. Cochenour, Esq. (Argued), Pietragallo, Gordon, Alfano, Bosick Raspanti, Pittsburgh, PA, for Appellee.

Before: FUENTES, JORDAN, and NYGAARD, Circuit Judges.

205   *205

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this appeal we are asked to determine whether the Appellant, Barbara Fowler, was too late in filing her discrimination claims against her employer, UPMC Shadyside Hospital. Fowler charged UPMC Shadyside with violating her rights under the Rehabilitation Act. The District Court dismissed Fowler's complaint before any responsive pleading was filed or discovery took place, finding it time-barred. Alternatively, the District Court determined that Fowler's complaint did not allege a disability under the Rehabilitation Act and that claims under the Act are inappropriate for class action litigation. We will vacate the dismissal and remand the cause.

I.

The relevant facts underlying this appeal are not complicated and we take them *206 directly from Fowler's complaint. Fowler was injured on the job while employed by UPMC as a janitor/housekeeper at Shady-side Hospital. She was injured on April 22, 2002 and was placed on Family/Medical Leave and short-term disability. After she was released by her doctor to perform sedentary work, UPMC provided Fowler with a light-duty clerical position. However, UPMC eliminated this position on August 29, 2003. Fowler avers in her complaint that before UPMC eliminated her clerical position she applied for a similar job but was never contacted by UPMC about that position. UPMC terminated her employment on September 24, 2003.

206

Compared to the factual history, the procedural history is more complex. Fowler filed her complaint on June 14, 2007. She maintains, however, that she first asserted her claims by filing an amended complaint in another action, *Tish v. Magee-Woman's Hospital of UPMC*, No. 06-820, 2007 WL 1221137 (W.D.Pa. April 24, 2007). The plaintiff in that case, Tish, had previously attempted to join in yet another case, *Bolden v. Magee Woman's Hospital of UPMC*, No. 05-1063, 2007 WL 1228479 (W.D.Pa. Aug. 1, 2005). The plaintiff in *Bolden* had sought leave of court to add Tish as an additional named plaintiff and to include class action allegations asserting that

UPMC has a pattern or practice of failing to transfer employees on disability leave in violation of the Americans with Disabilities Act and the Rehabilitation Act. Judge Terrence F. McVerry denied that motion, and severed the parties, directing that "the claims of [Tish], as well as the claims of any other potential plaintiffs who allegedly suffered a similar sort of wrong, should be filed as individual cases, and not as a class action." *Tish*, 2007 WL 1221137, at *8. Fowler re-filed a complaint pursuant to Judge McVerry's orders on June 14, 2007.

The District Court, per Judge Arthur J. Schwab, dismissed Fowler's complaint, finding that it was time-barred by the Rehabilitation Act's general two-year statute of limitations. The District Court also determined that Fowler's restriction to sedentary work did not constitute a disability under the Rehabilitation Act and that Fowler's class action allegations are not appropriate claims under the Act.

We review a district court's decision granting a motion to dismiss under a plenary standard. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because Fowler's causes of action arise under federal law. We have jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final order.

## II.

We first must determine whether a two-year or a four-year statute of limitations applies to Fowler's failure-to-transfer claim. There is disagreement among the District Courts in this Circuit as to the appropriate time limitation in this type of case.[1] We resolve this tension today in favor of a four-year limitation period.

---

[1] While the District Court in this matter applied a two-year statute of limitations, other District Courts have not. *See e.g. Walstrom v. City of Altoona*, No. 06-081, 2008 WL 5411091 (W.D.Pa. Dec. 29, 2008) (applying a four-year statute of limitations); *Chedwick v. UPMC*, 619 F.Supp.2d 172 (W.D.Pa. 2007) (applying a four-year statute of limitations).

Fowler alleges violations of the Rehabilitation Act, 29 U.S.C. § 794 et seq.[2] Congress passed the Rehabilitation Act in 1973 to make certain that no individual with a disability would "be subjected to discrimination under any program or activity receiving Federal financial assistance." *207 29 U.S.C. § 794(a). The Act does not include an express limitation clause. We have, therefore, borrowed the statute of limitations of the most analogous state law cause of action. *Disabled in Action of Pennsylvania v. SEPTA* 539 F.3d 199, 208 (3d Cir. 2008) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); *Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). In the *Disabled in Action* case, for example, we held that a two-year statute of limitations applied to claims brought under § 504 of the Rehabilitation Act because the discrimination claims were analogous to a personal injury action under Pennsylvania law. Were Fowler alleging discrimination claims in this case of the type actionable under § 794(a), a two-year limitation would also be appropriate.

