# Exhibit E1

# NBME° SELF-ASSESSMENTS

## COMPREHENSIVE BASIC SCIENCE SELF-ASSESSMENT (CBSSA)

### EXAMINEE PERFORMANCE REPORT

**Name:** Zangara, Jason

**Test Date:** 3/27/2022

## Total Equated Percent Correct Score: 42%

The chart below represents the performance of a 2020 national cohort of students from LCME-accredited medical schools. Your score is shown along with a range that corresponds to low passing performance (above but near the passing standard) on the United States Medical Licensing Examination® (USMLE®) Step 1.

**Based on your performance on this CBSSA, your estimated probability of passing Step 1 if you test within a week is 4%.**



Your Total Equated Percent Correct Score

Your CBSSA likely score range (38 - 46)

LP: Step 1 Low-Pass Range

### Interpreting Your Overall Results:

- **Readiness for Step 1:** CBSSA performance can be used in conjunction with other information to assess readiness for Step 1.
- **Your CBSSA equated percent correct score** represents the percentage of the content that you have mastered. It has been statistically adjusted to account for slight variations in exam form difficulty and may be slightly lower or higher than the actual percentage of questions you answered correctly on this specific form.
- **Your estimated probability of passing Step 1** is calculated using a statistical model based on examinees who tested within one week of taking Step 1 for the first time. If you tested more than a week before you are scheduled to take Step 1, your estimated probability may be different. Your estimated probability is not a guarantee of your future Step 1 performance. Many factors (e.g., changing levels of knowledge) may impact your performance on Step 1.
- **Your likely score range** indicates how much your score could change if you tested again without learning or forgetting. Under those conditions, your CBSSA score would fall within 4 points of your current score two-thirds of the time.
- **A PDF version of your report** is typically available within 4 hours. To review your score before then, log in to MyNBME, click on the registration ID associated with this assessment, then click Review Your Results Interactively.

# NBME® SELF-ASSESSMENTS

COMPREHENSIVE BASIC SCIENCE SELF-ASSESSMENT (CBSSA)

EXAMINEE PERFORMANCE REPORT



Name: Zangara, Jason

Test Date: 3/27/2022

## Interpreting Your Content Area Results:

- **Your equated percent correct (EPC) scores** indicate the percentage of the content that you have mastered. EPC scores are statistically adjusted to account for slight variations in exam form difficulty and may be slightly lower or higher than the actual percentage of questions you answered correctly on this specific exam form.
- **The Comparison Group average EPC score** represents the estimated performance of the 2020 cohort of Step 1 first-takers from LCME-accredited medical schools on CBSSA.
- **The green boxes** below indicate whether your performance was statistically lower, about the same, or statistically higher than the performance of the comparison group after taking into account the precision of each content area score. Content area EPC scores are less precise, so small differences in those scores should not be overinterpreted.
- **You may use this report to identify areas of strength and weakness**, but keep in mind that some content areas are more difficult than others and some comprise larger portions of the exam. The percentage of items for each area may not add up to 100%.

|  | Your EPC Score | Comparison Group Average EPC Score | Score Comparison: Lower Same Higher | % of Items |
|---|---|---|---|---|
| **Performance by Physician Task** | | | | |
| MK: Applying Foundational Science Concepts | 42 | 79 | | 60-70% |
| PC: Diagnosis | 44 | 83 | | 20-25% |
| PBLI: Evidence-Based Medicine | 29 | 80 | | 4-6% |

# NBME® SELF-ASSESSMENTS

COMPREHENSIVE BASIC SCIENCE SELF-ASSESSMENT (CBSSA)

EXAMINEE PERFORMANCE REPORT



Name: Zangara, Jason

Test Date: 3/27/2022

| | Your EPC Score | Comparison Group Average EPC Score | Score Comparison: Lower Same Higher | % of Items |
|---|---|---|---|---|
| **Performance by System** | | | | |
| General Principles | 32 | 78 | | 12-16% |
| Behavioral Health & Nervous Systems/Special Senses | 48 | 80 | | 9-13% |
| Reproductive & Endocrine Systems | 45 | 81 | | 9-13% |
| Respiratory and Renal/Urinary Systems | 50 | 79 | | 9-13% |
| Blood & Lymphoreticular and Immune Systems | 44 | 81 | | 7-11% |
| Multisystem Processes & Disorders | 55 | 82 | | 6-10% |
| Musculoskeletal, Skin, & Subcutaneous Tissue | 46 | 82 | | 6-10% |
| Cardiovascular System | 21 | 79 | | 5-9% |
| Gastrointestinal System | 34 | 80 | | 5-9% |
| Biostatistics & Epidemiology/Population Health | 29 | 80 | | 4-6% |

