# Exhibit E

Adam Mandelsberg, Bar No. 065532013
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jason Zangara,<br><br>               Plaintiff,<br><br>    v.<br><br>National Board of Medical Examiners,<br><br>               Defendant. | Civil No. 3:22-cv-01559-GC-LHG<br><br>Motion Returnable November 7, 2022 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

I.    NBME AND NBME SUBJECT EXAMINATIONS..................................3

II.   MR. ZANGARA'S ALLEGATIONS ............................................................7

ARGUMENT ................................................................................................9

I.    PRELIMINARY INJUNCTION STANDARD ............................................9

II.   MR. ZANGARA HAS NOT MADE AND CANNOT MAKE A
      "CLEAR SHOWING" THAT HE IS LIKELY TO SUCCEED ON
      THE MERITS ..............................................................................................10

      A.    Mr. Zangara's ADA Claim Is time-barred.........................................11

      B.    In All Events, Mr. Zangara's ADA Claim Is Meritless ....................12

III.  MR. ZANGARA WILL NOT BE HARMED IN THE ABSENCE OF
      PRELIMINARY INJUNCTIVE RELIEF...................................................16

IV.   A PRELIMINARY INJUNCTION WOULD HARM NBME. ..................18

V.    AN INJUNCTION WOULD NOT SERVE THE PUBLIC
      INTEREST. ..................................................................................................19

CONCLUSION..................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acierno v. New Castle County*,
   40 F.3d 645 (3d Cir. 1994) ................................................................. 10

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000) ................................................................ 17

*B.P.C. v. Temple Univ.*,
   No. 13-7595, 2014 WL 4632462 (E.D. Pa. Sept. 16, 2014) .............................. 18

*Bach v. LSAC*,
   No. 13-888, 2014 U.S. Dist. LEXIS 124632
   (M.D.N.C. Feb. 14, 2014) .................................................................... 19

*Baer v. Nat'l Bd. of Med. Exam'rs*,
   392 F. Supp. 2d 42 (D. Mass. 2005) ....................................................... 18

*Boggi v. Med. Rev. & Accrediting Council*,
   415 F. App'x 411 (3d Cir. 2011) ........................................................... 13

*Datto v. Harrison*,
   664 F. Supp. 2d 472 (E.D. Pa. 2009) ...................................................... 12

*Estrada v. Trager*,
   No. 01-4669, 2002 WL 31053819 (E.D. Pa. Sept. 10, 2002) ............................. 12

*Falchenberg v. N.Y. State Dep't of Educ.*,
   642 F. Supp. 2d 156 (S.D.N.Y. 2008) ...................................................... 15

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
   765 F.3d 205 (3d Cir. 2014) ................................................................ 17

*Karipidis v. ACE Gaming LLC*,
   No. 09-3321, 2010 WL 2521209 (D.N.J. June 9, 2010) ................................... 15

*Krpan v. Registry of Interpreters for the Deaf*,
   167 F. Supp. 3d 774 (E.D. Va. 2016) ...................................................... 15

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Mahmood v. Nat'l Bd. of Med. Exam'rs*,
    2012 WL 5364689 (E.D. Pa. 2012) .......................................................................18

*Ramsay v. Nat'l Bd. of Med. Exam'rs*,
    968 F.3d 251 (3d Cir. 2020) ...............................................................................18

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) .........................................9

*Rose v. Seton Hall Univ.*,
    No. 13-7797, 2015 WL 9049438 (D.N.J. Dec. 15, 2015) ...................................11

*Skelton v. New Jersey Dep't of Correction*,
    No. 19-18597, 2020 WL 6376652 (D.N.J. Oct. 30, 2020)...................................15

*Taylor v. Henderson*,
    632 F. App'x 70 (3d Cir. 2015) ...........................................................................12

*Walker v. U.S. Sec'y of the Air Force*,
    7 F. Supp. 3d 438 (D.N.J. 2014).........................................................................15

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................9, 17, 19

**STATUTES**

42 U.S.C. § 12101(b)(1) ..........................................................................................11

42 U.S.C. § 12102(1)(A)..........................................................................................15

42 U.S.C. § 12189...................................................................................13, 14, 15

N.J. Stat. Ann. 2A:14-2............................................................................................11

