<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON ZANGARA,<br><br>              Plaintiff,<br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>              Defendant. | Civil Action. No. 22-1559<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**I.     INTRODUCTION**

This matter comes before the Court upon Plaintiff Jason Zangara's ("Plaintiff") Application for a Preliminary Injunction ("API"). (API, ECF No. 19-1.) Defendant National Board of Medical Examiners ("Defendant" or "NBME") filed its Memorandum of Law in Opposition (Opp., ECF No. 25), and Plaintiff filed a Reply (Reply, ECF No. 26). Defendant also filed for leave to file a Sur-Reply Memorandum of Law in Opposition to Plaintiff's Motion (Sur-Reply, ECF No. 27-1.) The parties then engaged in further motion practice, each submitting additional briefing for the Court's consideration. (ECF Nos. 28-30.)

For the reasons stated below, Plaintiff's Application for a Preliminary Injunction is **DENIED** for lack of personal jurisdiction and Defendant's Motion for Leave to file a Sur-Reply is **DENIED** as moot.

**II.     BACKGROUND**

On March 18, 2022, Plaintiff filed this action (Compl., ECF No. 1) alleging violations of the Americans with Disabilities Act ("ADA"). (*Id.* at 5.) Plaintiff, a current medical student,

1

alleges that Defendant NBME is not complying with the requirements of the ADA because of the manner in which several required medical exams are scored. (*Id.*) More specifically, Plaintiff asserts that the exams offered by NBME, such as the Comprehensive Basic Science Exam ("CBSE"), are "discriminatory against [Plaintiff] and others because [the exams] do not give [medical students] a fair chance to provide that [they] are competent in what [the students] are being tested on." (*Id.*) The Complaint ultimately requests that the Court enjoin Defendant from grading any of Plaintiff's exams, or the exams of others who have disabilities "on a curve and deciding passing or failing based on comparing [Plaintiff] to others." (*Id.* at 6.) Plaintiff further requests that all exams that he has already taken and will take in the future be "evaluated [on their] own merit to determine if [Plaintiff] meet[s] the objective requirements to practice medicine, not where [Plaintiff] stand[s] compar[ed] to other test takers." (*Id.*)

According to the Complaint, Plaintiff is a resident of Manville, New Jersey. (*Id.* at 1.) The Complaint identifies Defendant as having an address in Philadelphia, Pennsylvania and as a citizen of Pennsylvania. (*Id.* at 2-3.) Plaintiff also asserts that he took the CBSE and subject examinations in New Jersey, (Certification in Support of Application for Preliminary Injunction ("Pl.'s Cert."), ECF No. 19-3, ¶¶ 21-25) and did so for a fee (Reply, 31-32).

On September 26, 2022, Plaintiff filed the Application for a Preliminary Injunction. (API.) In the Application, Plaintiff asserts that he is a 36-year-old male who was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in 1994. (API, 5; Plaintiff's Neuropsychological Evaluation "Pl.'s Psych. Eval." Exhibit A, ECF No. 1-3, 2.) Plaintiff further asserts that he has been receiving treatment for his ADHD and other learning disabilities since he was in elementary school, and that such treatment continued throughout middle and high school, including the development and implementation of an Individualized Education Plan ("IEP"), and attending a

full-time special education program during high school. (API, 5.) Plaintiff alleges this disability falls under the protections of the ADA. (API, 12.)

After Plaintiff completed his primary and collegiate education, he applied to and was accepted at Caribbean Medical University on the island of Curacao. (Pl.'s Cert., ¶ 17.) In order to complete his medical school program, Plaintiff needs to pass several examinations: the CBSE, the United States Medical Licensing Examination Step 1 ("USMLE Step 1")[1], Clinical Subject Examinations, and the Comprehensive Clinical Science examination. (Pl.'s Cert, ¶18.)

At the time Plaintiff filed his Application, Plaintiff was a third-year medical student at Caribbean Medical University. (API, 3; Pl.'s Cert., ¶ 17.) For the past six years, Plaintiff has been trying, but unable to, pass the CBSE developed by Defendant, which is part of his medical school's curriculum. (Compl., 5; Pl.'s Cert, ¶¶ 17-20.)[2] Plaintiff alleges that he has not been able to pass because the exam is "graded on a curve which compares [him] to a group of people who took the examination prior[,]" and because "th[o]se with a low score automatically fail." (Compl., 5.) Plaintiff alleges that this practice violates the ADA because "those with disabilities will most likely [be] dropped out," even though they met the score that shows they are competent to practice medicine. (*Id.* at 3, 5.)

