Adam Mandelsberg, Bar No. 065532013
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jason Zangara,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>National Board of Medical Examiners,<br><br>　　　Defendant. | Civil No. 3:22-cv-01559-RK-JBD<br><br>Motion Returnable August 21, 2023 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................3

I.    MR. ZANGARA'S ALLEGATIONS .............................................3

II.    NBME SUBJECT EXAMINATIONS .........................................5

III.    COMPREHENSIVE BASIC SCIENCE SELF-ASSESSMENT................7

IV.    THE USMLE ..........................................................................8

V.    EXAM SCORING .....................................................................8

ARGUMENT ....................................................................................12

I.    PRELIMINARY INJUNCTION STANDARD .............................12

II.    MR. ZANGARA HAS NOT MADE AND CANNOT MAKE A "CLEAR SHOWING" THAT HE IS LIKELY TO SUCCEED ON THE MERITS ........................................................................13

     A.    Mr. Zangara has not established personal jurisdiction......................13

         1.    Legal standard ........................................................14

         2.    Mr. Zangara's amended jurisdictional allegations..................15

         3.    Mr. Zangara has failed to state a basis for exercising general jurisdiction over NBME ...............................16

         4.    Mr. Zangara has failed to state a basis for exercising specific jurisdiction over NBME ............................18

     B.    Mr. Zangara's Claims Are Meritless................................20

III.    MR. ZANGARA HAS NOT SHOWN IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF................24

IV.    A PRELIMINARY INJUNCTION WOULD HARM NBME. ..................26

## **TABLE OF CONTENTS**
### **(continued)**

**Page**

V.    AN INJUNCTION WOULD NOT SERVE THE PUBLIC
      INTEREST. ..................................................................................................27

CONCLUSION ......................................................................................................28

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**CASES**

*Adams v. Freedom Forge Corp*.,
204 F.3d 475 (3d Cir. 2000) .................................................................25

*B.P.C. v. Temple Univ.*,
No. 13-7595, 2014 WL 4632462 (E.D. Pa. Sept. 16, 2014)..............................25

*Bach v. LSAC*,
2014 U.S. Dist. LEXIS 124632 (M.D.N.C. 2014) ..........................................28

*Baer v. Nat'l Bd. of Med. Exam'rs*,
392 F. Supp. 2d 42 (D. Mass. 2005)......................................................25

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) .................................................................21

*Boggi v. Med. Rev. & Accrediting Council*,
415 F. App'x 411 (3d Cir. 2011) ...........................................................21

*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ..................................................................26

*Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs*,
2015 WL 9489507 (E.D. Tex. 2015), *rep. and rec. adopted*, 2016
WL 890675 (E.D. Tex. 2016)................................................................17

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..........................................................................16

*Datto v. Assoc. of Amer. Med. Colleges*,
2019 WL 12470329 (S.D. Fla. 2019), *rep. and rec. adopted in
relevant part*, 2019 WL 12470330 (S.D. Fla. Aug. 5, 2019) ...........................19

*Doe v. Nat'l Bd. of Med. Exam'rs*,
199 F.3d 146 (3d Cir. 1999) ............................................................21, 22

*Doe v. Nat'l Conf. of Bar Exam'rs*,
2017 WL 74715 (E.D.N.Y. 2017) .....................................................17, 19

## <u>TABLE OF AUTHORITIES</u>
### <u>(continued)</u>

<u>Page(s)</u>

*Falchenberg v. N.Y. State Dep't of Educ.*,
   642 F. Supp. 2d 156 (S.D.N.Y. 2008), *aff'd*, 338 F. App'x 11 (2d
   Cir. 2009) ................................................................................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).................................................................................15

*Hone v. Ereaux*,
   No. 21-479, 2022 WL 205670 (D.N.J. Jan. 24, 2022) .........................14

*Jager v. Fleet Mgmt. Rd. Serv.*,
   2021 WL 4932765 (D.N.J. 2021) ..........................................................18

*Krpan v. Registry of Interpreters for the Deaf*,
   167 F. Supp. 3d 774 (E.D. Va. 2016) .....................................................23

*Mahmood v. Nat'l Bd. of Med. Exam'rs*,
   2012 WL 5364689 (E.D. Pa. 2012) ........................................................26

*Murray v. John Wood Cmty. College*,
   No. 19-20920, 2020 WL 4670927 (D.N.J. Aug. 12, 2020)..................14

*Norkunas v. Southern Pennsylvania Transp. Auth.*,
   No. 19-627, 2019 WL 6337913 (D.N.J. Nov. 27, 2019)...............14, 16

*Ramsay v. Nat'l Bd. of Med. Exam'rs*,
   968 F.3d 251 (3d Cir. 2020) ...................................................................26

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ...................................................................12

*Rosenberg v. Whitehead*,
   2011 WL 868809 (D.N.J. 2011) .............................................................21

*Sampson v. Nat'l Bd. of Med. Exam'rs*,
   2023 WL 3162129 (2d Cir. 2023) ..........................................................25

*Shah v. Ceasars Interactive Entertainment*,
   2020 WL 5912349 (D.N.J. 2020) ...........................................................24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Spann v. New Mexico Bd. of Bar Exam'rs*,
  2022 WL 3226373 (D.N.M. 2023), *rep. and rec. adopted*, 2022
  WL 16702197 (D.N.M. 2023) ....................................................................16, 17

*Stampone v. Fopma*,
  567 F. App'x 69 (3d Cir. 2014) ..........................................................................19

