Adam Mandelsberg, Bar No. 065532013
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Jason Zangara,<br><br>Plaintiff,<br><br>v.<br><br>National Board of Medical Examiners,<br><br>Defendant. | Civil No. 3:22-cv-01559-RK-JBD<br><br>Motion Returnable September 5, 2023 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF NBME'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. NBME ..... 2

II. Mr. Zangara's Allegations ..... 3

ARGUMENT ..... 5

I. Mr. Zangara Has Not Shown that the Court Has Personal Jurisdiction Over NBME ..... 5

A. Legal standard ..... 5

B. Prior ruling ..... 6

C. Mr. Zangara has failed to state a basis for exercising personal jurisdiction over NBME ..... 7

II. Mr. Zangara Fails to State a Claim Against NBME ..... 12

A. Pleading standards ..... 12

B. Mr. Zangara's allegations regarding NBME's scoring methodology are implausible and refuted by his own exhibits ..... 13

C. Mr. Zangara fails to state a claim under the ADA ..... 20

D. Mr. Zangara fails to state a claim under Section 504 of the Rehabilitation Act ..... 22

E. Mr. Zangara cannot pursue a claim under Title VII ..... 23

F. Mr. Zangara's claims under the New Jersey Law Against Discrimination or New Jersey Civil Rights Act Should Be Dismissed for Failure to State a Claim ..... 24

1. The NJLAD does not reach NBME's conduct in Pennsylvania, and Mr. Zangara also fails to state a claim under the statute ..... 24

**TABLE OF CONTENTS (continued)**

**Page**

2. NBME is not a state actor and therefore is not subject to the New Jersey Civil Rights Act, and Mr. Zangara fails to state a claim under the statute ....26

CONCLUSION ....28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alston v. Nat'l Conf. of Bar Exam'rs*,
314 F. Supp. 3d 620 (E.D. Pa. 2018)....................26

*Archut v. Ross Univ. Sch. of Vet. Med.*,
2012 WL 5867148 (D.N.J. 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014)....................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................12, 13, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................12, 13

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014)....................23

*Boggi v. Med. Rev. & Accrediting Council*,
415 F. App'x 411 (3d Cir. 2011)....................21, 26

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
151 F. Supp. 2d 526 (D.N.J. 2001)....................25

*Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs*,
2015 WL 9489507 (E.D. Tex. 2015), *rep. and rec. adopted*, 2016 WL 890675 (E.D. Tex. 2016)....................9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................8

*Datto v. Assoc. of Amer. Med. Colleges*,
2019 WL 12470329 (S.D. Fla. 2019), *rep. and rec. adopted in relevant part*, 2019 WL 12470330 (S.D. Fla. 2019)....................11

*Doe v. Nat'l Bd. of Med. Exam'rs*,
199 F.3d 146 (3d Cir. 1999)....................21, 22

*Doe v. Nat'l Conf. of Bar Exam'rs*,
2017 WL 74715 (E.D.N.Y. 2017)....................9, 11

**TABLE OF AUTHORITIES (continued)**

**Page(s)**


*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)....................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................7

*Hone v. Ereaux*,
2022 WL 205670 (D.N.J. 2022)....................5

*Hottenstein v. City of Sea Isle City*,
2011 WL 2559523 (D.N.J. 2011)....................27

*Hunt v. Univ. of Pittsburgh Med. Ctr.*,
2019 WL 3776545 (M.D. Pa. 2019)....................23

*Jager v. Fleet Mgmt. Rd. Serv.*,
2021 WL 4932765 (D.N.J. 2021)....................10

*Murray v. John Wood Cmty. College*,
2020 WL 4670927 (D.N.J. 2020)....................5

*Norkunas v. Southern Pennsylvania Transp. Auth.*,
2019 WL 6337913 (D.N.J. 2019)....................5, 8

*Ojibara v. City of Irvington*,
2019 WL 2223943 (D.N.J. 2019)....................26

*Okakpu v. Irvington Bd. of Educ.*,
2022 WL 2794082 (N.J. Super. Ct. 2022)....................26

*Robinson v. Family Dollar Inc.*,
679 F. App'x 126 (3d Cir. 2017)....................14

*Santiago v. Warminster Tp.*,
629 F.3d 121 (3d Cir. 2010)....................14

*Spann v. New Mexico Bd. of Bar Exam'rs*,
2022 WL 3226373 (D.N.M. 2023), *rep. and rec. adopted*, 2022 WL 16702197 (D.N.M. 2022)....................9

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Stampone v. Fopma*,
567 F. App'x 69 (3d Cir. 2014) ....................................................................11

*Thakar v. Tan*,
372 F. App'x 325 (3d Cir. 2010) ....................................................................13

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................................5

*Wong v. N.J. Dep't of Children & Families*,
2013 WL 5503301 (D.N.J. 2013) ....................................................................23, 24

*Zhang v. Fed. of State Med. Bds.*,
2011 WL 7154507 (M.D.N.C. 2011), *rec. adopted*, 2012 WL 381898 (M.D.N.C. 2012), *aff'd*, 473 F. App'x 193 (2013)...............................26

*Zisa v. Haviland*,
2020 WL 1527862 (D.N.J. 2020) ....................................................................27

STATUTES

29 U.S.C. § 794(a) ....................................................................................23

42 U.S.C. § 1983 ....................................................................................26, 27

42 U.S.C. § 2000e-2....................................................................................24

42 U.S.C. § 12189 ....................................................................................21, 22, 25, 26

N.J.S.A. § 10:6-2(c) ....................................................................................27

