

**Jason A. Zangara, MPH, MA, FF/NREMT, AIFireE**

573 Sidorske Avenue
Manville, NJ 08835
(908) 672-0626
firefighterjazzyj@yahoo.com

August 31, 2023

**VIA ELECTRONIC DELIVERY** "ecfhelp@njd.uscourts.gov"

**Hon. Robert Kirsch**
Clarkson S. Fisher U.S. Court House
402 East State Street
Room 2020
Trenton, NJ 08608

**Re: Zangara v. National Board of Medical Examiners**
     **Civil No. 3:22-1559 (RK) (JBD)**

Dear Judge Kirsch,

      In response to "Defendants" & their attorney's submission to this court on 8/29/2023 (dk#62) I find it again necessary to reach it to you regarding the above captioned matter. I understand how valuable the courts time is and would not be wasting it if there was no need to. However, I will not allow myself to be "bullied" by Defendants attorney manipulating this court for his own tactical advantage and will not allow him to continue to walk all over me.

      The Chief Justice of the United States Supreme Court, John Roberts once stated *"You can't fight for your rights if you do not know what they are".* In this matter I know and understand *exactly* what my rights are. It does not take a law degree to understand what Defendants are doing here. If attorneys were the only ones that were educated on things such as risk management, discrimination, civil rights & employment law, could you image how much litigation would take place in this country? Law offices would be open 24 hours a day trying to keep up with the workload and court dockets would be backed up for years.

      Defendants' attorney keeps "discounting" the fact that I finished my Bachelors in Fire Administration from an online University accredited by the United States Fire Administration (and currently regionally accredited) which is a very reputable school in the Fire Service. My degree is possessed by thousands of fire offices around the country, most of which are working full time in major cities. I therefore resent the fact that it is assumed that I'm an idiot and don't understand what defendants are doing because (1) I don't have a law degree (2) Part of my brain does not work the same as others (3) Can't pass their discriminatory exams. Just because I found alternative ways to earn an Associates, a Bachelors, two graduate degrees and complete 75% of

medical school doesn't not mean that I am sub standard to the "elite class" that Defendants and their attorneys believe themselves to be.

If Defendants attorneys *actually read* some of the cases I have cited, they might have figured out "where" I'm getting my information from:

**Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009)**

>New Haven, Conn. (City), uses objective examinations to identify those firefighters best qualified for promotion. When the results of such an exam to fill vacant lieutenant and captain positions showed that white candidates had outperformed minority candidates, a rancorous public debate ensued. Confronted with arguments both for and against certifying the test results — and threats of a lawsuit either way — the City threw out the results based on the statistical racial disparity. Petitioners, white and Hispanic firefighters who passed the exams but were denied a chance at promotions by the City's refusal to certify the test results, sued the City and respondent officials, alleging that discarding the test results discriminated against them based on their race in violation of, inter alia, Title VII of the Civil Rights Act of 1964. The defendants responded that had they certified the test results, they could have faced Title VII liability for adopting a practice having a disparate impact on minority firefighters. The District Court granted summary judgment for the defendants, and the Second Circuit affirmed.
>
>Held: The City's action in discarding the tests violated Title VII. Pp. 2672-2682.

**Lewis v. City of Chicago, Ill., 560 U.S. 205, 130 S. Ct. 2191, 176 L. Ed. 2d 967 (2010)**

>In 1995, respondent the city of Chicago (City) gave a written examination to applicants seeking firefighter positions. In January 1996, the City announced it would draw candidates randomly from a list of applicants who scored at least 89 out of 100 points on the examination, whom it designated as "well qualified." It informed those who scored below 65 that they had failed and would not be considered further. It informed applicants who scored between 65 and 88, whom it designated as "qualified," that it was unlikely they would be called for further processing but that the City would keep them on the eligibility list for as long as that list was used. That May, the City selected its first class of applicants to advance, and it repeated this process multiple times over the next six years. Beginning in March 1997, several African-American applicants who scored in the "qualified" range but had not been hired filed discrimination charges with the Equal Employment Opportunity Commission (EEOC) and received right-to-sue letters. They then filed suit, alleging (as relevant here) that the City's practice of selecting only applicants who scored 89 or above had a disparate impact on African-Americans in violation of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e-2(k)(1)(A)(i). The District Court certified a class—petitioners here—of African-Americans who scored in the "qualified" range but were not hired. The court denied the City's summary judgment motion, rejecting its claim that petitioners had failed to file EEOC charges within 300 days "after the unlawful employment practice occurred," § 2000e-5(e)(1), and finding instead that the City's "ongoing reliance" on the 1995 test results constituted a continuing Title VII violation. The litigation then proceeded, and

petitioners prevailed on the merits. The Seventh Circuit reversed the judgment in their favor, holding that the suit was untimely because the earliest EEOC charge was filed more than 300 days after the only discriminatory act—sorting the scores into the "well qualified," "qualified," and "not qualified" categories. The later hiring decisions, the Seventh Circuit held, were an automatic consequence of the test scores, not new discriminatory acts.