---

[2] The Rehabilitation Act makes the "remedies, procedures and rights" set forth in Title VI of the Civil Rights Act of 1964 available to those whose substantive rights under Section 504 of the Rehabilitation Act are violated. 29 U.S.C. § 794a(a)(2). Title VI provides for the termination of federal funding if a covered entity fails to comply with its substantive provisions. 42 U.S.C. § 2000d-1. Title VI contains no express private right of action. Nonetheless, the Supreme Court has found an implied private right of action within Title VI, which has been acknowledged by Congress in subsequent statutory amendments. *Barnes v. Gorman*, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002). Since Congress has incorporated Title VI's

remedial scheme into the Rehabilitation Act, plaintiffs alleging violations of Section 504 have a private right of action under federal law. *Three Rivers Center for Independent Living, Inc. v. Housing Authority of Pittsburgh*, 382 F.3d 412, 425-426 (3d Cir. 2004).

Rehabilitation Act claims that allege a "failure-to-transfer," however, present a more difficult question. UPMC argues that these claims are also subject to Pennsylvania's two-year statute of limitations, asking us to again "borrow" the two-year statute of limitations applicable to similar claims arising under Pennsylvania law. Fowler contends that her failure-to-transfer claims are subject to the four-year limitation clause established by 28 U.S.C. § 1658, which provides that:

> (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). In *Jones v. R.R. Donnelley Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), the Supreme Court resolved this dispute by finding a four-year statute of limitations appropriate. Reasoning that § 1658 applies to any claim arising under an act of Congress which was enacted after December 1, 1990, the Supreme Court concluded that hostile work environment, wrongful termination, and failure-to-transfer claims under § 1981 were governed by § 1658 because they were in essence "enacted" by the 1991 Civil Rights Act. *Jones*, 541 U.S. at 382, 124 S.Ct. 1836 (quoting 42 U.S.C. § 1981(b)). This is so even where the original statute had been enacted before 1991. The Supreme Court explained:

> Nothing in the text or history of § 1658 supports an interpretation that would limit its reach to entirely new sections of the United States Code. An amendment to an existing statute is no less an "Act of Congress" than a new, stand-alone statute. What matters is the substantive effect of an enactment — the creation of new rights of action and corresponding liabilities — not the format in which it appears in the Code.

*Id.* at 381, 124 S.Ct. 1836.[3] From this point, our inquiry turns on chronology. We must determine whether failure-to-transfer claims under the Rehabilitation Act were enacted after December 1, 1990. *208

[3] Jones abrogated our decision in *Zubi v. AT T Corp.*, 219 F.3d 220 (3d Cir. 2000).

The Rehabilitation Act, originally enacted in 1973, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). This general prohibition against disability-based discrimination by recipients of federal funding was in effect well before December 1, 1990.[4] Employers were required to make "reasonable accommodation" for a disabled employee's limitations. *See Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1383 (3d Cir. 1991). Employers were not required to transfer a disabled employee to a vacant position as an accommodation of his or her disability. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). This changed, however, with the enactment of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

[4] Fowler's complaint avers (and UPMC does not dispute) that UPMC receives federal financial assistance.

The ADA identified the reassignment of a disabled employee to a vacant position as a "reasonable accommodation" of an employee's disability. 42 U.S.C. § 12111(9). Under the ADA's Title I, an employer's failure to transfer a disabled employee to a vacant position constitutes discrimination. *Id.* After the ADA went into effect, Congress amended the Rehabilitation Act by incorporating the ADA's substantive standards for determining whether a covered employer has engaged in illegal discrimination. This conforming amendment was codified at 29 U.S.C. § 794(d), which provides as follows:

> (d) Standards used in determining violation of section. The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 ( 42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 ( 42 U.S.C. 12201- 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d). This provision of the Rehabilitation Act was signed into law on October 29, 1992. The standards for determining whether a covered employer has violated § 794(d) have been coextensive with the standards for determining whether a covered employer has violated the ADA ever since. Therefore, employers who are covered under § 794(a) of the Rehabilitation Act are required to transfer a disabled employee to vacant positions for which she is qualified where necessary to accommodate her disability. Since failure-to-transfer claims can be brought as a result of this statutory amendment — an amendment enacted after December 1, 1990 — they are subject to a four-year limitation of actions.