# NBME® SELF-ASSESSMENTS

## COMPREHENSIVE BASIC SCIENCE SELF-ASSESSMENT (CBSSA)

### EXAMINEE PERFORMANCE REPORT



Name: Zangara, Jason

Test Date: 3/27/2022

| Performance by Discipline | Your EPC Score | Comparison Group Average EPC Score | Score Comparison: Lower Same Higher | % of Items |
|---|---|---|---|---|
| Pathology | 46 | 81 | | 44-52% |
| Physiology | 42 | 80 | | 25-35% |
| Microbiology & Immunology | 47 | 81 | | 16-26% |
| Biochemistry & Nutrition | 43 | 81 | | 14-24% |
| Pharmacology | 48 | 83 | | 15-22% |
| Gross Anatomy & Embryology | 33 | 76 | | 11-15% |
| Behavioral Sciences | 64 | 87 | | 8-13% |
| Histology & Cell Biology | 34 | 78 | | 8-13% |
| Genetics | 53 | 80 | | 5-9% |



**Jason A. Zangara, MPH, MA, FF/NREMT, AIFireE**
573 Sidorske Avenue
Manville, NJ 08835
(908) 672-0626
firefighterjazzyj@yahoo.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*URGENT\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Motion Returnable Today\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

September 19, 2022

**VIA HAND DELIVERY**

**Honorable Georgette Castner**
District Court of New Jersey
Clarkson S. Fisher U.S. Court House
402 East State Street
Room 2020
Trenton, NJ 08608

**Re: Zangara v. National Board of Medical Examiners Civil No. 3:22-cv-01559-GC-LHG**

Dear Judge Castner,

      Please accept this letter brief in lieu of a more formal brief in response to, or in Opposition to the "Motion" I received from the Defendants on Friday, September 16. I apologize for the late reply, but the clerks office was already closed when I received the motion but it's stamped at 16:58 so I'm not sure how exactly the Motion was even filed. It is filed as a "Motion" but I was not served with a notice of motion from Defendants so I will assume that it is their intention to be decided today. However, this serving after the clerk's office is closed business is unacceptable as it is clear they were trying to deliberately prevent me from filing any opposition to their "Motion". As you are aware I don't have access to the electronic filing system

to submit documents, only attorneys are allowed to utilize it. I can only receive the emails from the clerk's office when they enter information into the system, that's how I found out.

I apologize for adding yet more briefing to this file, but I cannot leave this unopposed despite the deviousness as to how it was filed and yet to be served on me. I will be brief, but still must respond to the issues raised by Defendants, as their "Motion" to add their brief should be denied. Nothing in their brief is true or adds any addition information to the record, it is only a collection of misrepresentations, the same as they were making before and I will prove that to you in this letter.

### First Point

Defendants have stated that the regulation created by the Department of Justice that I have been referencing is inapplicable as they have stated on page 5 of their reply brief:

*"Despite Mr. Zangara's insistence that he is bringing a different type of claim under the regulatory provision found at 28 C.F.R. § 36.309(b)(1), see Pl. Br. at 20, this regulation can be no broader than the statutory provision that it implements. Section 12189 of the ADA requires that tests subject to that provision be offered "in a place and manner accessible to persons with disabilities," or "alternative accessible arrangements" must be made"*

They then stated this again in their "Sur Sur Reply" but this time say that this regulation **does not apply to the scoring**

*"NBME's point with respect to the applicability of 42 U.S.C. § 12189 and its implementing regulations, which is quoted in part in Mr. Zangara's sur-reply, related to whether the statute and regulations are even applicable in the context of this test scoring dispute. NBME was not attempting to "overturn" the Ramsay decision; indeed, NBME's argument does not relate to the Ramsay decision at all. Moreover, NBME has not moved to dismiss Mr. Zangara's claim based on the inapplicability of the Section 12189 implementing regulation relied upon by Mr. Zangara. As NBME stated in its reply....."*