**REGULATIONS**

28 C.F.R. § 36.105(d)(1)(v) .....................................................................................15

28 C.F.R. § 36.309 ...................................................................................................13

28 C.F.R. § 36.309(b)(2)...........................................................................................13

## INTRODUCTION

Although his current academic standing is unknown to defendant, plaintiff Jason Zangara says that he is enrolled at a medical school located on the Caribbean island of Curaçao. Complaint at 5 (Dkt. 1). Proceeding *pro se*, he filed this lawsuit against the National Board of Medical Examiners ("NBME") because—for "almost six years"—he has been unable to pass an examination that is developed by NBME but used by his medical school as part of its curriculum. *Id.* The exam is known as the Comprehensive Basic Science Examination ("CBSE"). *Id.*

Mr. Zangara asserts that he is disabled, and that "those who are disabled will always score lower" on the CBSE because it is "graded on a curve." *Id.* He claims that this alleged "grading" method violates the Americans with Disabilities Act ("ADA"). *Id.*

In the motion now before the Court, Mr. Zangara asks the Court to preliminarily enjoin NBME from scoring the CBSE and other unspecified NBME exams using this alleged grading method. *See* Proposed Prel. Inj. at 2 (Dkt. 19-2). According to Mr. Zangara, his performance on the CBSE has been graded not on the basis of "what he knows, but only how he compares to others who have taken the exams." *Id.* He seeks a preliminary injunction to "prevent" NBME from "scoring his exams and other exams solely on the bases of comparison to others." Pl. Br. in Support of App. for Prel. Inj. at 4 (Dkt. 19-1) ("Pl. Br.").

-1-

There is no basis for the Court to enjoin NBME from doing something that it does not do and has never done.  Simply stated, Mr. Zangara is wrong about how the CBSE is scored.  His entire lawsuit is premised on the incorrect proposition that his CBSE exams have not been scored based on how he answered his exam questions, but on how his performance compared to that of other examinees.  That is not the case.  Mr. Zangara's CBSE scores have reflected *his* answers.  His medical school established the passing score that it requires its students to achieve on the CBSE, and if he did not meet that score it is because he did not answer enough questions correctly.  He was not "graded on a curve," nor was his score determined by comparing his performance to the performance of other examinees.

For numerous reasons, including the fundamental fact that Mr. Zangara's lawsuit is based upon an incorrect understanding of how the CBSE is graded, he has no likelihood of succeeding on the merits of his claim.  This precludes any award of preliminary injunctive relief because he cannot satisfy the first preliminary injunction factor.  Mr. Zangara's motion also fails because he has not shown that he faces irreparable harm if the requested injunction is denied, that the balance of equities tip in his favor, or that the requested injunction is in the public interest.  The Court should therefore deny his motion for a preliminary injunction.

## BACKGROUND

### I.     NBME and NBME Subject Examinations

NBME is a non-profit organization whose mission is to help protect public health through the development and administration of high-quality examinations for health professionals.  Decl. of Carol Morrison ¶ 2 (filed herewith).

NBME co-sponsors the United States Medical Licensing Examination ("US-MLE"), which is made up of three "Step" exams—Steps 1, 2 and 3.  *Id.* ¶ 3.  As part of their mission to help ensure safe and effective patient care, licensing authorities across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine.  *Id.*

Although he references the USMLE in his papers, Mr. Zangara has not taken any of the Step exams, and this case does not involve the USMLE.  Instead, it involves the CBSE, which is a subject matter examination that NBME develops, along with other subject matter examinations, to help medical schools assess the educational achievement of their students in specific content areas involving the basic and clinical sciences.  *Id.* ¶ 5.

At schools that use the exam in their curriculum, the CBSE is typically taken during the first two years of a student's medical school education.  Its content is representative of what students will encounter when they take the USMLE Step 1 licensing exam, so a student's performance on the CBSE gives the student and his

-3-

medical school a sense of how the student will perform on Step 1.  *Id.* ¶ 5.

Medical schools, not NBME, decide whether they will require their students

to take the CBSE.  *Id.* ¶ 7.  Only a school may purchase the exam, not an individual

student.  *Id.* ¶ 8.  If the exam is required, the schools, not NBME, decide whether

their students must achieve a minimum score and what that score will be.  *Id.* ¶ 7.