Plaintiff asserts that Defendant, and not his medical school, have set the "low pass" score for the CBSE as 62 to 68. (API, 6.) Plaintiff alleges:

> Therefore in order to "Pass" CBSE, as required by his school[,] Plaintiff must score a 62 "corresponding to Step 1 Performance starting at the passing standard plus 2 standard errors of measurement[.]" (*See* [Pl.'s Cert.] at 24[.]) As stated on the CBSE

---

[1] According to Defendant's moving papers, Plaintiff needs to pass Step 1, Step 2, and Step 3 exams. (Declaration of Carol Morrison, Ph.D. ("Morrison Decl."), ECF No. 25-1, ¶ 3.)

[2] The Court notes that Plaintiff appears to have taken the CBSE and Subject Examinations but does not appear to have taken any Step examination. (Pl.'s Cert., ¶¶ 20-23.)

3

> Plaintiff took on March 27, 2022, Plaintiff[']s score is shown "along with a range that corresponds to low passing[.]" (*See* [Pl.'s Cert.] at 23[.]) His score is "corresponding to Step l Performance starting at the passing standard plus 2 standard errors of measurement[.]" (*See* [Pl.'s Cert.] at 24[.]) Plaintiff[']s exam results specified that the "performance of a 2020 national cohort of students" was utilized to estimate his "probability of passing step l within a week[.]" (*See* [Pl.'s Cert.] at 23[.]) Therefore in order to obtain the passing score of 62 set by Defendants (*See* [Pl.'s Cert.] at 24) and required by his school (*See* [Pl.'s Cert.] at 19) he must score a 62 in the range on the "equated percent scale" which "represents CBSE scores corresponding to Step l Performance starting at the passing standard plus 2 standard errors of measurement[.]" (*See* [Pl.'s Cert.] at 24). The data utilized to "convert" the "equated percent correct" however is not public knowledge for the CBSE as stated by Defendants[.] (*See* [Pl.'s Cert.] at 24[.]) This requires a "table" in which Schools are prohibited from sharing with students[.] (*See* [Pl.'s Cert.] at 24) The CBSE does not grade on the objective standard to test if someone is qualified to safely treat patients, but a "low pass" in a "range" "from 62 to 68" that is "corresponding to Step 1 Performance starting at the passing standard plus 2 standard errors of measurement[.]" (See [Pl.'s Cert.] at 24)[.]

(API, 7.)

Plaintiff alleges that he will be irreparably harmed because he will not be able to pass the Step 1 exam under the current grading system, and therefore, without the preliminary injunction, will fall behind his peers, be disadvantaged in his continuing studies, and be delayed in completing his medical training. (API, at 37.) Plaintiff further alleges that the preliminary injunction will serve the public interest by upholding the ADA's objective of eliminating discrimination based on disability and serve the public interest by training more physicians. (API, 38-39.)

Defendant asserts that it co-sponsors the USMLE, which is made up of three "Step" exams – Step 1, Step 2, and Step 3. (Opp., 3.) Defendant also developed the CBSE exam at issue here and asserts that the exam "provide[s] medical schools with a tool for measuring examinees' understanding of the basic sciences." (Morrison Decl., ¶ 4.) More specifically, it is a "general, integrated achievement test covering material typically learned during basic science education . . .

. The exam reflects content coverage on USMLE Step 1 and uses the same item formats. Performance on the CBSE helps medical schools identify students' weaknesses prior to taking the Step 1 examination." (*Id.* at ¶ 5.) Medical schools may purchase these exams from the NBME and set their own policies and procedures for "whether their students must achieve a minimum score on the test and, if so, what that score will be." (*Id.* at ¶¶ 7-8.)

Defendant alleges that an examinee's score on the CBSE is based on the number of correct answers they provide on the exam and are not based on a comparison of how the examinee performed compared to other examinees. (*Id.* at ¶ 10.) Contrary to Plaintiff's allegations, Defendant alleges that the CBSE and other NBME examinations are not scored on a curve. (*Id.* at ¶ 11.) The NBME uses a Total Equated Percent Correct Score (Equated Score) that represents the examinee's knowledge demonstrated on the exam in a range from 0% - 100%. (Opp., 4.) To get this Equated Score, the NBME determines the raw score of the exam then uses a "statistical process that adjusts scores from different test forms in light of the different levels of question difficulty." (*Id.*) "Equating is a standard assessment practice which ensures that a score for an exam taken on one date is equivalent to . . . a score from another administration of that exam, even though the questions on the two exams were not identical." (*Id.* at 5.) Defendant alleges that what Plaintiff construes as information showing he is being graded compared to his peers is actually "comparative information [ ] provided to individuals who take standardized tests, to give them a broader understanding of their performance." (*Id.* at 6.)