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .........................................................................................12, 27

**STATUTES**

29 U.S.C. § 794(a) ...........................................................................................21

42 U.S.C. § 12189 .................................................................................21, 22, 23

**REGULATIONS**

28 C.F.R. § 36.309 ...................................................................................22, 23

## **INTRODUCTION**

Plaintiff Jason Zangara ("Mr. Zangara") filed this *pro se* lawsuit against the National Board of Medical Examiners ("NBME") in March 2022, alleging in his original Complaint that he had been trying "for the past almost 6 years" to pass the Comprehensive Basic Science Examination ("CBSE"), an examination developed by NBME that was required by his medical school. Complaint and Request for Injunction (Dkt. 1) at 5.[1] He claimed that NBME violated the Americans with Disabilities Act ("ADA") by grading exams on a curve that compared his performance to a group of people who previously took the examination and "automatically drop[ping] out the lowest percentiles." *Id*.

Mr. Zangara's claims in his amended Complaint are based on essentially the same premise, but are now spread over a 184-page, 836-paragraph pleading with 86 separate counts. *See* Dkt. 51 ("Complaint). Mr. Zangara's claims relate to exams he has taken in the past, *see* Complaint ¶¶ 125-274, and exams he says he expects to take in the future, *see id.* ¶¶ 275-824—"even if he is not currently eligible or scheduled to take them," *see, e.g.*, ¶ 278.  He also includes a claim challenging "an exam not yet created [by NBME] or required [by his medical school]," *id.* ¶ 827 (eighty-

---

[1] NBME previously argued based on this allegation that Mr. Zangara's complaint was time-barred. *See* Dkt. 12-1 at 14-15. Mr. Zangara omits any reference to this allegedly lengthy testing history in his current amended Complaint. *See* Dkt. 51.

sixth count). Mr. Zangara postures his claims under the ADA, Section 504 of the Rehabilitation Act ("Section 504"), Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Civil Rights Act ("NJCRA"). *Id.* ¶ 124.

Mr. Zangara says he is currently a student at the Caribbean Medical University (which, if accurate, means he has been attending medical school for 10 years). *Id.* ¶ 14 and Ex. 51-8 (showing a 2013 enrollment date). He alleges that he is disabled and argues that he (and any individual with a disability) "do[es] not have the same ability as those who are not disabled," *id.* ¶ 64, and thus will "score[ ] lower" on any NBME exam, *id.* ¶ 87, purportedly because they are being compared to "an average student with normal abilities," *id.* ¶ 84; *see also id.* ¶ 101. According to Mr. Zangara, he has been unable to pass examinations "administered and graded" by NBME, *id.* ¶ 50, because his scores are compared "to the scores of others who took the exam prior," *id.* ¶ 53, and the exams "all are set up to discriminate against those with disabilities," *id.* ¶ 54.

In the preliminary injunction motion now before the Court,[2] Mr. Zangara argues that he is being irreparably harmed due to a delay in his medical education "by

---

[2] Mr. Zangara's prior motion for a preliminary injunction (Dkt. 19) was denied by the Court on April 6, 2023, based on a failure to demonstrate personal jurisdiction in this court. *See* Dkts. 40-41.

not having his exams scored properly." Plaintiff's Brief in Support of Application Pursuant to Rule 65 (Dkt. 53-3) ("Pl. Br.") at 1.[3] He seeks an order preliminarily enjoining NBME to score exams "objectively to determine passing or failing not [in] relation to the performance of others, on a curve, using percentiles or any other method." Proposed Order to Show Cause (Dkt. 53-2) at p. 3.

For numerous reasons, including the fundamental fact that Mr. Zangara's lawsuit is based upon an incorrect understanding of what the ADA requires and how NBME scores exams, he has no likelihood of succeeding on the merits of his claims. This precludes any preliminary injunctive relief because he cannot satisfy the first preliminary injunction factor. Mr. Zangara's motion also fails because he has not shown that he faces irreparable harm if the requested injunction is denied, that the balance of equities tip in his favor, or that the requested injunction is in the public interest. The Court should therefore deny his motion.

## **BACKGROUND**

### I.   **Mr. Zangara's Allegations**

Mr. Zangara claims to be a current student at Caribbean Medical University, located on the island of Curacao, *id.* ¶ 14, although he also claims to reside in New

---

[3] Mr. Zangara filed identical substantive papers and requests for relief at Docket 52, but it appears that the Court is treating the filing at Docket 53 as the operative motion and NBME is therefore citing to the filings at Docket 53. *See* Minute Order (July 28, 2023). For the avoidance of doubt, NBME's opposition and arguments apply equally to the filings at Docket 52.

Jersey, *id.* ¶ 2. He alleges he has ADHD and learning disabilities and is substantially limited in reading, writing, comprehension, and mathematics. *Id.* ¶¶ 15-16.

Mr. Zangara graduated from high school in 2004, received a BA degree in fire administration from online Columbia-Southern University in 2016, and as of February 2018 had completed a full year of medical school at Caribbean Medical University with a 1.5 GPA, per the medical evaluation report attached to his amended Complaint. Dkt. 51-9 at 4. Mr. Zangara describes "barely making it through" the pre-medical program at Caribbean Medical University and "scoring the absolute minimal on most of his exams." Dkt. 51 ¶ 37. He alleges that "[a]s the medical school is not in the US and the professors are not from here, they are more forgiving and do not discredit grades such as 'D's like the US does." *Id.* ¶ 38. Mr. Zangara says that he "still had the same academic troubles he did when he was younger and in pre med" in the medical school program but was "able to eventually meet the minimum requirements of the basic science years even though he had to retake courses and final exams he failed multiple times." *Id.* ¶ 41.