RULES

Fed. R. Civ. P. 8(a)(2)....................................................................................12

Fed. R. Civ. P. 12(b)(2)....................................................................................5

Fed. R. Civ. P. 12(b)(6)....................................................................................13

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**REGULATIONS**

28 C.F.R. § 36.309 ....................21, 25

N.J.A.C. § 13:13-4.5 ....................25

N.J.A.C. § 13:13-4.12 ....................26

# INTRODUCTION

Plaintiff Jason Zangara ("Mr. Zangara") filed this pro se lawsuit against the National Board of Medical Examiners ("NBME") in March 2022, alleging that NBME violated the Americans with Disabilities Act ("ADA") by grading exams on a curve that compared his performance to a group of people who previously took the examination and "automatically drop[ping] out the lowest percentiles." Complaint and Request for Injunction (Dkt. 1) at 5.

Mr. Zangara's claims in his amended Complaint are based on essentially the same premise, but are now spread over a 184-page, 836-paragraph pleading with 86 separate counts. *See* Dkt. 51 ("Complaint"). Mr. Zangara alleges that he is disabled and argues that he (and any individual with a disability) "do[es] not have the same ability as those who are not disabled," *id*. ¶ 64, and thus will "score[ ] lower" on any NBME exam, *id*. ¶ 87, purportedly because they are being compared to "an average student with normal abilities," *id*. ¶ 84; *see also id*. ¶ 101. According to Mr. Zangara, he has been unable to pass examinations "administered and graded" by NBME, *id.* ¶ 50, because his scores are compared "to the scores of others who took the exam prior," *id.* ¶ 53.

Mr. Zangara's claims relate to exams he has taken in the past, *see* Complaint ¶¶ 125-274, and exams he says he expects to take in the future, *see id.* ¶¶ 275-824—"even if he is not currently eligible or scheduled to take them," *see, e.g.,* ¶ 278. He

also includes a claim challenging "an exam not yet created [by NBME] or required [by his medical school]," *id*. ¶ 827 (eighty-sixth count). Mr. Zangara postures his claims under the ADA, Section 504 of the Rehabilitation Act ("Section 504"), Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Civil Rights Act ("NJCRA"). *Id*. ¶ 124.

As set forth below, Mr. Zangara has not demonstrated that this Court has personal jurisdiction over NBME and, in any event, there is no factual or legal basis for his claims. Dismissal is therefore warranted.

## BACKGROUND

### I. NBME

NBME is a non-profit organization located in Pennsylvania. *See* Complaint p. 3. Its mission is to help protect the health of the public through the development and administration of high-quality examinations for health professionals.

NBME co-sponsors the United States Medical Licensing Examination (USMLE) program (the other sponsor is the Federation of State Medical Boards, which is also a non-profit organization).[1] The USMLE is a standardized examination used to evaluate applicants' competence for medical licensure. Three "Step" exams make up the USMLE, taken at different times in an individual's medical education

[1] *See* https://www.nbme.org/assessment-products/medical-licensing-exams.

process: Step 1, Step 2 Clinical Knowledge (Step 2 CK), and Step 3.[2] State medical boards use USMLE outcomes to inform licensure decisions and to help achieve their mission of helping to ensure safe and effective patient care.[3] Mr. Zangara does not allege that he has taken or registered to take any Step of the USMLE.

NBME also develops subject examinations in the basic and clinical sciences that medical schools use to assess the educational achievement of their students in specific content areas. *See* Complaint Ex. M (Dkt. 51-14) ("NBME subject examinations provide medical schools with a tool for measuring examinees' understanding of the basic sciences.").[4]

## II. Mr. Zangara's Allegations

Mr. Zangara claims to be a student at Caribbean Medical University, located on the island of Curacao, Complaint ¶ 14, although he also claims to reside in New Jersey, *id.* ¶ 2. He alleges he has ADHD and learning disabilities and is substantially limited in reading, writing, comprehension, and mathematics. *Id.* ¶¶ 15-16.

Mr. Zangara graduated from high school in 2004, received a BA degree in fire administration from online Columbia-Southern University in 2016, and as of February 2018 had completed a full year of medical school at Caribbean Medical

---

[2] *See* https://www.usmle.org/step-exams.

[3] *See* https://www.usmle.org/bulletin-information/about-usmle.

[4] *See also* https://www.nbme.org/assessment-products/assess-learn/subject-exams.

University with a 1.5 GPA, per the medical evaluation report attached to his amended Complaint. *Id.* Ex. H (Dkt. 51-9) at 4. Mr. Zangara describes "barely making it through" courses in a pre-medical program at Caribbean Medical University and "scoring the absolute minimal on most of his exams." Complaint ¶ 37. He alleges that "[a]s the medical school is not in the US and the professors are not from here, they are more forgiving and do not discredit grades such as 'D's like the US does." *Id.* ¶ 38. Mr. Zangara says that he "still had the same academic troubles he did when he was younger and in pre med" in the medical school program but was "able to eventually meet the minimum requirements of the basic science years even though he had to retake courses and final exams he failed multiple times." *Id.* ¶ 41. Mr. Zangara alleges that he has "failed multiple attempts at multiple examinations administered and graded by NBME." *Id.* ¶ 50.