Held: A plaintiff who does not file a timely charge challenging the adoption of a practice may assert a disparate-impact claim in a timely charge challenging the employer's later application of that practice as long as he alleges each of the elements of a disparate-impact claim. Pp. 2196-2201.

They fail to comprehend that the Supreme Court in <u>Griggs</u> and <u>Ricci</u> do not have previsions for Defendants to subvert their established framework by referring to documents. They only defense they can make to a desperate impact claim is showing that their exams are job related and they have failed to do so. Despite stating in the complaint, both motions for a preliminary injunction and my opposition to this motion, they have fallen silent. <u>Griggs</u> and <u>Ricci</u> supersede all cases they found using a Westlaw search.

## Jurisdiction

I am not disputing nor has it been in dispute that Defendants have raised a defense to jurisdiction. That is not what the issue is and that is not the holding in In re: Asbestos Products Liability Litigation (No. VI), No. 17-3471 (3d Cir. 2019) the holding in this case is that the objection was made and the Third Circuit said that's not enough, Defendants have to act like this court does not have jurisdiction. By arguing the merits of the case, they gave up their rights. They should have only briefed the jurisdiction issue and nothing else. Their failure to do that gave up their rights to their objection. In addition to this, I have pled their connections to New Jersey specifically, which have nothing to do with me, but they are ignoring this hoping the court does not read it.

The attitude of Defendants shows that they fail to understand that I will take more exams and refile a second lawsuit (since each exam constitutes a new violation) in the Eastern District of Pennsylvania dissolving their "personal jurisdiction argument" if for some reason this matter is not allowed to proceed further. They can not win on the merits and in this attempt to dodge responsibility, will only be wasting judicial resources and increasing their own litigation costs while defending that action while this case is on appeal.

## The Complaint & Regulations

They continue to manipulate what things actually say taking them out of context without submitting the entire statement. They claim that this case is somehow limited to a regulation that is only applicable to accommodation cases when the first paragraph of the complaint states:

**COMPLAINT**

1. Plaintiff Jason Zangara files this complaint against the National Board of Medical Examiners or NBME, Defendants. NBME has been and intends to grade Plaintiffs and others examinations in violation of various laws and their implementing regulations including but not limited to the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1964 & 1991, the New Jersey Law Against Discrimination and the New Jersey Civil Rights Act.

The entire statement on page 31 of my brief states as follows:

> "Once a plaintiff has established a prima facie case of disparate impact, the employer may defend by demonstrating that its policy or practice is "job related for the position in question and consistent with business necessity." *Ibid.* If the employer meets that burden, the plaintiff may still succeed by showing that the employer refuses to adopt an available alternative practice that has less disparate impact and serves the employer's legitimate needs" Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009).

Which is why Defendants are liable for a disparate impact claim under title III of the ADA. Despite their continued disregard for Plaintiff repeatedly citing the regulation over and over again they are held liable. They were told this by multiple other courts but refuse to acknowledge this action is based on the implementing regulations which Plaintiff pled directly in his complaint in paragraph 65. As explained again in Ramsay:

"In applying the foregoing to the case at hand, we note that insofar as the above-quoted regulations are "the equivalent[s] of a 'legislative rule' ... issued by an agency pursuant to statutory authority," they thus have the 'force and effect' of law." PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2055, 204 L. Ed.2d 433 (2019)(quoting Chrysler Corp. v. Brown, 441 U.S. 281, 302-303, 99 S. Ct. 1705, 60 L. Ed.2d 208 (1979) and Batterton v.

Paragraph 65 in the complaint states as follows:

> 65. One example, in addition to other federal and state laws is the direct violation of the implementing regulations of the Americans with Disabilities by the Department of Justice act which requires exams to measure what the test taker can do, not the disability as stated in 28 C.F.R. §36.309:
>
> (b) Examinations.
>     (1) Any private entity offering an examination covered by this section must assure that -
>     (i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills

The DOJ explanation of this regulation in their brief is *exactly* the same as the courts ruling in Ricci for establishing a disparate impact claim:

Rawdin v. Am. Bd. of Pediatrics 582 F. App'x 114 (3d Cir. 2014):

"28 C.F.R. 36.309 require testing entities to do more than simply provide reasonable accommodations. .....Section 309 and its implementing regulation shift the burden away from the plaintiff and **onto the testing entity to develop and administer the examination** in a way that will best ensure the results accurately reflect that individual's aptitude or achievement level, rather than disability. **If the plaintiff can show that the results of the examination reflect his disability, rather than his skill or knowledge, the "best ensure" standard requires the testing entity to determine whether there is a testing alternative that, while still testing the same factors or knowledge the test is designed to measure, permits the person with a disability the opportunity to demonstrate the abilities measured by the test, as opposed to a test that reflects the manifestations of his disability.**[1]

"Once a plaintiff has established a prima facie case of disparate impact, the employer may defend by demonstrating that its policy or practice is "job related for the position in question and consistent with business necessity." *Ibid.* If the employer meets that burden, the plaintiff may still succeed by showing that the employer refuses to adopt an available alternative practice that has less disparate impact and serves the employer's legitimate needs" Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009).

The complaint states the Americans with Disabilities act and its implementing regulations. Despite their repeated refusal to accept reasonability for their actions, they are liable.