Our holding on this point is in line with our jurisprudence. Although the statute of limitations was not at issue, we have previously recognized § 794(d) as the source of a disabled employee's right to be reassigned to a vacant position under the Rehabilitation Act. In *Shiring v. Runyon*, 90 F.3d 827, 831-32 (3d Cir. 1996), we noted that no such right had existed under the Rehabilitation Act before Congress enacted § 794(d). *Id.* at 831. *Shiring* further supports our conclusion that the Rehabilitation Act would not have required UPMC to reassign Fowler to a vacant position before 1992. Given the holdings in *Jones and Shiring*, it is clear that Rehabilitation *209 Act claims alleging a failure-to-transfer are governed by the four-year statute of limitation in § 1658, and not a borrowed two-year limitation.

We use Fowler's termination date — September 24, 2003 — as the starting date for statute of limitations purposes. *See e.g. Bonham v. Dresser Industries, Inc.* 569 F.2d 187, 192 (3d Cir. 1977) ("[Statute of limitations] period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer."); *see also Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479, 486 (7th Cir. 2002). Fowler, therefore, was required to file her complaint no later than September 24, 2007. The District Court used the date Fowler re-filed her complaint, June 14, 2007, to calculate the statute of limitation. Using that date and a four-year limitation period, Fowler's complaint was timely filed.[5] We will vacate the District Court's dismissal of her complaint on statute of limitation grounds. Because the District Court additionally dismissed Fowler's complaint on the basis that her restriction to sedentary work did not sufficiently constitute a disability, our standard of review requires us to examine the merits of her claims without any deference to the District Court's decision. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir.

2008). Before reviewing the merits of Fowler's allegations, however, we are obligated to discuss recent changes in pleading standards.

> [5] The District Court's use of the June 14, 2007 date was error, albeit a harmless one, given the four-year statute of limitations. Fowler's claims were first raised against UPMC on October 25, 2006 when she was listed as a named plaintiff on an amended complaint filed in the *Tish* action. Fowler (as well as other plaintiffs) were severed by Judge McVerry pursuant to FED.R.CIV.P. 21, in his April 24, 2007 order.
>
> Federal Rule of Civil Procedure 20(a) permits "joinder" — the joining together of more than one party — if the plaintiff's claim "aris[es] out of the same transaction . . . and if any question of law or fact common to all defendants will arise in the action." Misjoinder, on the other hand, occurs when there is no common question of law or fact or when, as here, the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction. Misjoinder is governed by FED.R.CIV.P. 21, which reads:
>
>> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
>
> To remedy misjoinder, then, a court may not simply dismiss a suit altogether. Instead, the court has two remedial options: (1) misjoined parties may be dropped "on such terms as are just"; or (2) any claims against misjoined parties "may be severed and proceeded with separately." Fed.R.Civ.P. 21. When a court "severs" a claim against a defendant under FED.R.CIV.P. 21, the suit simply continues against the defendant in another guise. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n. 6 (3d Cir. 1999). The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period. *Id. See also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006). Fowler's complaint acknowledges that she was initially a part of the *Tish* litigation. At paragraph three of her complaint, Fowler avers that "this case was originally filed as an Amended Complaint on October 30, 2006 under [the *Tish* case]". Therefore, the correct working-date for Fowler's complaint should be October 25, 2006, not June 14, 2007 as the District Court believed. This error is harmless, however, since either filing date is within the four-year statute of limitations, which would have run on September 23, 2007.

### III. A.

Standards of pleading have been in the forefront of jurisprudence in recent years. *210 Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips, supra.*, and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1955, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Iqbal* — decided two days before this case was argued, but acknowledged by counsel during oral argument — centered on a prison inmate's allegations that certain government defendants violated his constitutional rights by discriminating against him on the basis of his religion. The Supreme Court's opinion makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts. After *Iqbal*, it is clear that conclusory or

Fowler v. UPMC Shadyside    578 F.3d 203 (3d Cir. 2009)

"bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly*, 550 U.S. at 555, n. 3, 127 S.Ct. 1955.

*Iqbal* additionally provides the final nail-in-the-coffin for the "no set of facts" standard that applied to federal complaints before *Twombly. See also Phillips*, 515 F.3d at 232-33. Before the Supreme Court's decision in *Twombly*, and our own in Phillips, the test as set out in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), permitted district courts to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Under this "no set of facts" standard, a complaint effectively could survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

The Supreme Court began its rejection of that test in *Twombly*, holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *Phillips*, 515 F.3d at 232. In *Phillips*, we discussed the appropriate standard for evaluating Rule 12(b)(6) or 12(b)(1) motions in light of the anti-trust context presented in *Twombly*, holding that the acceptable statement of the standard remains: "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotations and citation omitted). The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.

Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal *211 conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiffs entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not `show[n]' — `that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Inasmuch as this is an employment discrimination case, we asked the parties to comment on the continued viability of the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In *Swierkiewicz*, the Supreme Court held that a complaint alleging unlawful employment discrimination did not have to satisfy a heightened pleading requirement. The complaint in that case was said to be sufficient because it "detailed the events leading to [the plaintiff's] termination, provided relevant dates, and included the ages and

nationalities of at least some of the relevant persons involved with his termination." 534 U.S. at 514, 122 S.Ct. 992. The Supreme Court in *Swierkiewicz* expressly adhered to *Conley's* then-prevailing "no set of facts" standard and held that the complaint did not have to satisfy a heightened standard of pleading. *Id. Swierkiewicz* and *Iqbal* both dealt with the question of what sort of factual allegations of discrimination suffice for a civil lawsuit to survive a motion to dismiss, but *Swierkiewicz* is based, in part, on *Conley*, which the Supreme Court cited for the proposition that Rule 8 "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." 534 U.S. at 512, 122 S.Ct. 992. We have to conclude, therefore, that because *Conley* has been specifically repudiated by both *Twombly* and *Iqbal* so too has *Swierkiewicz*, at least insofar as it concerns pleading requirements and relies on *Conley*.

The demise of *Swierkiewicz*, however, is not of significance here. We had already extended our holding in *Phillips*, to the employment discrimination context. In *Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315 (3d Cir. 2008), a terminated charter-school teacher brought an action claiming that she was fired for retaliation and her religious beliefs. The teacher pleaded that she was fired because of her "'Christian religious beliefs,' her refusal to engage in the `libations ceremony,' and her `complaints related to the ceremony.'" *Id.* at 318. We held that the "plausibility paradigm announced in *Twombly* applies with equal force to analyzing the adequacy of claims of employment discrimination." *Id.* at 322. Therefore, with these new standards in mind, we turn to the sufficiency of the allegations in Fowler's complaint. Fowler's allegations, of course, are assumed to be true. *See Pryor v. National Collegiate Athletic Association*, 288 F.3d 548, 559 (3d Cir. 2002).

B.

We conclude that Fowler's complaint has alleged sufficient facts to state a plausible failure-to-transfer claim. Under *Twombly* and *Iqbal*, we start with the question of whether Fowler has made factual allegations that state a plausible ground for relief. *Twombly*, 550 U.S. at 564 n. 8, 127 S.Ct. 1955. Although Fowler's complaint is not as rich

212  with detail as some *212 might prefer, it need only set forth sufficient facts to support plausible claims.[6] *Id.*

> [6] We note that the District Court inexplicably foreclosed Fowler from an opportunity to amend her complaint so as to provide further specifics — in the event the court found such details needed. The District Court's Case Management order of September 27, 2007 provided that "amended pleadings" would be due by October 24, 2007. Yet, the District Court dismissed Fowler's complaint "with prejudice" on October 19, 2007. Although the District Court erred, *see District Council, 47 v. Bradley*, 795 F.2d 310 (3d Cir. 1986), it is of no consequence because Fowler's complaint sufficiently pleaded her claims.

Taking her allegations as true, we find (1) that she was injured at work and that, because of this injury, her employer regarded her as disabled within the meaning of the Rehabilitation Act; (2) that there was an opening for a telephone operator at UPMC, which was available prior to the elimination of her position and for which she applied; (3) that she was not transferred to that position; (4) that UPMC never contacted her about the telephone operator position or any other open positions; and (5) that Fowler believed UPMC's actions were based on her disability. Under the "plausibility paradigm" we spoke of in *Wilkerson*, these averments are sufficient to give UPMC notice of the basis for Fowler's claim. *See* 522 F.3d at 322. The complaint pleads how, when, and where UPMC allegedly discriminated against Fowler. She avers that she was injured on the job and that her doctor eventually released her to

perform "sedentary work." She pleads that UPMC gave her a light-duty clerical position. She also avers that before the elimination of her light duty clerical position, she applied for a telephone operator position, but "was never contacted by UPMC regarding that position." Fowler further alleges that she contacted "Susan Gaber, a Senior Human Resources Consultant with the Defendant, UPMC Shadyside, regarding [a] number of vacant sedentary jobs," but that she was "never contacted by UPMC regarding any open positions." Fowler's complaint alleges that UPMC "failed to transfer" her to another position in September of 2003. Fowler further pleaded that she was "terminated because she was disabled" and that UPMC discriminated against her by failing to "transfer or otherwise obtain vacant and funded job positions" for her. The complaint repeatedly references the Rehabilitation Act and specifically claims she was terminated because of her disability. Therefore, she has nudged her claims against UPMC "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The factual allegations in Fowler's complaint are "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 564, 127 S.Ct. 1955. We have no trouble finding that Fowler has adequately pleaded a claim for relief under the standards announced in *Twombly* and *Iqbal, supra.*