I feel like a broken record of stating over and over again that the regulation I am relying on is this one which specifically states "examination results" the "results" of an "exam" is how you know if you passed or fail which is a synonym for "scoring". That's why I stated this regulation in my complaint because it specifically says "the examination results" I did not quote 42 U.S.C. § 12189, I quoted 28 C.F.R. §36.309 which states:

(b) Examinations.
(1) Any private entity offering an examination covered by this section must assure that -
        (i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, **the examination results** accurately reflect the individual's aptitude or achievement level or whatever other factor the

examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure);

I will end this argument by confirming that my rational is justified by what is known as "Chevron Deference" which states that courts give deference to the regulation created by the agency to enforce the statue. See Chevron USA Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) **(Holding that Government Agencies regulation is given difference when it is a permissible construction of the statue and congress has not spoken of the issue directly)** Chevron later used this ruling in a case under the ADA in which they were the defendants and it was affirmed by the Supreme Court  See Chevron USA Inc. v. Echazabal, 536 U.S. 73, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002) **(Holding that a Government Agency has the authority to create and enforce regulations regarding the Americans with Disabilities Act (ADA))**

## Second Point

Defendants claim that my jurisdiction argument should not be accepted but then they counter the argument. This approach clearly shows that they are not confidant in their own argument of stating " the jurisdiction argument shouldn't be allowed" Well if it shouldn't be allowed then why do you counter it? They know that the right thing to do is to give the courts all the information to make an informed decision but realize that the correct information will hurt them so they throw in some extra "just in case". I'm going to include my "just in case" because I believe this court is more concerned about making an informed decision over which one of us is right or which one of us is wrong.

For that I would like to bring attention to the Supreme Court case of Ford Motor Co. v Mont Eighth Judicial District Court, 141 S. Ct. 1017, 592 U.S., 209 L. Ed. 2d 225 (2021) that I found this weekend. As I have read you had a successful career practicing in the area of Products Liability before you were appointed to serve a judge so you probably know this case better than we do. However I would still like to mention some things about the case and

how I think it applies to this matter. Essentially the debate was that Ford was incorporated in Delaware and Headquartered in Michigan. Vehicles malfunctioned killing one woman in Montana and in a separate incident in Minnesota, a man was injured by a defect in his vehicle. The suits were filed in Montana and Minnesota and Ford moved to dismiss both of them claiming that the vehicles were not manufactured in Montana or Minnesota so the courts could not fulfill the "Personal Jurisdiction" requirement. Both Courts rejected these arguments so Ford appealed to the United States Supreme Court. The Supreme Court Affirmed the rulings confirming that Ford could be held responsible. The court explained that since Ford not only sold its vehicles in the states, but also served the market in these states so they must be held responsible.

This is common sense, as the woman died and Ford is saying "you didn't file your papers at the "correct" courthouse so we are not liable". That is not intended to be the purpose of a "Personal Jurisdiction" as no competent person could come to that conclusion and it is clearly not as intended by the courts or congress; essentiality giving someone a "get out of jail free card". The holding of this case was that the connection of the Plaintiffs claims and Defendants activities meet the requirements for specific jurisdiction.

The question is, how does this Ford case apply here to this matter? As this is a Supreme Court Case it is binding precedent for its rationale or why the court decided it view was correct. It is irrelevant that they are taking about cars and we are taking about test scoring. When those specifics are removed (Just like I explained in the other cases in my original response) the reasoning still applies regardless of the type of case that it is.

The Defendants have stated that they are incorporated in Washington DC and their primary place of business is Philadelphia Pennsylvania; just as Ford stated that they were incorporated in Delaware but Headquartered in Michigan. Ford created a product outside of these states, but they were sold, marketed, maintained and utilized in the states. Defendants created a

product outside of New Jersey which is the exam, and they serve the market in New Jersey since their exams are required to get licensed in New Jersey. As stated:

- N.J. Admin. Code § 13:35-3.1

*Effective December 1994, the standard medical and surgical licensing examination in the State of New Jersey shall be the United States Medical Licensing Examination (USMLE)*

The key word is "in", "the examination in the State of New Jersey" The examination is taken "in" New Jersey. Not in Washington where Defendants are incorporated, not in Pennsylvania where their primary place of business is but "in" New Jersey. The Defendants have to "serve the market" in New Jersey since their exams are required "in" New Jersey. It should require no discussion about if the Defendants charge for their exams or not because it is irrelevant since there is a market "in" New Jersey for their exams. This is the same as Ford "serving the market" in Montana and Minnesota even though the vehicles were not built there, they do not have a primary place of business or headquarters there and the "injury" did not occur there.