For Mr. Zangara's medical school, the Caribbean Medical University, that score ap-

pears to be 194.  *See* "Academics," https://cmumed.org/academics-overview/gradu-

ation-requirements/.

Students can take the CBSE at their schools, at a third-party testing center

operated by a company known as Prometric (the exam is computer-based).  Morrison

Decl. ¶ 9.  NBME does not administer the exam.

If an examinee seeks disability-based testing accommodations on an NBME

subject examination, a decision whether to approve the request would be made by

his or her school.  *Id*. ¶ 17.  The school would then advise NBME on the accommo-

dations it wishes to grant.  *Id*.

An examinee's score on the CBSE and other NBME subject examinations is

based upon the number of correct answers that the examinee provides.  *Id*. ¶ 10.  If

an examinee does not answer a question, that counts as a wrong answer and results

in a lower score.  *Id*.  An examinee's score is <u>not</u> based upon any sort of "grading

curve," nor is it determined by comparing the examinee's performance to that of

other examinees. *Id.* ¶¶ 10-11.[1]

Prior to early 2022, Mr. Zangara's CBSE scores were reported as a scaled score that approximated a USMLE Step 1 score. *Id.* ¶ 13. CBSE scores are now reported, however, as a percentage. *Id.* Examinees receive a Total Equated Percent Correct Score that "represents the percentage of the content that [the examinee has] mastered," with scores ranging from 0% to 100%. *See id.* Ex. M.

As was true when examinees received a scaled score, an examinee's "percent correct score" is based upon the number of correct answers the examinee provided—not on any grading curve or comparison to the performance of other examinees. Morrison Decl. ¶¶ 10-11. A "raw" score is determined based upon the number of correct and incorrect answers (which include questions that were not answered), and an "equated" score is then determined using a statistical process that adjusts scores to account for varying levels of question difficulty across different test forms. *Id.* ¶ 13. Equating is a standard assessment practice which ensures that a score for an exam taken on one date is equivalent to—*i.e.*, has the same meaning as—a score from another administration of that exam, even though the questions on the two exams were not identical. *Id.* ¶ 14.

CBSE exams are scored electronically as part of the computer-based test

---

[1] Although not relevant here, *see supra* at 3, Step 1 of the USMLE is also not scored on a "curve." *Id.* ¶ 12.

delivery process. *Id.* ¶ 16. NBME then provides the score reports to the schools that purchased the exam for use in their curriculum. *Id.* If they choose to do so, schools can provide copies of the score reports (now called "Performance Reports") to their students. *Id.*

Mr. Zangara has taken the CBSE multiple times, most recently on February 11, 2022. *See* Dkt. 1-4 (CBSE Score Report). His school authorized him to test with 50% additional testing time, presumably on the basis of one of the alleged impairments that he mentions in his Complaint (ADHD and a learning disability). *See* Morrison Decl. Ex. L (accommodation notification form from CMU). He scored a 174, well short of his school's minimum passing score of 194 for the CBSE. *Id.* On other administrations of the CBSE taken in recent years, he scored 173, 162, and 173. *See* Morrison Decl. Exs. D, I, and J.

In his preliminary injunction papers, as in his Complaint, Mr. Zangara confuses the information he received regarding his performance on the CBSE with other information found on his score reports—namely, information that showed how his performance (which was based on how *he* answered the questions on *his* exam form) compared to the performance of others who took the CBSE. Such comparative information is routinely provided to individuals who take standardized tests, to give them a broader understanding of their performance. For example, individuals who take the ACT college admissions test receive numeric scores that reflect their

individual performance, as well as percentile scores that allow them to compare their performance to others who took that exam.[2] The same is true for individuals who take the CBSE.

As shown on the CBSE score report from February 2022 that is attached to the Complaint, Mr. Zangara received a numeric score that reflected how he answered the questions on his exam. *See* Dkt. 4-1. He was also told (i) how his performance on the various subject areas that are tested on the CBSE compared to his overall performance on the exam,[3] (ii) how his performance in each subject area compared to how other examinees performed in that area, and (iii) what his individual performance on the CBSE suggests about his "readiness" to take Step 1 of the USMLE. *See id.* at 1-4.