### III.   LEGAL STANDARD

"It is settled law that a preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *HouseMaster SPV LLC v. Burke*, No. 21-13411, LEXIS 116288, at *14 (D.N.J. June

30, 2022) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  When demonstrating that a preliminary injunction is warranted, a plaintiff must establish the following elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest[.]"  *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-cv-04984, 2014 U.S. Dist. LEXIS 151178, at *4 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health Inc. v. Johnson and Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)).  The standard for granting a TRO is the same as that for a preliminary injunction.  *Thompson v. Dep't of Corr.*, No. 19-16391, 2022 U.S. Dist. LEXIS 234326, at *39 (D.N.J. Dec. 30, 2022) (citing *Nutrasweet Co. v. Vit-Mar Enters.*, 112 F.3d 689, 693 (3d Cir. 1997).  To establish a likelihood of success on the merits of their claims, plaintiffs must show a "reasonable probability of success.'"  *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp 3d 354, 363 (D.N.J. Oct. 6, 2020) (quoting *Issa v. Sch. Dist. Of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017)).  "'[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial.'"  *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262 (3d Cir. 2020) (quoting *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994)).  The harm must be "likely" to occur "in the absence of an injunction." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 213 (3d Cir. 2014).  "'A plaintiff's failure to establish any element . . . renders a preliminary injunction inappropriate.'"  *HouseMaster*, 2022 LEXIS 116288, at *14 (quoting *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999) [hereinafter *Nutrasweet II*]).

## IV.     DISCUSSION

As stated above, the Court can only grant a preliminary injunction if Plaintiff has established a likelihood of success on the merits, that he is likely to suffer irreparable harm, that the threatened injury outweighs the injury Defendant would suffer under the injunction, and that the injunction would not be adverse to the public interest. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020). However, the question of personal jurisdiction has been raised by Defendant and is an issue the Court must address before the Court addresses the merits of the preliminary injunction. *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229-30 (3d Cir. 2002) ("[P]reliminary matters such as ... personal jurisdiction ... should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." (internal citations and quotations omitted)).

Defendant asserts that Plaintiff has not made a showing that this Court has personal jurisdiction over NBME. (Opp. 10.) "Once the issue whether a court lacks personal jurisdiction over a defendant is raised, 'the plaintiff bears the burden of showing that personal jurisdiction exists.'" *New Earthshell Corp. v. Lycos Internet Ltd.*, No. 14-cv-7665, 2015 U.S. Dist. LEXIS 3741, at *6-7 (D.N.J. Jan. 12, 2015) (quoting *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007)). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990). Therefore, for a New Jersey court to exercise jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair

y

play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Boswell v. Cable Servs. Co.*, No. 16-4498, 2017 U.S. Dist. LEXIS 100708, at *7 (D.N.J. June 28, 2017). *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 119 (3d Cir. 2017) (quoting *Daimler AG*, 571 U.S. 137) (Generally, a "corporation is 'at home' in the State of its 'place of incorporation and principal place of business.'").

"[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities." *Boswell,* 2017 U.S. Dist. LEXIS 100708, at *7. *See Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Generally, "[t]he inquiry as to whether specific jurisdiction exists has three parts." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have purposefully directed [its] activities at the forum. . . . Second, the litigation must arise out of or relate to at least one of those activities. . . . And third, if the prior two requirements are met, a court may consider whether the exercise of

8

jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citations and internal quotations omitted).

To establish that a defendant "purposefully directed [its] activities" toward the forum state, the lawsuit "must arise out of contacts that the 'defendant *himself*' creates with the forum," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), not merely out of "defendant's contacts with persons who reside [in the forum]," *id.* at 285 (citing *Int'l Shoe*, 326 U.S. at 319). "The plaintiff cannot be the only link between the defendant and the forum." *Id.*; *see also O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (noting that "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient").