Mr. Zangara alleges that he has "failed multiple attempts at multiple examinations administered and graded by NBME," *id.* ¶ 50, and he asserts that NBME is "illegally comparing the scores of disabled people to non disabled people." Pl. Br. at 5. Mr. Zangara claims that NBME's alleged scoring methods violate the ADA, Dkt. 53-2 ¶ 4, and he asks the Court to issue a preliminary injunction ordering NBME

to change its alleged scoring methods, *id.* at p. 3.

## II.   NBME Subject Examinations

NBME is a non-profit organization whose mission is to help protect public health through the development and administration of high-quality examinations for health professionals.  Decl. of Carol Morrison ¶ 2 (filed herewith). NBME is a co-sponsor of the United States Medical Licensing Examination ("USMLE"), which is relied on by licensing authorities across the country to help evaluate the qualification of individuals seeking an initial license to practice medicine. *See id.* ¶ 3.

NBME also develops various "subject examinations" that are used by medical schools. These subject examinations include (among others) the Clinical Science Subject Exams, the Comprehensive Basic Science Exam ("CBSE"), and the Comprehensive Clinical Science Subject Exam ("CCSE"). *Id.* ¶¶ 4-5.

The Clinical Science Subject Exams were developed to help medical schools assess third-year students' knowledge in specific disciplines at the end of traditional clerkships. *Id.* ¶ 5(a). They include the Ambulatory Care Subject Exam, the Clinical Neurology Subject Exam, the Family Medicine Modular Subject Exam, the Medicine Subject Exam, the Obstetrics & Gynecology Subject Exam, the Pediatrics Subject Exam, the Psychiatry Subject Exam, and the Surgery Subject Exam. *Id.*

The CBSE is an achievement test covering material typically learned during basic science education. *Id.* ¶ 5(b). Its content is representative of what students will

encounter when they take the USMLE Step 1 licensing exam, *id.*, so a student's performance on the CBSE gives the student and his medical school a sense of how the student is likely to perform on Step 1.

The CCSE assesses the knowledge of medical students in content areas involving material typically learned during core clinical clerkships. *Id.* ¶ 5(c). Its content is representative of what students will encounter when they take the USMLE Step 2 CK licensing exam, *id.*, so a student's performance on the CCSE gives the student and their medical school a sense of how the student will perform on Step 2.

Medical schools, not NBME, decide whether they will require their students to take any NBME subject examinations. *Id.* ¶ 6. Only a school may purchase these exams, not an individual student. *Id.* ¶ 7. If a subject exam is required, the schools, not NBME, decide whether their students must achieve a minimum score and what that minimum score will be. *Id.* ¶ 6.

NBME does not administer subject examinations. Rather, students can take these exams at their schools or at a third-party testing center operated by a company known as Prometric (the exams are computer-based). *Id.* ¶ 8. Disability-based testing accommodations are available on these exams, but NBME does not review or decide requests for testing accommodation on the subject examinations. Rather, if a student seeks disability-based testing accommodations on the CBSE, CCSE or a Clinical Science Subject Exam, a decision whether to approve the request typically would be

made by the student's school. *Id.* ¶ 19. The school would then advise NBME on the accommodations it wishes to grant. *Id.*

Mr. Zangara took the CBSE multiple times between April 7, 2017 and February 11, 2022. *See id.* ¶ 18 and Exs. B-D, I-K. His school authorized him to test with 50% additional testing time in February 2022, presumably on the basis of one of the alleged impairments that he mentions in his Complaint (ADHD and a learning disability). *Id.* Ex. O (accommodation notification form from CMU).

Mr. Zangara took the Pediatrics, Psychiatry, Family Medicine Modular, and Medicine subject examinations (within the Clinical Science Subject Examinations) between June and August of 2021. *Id.* ¶¶ 27-30 and Exs. E-H.

## III.   Comprehensive Basic Science Self-Assessment

NBME develops and sells the Comprehensive Basic Science Self-Assessment ("CBSSA"), a practice test designed for students planning to take Step 1 of the USMLE. *Id.* ¶ 9. Students can order CBSSAs directly from NBME and take the computer-based practice tests on their personal computer at any time for one year after ordering. *Id.* CBSSAs can be ordered online from any individual with an NBME portal account. Medical schools, residency programs, and other medical education organizations can also order vouchers for the self-assessment for their students. *Id.* A CBSSA can be taken in either a standard-paced or self-paced format. *Id.* ¶ 22. Mr. Zangara took the CBSSA in March 2022 and February 2023. *Id.* Exs. M-N.

## IV.    The USMLE

The USMLE is made up of three "Step" exams—Step 1, Step 2 Clinical Knowledge (Step 2 CK) and Step 3.  *Id.* ¶ 3. The USMLE assesses an examinee's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills that constitute the basis of safe and effective patient care. *Id.* Licensing authorities across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine. *Id.*

Mr. Zangara has never taken any of the USMLE Step exams, and he might never do so. According to Mr. Zangara, his medical school requires him to pass the CBSE before he can take the USMLE. Complaint ¶ 45.