Mr. Zangara alleges that NBME "set up" the scoring of its examinations "to discriminate against those with disabilities" and that NBME's examinations "were deliberately excluding him from passing due to the score comparing him to those that took the examinations prior and improper validation techniques." *Id.* ¶¶ 54-55. According to Mr. Zangara, NBME's alleged method of scoring "is a violation of numerous federal and state laws including their implementing regulations since Plaintiff and anyone disabled is being compared to others it [*sic*] by their knowledge, but the probability they will answer the question the same as an average student with

normal abilities." *Id.* ¶ 84; *see also id.* ¶ 101 ("Defendants [*sic*] scoring methods utilized are discriminatory as they only show how Plaintiff and others who are disabled compares to others who are not disabled and do not measure his or their competency.").

## ARGUMENT

Mr. Zangara has failed to show that this Court has personal jurisdiction over NBME, and his amended Complaint should be dismissed on that basis. If the Court concludes that it has personal jurisdiction over NBME, it should dismiss Mr. Zangara's entirely misguided lawsuit for failure to state a claim.

### I. Mr. Zangara Has Not Shown that the Court Has Personal Jurisdiction Over NBME

#### A. Legal standard

Mr. Zangara has the burden of making a *prima facie* showing that the Court has personal jurisdiction over NBME in response to NBME's Rule 12(b)(2) motion. *Hone v. Ereaux*, 2022 WL 205670, at *1 (D.N.J. Jan. 24, 2022) (citation omitted). The Court must accept Mr. Zangara's allegations as true and construe disputed facts in his favor. *Norkunas v. Southern Pennsylvania Transp. Auth.*, 2019 WL 6337913, at *2 (D.N.J. Nov. 27, 2019) (citation omitted). Nevertheless, "the focus of the personal jurisdiction analysis is fairness to the defendant — not the plaintiff." *Murray v. John Wood Cmty. College*, 2020 WL 4670927, at *5 n.5 (D.N.J. Aug. 12, 2020) (citation omitted); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("Due process

limits on the State's adjudicative authority principally protect the liberty of the non-resident defendant—not the convenience of plaintiffs or third parties.") (citation omitted).

**B. Prior ruling**

In denying Mr. Zangara's prior preliminary injunction motion (Dkt. 19-1), the Court held that Mr. Zangara failed to establish that the Court had personal jurisdiction over NBME with respect to the claim asserted in his original complaint, thereby precluding any relief by the Court. Dkt. 40. As the Court recently summarized:

> [T]he Honorable Georgette Castner denied Plaintiff's motion for a preliminary injunction. The Court found that it lacked personal jurisdiction over Defendant and therefore could not grant injunctive relief, even if it were to reach the merits of Plaintiff's request. The Court could not exercise general jurisdiction because Defendant is a District of Columbia-registered, Pennsylvania-headquartered company with no operations in New Jersey. The Court also held that it lacked specific jurisdiction. Reviewing Plaintiff's Complaint, Certification in Support of Application for Preliminary Injunction, and briefs in support of his injunction motion, the Court found that Plaintiff's sole allegation of Defendant's contact with New Jersey — that Plaintiff took Defendant's examinations for a fee while Plaintiff was located in New Jersey — was insufficient to establish Defendant's purposeful availment of the forum.

Mem. Op. (July 21, 2023) (Dkt. 49) (citations omitted).

Mr. Zangara's amended Complaint attempts to rectify his jurisdictional pleading deficiencies but still falls short. He has not shown a basis for exercising either general or specific personal jurisdiction over NBME, which is a non-profit

organization based in Pennsylvania and incorporated in the District of Columbia, and whose challenged actions all took place in Pennsylvania.

### C. Mr. Zangara has failed to state a basis for exercising personal jurisdiction over NBME

According to Mr. Zangara's amended Complaint:

- He is a citizen of the State of New Jersey. (Dkt. 51 ¶ 4)
- "NBME administers the USMLE throughout the country, including the State of New Jersey." (*Id.* ¶ 5)
- NBME "engages in business in New Jersey and this district by selling and or charging fees for examinations to both medical schools and individuals," including to Mr. Zangara. (*Id.* ¶ 6)
- NBME "charges fees for all of their examinations...." (*Id.* ¶ 7; *see also id.* ¶ 8)
- NBME's "examinations are required as a condition of medical licensure in all states including [New Jersey]." (*Id.* ¶ 7)
- "This action arises from those business activities in relation to including, but not limited to creating, administering and scoring examinations and collecting fees from Plaintiff and others, therefore this court has personal jurisdiction and general jurisdiction over [NBME]." (*Id.* ¶ 9)

These allegations do not support either general or specific jurisdiction over NBME with respect to the claims asserted in Mr. Zangara's amended Complaint.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 919 (2011) (citation omitted). "Specific jurisdiction, on the other hand, depends on an 'affiliation[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted).

Mr. Zangara has stated no basis for this Court to exercise general jurisdiction over NBME. "The Third Circuit has recognized that it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Norkunas*, 2019 WL 6337913, at *3 (citations omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining a corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction). As Mr. Zangara notes in his amended Complaint, NBME is incorporated in Washington, D.C., and its principal place of business is in Philadelphia, Pennsylvania. *See* Dkt. 51 ¶ 3.