---

[1] https://www.justice.gov/sites/default/files/crt/legacy/2014/03/19/rawdinbrief.pdf

## Exhibit L

They continue to misrepresent "Exhibit L" claiming my medical school sets scoring requirements regardless of it stating in plain English they (NBME) conducted the studies.

> It says NBME right here, I don't know how else to get this point across



**SUBJECT EXAMINATION PROGRAM**

EMERGENCY MEDICINE ADVANCED CLINICAL EXAMINATION

GRADING GUIDELINES

The NBME conducted webcast standard setting studies for the Emergency Medicine Subject Examination with medical school faculty. For each study, medical school faculty who were past or present clerkship directors (100% for 2015 and 88% for 2019) in Emergency Medicine participated as expert judges in webcast sessions that utilized the internet and conference calling to train participants in the standard setting procedure. Judges reviewed the content and rated the difficulty of each item on a current form of the examination. The study employed both a Modified Angoff content-based procedure and the Hofstee Compromise standard setting method. These two procedures together provide proposed passing standards that are based on an in-depth item-by-item analysis of the examination content, as well as a more global analysis of the content. The results were summarized and the proposed standards were expressed as the proportion of the content required for a candidate to pass and to receive honors status. Table 1 provides a summary of the medical school faculty who served as expert judges and their school information for each of the webcast studies conducted by the NBME.

## The Cases

In addition to this, their attorney continues to misrepresent the applicable cases in this matter. Doe was written in 1999 before Rawdin in 2014, the DOJ's interpretation in 2014, Ricci in 2009 & Lewis in 2010. In addition E.E.O.C. v. Kronos Inc., 620 F.3d 287, 296 (3d Cir. 2010)( *defining "discriminate" to include "failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant. . . ."*). Regardless of which regulations are listed or not listed, the complaint states it is brought after Doe as violations under the ADA and held in Raytheon "Both disparate treatment and disparate impact claims are cognizable under the ADA." Raytheon Co. v. Hernandez, 540 U.S. 44, 53, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). The Supreme Court overrules Defendants citations to Doe. Their Attorneys are aware of this and they are withholding this from this court.

      This matter is not limited to 28 CFR 309, the Complaint does not say the words "this complaint is limited to 28 CFR 309" it states "in violation of various laws and their implementing regulations including but not limited to the Americans with Disabilities Act" so they can not claim it is limited because they didn't write the complaint, I did.

**COMPLAINT**

1. Plaintiff Jason Zangara files this complaint against the National Board of Medical Examiners or NBME, Defendants. NBME has been and intends to grade Plaintiffs and others examinations in violation of various laws and their implementing regulations including but not limited to the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1964 & 1991, the New Jersey Law Against Discrimination and the New Jersey Civil Rights Act.

## Conclusion

      I am well aware of what is going on in these processes as law, like medicine and every other field is not some sworn to secrecy profession that no one can talk about. There is an abundance of materials online detailing all aspects of the litigation process some of which I have taken the time to read into. I know that these submissions are received by a law clerk who is an attorney typed into a bench memo with a recommendation and submitted to the judge. Then the responsibility to conduct the research and draft the provisional opinion is done by the clerk for the judge's approval. This is the same process medical students and residents are doing in hospitals when presenting patients and treatment plans to the attending physicians.

      I know that it is imposable to check every case, every statement and every exhibit so a level of professional judgment is used during this process to solicited information between the judge and the clerk. Unless something stands out, it is not addressed when reviewing our briefs, just as we as students are not reviewing each and every lab result on every patient.

      The reason I am discussing this is to point out that Defendants Attorneys are Attorneys, do this everyday and are aware of this process. They know the probability of noticing an inconsistent statement, bad case or "creative interpterion of the truth" is relatively small since the volume of information crossing the clerks (and judges) desks makes this a challenge. Therefore, they are trying to take this gamble by most of what they have submitted to this court.

      However even the best at gambling make careless mistakes and there have been a lot of them in this litigation. Therefore, I ask the court to realize this & take the time to see what is really going on here. All I'm asking them to do is score my exams to the level showing I'm competent enough to be a doctor. They aren't giving up any rights to decide that and still maintain that right even if an injunction is granted against them. There isn't any money involved here and know one could claim I'm asking for some sort of an advantage.

      I went to a special education school, couldn't afford the filing fee, and used google to learn about the legal system to represent myself. Other than the year, circuit number and a handful of abbreviations (DNJ, US) I don't even know what all these letters and numbers mean after the cases, I just copy the citations from google.

      Taking all of this into account I ask the readers of this letter to ask themselves - does it really take this much litigation to "win" over me if they are scoring these exams the way they are supposed too?

                                    Very truly yours,

                              **Jason A. Zangara, Pro Se**
                                **Attorney for Plaintiff**

cc: **Perkins Coie via electronic filing**
     1155 Avenue of the Americas
     22nd Floor
     New York, New York 10036-2711
     Attorneys for Defendants

  amandelsberg@perkinscoie.com,
  docketnyc@perkinscoie.com,
  MichelleRose@perkinscoie.com,
  nvargas@perkinscoie.com