## C.

As an alternative basis for dismissing Fowler's complaint, the District Court determined that her restriction to sedentary work could not legally constitute a disability. Although it applied an incorrect standard of review based on *Conley, supra.*, the District Court found that Fowler had failed to sufficiently plead that she was disabled.[7] Relying on our opinion in *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000), the District Court determined *213 that a restriction to "sedentary" duty is only a restriction from a class of jobs, not a disability in and of itself. *See Marinelli*, 216 F.3d at 364. This reliance was misplaced. The claims at issue in *Marinelli* and the cases we cited therein were disposed of at either the summary judgment or the judgment as a matter of law stage of the litigation. It is axiomatic that the standards for dismissing claims under FED.R.CIV.P. 12(b)(6) and granting judgment under either FED.R.CIV.P. 50 or FED.R.CIV.P. 56 are vastly different. As we have explained, "a motion for summary judgment is different in critical respects from a motion to dismiss for failure to state a claim. In addition to the fact that a plaintiff presumably has had an opportunity to obtain admissions during discovery, a motion for summary judgment is reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim." *ALA Inc. v. CCAIR, Inc.*, 29 F.3d 855, 863 n. 17 (3d Cir. 1994). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotations omitted).[8]

---

[7] The Supreme Court's decision in *Twombly* — and its repudiation of *Conley* — was available to the District Court at the time it dismissed Fowler's complaint. *Twombly* was announced on May 21, 2007 and the District Court dismissed Fowler's case on October 19, 2007.

[8] A motion made pursuant to Fed.R.Civ.P. 50 should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992), cert. denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).

213

At this stage of the litigation, the District Court should have focused on the appropriate threshold question — namely whether Fowler *pleaded* she is an individual with a disability. The District Court and UPMC instead focused on what Fowler can "prove," apparently maintaining that since she cannot prove she is disabled she cannot sustain a *prima facie* failure-to-transfer claim. A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry — it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination. . See *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999) (overruled on other grounds). Even post- *Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element." See *Graff v. Subbiah Cardiology Associates, Ltd.* No. 08-207, 2008 WL 2312671 (W.D.Pa. June 4, 2008) citing *Phillips*, 515 F.3d at 234. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim. *Powell*, 189 at 394.

Fowler is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations. Her complaint identifies an impairment, of which UPMC allegedly was aware and alleges that such impairment constitutes a disability under the Rehabilitation Act. Furthermore, her alleged limitation to sedentary work plausibly suggests that she might be substantially limited in the major life activity of working. See 29 U.S.C. § 705(20)(B); 29 C.F.R. §§ 1630.2(i), (j)(3); *cf. Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("When the major life activity under consideration [in a 214 disability discrimination suit] *214 is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). Of course, Fowler must ultimately prove that she is substantially limited in a recognized major life activity to prevail on her claim. At the pleading stage, however, Fowler's allegation regarding disability is sufficient. See *Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."). This is so even after *Twombly* and *Iqbal*.

D.

The District Court also dismissed Fowler's complaint because it concluded that Rehabilitation Act claims are inconsistent with class action litigation. We need not determine whether such claims are categorically inappropriate for class action litigation because the District Court also found that Fowler had not complied with Local Rule 23.1(c) which requires a plaintiff to move "for a determination . . . as to whether the case is to be maintained as a class action" within ninety days after filing a complaint. Fowler did not file such a motion, instead raising her request for class certification in a sur-reply brief to UPMC's motion to dismiss — well after the ninety-day period had expired. We are convinced that the District Court did not abuse its discretion in denying a motion for a class action determination which was untimely under the local rule.

IV.

As we have stated before, standards of pleading are not the same as standards of proof. *Phillips*, 515 F.3d at 246. We express no opinion on whether Fowler will ultimately be able to prove her claims. We will vacate the order dismissing Fowler's cause, and remand for further proceedings, albeit not as a class action.

Fowler v. UPMC Shadyside    578 F.3d 203 (3d Cir. 2009)