It is therefore irrelevant if the complaint states or does not state "I took my test in New Jersey" and it is irrelevant if the complaint states or does not state "the exam was scored in Philadelphia". In applying Ford to this matter, it really doesn't matter what state I took my exam in with the exam being scored in Philadelphia. The rational or the Supreme Court still applies because it is meant to make sure those who break the law are held accountable. It is also irrelevant that the Administrative code I am citing speaks directly of "USMLE" and not "CBSE"

Defendants have stated in their brief that they sponsor the United States Medical Licensing Exam (USMLE) and they developed subject examinations including the Comprehensive Basic Science Examination (as stated on pages 2 & 3 of their initial brief.). This is the same as the court had stated in Ford where the business was held liable, they did not same this ruling only applies to certain models of vehicles. It applied to all of them regardless since they were all products produced and marketed by the Defendants. The end goal is holding the

Defendants both in Ford and in this case accountable for the injuries that they caused, not giving them a "get out of jail free card"

Therefore the rational and the holding in Ford is applicable to this matter and it is the precedent that this court should utilize. See Ford Motor Co. v Mont Eighth Judicial District Court, 141 S. Ct. 1017, 592 U.S., 209 L. Ed. 2d 225 (2021)( **Holding that Plaintiffs claims that "arise out of or relate to" Defendants business and marketing activities, those activities gave sufficient claim for the states to assert personal jurisdiction over the liability lawsuits; Therefore connection between the plaintiffs' claims and defendants activities in the forum States is close enough to support specific jurisdiction.**)

### Third Point

The Defendants still are misrepresenting to this court that their examinations are not "graded on a curve" or "in comparison to others". If I had the "smoking gun" Defendants are claiming they want, I would have made a cross motion for Summary Judgment. The whole point of Discovery is to prove that Defendants are guilty, I am not required to do this in a pleading. As stated in Defendants own brief, they are referencing docket numbers to their own prior briefs to argue this statement not what is actually attached to my original complaint (and I remind you as I briefed, they submitted an "updated one" which they are trying to get you to believe is the one attached to my complaint when it is not; theirs was created after mine was already filed with the clerk's office and part of the record)(See Section XI. The Score Report Submitted by Defendants pages 47-49)

Since they want this court to take this "Judicial Notice" Defendants own website contradicts the statements that they have made before this court. Since the court is on "Judicial Notice" to their website according to Defendants I bring this link with the document that I have printed and attached to the courts attention (See Exhibit A)
https://www.nbme.org/sites/default/files/2020-01/CBSE%20Score%20Report.pdf

The report at this link explains the Comprehensive Basic Science Examination and as it states clear as day:

"The "examination score is scaled to a mean of 70 and a standard deviation of 8.........The vast majority of scores range from 45 to 95, and although the scores have the "look and feel" of percent-correct scores, they are not" (citing the PDF file available on Defendants website)

The second link I would like to bring to the courts attention is this one:

https://www.nbme.org/sites/default/files/2022-02/For_Educators_Common_Questions_2022_Score_Report_Changes_Updated_2-23.pdf

This is also from the Defendants website, and looks similar to the report that they had this court take "Judicial Notice" of. However when examined side by side, it can be seen they are attempting to commit fraud upon this court again with the document they submitted. What they are trying to do is push the responsibility of "passing or failing' onto my school so they can avoid liability. It can be seen clear as day here what is missing (and added) from the copy they submitted and what is actually online. Keep in mind when looking at the date of the document that I have attached, it is issued at the end of February as referenced in Defendants brief as the time the scoring actually changed. The one I'm submitting is dated February 23, 2022 and the one they submitted is dated December 15, 2021. The information missing essentially states Defendants set all of these scores and the schools have to access them, These are some of the things they have removed so the court does not see them as listed on page 4 (See Exhibit B)

- **What scores on the equated percent correct scale correspond to the USMLE Step 1 low-pass range?** The low-pass range goes from 62 to 68 on the equated percent correct scale. This range represents CBSE scores corresponding to Step 1 performance starting at the passing standard plus 2 standard errors of measurement.