## II.   Mr. Zangara's Allegations

Mr. Zangara alleges that he has ADHD and learning disabilities. Complaint at 5 (Dkt. 1).[4] Based on exhibits to his Complaint, he is (or was) a student at the

_____

[2] *See, e.g.,* "ACT Test Scores: Understanding Your Scores", https://www.act.org/content/act/en/products-and-services/the-act/scores/understanding-your-scores.html.

[3] The CBSE has three broad content areas (Physician Tasks, Systems, and Disciplines), and within each area there are questions on a range of subjects (*e.g.,* providing a Diagnosis, the Reproductive & Endocrine Systems, Biostatistics & Epidemiology, Pharmacology, Gross Anatomy & Embryology, Histology & Cell Biology). *See* Dkt. 1-4 at 2-4.

[4] Although Mr. Zangara alleges that he has both ADHD and learning disabilities, the evaluation report that he attached to his Complaint refers only to an "established

Caribbean Medical University School of Medicine (Dkt. 1-3 at 4, Dkt. 1-4 at 2), which is located on the island of Curaçao in the southern Caribbean Sea, off the coast of Venezuela. *See* https://cmumed.org/about/.

Mr. Zangara graduated from high school in 2004, received a BA degree in fire administration from online Columbia-Southern University in 2016, and had completed a full year of medical school at Caribbean Medical University as of February 2018, per the medical evaluation report attached to his Complaint. Dkt. 1-3 at 4. His current medical school status, however, is not reflected in his papers. Mr. Zangara reportedly had a 1.5 GPA after his first year of medical school, *id.*, and he alleges he now resides in New Jersey, Dkt. 1 at 1.

According to Mr. Zangara, his medical school requires its students "to take and 'pass' the examinations offered by NBME including [the] Comprehensive Basic Science Exam, Comprehensive Clinical Science exam, shelf exams along with US-MLE Step 1, 2 and 3." Complaint at 5. He alleges that he has "been trying for the past almost 6 years to pass the Comprehensive Basic Science Exam," and that the CBSE "is discriminatory against myself and others because they do not give us a fair

---

diagnosis of ADHD." Dkt. 1-3 at 2. Mr. Zangara states that he provided "portions" of other medical records to the Court as attachments to his Certification in Support of Application for Preliminary Injunction (Dkt. 19-3), and he "invite[s] the court to request whatever [additional] documents it would like," *id.*, but he did not provide those medical records to NBME ("in accordance with the court rules I will make these documents available for inspection by defendants or copies available at their expense," *id.*), and the documents are not accessible via PACER.

chance to prove that we are competent in what we are being tested on." *Id.* According to Mr. Zangara, the exams are "graded on a curve" that compares his performance to other examinees who previously took the exam, and he "does not compare the same as others who took the exam." *Id.* He opines that "[p]eople with true learning disabilities will have lower abilities to do things to begin with and there will always be a gap between what they can do and what others can do.... Here, by grading on a curve those who are disabled will always score lower." *Id.*

Similar allegations are found in his preliminary injunction papers. *See, e.g.*, Pl. Br. 1 ("Plaintiff has accused the Defendants of not grading his examinations on their own merit, but based solely on others who took the exams prior and their exams based on those who took the exams prior to them. Meaning the only criteria to passing the exam is that you score as the others did before you.") (Dkt. 19-21).

## ARGUMENT

### I.    Preliminary Injunction Standard

A preliminary injunction is an "extraordinary" remedy that should not be granted unless a plaintiff shows that the four prerequisite factors all support the requested relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). A plaintiff must make a "clear showing" that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Id.* at 20, 22; *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

The burden is even higher when a plaintiff seeks a mandatory preliminary injunction that would order a defendant to take certain actions. "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). Mr. Zangara is seeking such a mandatory injunction (*i.e.*, an order that directs NBME to change the way the CBSE and other NBME exams are scored). As noted, his requested relief is entirely misguided because it asks the Court to enjoin NBME from scoring the CBSE and other NBME exams in a way that is not actually used to score those exams, but it is mandatory as framed and thus triggers an even higher burden of proof in showing that a preliminary injunction is warranted.