The Court finds that Plaintiff has not pled sufficient facts, even liberally construed in light of Plaintiff's *pro se* status, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013), for the Court to conclude that Defendant is subject to New Jersey's exercise of general personal jurisdiction. The Third Circuit has acknowledged that it is "'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Malik*, 710 F. App'x at 564. Plaintiff has pled that Defendant is a citizen of Pennsylvania. (*See* Compl., 2.) Although Plaintiff has not pled the location of Defendant's state of incorporation, this Court can take judicial notice of such information. *See Amansec v. Midland Credit Mgmt.*, No. 2:15-cv-08798, 2017 U.S. Dist. LEXIS 18975, *8 n.38 (D.N.J. Jan. 20, 2017) (taking judicial notice of website listing entity's "headquarters and state of incorporation"). According to the District of Columbia corporation registry, Defendant is incorporated in the District of Columbia. Government of the District of Columbia, *Welcome to Scout*, https://scout.dcra.dc.gov/login (last visited March 20, 2023). *See also* (Def.'s Ex. A, ECF

9

No. 12-1) (identifying Defendant as having a principal place of business in Pennsylvania and being incorporated in Washington D.C.). Thus, Defendant is not organized under the laws of New Jersey.

The Supreme Court has made clear that even a corporation that "operates in many places can scarcely be deemed at home in all of them." *Malik*, 710 F. App'x at 564 (quoting *Daimler AG*, 571 U.S. at 137). Defendant cannot be deemed at home in New Jersey based on the facts as pled by Plaintiff. As Defendant does not have a principal place of business in New Jersey and is not incorporated in New Jersey, the Court concludes there is no basis for general personal jurisdiction. *See Jager v. Fleet Mgmt. Rd. Serv.*, No. 14-8130, 2021 U.S. Dist. LEXIS 204324, at *11 (D.N.J. Oct. 22, 2021) ("There is no suggestion that [defendant] is actually domiciled in New Jersey. No viable basis for general jurisdiction is suggested.").

As Plaintiff has not established general personal jurisdiction over Defendant, Plaintiff must establish that the Court has specific jurisdiction to maintain the preliminary injunction before the Court. To do so, Plaintiff must establish that Defendant purposefully directed activities at residents of the forum, that the litigation is the result of that purposeful availment, and that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Boswell v. Cable Servs. Co.*, No. 16-4498, 2017 U.S. Dist. LEXIS 100708, at *8 (D.N.J. June 28, 2017).

Plaintiff's Complaint does not allege that Defendant has purposefully availed itself or directed its activities to the state of New Jersey. Plaintiff does not allege in his Complaint that Defendant has conducted any business in New Jersey. Plaintiff's sole assertion is that he took the CBSE and subject examinations for a fee in New Jersey. (Pl.'s Cert., ¶¶ 23-25.) However, without more, the Court concludes this is not sufficient to demonstrate specific personal jurisdiction over Defendant.

"Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). At this time, the Court is not satisfied that Defendant has sufficient contacts with New Jersey to establish personal jurisdiction, and thus "the Court need not analyze the remaining two steps of the specific jurisdiction analysis." *Katz v. Am. Council of Learned Socies.*, No. 21-4306, 2021 U.S. Dist. LEXIS 191906, at *17 (D.N.J. Oct. 5, 2021). Without personal jurisdiction over Defendant, this Court need not address the remaining arguments in the preliminary injunction and must deny Plaintiff's Application.

Finally, the Court notes that Defendant has filed a Motion for Leave to file a Sur-Reply pursuant to Local Rule 7.1(d)(6) to address allegations in Plaintiff's Reply that "falsely accuses Dr. Morrison of committing perjury in her declaration, and NBME of submitting "fraudulent" documents to the Court." (ECF No. 27.) Because the Court has denied Plaintiff's Preliminary Injunction Application based on a lack of personal jurisdiction, the Court concludes that Defendant's request to submit additional information is now moot. The Court will also not consider the parties' additional submissions, as they do not assist the Court in its jurisdictional analysis. (*See* ECF Nos. 28-30.)

V.   **CONCLUSION**

Based upon the facts and allegations before the Court at this time, the Court is not satisfied that it has personal jurisdiction over Defendant and thus the Court must deny Plaintiff's Application for a Preliminary Injunction. Defendant's Motion to File a Sur-Reply is denied as moot.

Dated: April 6, 2023                                                          */s/ Georgette Castner*

                                                                                          GEORGETTE CASTNER, U.S.D.J.