## V.    Exam Scoring

The Clinical Science Subject Examinations, CBSE, CCSE, and CBSSA are scored based upon the number of correct answers the examinee provides. Morrison Decl. ¶ 10. If an examinee does not answer a question, that counts as a wrong answer and results in a lower score. *Id.*  Scores are not determined based on a comparison of how the examinee performed compared to other examinees. *Id.*

Examinees who take any of the Clinical Science Subject Examinations, the CBSE, or the CBSSA receive a total equated percent correct score that "represents the percentage of the content that [they have] mastered," with scores ranging from 0% to 100%. *Id.* ¶ 12; *see also, e.g.*, Exs. P (sample CBSE Examinee Performance Report); Q (sample Psychiatry Examination Examinee Performance Report); S

(sample CBSSA Examinee Performance Report).[4] An examinee's "percent correct score" is based upon the number of correct answers provided—not on any grading curve or comparison to the performance of other examinees. *Id*. ¶¶ 10-14. A "raw" score is determined based upon the number of correct and incorrect answers (which include questions that were not answered), and an "equated" score is then determined using a statistical process that adjusts scores to account for varying levels of question difficulty across different test forms. *Id*. ¶ 12. Equating is a standard assessment practice which ensures that a score for an exam taken on one date is equivalent to—*i.e.*, has the same meaning as—a score from another administration of that exam, even though the questions on the two exams were not identical. *Id*. ¶ 13.

Examinees who take the CCSE receive a 3-digit scaled score based on the number of correct answers provided. *Id.* ¶ 15. To obtain a 3-digit scaled score, a raw score is first determined based on the number of correct answers and incorrect answers (including unanswered questions that are counted as incorrect). An equated score is then determined using a statistical process that adjusts scores from different

---

[4] Prior to approximately February 23, 2022, CBSE scores were reported as a scaled score that approximated a USMLE Step 1 score, and this is how Mr. Zangara's prior CBSE scores were reported. *See id.* ¶ 18 and Exs. B-D, I-K. Even when scaled scores were used, the scores were based on the number of correct answers, not (as Mr. Zangara asserts) on any type of "curve" based on the performance of other examinees. *Id.* ¶ 18. In any event, any prior score reporting is irrelevant to Mr. Zanagara's request for preliminary injunctive relief, which only relates to exams Mr. Zangara allegedly may take in the future.

test forms in light of the different levels of question difficulty. *Id.* The CCSE score represents an estimate of an examinee's performance on the USMLE Step 2 CK if they had taken both exams under the same conditions and with the same level of knowledge. A statistical model based on the performance of a group of examinees testing within one week of taking Step 2 CK is used to help predict the examinee's probability of passing on a different test (Step 2 CK) based on how the examinee actually performed on the CCSE. *Id.* Although prior performance of other examinees is used to predict the examinee's probability of passing Step 2 CK, the examinee's CCSE score is based on the number of correct answers the examinee provided. Examinees also receive an equated percent correct score in specific content areas indicating the percentage of the content they have mastered. *Id.*

Subject examinations are scored electronically as part of the computer-based test delivery process. *Id.* ¶ 19. NBME then provides the score reports to the schools that purchased the exam for use in their curriculum. *Id.* If they choose to do so, schools can provide copies of the score reports (now called "Performance Reports") to their students. *Id.* CBSSAs are also scored electronically, and scores are reported directly to examinees and/or their schools (if the schools purchased a voucher for their student). *Id.* ¶ 20.

In his preliminary injunction papers, as in his Complaint, Mr. Zangara confuses the information on his score reports regarding his own exam performance with

other information found on score reports showing how that performance compares to the performance of others who took the exam. Such comparative information is routinely provided to individuals who take standardized tests, to give them a broader understanding of their performance. For example, individuals who take the ACT college admissions test receive numeric scores that reflect their individual performance, as well as percentile scores that allow them to compare their performance to others who took that exam.[5] The same is true for individuals who take the NBME subject examinations and CBSSA.

Thus, as shown in an example current CBSE score report examinees are provided an estimated probability of passing Step 1 of the USMLE if they test within a week of taking the CBSE, *see* Morrison Decl. Ex. P at 1, and a comparison of their performance in different content areas to the performance of a comparison group to help identify areas of strength and weakness, *id.* at 2-3. Current Clinical Science Subject Examination reports and CCSE reports convey similar information. *See* Morrison Decl. Exs. Q-R. CBSSA reports also provide an estimated probability of passing Step 1 if the examinees tests within a week, *see* Ex. S at 1, and a comparison of their performance in different content areas to a comparison group to help identify

---

[5] *See, e.g.,* "ACT Test Scores: Understanding Your Scores", https://www.act.org/content/act/en/products-and-services/the-act/scores/understanding-your-scores.html (discussing "national ranks").

strengths and weaknesses, *id.* at 2-4. Longitudinal data is also provided. *Id.* at 5-9.

USMLE Step exams also are not scored on a "curve." *See id.* ¶ 17. An examinee's score is based on the number of correct answers the examinee provides on the exam, not on how the examinee's performance compares to other examinees. *Id.* For the Step 3 exam, performance on case simulations that are part of the examination is accounted for in the score. *Id.* The USMLE program provides a recommended pass or fail outcome on all Step examinations. Recommended performance standards for the USMLE are based on a specified level of proficiency. As a result, no predetermined percentage of examinees will pass or fail the examination. *Id.*

<u>**ARGUMENT**</u>

## I.   **Preliminary Injunction Standard**

A preliminary injunction is an "extraordinary" remedy that should not be granted unless a plaintiff shows that the four prerequisite factors all support the requested relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). A plaintiff must make a "clear showing" that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Id.* at 20, 22; *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

"A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). Mr. Zangara

is seeking such a mandatory injunction (*i.e.*, an order that directs NBME to change the way it scores exams).