Nothing in plaintiff's amended Complaint supports a finding that this is an "exceptional case" in which a corporation's activities in a state other than its place of incorporation or principal place of business are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler,* 571 U.S. at 139 n.19. The fact that NBME administers the USMLE in New Jersey (as in every other U.S. jurisdiction), *id.* ¶ 5, or that NBME charges fees for the USMLE and for other examinations that it develops, *id.* ¶¶ 7, 8, or that Mr. Zangara has paid fees for certain

NBME exams (but not the USMLE, which he has never taken), or that New Jersey and other jurisdictions rely upon results from the USMLE as part of their medical licensure process, *id*. ¶ 7, are not sufficient to subject NBME to general jurisdiction in New Jersey. *See, e.g., Spann v. New Mexico Bd. of Bar Exam'rs*, 2022 WL 3226373, at *7 (D.N.M. 2022) ("[A]dministering the [Multistate Professional Responsibility Examination] in New Mexico, and in other United States jurisdictions, and selling the [Uniform Bar Examination] to New Mexico, and to over 50 other jurisdictions, does not create 'continual business operations' in New Mexico such that the [National Conference of Bar Examiners (NCBE)] is essentially at home in New Mexico.") (holding that NCBE was not subject to either general or specific personal jurisdiction in New Mexico with respect to examinee's ADA claims, and dismissing plaintiff's claims), *rep. and rec. adopted*, 2022 WL 16702197 (D.N.M. 2023); *Doe v. Nat'l Conf. of Bar Exam'rs*, 2017 WL 74715, at *6 (E.D.N.Y. 2017) (dismissing claims against NCBE for lack of personal jurisdiction, and rejecting argument that the sale and administration of NCBE examinations in New York was sufficient to subject NCBE to the Court's general jurisdiction); *Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs*, 2015 WL 9489507, at *3-5 (E.D. Tex. 2015) (holding that the court lacked general or specific jurisdiction over a testing entity that was not incorporated in Texas and had no physical presence there: "[T]he administration of NBOME examinations in Texas (as well as in all 50 states) does not constitute the

requisite 'substantial, continuous, and systematic contacts' necessary for a finding of general jurisdiction."), *rep. and rec. adopted*, 2016 WL 890675 (E.D. Tex. 2016).

Nor is there any stated basis in the Complaint for the Court to exercise specific jurisdiction over NBME. Mr. Zangara must show that his claims arise out of or relate to NBME's contacts with New Jersey. *Jager v. Fleet Mgmt. Rd. Serv.*, 2021 WL 4932765, at *5 (D.N.J. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). His claims, however, are not based upon acts that took place in New Jersey; therefore, "there is no basis for specific personal jurisdiction" over NBME with respect to those claims. *Id.*

Mr. Zangara's 86 claims are all based on allegations regarding the manner in which NBME purportedly scores examinations he has taken in the past or hopes to take in the future. *See* Complaint ¶ 1 ("NBME has been and intends to grade Plaintiffs and others' examinations in violation of various laws...."); *see also id.* ¶ 126 (asserting in his First Count that "Defendants [*sic*] ... have committed and/or will commit discrimination in grading/scoring their examinations as present herewith"), *through id.* ¶ 826 (asserting in his Eighty Sixth Count that "Defendants [*sic*] ... have committed and/or will commit discrimination in grading/scoring their examinations as present herewith"). There is no allegation, however, that NBME's examination scoring takes place in New Jersey rather than at NBME's offices in Pennsylvania. *See id.* ¶¶ 4-11.

Indeed, Mr. Zangara has previously acknowledged that NBME's scoring of his exams occurred in Pennsylvania, where NBME's offices are located, not New Jersey. *See* Initial Complaint at 4 (Question: "Where did the events giving rise to your claim(s) occur?" Response: "National Board of Medical Examiners (NBME).") (Dkt. 1). His amended Complaint is much longer but still "does not allege that he was harmed by any action [NBME] took in New Jersey." *Stampone v. Fopma*, 567 F. App'x 69 (3d Cir. 2014) (per curiam). Mr. Zangara therefore has failed to allege a basis for exercising specific personal jurisdiction over NBME.

Plaintiff says that he is a New Jersey resident. *See, e.g*., Dkt. 51 ¶ 6. His Complaint is unclear on where he has tested, but even if he took one or more NBME subject matter exams or self-assessments in New Jersey, that would not support personal jurisdiction in this Court because his claims are not based on his test-day experiences. His claims are instead based on the manner in which NBME allegedly scored his exams, and those activities occurred in Pennsylvania, not New Jersey. *Cf. Datto v. Assoc. of Amer. Med. Colleges*, 2019 WL 12470329, at *4 (S.D. Fla. 2019) ("[T]hough Plaintiff points to AAMC's MCAT examination services as engaging [in] business in Florida, these activities are disconnected from Plaintiff's allegations against AAMC, which relate to his rejection from the medical schools he applied to."), *rep. and rec. adopted in relevant part*, 2019 WL 12470330 (S.D. Fla. 2019); *Doe v. Nat'l Conf. of Bar Exam'rs*, 2017 WL 74715, at *10 (E.D.N.Y. 2017)

(holding that NCBE's testing activities in New York and communications with plaintiff while she was in New York did not warrant an exercise of specific jurisdiction because plaintiff's claims related to NCBE's processing of her character and fitness application in Wisconsin, at NCBE's offices: "[B]ecause the Amended Complaint fails to demonstrate an 'articulable nexus' between Defendants' alleged business activities in New York and Plaintiff's claims, the Court cannot find specific jurisdiction....") (citations omitted).