- **How can I locate my school's CBSE Minimum Passing Score (MPS) on the new Equated Percent Correct (EPC) scale?** Many schools set a minimum passing score on CBSE and will need to either locate their current minimum passing score on the new equated percent correct scale or set a new minimum passing score because of the change in the Step 1 passing standard that takes

effect on January 26, 2022. You have access to a PDF and downloadable conversion table in the MyNBME Services Portal. The table links the equated percent correct score to the equivalent three-digit score.

- **Why isn't there an approximate equivalent equated percent correct score in the score conversion table for every 3-digit score?** There is not an approximate equivalent equated percent correct score for every 3-digit score because the 3-digit score scale has more possible score values than the equated percent correct score scale. If you need to locate the approximate equivalent equated percent correct score for a 3-digit score that is not shown in the conversion table, you should use the score that corresponds to the next highest 3-digit score as the approximate equivalent equated percent correct score.

- **Are the new equated percent correct scores the same as the old 2-digit scaled scores that were reported for CBSE before the transition to Step 1 3-digit scores in 2019?** No, the new equated percent correct scores are calculated differently and are interpreted differently than the old 2-digit scores. The new equated percent correct scores should not be compared to the old 2-digit scores reported prior to 2019

If Defendants are looking for some type of smoking gun, after reading the above statements then seeing this, I think a smoking gun was found, but not in their favor:

- **May I share the CBSE conversion table with my students?** No, the conversion table is not intended to be shared with students. It was created and provided to help faculty and learning specialists adjust during the transition from the 3-digit scores to equated percent correct (EPC) scores.

I'm going to write this twice to emphasis its importance:

- <u>**May I share the CBSE conversion table with my students? No, the conversion table is not intended to be shared with students. It was created and provided to help faculty and learning specialists adjust during the transition from the 3-digit scores to equated percent correct (EPC) scores.**</u>

The third and final link that should be included in this "Judicial Notice" Defendants have argued that the court utilize is this one from their website which appears to be the score interpretation guide for the Clinical Science Examinations

https://www.nbme.org/sites/default/files/2021-02/Clinical_Score_Interpretation_Guide_2021.PDF

This document specifically states the two names of the scoring methodologies that I stated on pages 44-46 of my original brief where I singled out the Angoff and Hofstee methods as being utilized by Defendants to grade all of their examinations. They keep saying over and over again Plaintiffs allegations are conclusionry to any other examinations (See like everything they submitted) (Also See the printout of this link at Exhibit C)

The claims that I had made in the compliant being graded on a curve and comparing me to others are backed up by both public records (mainly the Defendants website) and stated in the literature I referenced in my original argument. It would be highly inappropriate at this point in time to give any consideration to Defendants statements about these exams not being "curved" or "compared" to others when there is a "methodology" that not even public knowledge. I can't even get access to this table without a court order so how can I include this in my complaint? Defendants know this and are using it as some kind of "shield" to prevent the court getting and reviewing those tables. I pleaded that they were doing it, supplied research papers that they are doing it, now I'm utilizing this "Judicial Notice" concept they taught me to show you that it's there. They know it's there that's why" conveniently" it's not included in any of the documents they referred to for "Judicial Notice" Therefore dismissing the complaint on that ground would be inappropriate.

## Conclusion

I apologize your honor for there being so much briefing and information relating to this matter when all I'm asking is for them to grade my exams on their own merit, in which they end up deciding the criteria anyway. I truly find it concerning that there is so much of a fight over

such a simple issue, as it not like my request could be interrupted as trying to seek some sort of an advantage or something.

I know these additional briefs are not traditional but I believe they are necessary to put all the information in front of this court so it can make an informed decision, just as I put all the information in front of my patients in the hospital. I've been transparent as possible, providing all the information that I can, not knowing if it's going to help or hurt my issues before this court. I feel that it is worth noting that at this point the arguments have diminished on behave of the Defendants as this briefing has gone on and gotten shorter, and it looks like if I understood this material properly, the last three are nonexistent anymore. Concluding all of Defendants requests to add this brief to the record and all motions they have before this court should be denied.

Please advise if you have any questions or require any additional information from me. Thank you for your immediate attention to this matter.

Very truly yours,

*[signature]*

**Jason A. Zangara, Pro Se**
**Attorney for Plaintiff**