## II.  Mr. Zangara Has Not Made and Cannot Make a "Clear Showing" that He Is Likely to Succeed on the Merits

Mr. Zangara's claims fail for multiple reasons, as noted in NBME's pending motion to dismiss. (Dkt. 12). First, he has not shown that the Court has personal jurisdiction over NBME. *See* Dkt. 12 at 4-7. Second, his ADA claim is barred by the applicable two-year statute of limitations. *Id*. at 9-10. And third, his Complaint fails to state a claim under the ADA because—among other reasons—it relies upon an inaccurate factual premise and seeks relief that would not be warranted in any event under the applicable provision of the ADA even if the provision applied in this context. These deficiencies compel dismissal of his Complaint. They also compel

-10-

denial of the pending motion for a preliminary injunction.

NBME focuses here on the statute of limitations issue, and on Mr. Zangara's inability to prevail on the merits of his ADA claim even if it were timely.

### A.   Mr. Zangara's ADA Claim Is Time-Barred

Mr. Zangara attempts to assert a claim under Title III of the Americans with Disabilities Act ("ADA"). *See* Complaint at 3 (referencing 42 U.S.C. § 12101(b)(1) and 42 U.S.C. §§ 12181-12189). "[C]laims under the ADA ... are subject to the statute of limitations applicable to personal injury actions in the state in which the trial court sits." *Rose v. Seton Hall Univ.*, No. 13-7797, 2015 WL 9049438, at *3 (D.N.J. Dec. 15, 2015) (citations omitted). A two-year statute of limitations therefore applies to Mr. Zangara's claim under New Jersey law. *Id.* (citing N.J. Stat. Ann. 2A:14-2).

Mr. Zangara's allegations reveal that his ADA claim is barred by the two-year statute of limitations. According to Mr. Zangara, he has "been trying for the past almost 6 years to pass the Comprehensive Basic Science Exam." Complaint at 5; *see id.* at 6 ("I want to be a doctor and have been held up for the past 6 years."). Because he challenges a purported scoring methodology that has allegedly kept him from "passing" the CBSE examination "for the past almost 6 years," his claim accrued "almost 6 years" ago and is barred by the two-year statute of limitations.

The fact that Mr. Zangara took the CBSE as recently as February 2022 does

not change this outcome. Mr. Zangara cannot wait to sue until after he fails to pass the test repeated times, when his failure to pass is attributed to the same allegedly discriminatory reason. *Cf. Taylor v. Henderson*, 632 F. App'x 70, 73-74 (3d Cir. 2015) (affirming district court's dismissal of ADA claim filed in 2012 based on his denial of parole in 2012, where he was also denied parole for the same reason in 2008 and "knew or should have known of that alleged injury at that time").

The "continuing violation theory" does not apply here, because it "is restricted to situations like those alleging a hostile work environment, involving repeated actions that may not be actionable on their own." *Datto v. Harrison*, 664 F. Supp. 2d 472, 486 (E.D. Pa. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)); *see also Estrada v. Trager*, No. 01-4669, 2002 WL 31053819, at *5 (E.D. Pa. Sept. 10, 2002) ("[W]ere the fact of a plaintiff's injury because of a policy that is still in place enough to state a continuing violation, the statute of limitations would become a dead letter."). Mr. Zangara's claim is not based on cumulative acts by NBME that would not be actionable on their own; it is based upon an alleged "grading" policy that has purportedly been in place and applied to Mr. Zangara since 2016. Mr. Zangara's ADA claim is therefore barred by the two-year statute of limitations.

**B.    In All Events, Mr. Zangara's ADA Claim Is Meritless**

A specific provision in Title III of the ADA applies to private entities offering

certain types of examinations. *See* 42 U.S.C. § 12189. Section 12189 provides as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

Mr. Zangara relies upon this provision and its implementing regulation. *See* Complaint at 5 (discussing 28 C.F.R. § 36.309); Pl. Br. 16-17; *see also Boggi v. Med. Rev. & Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) ("the District Court properly assessed [the pro se plaintiff's] ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam).

As an initial matter, it is not clear that Section 12189 even applies to NBME in the context of the CBSE and other subject examinations that NBME develops, because those exams are "offer[ed]" to medical school students by their medical schools, not by NBME. Moreover, when applicable, Section 12189 addresses the "place and manner" in which covered examinations are administered, not the manner in which such exams are scored. *See also* 28 C.F.R. § 36.309(b)(2) ("Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."). Therefore, while Section 12189 might have required Mr. Zangara's medical school to approve testing accommodations when he took the CBSE

-13-

(assuming he meets the ADA definition of disabled and that the ADA would apply extra-territorially to a medical school in the Caribbean), Section 12189 does not by its terms impose any obligations *on NBME* in this context.