## II. Mr. Zangara Has Not Made and Cannot Make a "Clear Showing" that He Is Likely to Succeed on the Merits

Mr. Zangara's claims fail for at least two reasons. <u>First</u>, he has not shown that the Court has personal jurisdiction over NBME. <u>Second</u>, his Complaint fails to state a claim under the ADA because—among other reasons—it relies upon an inaccurate factual premise (and thus fails under any law he attempts to invoke) and seeks relief that would not be warranted in any event under the applicable provision of the ADA. These deficiencies compel denial of the pending motion for a preliminary injunction.

### A. Mr. Zangara has not established personal jurisdiction

In denying Mr. Zangara's prior preliminary injunction motion (Dkt. 19-1), the Court held that Mr. Zangara failed to establish that the Court had personal jurisdiction over NBME with respect to the claim asserted in his original complaint, thereby precluding any relief by the Court.  Dkt. 40. As the Court recently summarized:

> [T]he Honorable Georgette Castner denied Plaintiff's motion for a preliminary injunction. The Court found that it lacked personal jurisdiction over Defendant and therefore could not grant injunctive relief, even if it were to reach the merits of Plaintiff's request. The Court could not exercise general jurisdiction because Defendant is a District of Columbia-registered, Pennsylvania-headquartered company with no operations in New Jersey. The Court also held that it lacked specific jurisdiction. Reviewing Plaintiff's Complaint, Certification in Support of Application for Preliminary Injunction, and briefs in support of his injunction motion, the Court found that Plaintiff's sole allegation of Defendant's contact with New Jersey — that Plaintiff took Defendant's

examinations for a fee while Plaintiff was located in New Jersey — was insufficient to establish Defendant's purposeful availment of the forum.

Mem. Op. (July 21, 2023) (Dkt. 49) (citations omitted).

Mr. Zangara's amended Complaint attempts to rectify his jurisdictional pleading deficiencies, but his new allegations still fall short. He has not shown a basis for exercising either general or specific personal jurisdiction over NBME, which is a non-profit organization based in Pennsylvania and incorporated in the District of Columbia, and whose challenged actions all took place in Pennsylvania.

### 1.    Legal standard

Mr. Zangara has the burden of making a *prima facie* showing that the Court has personal jurisdiction over NBME. *Hone v. Ereaux*, No. 21-479, 2022 WL 205670, at *1 (D.N.J. Jan. 24, 2022) (citation omitted). The Court must accept Mr. Zangara's allegations as true and construe disputed facts in his favor. *Norkunas v. Southern Pennsylvania Transp. Auth.*, No. 19-627, 2019 WL 6337913, at *2 (D.N.J. Nov. 27, 2019) (citation omitted). Nevertheless, "the focus of the personal jurisdiction analysis is fairness to the defendant — not the plaintiff." *Murray v. John Wood Cmty. College*, No. 19-20920, 2020 WL 4670927, at *5 n.5 (D.N.J. Aug. 12, 2020) (citation omitted).

Courts may assert general or specific jurisdiction over a defendant. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State

are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted).

### 2.    Mr. Zangara's amended jurisdictional allegations

According to Mr. Zangara's amended Complaint:

- He is a citizen of the State of New Jersey. (Dkt. 51 ¶ 4)

- "NBME administers the USMLE throughout the country, including the State of New Jersey." (*Id*. ¶ 5)

- NBME "engages in business in New Jersey and this district by selling and or charging fees for examinations to both medical schools and individuals," including to Mr. Zangara. (*Id*. ¶ 6)

- NBME "charges fees for all of their examinations...." (*Id*. ¶ 7; *see also id*. ¶ 8)

- NBME's "examinations are required as a condition of medical licensure in all states including [New Jersey]." (*Id*. ¶ 7)

- "This action arises from those business activities in relation to including, but not limited to creating, administering and scoring examinations and collecting fees from Plaintiff and others, therefore this court has personal jurisdiction and general jurisdiction over [NBME]." (*Id*. ¶ 9)

These allegations do not support either general or specific jurisdiction over NBME with respect to the claims asserted in Mr. Zangara's amended Complaint.

### 3.   Mr. Zangara has failed to state a basis for exercising general jurisdiction over NBME

"The Third Circuit has recognized that it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Norkunas*, 2019 WL 6337913, at *3 (citations omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining a corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction). As Mr. Zangara notes in his amended Complaint, NBME is incorporated in Washington, D.C., and its principal place of business is in Philadelphia, Pennsylvania, not New Jersey. *See* Dkt. 51 ¶ 3.