## II. Mr. Zangara Fails to State a Claim Against NBME

If the Court concludes it has personal jurisdiction over NBME, Mr. Zangara's amended Complaint should be dismissed in its entirety for failure to state a claim.

### A. Pleading standards

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this does not necessitate "detailed factual allegations," it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A facially plausible claim must be supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such an inference cannot be drawn based on the pleading of facts suggesting "a sheer possibility that a defendant has acted unlawfully." *Id*. (citation and internal quotation marks omitted).

"While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, … a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (internal citation omitted).

Mr. Zangara has dramatically expanded the length of his pleading, but his amended Complaint still fails to raise any valid claim.

**B. Mr. Zangara's allegations regarding NBME's scoring methodology are implausible and refuted by his own exhibits**

Mr. Zangara's allegations regarding NBME's purportedly discriminatory scoring methods are speculative and conclusory statements that are not entitled to an assumption of truth. Examples of these allegations include:

- "The examinations were based on 'norms' and 'percentiles' and 'equated percentiles' ***which all are set up to discriminate against those with disabilities***". *Id.* ¶ 54 (emphasis added).

- "These examinations were ***deliberately excluding him from passing*** due to the score comparing him to those that took the examinations prior and improper validation techniques". *Id.* ¶ 55 (emphasis added).

- "Equated percent correct score are not the 'percentage of content mastered' but the probability that a test taker will answer a question correctly[.] ***This scoring violates federal and state laws and regulations because it discriminates against those that have a disability***". *Id.* ¶¶ 62-63 (emphasis added).

- "NBME creates examinations using the **Modified** Angoff method ***to discriminate against individuals in violation of multiple federal and state laws along with other rules and regulations. This only accounts for the abilities of average people not minimally competent and certainly not disabled***". *Id.* ¶ 70; *see also id.* ¶ 103 (second emphasis added).

These and similar conclusory statements regarding NBME's alleged discriminatory intent and the purportedly discriminatory impact of its actions are "'naked assertion[s]' devoid of 'further factual enhancement[,]'" *Iqbal*, 556 U.S. at 678 (citation omitted), and they are not entitled to any assumption of truthfulness. *See Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (explaining that in assessing the sufficiency of a complaint, a court should "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'") (citation omitted); *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 132 (3d Cir. 2017) ("*Iqbal* and *Twombly* require courts to identify all nonconclusory factual allegations *before* determining whether they give rise to a plausible claim for relief.").

To the extent Mr. Zangara attempts to bolster his conclusory allegations with assertions as to how NBME scores examinations, his jumbled assertions—to the extent they can be followed—are refuted by many of the very documents he attaches to his amended Complaint. Mr. Zangara's claims cover the Comprehensive Basic Science Self-Assessment (CBSSA), individual subject examinations (Pediatrics Examination, Psychiatry Examination, Family Medicine Examination, Medicine Examination, Obstetrics & Gynecology Examination, Surgery Examination), the Comprehensive Basic Science Examination ("CBSE"), the Comprehensive Clinical Science Examination ("CCSE"), and Steps 1, 2, and 3 of the USMLE—some, but not all, of which he has taken in the past. *See* Complaint ¶¶ 125-824. The premise of Mr. Zangara's claims is that NBME's "scoring methods … only show how Plaintiff and others who are disabled compare to others who are not disabled and do not measure his or their competency". Complaint ¶ 101.

Mr. Zangara's own documents show this premise is incorrect. For the CBSSA, the sample CBSSA Examinee Performance Report attached to the amended Complaint shows that examinees receive a "Total Equated Percent Correct Score," which "***represents the percentage of the content that you have mastered***." Complaint Ex. K (Dkt. 51-12) at 1 (emphasis added).[5] Thus, when Mr. Zangara took the CBSSA in

[5] Many of the documents attached to Mr. Zangara's complaint are difficult to read and/or appear to have text cut off. Unless otherwise stated, for purposes of this motion, NBME is discussing the documents as presented by Mr. Zangara, and it is

February 2023, he received a Total Equated Percent Correct Score of 42%, representing the percentage of the content he had mastered. Complaint Ex. P (Dkt. 51-17). The CBSSA Examinee Performance Report explains that the CBSSA score has been "statistically adjusted to account for slight variations in exam form difficulty." *Id.* This equating process is used to "provid[e] ***an accurate reflection of the examinees' knowledge*** regardless of the … form they took." Complaint Ex. M (Dkt. 51-14) at 1 (discussing the equating process relative to the CBSE exam) (emphasis added). The CBSSA Examinee Performance Report provides other information, such as an estimated probability of passing the USMLE Step 1 exam and comparative data that can be used to help the examinee "identify areas of strength and weakness." *Id.* at 2. But, as shown on the performance report, the score itself is based on the percentage of content the examinee has mastered. The CBSSA reports attached to Mr. Zangara's amended Complaint thus refute his allegation that NBME's "scoring methods … do not measure [an examinee's] competency." Complaint ¶ 101.

With respect to individual subject examinations, Mr. Zangara's June 18, 2021 Pediatrics Examination Examinee Performance Profile Report attached to the amended Complaint also shows a Total Equated Percent Correct Score "that ***represents mastery of the content domain assessed by the examination***." Complaint Ex.

---

neither conceding nor disputing for present purposes whether any particular document is the most recent version or a correct copy of what it purports to represent.