It appears that his medical school allowed Mr. Zangara to take the CBSE with testing accommodations, at least on his most recent administration in February 2022. *See* Morrison Decl. Ex. L (noting that Mr. Zanagara was provided with 50% more testing time than other examinees receive when testing under standard conditions). The purpose of such testing accommodations is to enable examinees who are disabled within the meaning of the ADA to take the exam in an accessible manner. *See* 42 U.S.C. § 12189. Accommodations allow disabled examinees to test on a level playing field with other examinees. Therefore, having received such accommodations on the CBSE, Mr. Zangara presumptively tested on a level playing field with other examinees, all of whom are then subject to the same scoring standards. Stated differently, to the extent he qualifies as disabled under the ADA, his impairment was addressed by way of the accommodations he received when he tested, and there is no basis for scoring his performance any differently than other examinees. This is a further reason why his ADA claim fails.

Finally, even if Mr. Zangara had shown that he is disabled within the meaning of the ADA,[5] and even if Section 12189 applied to NBME with respect to a subject

---

[5] To be disabled under the ADA, Mr. Zangara must have a physical or mental

matter exam that a medical school requires its students to take, and even if Section

12189 addressed not just the way that exams are administered but also how they are

scored, and even if Mr. Zangara's rights under the ADA were not already fully ad-

dressed by his receipt of testing accommodations when he took the CBSE, and even

if requiring a testing entity to change its scoring methodology could ever be a rea-

sonable accommodation that does not cause an undue burden to the testing entity,[6]

his ADA claim would fail because it is based on facts that do not exist.   Mr.

Zangara's claim that the CBSE is graded "on a curve" or by comparing his perfor-

mance to that of other examinees is simply wrong, as discussed above.   He demands

---

impairment that substantially limits him in one or more major life activities as com-
pared to most people in the general population.  42 U.S.C. § 12102(1)(A); 28 C.F.R.
§ 36.105(d)(1)(v).   "Merely having an impairment does not make one disabled....
Claimants also need to demonstrate that the impairment limits a major life activity."
*Walker v. U.S. Sec'y of the Air Force*, 7 F. Supp. 3d 438, 452 (D.N.J. 2014).

Mr. Zangara alleges that he has been diagnosed with ADHD and learning disabili-
ties.   Complaint at 5. He does not, however, allege that he is substantially limited in
any major life activities, and this "creates a defect in the Complaint." *See* Karipidis
*v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010);
*see also Skelton v. New Jersey Dep't of Correction*, No. 19-18597, 2020 WL
6376652, at *12 (D.N.J. Oct. 30, 2020) ("Plaintiff's allegations under the ADA ...
fail to state a claim because he does not sufficiently allege that his diabetes substan-
tially limits a major life activity.") (citation omitted).

[6] *See, e.g., Krpan v. Registry of Interpreters for the Deaf*, 167 F. Supp. 3d 774,
791 (E.D. Va. 2016) (requested changes to exam format would fundamentally alter
the exam); *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 163-64
(S.D.N.Y. 2008) (exempting plaintiff from demonstrating same level of compe-
tency in measured skills as other examinees would fundamentally alter the nature
of the test), *aff'd*, 338 F. App'x 11 (2d Cir. 2009).

that his CBSE score be determined based on his individual performance, which is exactly what already happens.  NBME cannot be found to have violated the ADA by doing something that it has never done.  That would be like finding that a building owner violated the ADA by not providing accessible pathways for wheelchair users, where the pathways are and have always been accessible.

Much of Mr. Zangara's preliminary injunction argument relates to whether he is disabled within the meaning of the ADA.  However, for present purposes only, NBME does not contest that Mr. Zangara is disabled within the meaning of the ADA.  The Court need not resolve that issue in deciding his preliminary injunction motion, however, because the motion fails on other grounds.