Nothing in plaintiff's amended Complaint provides a basis for concluding that this is an "exceptional case" in which a corporation's activities in a state other than its place of incorporation or principal place of business are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler,* 571 U.S. at 139 n.19. The fact that NBME administers the USMLE in New Jersey (as in every other U.S. jurisdiction), *id.* ¶ 5, or that NBME charges fees for the USMLE and for other examinations that it develops, *id.* ¶¶ 7, 8, or that Mr. Zangara has paid fees for certain NBME exams (but not the USMLE, which he has never taken), or that New Jersey and other jurisdictions rely upon results from the USMLE as part of their medical licensure process, *id.* ¶ 7, are not sufficient to subject NBME to general jurisdiction in New Jersey. *See, e.g., Spann v. New Mexico Bd. of Bar Exam'rs*, 2022

WL 3226373, at *7 (D.N.M. 2023) ("[A]dministering the [Multistate Professional Responsibility Examination] in New Mexico, and in other United States jurisdictions, and selling the [Uniform Bar Examination] to New Mexico, and to over 50 other jurisdictions, does not create 'continual business operations' in New Mexico such that the [National Conference of Bar Examiners (NCBE)] is essentially at home in New Mexico.") (holding that NCBE was not subject to either general or specific personal jurisdiction in New Mexico with respect to examinee's ADA claims, and dismissing plaintiff's claims), *rep. and rec. adopted*, 2022 WL 16702197 (D.N.M. 2023); *Doe v. Nat'l Conf. of Bar Exam'rs*, 2017 WL 74715, at *6 (E.D.N.Y. 2017) (dismissing claims against NCBE for lack of personal jurisdiction, and rejecting argument that the sale and administration of NCBE examinations in New York was sufficient to subject NCBE to the Court's general jurisdiction); *Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs*, 2015 WL 9489507, at *3-5 (E.D. Tex. 2015) (holding that the court lacked either general or specific jurisdiction over defendant testing entity that was not incorporated in Texas and had no physical presence there: "[T]he administration of NBOME examinations in Texas (as well as in all 50 states) does not constitute the requisite 'substantial, continuous, and systematic contacts' necessary for a finding of general jurisdiction."), *rep. and rec. adopted*, 2016 WL 890675 (E.D. Tex. 2016).

### 4.    Mr. Zangara has failed to state a basis for exercising specific jurisdiction over NBME

There also is no basis stated for this Court to exercise specific jurisdiction over NBME. Mr. Zangara must show that his claims arise out of or relate to NBME's contacts with New Jersey. *Jager v. Fleet Mgmt. Rd. Serv.*, 2021 WL 4932765, at *5 (D.N.J. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). His claims in the amended Complaint, however, are not based upon acts that took place in New Jersey; therefore, "there is no basis for specific personal jurisdiction" over NBME with respect to those claims. *Id.*

Mr. Zangara's 86 claims are all based on allegations regarding the manner in which NBME allegedly scores examinations he has taken in the past or hopes to take in the future. *See* Complaint ¶ 1 ("NBME has been and intends to grade Plaintiffs and others' examinations in violation of various laws...."); *see also, e.g., id.* ¶ 126 (asserting in his First Count that "Defendants [*sic*] ... have committed and/or will commit discrimination in grading/scoring their examinations as present herewith"), *through id.* ¶ 826 (asserting in his Eighty Sixth Count that "Defendants [*sic*] ... have committed and/or will commit discrimination in grading/scoring their examinations as present herewith"). There is no allegation, however, that NBME's examination scoring takes place in New Jersey rather than at NBME's offices in Pennsylvania. *See id.* ¶¶ 4-11.

Indeed, Mr. Zangara has previously acknowledged that NBME's scoring of

- 18 -

his exams occurred in Pennsylvania, where NBME's offices are located, not New Jersey. *See* Initial Complaint at 4 (Question: "Where did the events giving rise to your claim(s) occur?" Response: "National Board of Medical Examiners (NBME).") (Dkt. 1). His amended Complaint is much longer but still "does not allege that he was harmed by any action [NBME] took in New Jersey." *Stampone v. Fopma*, 567 F. App'x 69 (3d Cir. 2014) (per curiam). Mr. Zangara therefore has failed to allege a basis for exercising specific personal jurisdiction over NBME.

Plaintiff says that he is a New Jersey resident. *See, e.g.*, Dkt. 51 ¶ 6. Even assuming *arguendo* that Mr. Zangara took one or more NBME subject matter exams or self-assessments in New Jersey, that would not be a sufficient basis to support personal jurisdiction in this Court because Plaintiff's claims are not based on his test-day experiences. His claims are instead based on the manner in which NBME allegedly scored his exams, and those activities occurred in Pennsylvania, not New Jersey. *Cf. Datto v. Assoc. of Amer. Med. Colleges*, 2019 WL 12470329, at *4 (S.D. Fla. 2019) ("[T]hough Plaintiff points to AAMC's MCAT examination services as engaging [in] business in Florida, these activities are disconnected from Plaintiff's allegations against AAMC, which relate to his rejection from the medical schools he applied to."), *rep. and rec. adopted in relevant part*, 2019 WL 12470330 (S.D. Fla. Aug. 5, 2019); *Doe v. Nat'l Conf. of Bar Exam'rs*, 2017 WL 74715, *10 (E.D.N.Y. 2017) (holding that NCBE's testing activities in New York and communications

with plaintiff while she was in New York did not warrant an exercise of specific jurisdiction because plaintiff's claims related to NCBE's processing of her character and fitness application in Wisconsin, at NCBE's offices: "[B]ecause the Amended Complaint fails to demonstrate an 'articulable nexus' between Defendants' alleged business activities in New York and Plaintiff's claims, the Court cannot find specific jurisdiction....") (citations omitted).

Finally, despite Mr. Zangara's arguments to the contrary, NBME has not waived its objection to personal jurisdiction in this case. *See* Pl. Br. 5-6. NBME raised the issue of personal jurisdiction in its response to Mr. Zangara's original Complaint, *see* Dkt. 12, and its opposition to his prior motion for preliminary injunction, *see* Dkt. 25. NBME opposed Mr. Zangara's motion to transfer not because it believes personal jurisdiction is proper in this Court, but because it believes dismissal rather than transfer is warranted. *See* Dkt. 48 at 2. Indeed, Mr. Zangara's transfer request was made in response to this Court's finding that he had not established personal jurisdiction in this Court. *Id.* at 3. Similarly, NBME's non-opposition to Mr. Zangara's request for leave to amend was not a concession of any applicable defense, but solely an attempt "to move the litigation along." Dkt. 49 at 9 n.1.

## B.  Mr. Zangara's Claims Are Meritless

Mr. Zangara asserts claims under four laws in his amended Complaint, *see* Dkt. 51 ¶ 124, but his preliminary injunction motion only argues he is likely to

succeed under his ADA claim, with passing references to his Rehabilitation Act claim. *See* Pl. Br. at 10-28.[6]

A specific provision in Title III of the ADA applies to private entities offering certain types of examinations:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189; *see also Boggi v. Med. Rev. & Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) ("the District Court properly assessed [the pro se plaintiff's] ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 154-155 (3d Cir. 1999) (concluding that the provision found at Section 12189 defines the requirements of Title III of the ADA with regard to accommodations);.

---

[6] Mr. Zangara's Section 504 claim fails for the baseline failure to allege that NBME received federal financial assistance at the time of the alleged discrimination so as to be subject to the statute. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination ***under any program or activity receiving Federal financial assistance***.") (emphasis added); *see also, e.g., Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 274-75 (3d Cir. 2014) (explaining that to prove a violation of Section 504, a plaintiff must prove, *inter alia*, that the defendant "received federal financial assistance"); *Rosenberg v. Whitehead*, 2011 WL 868809, at *7 (D.N.J. 2011) (plaintiff failed to state a Section 504 claim where she failed to allege she was discriminated against with respect to a program or activity that receives federal financial assistance).

By its express terms, Section 12189 imposes requirements relating to "the place and manner" in which exams are administered to disabled individuals. This is accomplished by requiring that disabled examinees receive reasonable accommodations when they take a standardized test. *See* 28 C.F.R. § 36.309(b)(2) ("Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."). Mr. Zangara's ADA claims, however, do not relate to the place or manner in which NBME exams are administered. They relate instead to the manner in which NBME exams are allegedly scored.

It appears that Mr. Zangara's medical school allowed Mr. Zangara to take the CBSE with testing accommodations, at least on his most recent administration in February 2022. *See* Morrison Decl. Ex. ) (noting that Mr. Zangara was provided 50% more testing time than other examinees receive when testing under standard conditions). The purpose of testing accommodations is to enable examinees who are disabled within the meaning of the ADA to take the exam in an accessible manner. *See* 42 U.S.C. § 12189. Accommodations allow disabled examinees to test on a level playing field with other examinees. *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d at 156 ("The notion of accessibility … mandates changes to examinations — 'alternative accessible arrangements,' 42 U.S.C. § 12189 — so that disabled people who are disadvantaged by certain features of standardized examinations may take the

examinations without those features that disadvantage them."). Therefore, if he received such accommodations on the CBSE, Mr. Zangara presumptively tested on a level playing field with other examinees, all of whom are then subject to the same scoring standards. Stated differently, to the extent he qualifies as disabled under the ADA, his impairment is to be addressed by accommodations when testing, not by scoring his performance differently than other examinees.

Finally, even if Mr. Zangara is disabled within the meaning of the ADA,[7] and even if Section 12189 could be construed to address not just the place and manner in which exams are administered but also how they are scored, and even if Mr. Zangara's alleged rights under the ADA are not already addressed through testing accommodations, and even if requiring a testing entity to change its scoring methodology could ever be a reasonable accommodation that does not cause a fundamental alteration or an undue burden to the testing entity,[8] his ADA claim—whether

---

[7] For purposes of the present motion, NBME is not addressing whether Mr. Zangara is disabled within the meaning of the ADA. The Court need not resolve that issue in deciding his preliminary injunction motion, because the motion fails on other grounds.

[8] *See* 28 C.F.R. § 36.309(b)(3); *see also, e.g., Krpan v. Registry of Interpreters for the Deaf*, 167 F. Supp. 3d 774, 791 (E.D. Va. 2016) (requested changes to exam format would fundamentally alter the exam); *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 163-64 (S.D.N.Y. 2008) (exempting plaintiff from demonstrating same level of competency in measured skills as other examinees would fundamentally alter the nature of the test), *aff'd*, 338 F. App'x 11 (2d Cir. 2009).

based on purported disparate impact, *see* Pl. Br. 21-28,[9] or some other basis—would fail, ***because it is based on facts that do not exist***. Mr. Zangara's claim that NBME scores exams by comparing his performance to that of other, non-disabled examinees is simply wrong, as discussed above.[10] He demands that his score be determined based on his individual performance, which is exactly how NBME scores the exams it administers. NBME cannot be found to have violated the ADA (or any other law) based on something that it has never done.

### III.   Mr. Zangara Has Not Shown Irreparable Harm in the Absence of Preliminary Injunctive Relief.

Mr. Zangara appears to argue that he faces irreparable harm because he will continue to fail exams required by his medical school unless NBME changes how it scores exams and this will delay either his medical school education or his ability to become a licensed doctor. Pl. Br. 29-30; Plaintiff's Certification (Dkt. 53-3) ¶ 17. His claim of irreparable harm reflects speculation at multiple levels and therefore

---

[9] Although it is not addressing this issue for the purposes of the pending motion, NBME does not concede that a "disparate impact" theory applies in this case.

[10] Mr. Zangara is not a psychometrician. He has a BA from an online university in fire administration. *See* Complaint Ex. H at 4. He has not offered any expert testimony in support of his motion, and he cannot show a likelihood of success by simply disagreeing with NBME's own witness, Carol Morrison, Ph.D., who not only has expertise as a psychometrician but also has personal familiarity with how NBME examinations are actually scored. *See generally Shah v. Ceasars Interactive Entertainment*, 2020 WL 5912349, at *3 (D.N.J. 2020) (rejecting report prepared by plaintiff in opposition to motion for summary judgment where plaintiff was not an expert and his report was "merely the opinion testimony from a lay person based upon speculative assertions and unfounded conclusions").

cannot sustain a preliminary injunction, because the "risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

First, it is speculative whether Mr. Zangara will continue to obtain scores on any NBME subject examinations that his school considers "failing" if he re-tests. If he studies and learns the material, he might well pass. *See Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) ("[I]t is not certain that [plaintiff] will suffer the predicted harm; she may pass the test."). Second, it is speculative whether passing any particular subject examination will have any impact whatsoever on the pace of his medical school education or how quickly he could become a licensed physician. Noticeably absent from Mr. Zangara's amended Complaint and preliminary injunction papers is any documentation showing that he is currently enrolled in medical school or, if he is, what his school actually requires in order for Mr. Zangara to proceed in school. *Cf. Sampson v. Nat'l Bd. of Med. Exam'rs*, 2023 WL 3162129, at *1-2 (2d Cir. 2023) (vacating preliminary injunction entered by district court requiring NBME to provide testing accommodations on Step 1 where plaintiff's ability to proceed in medical school was not dependent solely on passing the test).

In all events, "courts in this Circuit have held that delays in testing or education do not amount to irreparable harm." *B.P.C. v. Temple Univ.*, No. 13-7595, 2014

WL 4632462, *5 (E.D. Pa. Sept. 16, 2014) (citing, *inter alia*, *Mahmood v. Nat'l Bd. of Med. Exam'rs*, 2012 WL 5364689 (E.D. Pa. 2012)). While the Third Circuit has found that being forced to withdraw from medical school might constitute irreparable harm in a given case, *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262-63 (3d Cir. 2020), Mr. Zangara has provided no evidence of any such risk here. To the contrary, he asserts that he is currently enrolled in his medical school, despite his performance on any past exams scored by NBME. *See* Complaint ¶ 14. And neither his amended Complaint nor his preliminary injunction papers provide evidence of any time constraint that presents imminent irreparable harm that would necessitate a preliminary injunction. This is particularly the case with respect to the USMLE Step exams, which Mr. Zangara alleges his school will not allow him to take until he passes the CBSE. Complaint ¶ 45. "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a 'clear showing of *immediate* irreparable harm.'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Mr. Zangara has thus failed to establish that he is likely to suffer imminent and nonspeculative irreparable harm in the absence of preliminary injunctive relief.

## IV.    A Preliminary Injunction Would Harm NBME.

Mr. Zangara argues that NBME would not be harmed "because [Plaintiff] has shown a reasonable likelihood that [Defendants are violating the ADA]." Pl. Br. 31

(alterations in original). This argument incorrectly posits that an alleged violation of the ADA allows the Court to ignore the other factors in the preliminary injunction test—as well as being incorrect about the existence of an ADA violation having been shown in this case. *See Winter,* 555 U.S. at 26 (emphasizing "the importance of assessing the balance of equities and the public interest in determining whether to grant a preliminary injunction…."). Entering a preliminary injunction that requires NBME to somehow alter the manner in which it scores all its examinations, including exams that jurisdictions rely upon to make licensure decisions for healthcare professionals, in order to respond to allegations that have no factual or legal basis, would obviously result in significant harm to NBME.

## V.   An Injunction Would Not Serve the Public Interest.

Mr. Zangara argues that enforcing the ADA and increasing the number of licensed physicians is in the public interest. *See* Pl. Br. 31. These arguments, however, are based on the incorrect premise that Mr. Zangara is likely to succeed on the merits of his claim (he is not). It is *not* in the public interest to alter the scoring of standardized tests—in this instance, tests used by a medical school to evaluate the knowledge of its students and, if Mr. Zangara's injunction reached the USMLE medical licensing examination, tests relied on by state medical boards to ensure the minimum competence of licensed physicians—based on unsupported and inaccurate assumptions made by a student who has not performed well on the tests he has taken to date. As

other courts have noted, "[a]lthough the public certainly has an interest in the enforcement of the ADA, ... the public also has an interest in the fair administration of standardized tests." *Bach v. LSAC*, 2014 U.S. Dist. LEXIS 124632 at *7-8 (M.D.N.C. 2014).

## **CONCLUSION**

Mr. Zangara's motion for a preliminary injunction should be denied.

Dated:  August 7, 2023                    **PERKINS COIE LLP**

By: */s/ Adam Mandelsberg*
Adam Mandelsberg, Bar No. 065532013
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 7th day of August 2023, I caused to be served a true and correct copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION and SECOND DECLARATION OF CAROL MORRISON, PH.D via email to firefighterjazzyj@yahoo.com and by overnight mail to:

Jason Zangara
573 Sidorske Avenue
Manville, New Jersey 08835
Pro Se Plaintiff

*/s/Adam R. Mandelsberg*
Adam R. Mandelsberg