Q (Dkt. 51-18) and Ex. A hereto (emphasis added).[6] (Mr. Zangara's percentage of content mastered was 52%. *See id.*) Although additional information shows Mr. Zangara's performance relative to a comparison group to help identify areas of relative strength and weakness, *see id.* at 2, Mr. Zangara's ***score*** is based on his performance on the examination.

As for the CBSE, the sample Examinee Performance Report attached to the amended Complaint also reflects a "Total Equated Percent Correct Score" that "***represents the percentage of the content that [the examinee has] mastered***." Complaint Ex. J (Dkt. 51-11) at 1 (emphasis added). Like the CBSSA report, the CBSE report provides other information that can be used in interpreting the score, but again, the examinee's score is based on content mastered. *See id.*

Mr. Zangara does not provide any score reports for the CCSE (which he has never taken), and he does not specifically discuss the CCSE in his allegations.

In addition to his allegations regarding subject examination scoring, Mr. Zangara asserts that NBME, not his medical school, decides whether he "passes" any NBME subject examination. *See, e.g.,* Complaint ¶ 66 ("For licensure, Plaintiff

---

[6] The version of this report filed by Mr. Zangara is almost entirely unreadable, so a clean version is included as an exhibit to this brief. *See* Ex. A hereto. Mr. Zangara does not attach any other individual subject examination examinee performance reports to his amended Complaint. Instead, he uses the report at Exhibit Q in discussing the Pediatrics, Psychiatry, Family Medicine, and Medicine examinations he has taken. *See* Complaint ¶ 88.

is required to take and obtain the score set by Defendants for all Subject examinations … all of which are graded in a discriminatory manner"); ¶ 76 ("NBME then superimposes this 'Equated Percent Correct' onto the scaling for the USMLE step exams to 'decide' who 'passes' or 'fails' their subject examinations such as the Comprehensive Basic Science exam and the Comprehensive Basic Science Self Assessments"). These allegations are again refuted by documents attached to the amended Complaint. As explained in the CBSE Score Interpretation Guide:

> NBME subject examinations provide medical schools with a tool for measuring examinees' understanding of the basic sciences. Although these examinations are designed to be broadly appropriate as part of overall examinee assessment, course objectives vary across schools, and the congruence between subject examination content and course objectives should be considered when interpreting test scores and determining grading standards. Specifically, subject examination scores should not be used alone, but rather in conjunction with other indicators of examinee performance in determination of grades.

Complaint Ex. M at 1; *see also* Complaint Ex. N (Dkt 51-15) (referring to schools setting a minimum passing score on the CBSE). The Emergency Medicine Advanced Clinical Examination Grading Guidelines that Mr. Zangara describes as purportedly "detail[ing] the process that Defendants use to decide 'passing' scoring for their Subject Examination Program" actually show that medical schools, not NBME, decide what constitutes a passing score for their schools. *See* Complaint ¶¶ 67-68 and Ex. L (Dkt. 51-13) (discussing "standard setting studies" conducted with medical school

faculty that set proposed recommended standards and explaining: "The study results are provided to assist you [*i.e.,* the medical schools] in setting fair and valid passing and honors standards for this examination.").

As for the USMLE, Mr. Zangara has never taken and may never take any Step exams.[7] It is undisputed that the USMLE Management Committee sets a recommended "passing" score for the Step examinations for medical licensing authorities, but Mr. Zangara's description of how this passing score supposedly is determined consists of random excerpts from third-party publications and vague and wildly speculative allegations such as "[t]his only accounts for the abilities of average people not minimally competent and certainly not disabled", Complaint ¶ 103; "[t]he judges only consider what they 'think' the probability of an average person, not a disabled one will get correct", *id.* ¶ 105; and "[t]here is no scoring or other information in the report because it does not exist", *id.* ¶ 110. He alleges that NBME "**do[es] not**" have a minimum established standard for their exams, Complaint ¶ 113 (original emphasis), and then seems to contradict himself by alleging "[i]f

[7] It appears that Mr. Zangara's medical school requires him to "pass" the CBSE before he can take the USMLE. *See* Complaint ¶ 45. Mr. Zangara's status in medical school generally and with respect to taking the examinations that are the subject of his claims is not at all clear from the vague allegations in his amended Complaint, particularly given his own reported difficulties meeting the academic requirements of his school, *see id.* ¶¶ 45-52, his current reported residence in New Jersey, *see id.* ¶ 2, and the long period of time since his initial enrollment in medical school, *see id.* Ex. G (Dkt. 51-8).

[examinees] don't score like the last group or, the comparison or 'norm' group they fail," *id.* ¶ 14.[8] He also asserts that a broad swath of examinees "who went out partying the night before the exam" could pass the medical licensure examination even if they are not qualified, as long as all test takers perform poorly. *Id.* ¶ 112. In short, it is difficult to understand what Mr. Zangara is even alleging with regard to the USMLE, but those allegations all relate to an exam he has never taken and might never take.

Mr. Zangara may be frustrated by his inability to proceed in his medical education, but his allegations regarding NBME's allegedly discriminatory exam scoring are demonstrably incorrect, as shown by documents attached to his complaint. The factual premise for his claims is unsubstantiated by plausible factual allegations and all the claims in his amended Complaint should be dismissed.

### C. Mr. Zangara fails to state a claim under the ADA

Mr. Zangara alleges that "[f]or licensure, Plaintiff is required to take and obtain the score set by Defendants for all subject examinations along with all USMLE Steps …." Complaint ¶ 56. Mr. Zangara's allegation that subject examinations are

[8] Mr. Zangara's allegations ignore publicly-posted information on the USMLE website explaining: "The USMLE program provides a recommended pass or fail outcome on all Step examinations. Recommended performance standards for the USMLE are based on a specified level of proficiency. As a result, no predetermined percentage of examinees will pass or fail the examination." Examination Results and Scoring, *at* https://www.usmle.org/scores-transcripts.

required for licensure is incorrect, but taking his allegation as pleaded, a specific provision in Title III of the ADA applies to private entities offering examinations related to licensing for professional purposes:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

*See* 42 U.S.C. § 12189; *see also Boggi v. Med. Rev. & Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) ("the District Court properly assessed [the pro se plaintiff's] ADA claims under section 309 of Title III, 42 U.S.C. § 12189") (per curiam); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 154-155 (3d Cir. 1999) (concluding that the provision found at Section 12189 defines the requirements of Title III of the ADA with regard to accommodations on examinations in case involving the USMLE).[9]

By its express terms, Section 12189 imposes requirements relating to "the place and manner" in which exams are administered to disabled individuals. This is accomplished by requiring that disabled examinees receive reasonable accommodations when they take a standardized test. *See* 28 C.F.R. § 36.309(b)(2) ("Required

---

[9] At the time of the *Doe* decision, NBME annotated (or "flagged") score reports of examinees who took the USMLE with extra testing time accommodations. NBME no longer annotates any accommodated test scores.

modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."). Mr. Zangara's ADA claims, however, do not relate to the place or manner in which NBME exams are administered. They relate instead to the manner in which NBME exams are allegedly scored.

The purpose of testing accommodations is to enable examinees who are disabled within the meaning of the ADA to take the exam in an accessible manner. *See* 42 U.S.C. § 12189. Accommodations allow disabled examinees to test on a level playing field with other examinees. *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d at 156 ("The notion of accessibility … mandates changes to examinations — 'alternative accessible arrangements,' 42 U.S.C. § 12189 — so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them."). Therefore, to the extent Mr. Zangara qualifies as disabled under the ADA, his impairment is to be addressed by accommodations when testing, not by scoring his performance differently than other examinees, as he seems to request in his amended Complaint. For this reason, his claims asserted under the ADA fail.

### D. Mr. Zangara fails to state a claim under Section 504 of the Rehabilitation Act

In addition to the reasons set forth above, Mr. Zangara has failed to state a viable claim under the Rehabilitation Act because he fails to allege that NBME

received federal financial assistance so as to be subject to the statute. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination ***under any program or activity receiving Federal financial assistance***.") (emphasis added); *see also, e.g., Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 274-75 (3d Cir. 2014) (explaining that to prove a violation of Section 504, a plaintiff must prove, *inter alia*, that the defendant "received federal financial assistance"); *Hunt v. Univ. of Pittsburgh Med. Ctr.,* 2019 WL 3776545, at *5 (M.D. Pa. 2019) (plaintiff must allege "sufficient facts that would support a plausible inference that Defendant is a 'recipient of federal financial assistance' under Section 504"); *Wong v. N.J. Dep't of Children & Families*, 2013 WL 5503301, at *2 (D.N.J. 2013) ("Plaintiff does not allege that the New Jersey Department of Children and Families receives federal funding. Because receipt of federal funding is a prerequisite for the application of Section 504 of the Rehabilitation Act, Plaintiff has not alleged sufficient facts to support a claim under § 504.") (citation omitted).

### E. Mr. Zangara cannot pursue a claim under Title VII

Mr. Zangara appears to assert claims under Title VII of the Civil Rights Act in his amended Complaint. *See* Complaint ¶ 124; *see also, e.g., id.* ¶ 137. Title VII bars discriminatory "employment practices" by an "employer," "employment

agency," or "labor organization" based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

Mr. Zangara does not allege (nor could he) that NBME is his employer or that he has applied to work at NBME, and the basis of his alleged discrimination—his alleged status as a disabled individual—is not a protected class under Title VII. *See* 42 U.S.C. § 2000e-2; *see also, e.g., Wong*, 2013 WL 5503301, at *2 ("Disability is not a protected class under Title VII, and this is fatal to Plaintiff's Title VII claims.") (citations omitted). He cannot pursue a claim under Title VII.

### F. Mr. Zangara's claims under the New Jersey Law Against Discrimination or New Jersey Civil Rights Act should be dismissed for failure to state a claim

If the Court exercises supplemental jurisdiction over Mr. Zangara's claims under the New Jersey Law Against Discrimination ("NJLAD") and New Jersey Civil Rights Act ("NJCRA"), those claims should be dismissed as well. Again, the factual underpinning of Mr. Zangara's claims is fatally flawed, and he cannot pursue a claim under either of these state laws in any event.

#### 1. The NJLAD does not reach NBME's conduct in Pennsylvania, and Mr. Zangara also fails to state a claim under the statute

For his NJLAD claims, Mr. Zangara broadly asserts that various tests are (or will be) "administered by and scored by Defendants in a discriminatory manner as described within this Complaint." *See, e.g.,* Complaint ¶167. As discussed above,

Mr. Zangara's claims all focus on NBME's alleged scoring methodology. The NJLAD does not reach NBME's acts relating to scoring any examinations, however, because this conduct occurs in Pennsylvania. "The NJLAD does not apply extraterritorially to conduct in other states …." *Archut v. Ross Univ. Sch. of Vet. Med.*, 2012 WL 5867148, at *12 (D.N.J. 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014); *cf. Bowers v. Nat'l Collegiate Athletic Ass'n*, 151 F. Supp. 2d 526, 531-37 (D.N.J. 2001) (finding the NJLAD applied to NCAA and other parties based on facts in that case showing specific contacts with New Jersey).

Even if the NJLAD applied here, Mr. Zangara cannot pursue a claim based on exam scoring under the statute for the same reasons he cannot pursue an ADA claim on this basis. Administrative regulations implementing the NJLAD specifically address obligations of testing entities that are places of public accommodation subject to the statute,[10] and those regulations closely follow the regulatory provisions implementing 42 U.S.C. § 12189 and address administration of the examination. *Compare* 28 C.F.R. §§ 36.309(a) *and* 36.309(b)(1)(i) *with* N.J.A.C. §§ 13:13-4.12(a)(9)

---

[10] NBME is not addressing for purposes of this motion whether it is a "place of public accommodation" within the meaning of the NJLAD or whether the examinations at issue relate to "applications, licensing, certification, or credentialing" within the meaning of NJLAD regulations (accepting solely for the purposes of this motion Mr. Zangara's description of the subject examinations as required for licensure, *see* Complaint ¶ 56), because even if the statute and regulations apply here, Mr. Zangara has failed to state a claim.

*and* 13:13-4.5. Thus, both the ADA and the NJLAD (where it applies) require covered entities to "[o]ffer[ ] examinations … in a place and manner accessible to people with disabilities or offer[ ] alternate accessible arrangements …." N.J.A.C. § 13:13-4.12(a)(9); *see also* 42 U.S.C. § 12189. If Mr. Zangara is disabled within the meaning of the NJLAD, his proper course is to pursue testing accommodations to address any testing-related functional limitations from those disabilities.

**2. NBME is not a state actor and therefore is not subject to the New Jersey Civil Rights Act, and Mr. Zangara fails to state a claim under the statute**

"To establish an NJCRA violation …, a plaintiff must show that (1) the New Jersey Constitution or laws of New Jersey conferred a substantive right; (2) the defendant deprived the plaintiff of this right; and (3) the defendant was acting under color of state law when doing so." *Ojibara v. City of Irvington*, 2019 WL 2223943, at *6 (D.N.J. 2019) (citation omitted).

Mr. Zangara does not allege that NBME is a state actor;[11] therefore, he cannot pursue any claim against NBME under the NJCRA (*see, e.g.,* Complaint ¶ 147). *See*

[11] Any such allegation would be futile, in any event. *See, e.g., Boggi*, 415 F. App'x at 414 (affirming district court holding that NBME defendants were not shown to be state actors for purposes of Section 1983 claim); *Zhang v. Fed. of State Med. Bds.*, 2011 WL 7154507, at *3 (M.D.N.C. 2011) (dismissing Section 1983 claim where defendants (including NBME) "are private actors and there is no showing of any connection to a state actor"), *rec. adopted*, 2012 WL 381898 (M.D.N.C. 2012), *aff'd*, 473 F. App'x 193 (2013); *see also, e.g., Alston v. Nat'l Conf. of Bar Exam'rs*, 314 F. Supp. 3d 620, 625 (E.D. Pa. 2018) ("NCBE is a private, non-profit corporation, which receives no public funding. Plaintiff cites no precedent to support the

*generally Okakpu v. Irvington Bd. of Educ.*, 2022 WL 2794082, at *5 (N.J. Super. Ct. 2022) (per curiam) ("The first task in asserting a substantive due process claim 'is to identify the state actor … that has caused the alleged deprivation'…."); *see also, e.g., Hottenstein v. City of Sea Isle City*, 2011 WL 2559523, at *5 (D.N.J. 2011) (dismissing NJCRA claim where "[u]nder no plausible reading of the Complaint could one conclude that [defendants] acted under color of law").

Even if Mr. Zangara could show that NBME is a state actor (and he cannot), he also fails to state a claim under the NJCRA because he does not identify any underlying law or constitutional provision that NBME allegedly violated as the predicate for this claim (*see, e.g.,* Complaint ¶¶ 124, 172). *See* N.J.S.A. § 10:6-2(c). As with its federal counterpart at 42 U.S.C. § 1983, the NJCRA does not itself provide substantive rights; rather, it "provides a vehicle for vindicating violations of other" substantive rights. *Zisa v. Haviland*, 2020 WL 1527862, at *8 (D.N.J. 2020) (discussing Section 1983 and explaining that the NJCRA was modeled after Section 1983, so "courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart") (citation omitted).

---

proposition that NCBE's activities assisting courts with the qualifications of lawyers would amount to governmental action.").

**CONCLUSION**

Mr. Zangara's Complaint should be dismissed for failure to show that this Court has personal jurisdiction over NBME. Alternatively, his Complaint should be dismissed for failure to state a claim.

Dated: August 10, 2023

**PERKINS COIE LLP**

By: *[/s/ Adam Mandelsberg]*
Adam Mandelsberg, Bar No. 065532013
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Attorneys for Defendant
National Board of Medical Examiners