### III.   Mr. Zangara Will Not Be Harmed in the Absence of Preliminary Injunctive Relief.

Mr. Zangara effectively asks the Court to presume irreparable harm in the absence of an injunction where there is a violation of the ADA. *See* Pl. Br. 36-37.  This argument improperly assumes that there has been such a violation. There has not.  And, as shown by dozens of ADA cases in which the irreparable harm factor is appropriately included as a separate, important factor in a court's preliminary injunction analysis, irreparable harm is not simply presumed in ADA cases. *Cf. Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 212-217 (3d Cir. 2014) (explaining why presumption of irreparable harm in Lanham Act cases is contrary to the Supreme Court's decision in *Winter* requiring a plaintiff to

make a "clear showing" that she is entitled to relief).

Mr. Zangara next appears to suggest that he will continue to fail the CBSE unless NBME changes how it scores the exam, and that this will delay either his medical school education or his ability to become a licensed doctor.  Pl. Br. 36-37. However, in addition to his inaccurate premise regarding how the CBSE is actually scored, this argument reflects speculation at multiple levels and therefore cannot sustain a preliminary injunction, because the "risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). First, it is speculative whether Mr. Zangara will pass or fail the CBSE if he re-tests. If he studies and learns the materials, he might well pass. *See Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) ("[I]t is not certain that [plaintiff] will suffer the predicted harm; she may pass the test."). Second, it is speculative whether passing the CBSE exam will have any impact whatsoever on the pace of his medical school education or how quickly he could become a licensed physician.  Mr. Zangara must still graduate from his medical school, where he has apparently attained a GPA of 1.5, Dkt. 1-3 at 4; gain admission to and satisfactorily complete a residency program; and then pass his three USMLE exams.  No evidence has been offered on these remaining hurdles, any one of which could easily derail his desire to become a physician.

In all events, "courts in this Circuit have held that delays in testing or

education do not amount to irreparable harm." *B.P.C. v. Temple Univ.*, No. 13-7595, 2014 WL 4632462, *5 (E.D. Pa. Sept. 16, 2014) (citing, *inter alia*, *Mahmood v. Nat'l Bd. of Med. Exam'rs*, 2012 WL 5364689 (E.D. Pa. 2012)).  While the Third Circuit has found that being forced to withdraw from medical school might constitute irreparable harm in a given case, *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262-63 (3d Cir. 2020), Mr. Zangara has provided no evidence of any such risk here. To the contrary, he asserts that he is currently enrolled in his medical school, despite having failed to achieve the minimum passing score that his school set for the CBSE. *See* Complaint at 5.  And neither his Complaint nor his preliminary injunction papers provide evidence of any time constraint that would necessitate a preliminary injunction.

Mr. Zangara has thus failed to establish that he is likely to suffer imminent and nonspeculative irreparable harm in the absence of preliminary injunctive relief.

**IV.   A Preliminary Injunction Would Harm NBME.**

Mr. Zangara argues that NBME would not be harmed "because [Plaintiff] has shown a reasonable likelihood that [Defendants are violating the ADA]." Pl. Br. 38 (alterations in original).  This argument incorrectly posits that an alleged violation of the ADA allows the Court to ignore the other factors in the preliminary injunction test—as well as being incorrect about the existence of an ADA violation. *See Winter,* 555 U.S. at 26 (emphasizing "the importance of assessing the balance of equities

and the public interest in determining whether to grant a preliminary injunction….").

## V.   An Injunction Would Not Serve the Public Interest.

Mr. Zangara argues that the enforcement of the ADA and increasing the number of licensed physicians is in the public interest. This argument, however, is based on the incorrect premise that Mr. Zangara has shown that he is disabled under the ADA (he has not) and that he is likely to succeed on the merits of his claim (he is not). It is *not* in the public interest to alter the scoring of standardized tests—in this instance, a test used by a medical school to evaluate the knowledge of its students—based on unsupported and inaccurate assumptions made by a student who has not performed well on the test. As other courts have noted, "[a]lthough the public certainly has an interest in the enforcement of the ADA, ... the public also has an interest in the fair administration of standardized tests." *Bach v. LSAC*, 2014 U.S. Dist. LEXIS 124632 at *7-8 (M.D.N.C. 2014).

## CONCLUSION

Mr. Zangara's motion for a preliminary injunction should be denied.

Dated:  October 17, 2022          **PERKINS COIE LLP**

By: */s/ Adam Mandelsberg*
Adam Mandelsberg, Bar No. 065532013
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners