UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON ZANGARA, <br><br> PLAINTIFF, <br><br> V. <br><br> NATIONAL BOARD OF MEDICAL EXAMINERS, <br><br> DEFENDANT. | Civil Action No. 22-1559 (RK) (JBD) <br><br> **OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court *sua sponte* pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Plaintiff Jason Zangara's ("Plaintiff") Complaint shall be transferred to the United States District Court for the Eastern District of Pennsylvania. Accordingly, the pending motions in this case, Plaintiff's Motion for Preliminary Injunction (ECF No. 53) and Defendant's Motion to Dismiss (ECF No. 55), are **DENIED** as moot.

I.  **BACKGROUND**

Plaintiff, *pro se*, Jason Zangara, is a current medical student at Caribbean Medical University on the island of Curacao. ("Amend. Compl.," ECF No. 51 at ¶ 14.) In order to complete his medical school program, Plaintiff must take several examinations administered by the National Board of Medical Examiners ("Defendant"), including the Comprehensive Basic Science Exam ("CBSE"), the United States Medical Licensing Examination ("USMLE"), Clinical Subject Examinations, and the Comprehensive Clinical Science Examination. (*See* ECF

1

No. 19-3 at ¶ 18.)[1] On March 18, 2022, Plaintiff filed this action against Defendant alleging that the manner in which Defendant scores its examinations impermissibly discriminates against test-takers with disabilities. ("Compl.," ECF No. 1 at 6.) Plaintiff has been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and various learning disabilities. (*Id.* at 6.) In his original Complaint, Plaintiff asked the Court to enjoin Defendant from grading exams on a curve, which Plaintiff alleges compares the scores of disabled students to those of non-disabled students. (*Id.*)

On August 23, 2022, Defendant moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Before the Court ruled on Defendant's motion, on September 26, 2022, Plaintiff filed a Motion for a Preliminary Injunction. (ECF No. 19). Defendants opposed the preliminary injunction motion on the basis that the Court lacked personal jurisdiction over Defendant and also on the merits. (ECF No. 25 at 10.) In his brief in opposition, Plaintiff requested leave to amend his complaint, (ECF No. 18), and on March 6, 2023, the Honorable Georgette Castner directed Plaintiff to file a motion for leave to file an amended complaint and administratively terminated Defendant's Motion to Dismiss, (ECF No. 34). On March 23, 2023, Plaintiff filed a Motion to Amend Complaint. (ECF No. 38.)

On April 6, 2023, before ruling on Plaintiff's Motion to Amend Complaint, Judge Castner denied Plaintiff's Motion for a Preliminary Injunction. (ECF Nos. 40, 41.) Without reaching the merits of Plaintiff's arguments, Judge Castner found that the Court lacked personal jurisdiction over Defendant. (ECF No. 40 at 10–11.) Judge Castner reasoned that Defendant was

---

[1] On April 7, 2023, in his Motion for Reconsideration or Transfer, Plaintiff raised the prospect of, and in the alternative, requested, transfer of the subject case to the Eastern District of Pennsylvania. (ECF No. 42-3 at 2.)

not subject to the Court's exercise of general jurisdiction because Defendant is incorporated in Washington, D.C., headquartered in Pennsylvania, and has no operations in New Jersey. (*Id.* at 9.) Judge Castner further found that the Court lacked specific jurisdiction over Defendant because Plaintiff's sole allegation of Defendant's contact with New Jersey—that Plaintiff apparently took Defendant's examinations for a fee while Plaintiff was located in New Jersey—was insufficient to establish that Defendant "purposefully availed itself or directed its activities to the state of New Jersey." (*Id.* at 10.)

The day after Judge Castner denied Plaintiff's Motion for a Preliminary Injunction, Plaintiff filed a Motion for Reconsideration or Transfer. (ECF No. 42-3.) Plaintiff requested that Judge Castner reconsider her opinion because the opinion relied on Plaintiff's original Complaint rather than his proposed Amended Complaint. (*Id.* at 1.) In the alternative, Plaintiff requested that this action be transferred to the Eastern District of Pennsylvania "which encompasses the city of Philadelphia where Defendant[']s principle [sic] place of business is located." (*Id.* at 2.)

On May 15, 2023, this case was reassigned to the Undersigned. (ECF No. 45.) Upon review of the docket in this case in July 2023, it came to the Court's attention that Defendant failed to respond to Plaintiff's Motion for Reconsideration or Transfer, notwithstanding the fact that the response deadline had passed on May 1, 2023, over two months prior. As a courtesy, the Court requested that Defendant respond by July 14, 2023 if Defendant wished to be heard on Plaintiff's motion and sought "in particular, [Defendant's] position regarding the Plaintiff's motion to transfer venue." (*Id.*) On July 14, 2023, Defendant filed its response—the response spans a little more than a single page and contains only one citation to a single unpublished, district court case. (ECF No. 48.)

3

On July 21, 2023, the Court denied Plaintiff's Motion for Reconsideration. (ECF Nos. 49, 50.) The Court also denied Plaintiff's Motion to Transfer without prejudice and with leave to refile. (ECF No. 49 at 8.) The Court reasoned that, because the parties had not substantially briefed the issue of transfer, the Court may benefit from more information from the parties. (*Id.* at 7–8.) The Court also found the interests of justice required that Plaintiff, who is proceeding *pro se*, have an opportunity to file an Amended Complaint. (*Id.* at 9.)

On July 27, 2023, Plaintiff filed his Amended Complaint. In his Amended Complaint, Plaintiff attempts to cure the jurisdictional defects identified by Judge Castner. (Amend. Compl. at ¶¶ 5–9.) The next day, Plaintiff filed a second Motion for a Preliminary Injunction, (ECF No. 53), and on August 10, 2023, Defendant filed a second Motion to Dismiss, (ECF No. 55), seeking to dismiss the Amended Complaint for lack of personal jurisdiction, as well as on the merits.

Upon reviewing Plaintiff's Amended Complaint and the parties' briefing on the pending motions, the Court continued to have reservations as to whether Defendant was subject to personal jurisdiction in this District. The Court, therefore, determined that it was prudent to hold a telephonic conference on the record to discuss the parties' respective positions on transfer of this case to the Eastern District of Pennsylvania. At the conference, Plaintiff consented to transfer. However, while Defendant acknowledged that the Eastern District of Pennsylvania would have personal jurisdiction over Defendant, Defendant nonetheless objected to transfer. The Court now, on its own motion pursuant to 28 U.S.C. § 1404(a), considers whether transfer to the Eastern District of Pennsylvania is in the interests of justice.

## II.     LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought or to any district or division to which all parties have consented." A decision to transfer a case pursuant to Section 1404(a) is within the sound discretion of the district court. *Lafferty v. Gito St. Riel*, 495 F.3d 72 (3d Cir. 2007) ("Section 1404(a) transfers are discretionary determinations made for the convenience of the parties."); *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973) (district courts have "large discretion" in evaluating transfer); *Sidari v. Caesar's Pocono Resorts*, 29 F. App'x 845, 847 (3d Cir. 2002) ("Transfer decisions fall to the discretion of the District Court."); *Ziembiewicz v. R+L Carriers, Inc.*, 2013 U.S. Dist. LEXIS 17114, at *5–6 (D.N.J. Feb. 8, 2013) ("The decision to transfer under § 1404(a) is entirely within the discretion of the district court . . . .").

Coupled with the district court's significant discretion in making transfer decisions is the court's right to transfer cases *sua sponte*. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020); *see also Amica Mutual Insurance Co. v. Fogel*, 656 F.3d 167, 180 (3d Cir. 2011). However, when a court decides to *sua sponte* transfer a case, the court should provide the parties with an opportunity to be heard. *Deibler, et al v. Basic Research LLC*, et al, No. 119-20155, 2023 WL 6058866, at *4 (D.N.J. Sept. 18, 2023)

When considering whether transfer is appropriate, courts in the Third Circuit conduct a two-step analysis. First, the district court must determine whether the alternative venue is one in which the case might have been brought. This inquiry has two parts: (1) the Court must determine that venue would be proper in the transferee district, and (2) the Court must determine that the transferee district can exercise personal jurisdiction over all parties. Transfer under Section 1404(a) also presumes that venue is proper in the transferor district. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).

If venue is proper and the transferee court would have personal jurisdiction, courts proceed to the second step of the analysis: assessing a set of "private" and "public" interests "to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal citation and quotations omitted). The private interests include: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in one of the fora; and (6) the location of books and records. *Id.* The public interests include: (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* "Though *Jumara* provided these factors to assess the appropriateness of transfer, 'there is no definitive formula or list of the factors to consider.'" *Deibler, et al*, 2023 WL 6058866, at *3 (*quoting Eagle View Techs., Inc. v. GAF Materials*, LLC, 594 F. Supp. 3d 613, 619 (D.N.J. Mar. 28, 2022)).

### III.   DISCUSSION

#### A.   Forum Where this Case May Have Been Brought

At the first step of the transfer analysis, the Court finds that Plaintiff could have originally brought this action in the Eastern District of Pennsylvania.[2]

##### 1. *Proper Venue*

---

[2] As a threshold matter, the Court also notes that, while the parties' briefing on the issue of transfer was, frankly, deficient, without question, the parties have had an opportunity to be heard both on the papers and during a telephonic conference. (*See* ECF Nos. 42, 48, 65.)

The first part of this inquiry requires the Court to consider whether venue is proper in both the transferor and transferee districts. Venue is proper in this District, the transferor district, because the parties do not contest it. By filing suit in the District of New Jersey, Plaintiff consented to venue here. *See, e.g.*, *Nowak Dental Supplies, Inc. v. Dentsply Int'l, Inc.*, No. 07-1799, 2008 WL 11363797, at *2 (M.D. Pa. Aug. 4, 2008). In addition, Defendant waived any objection to venue here by failing to raise it in its initial Motion to Dismiss. (ECF No. 12-1); *see Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062, at *4 (D.N.J. Aug. 27, 2018).

Venue is also proper in the Eastern District of Pennsylvania, the transferee district. Venue properly lies in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendant is a non-profit corporation—a corporate defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In short, a corporate defendant's residence for venue purposes is the same as its citizenship for personal jurisdiction purposes. The Court must therefore determine whether the Eastern District of Pennsylvania can exercise personal jurisdiction over Defendant.

A court may exercise personal jurisdiction over a corporate defendant in its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff alleges in his Amended Complaint that Defendant is incorporated in Washington, D.C. and has its principal place of business at its headquarters at 3750 Market Street in Philadelphia, Pennsylvania. (Amend. Compl. at ¶ 3.) The Court also notes that, according to the District of Columbia registry of corporations, NBME is incorporated in Washington, D.C. and has its "business address" in Pennsylvania. (ECF No. 12-1, Ex. A, at 27–28). Because Defendant's

principal place of business is in Philadelphia, Defendant would be subject to personal jurisdiction in the Eastern District of Pennsylvania.[3] It follows that venue is also proper there.

### 2. *Personal Jurisdiction*

The second part of the inquiry is determining whether the transferee district can exercise personal jurisdiction over all parties. As noted above, the Eastern District of Pennsylvania can exercise personal jurisdiction over Defendant. Therefore, the Court turns to whether the Eastern District of Pennsylvania can exercise personal jurisdiction over Plaintiff. By proposing a transfer to the Eastern District of Pennsylvania, Plaintiff has consented to personal jurisdiction there. *See Beauty Plus Trading Co. v. I & I Hair Corp.*, No. 20-9268, 2020 WL 6156285, at *4 (D.N.J. Oct. 21, 2020); *see also Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988). The Court also notes that during the Court's September 26, 2023 telephonic conference, Plaintiff represented that, if the Court were to find it lacks personal jurisdiction over Defendant, Plaintiff intends to refile this case in the Eastern District of Pennsylvania. The Court therefore finds that Plaintiff has consented to personal jurisdiction there.

### B. Private and Public Interest Factors

Having determined that venue is proper and personal jurisdiction would exist over both parties in this case, this Court now turns to the second step of the transfer analysis: reviewing the *Jumara* factors to determine whether this case would more conveniently proceed, and the interests of justice would be bettered served, by transfer. Balancing the private and public interest factors in the context of this case, the Court concludes that the interests of justice are best served by transferring this case to the Eastern District of Pennsylvania.

---

[3] The Court notes that Philadelphia is located within the Eastern District of Pennsylvania.

1. *Private Interests*

First, the Court reviews the private interest factors. The first and second factors are the parties' forum preferences. The Court finds that these factors do not weigh heavily for or against transfer. Plaintiff's preferred forum is evidently New Jersey as he filed the case in this District. While a plaintiff's choice of forum is "presumptively correct . . . [t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Prime Hookah, Inc. v. MK Distribs.*, Inc., No. 19-7283, 2020 WL 563524, at *3 (D.N.J. Feb. 5, 2020) (alteration in original) (internal citation and quotations omitted); *see also Dialight Corporation v. Allen*, No. 15–1090, 2015 WL 5996287, at *5 (D.N.J. Oct. 14, 2015). Moreover, "[c]ourts afford a plaintiff's choice substantially less weight where, for example, the central facts of the lawsuit did not occur there." *Interlink Prod. Int'l, Inc. v. Crowfoot*, No. 20-10566, 2020 WL 6707946, at *7 (D.N.J. Nov. 16, 2020) (citing *Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995)). As will be addressed further below, the central facts of this lawsuit did not occur in New Jersey. Moreover, as noted above, Plaintiff raised the specter of transferring this case, signaling his consent to suit in the Eastern District of Pennsylvania, and has represented that, if the Court dismisses this case, he will refile it in the Eastern District of Pennsylvania. Defendant, by contrast, objects to transfer to its home venue. However, Defendant acknowledged at the Court's telephonic conference that the Eastern District of Pennsylvania would have personal jurisdiction over Defendant and that the only basis for Defendant's objection is its belief that Plaintiff's claims are meritless. The Court therefore finds that the parties' choice of forum is essentially neutral as to transfer.

The third private interest factor is where the claim arose. Generally, a claim arises in the forum containing the dispute's "center of gravity," that is, where the events and transactions central to the dispute occurred. *Allied Old Eng., Inc. v. Uwajimaya, Inc.*, Civil No. 11-1239, 2012 WL

9

3564172, at *4 (D.N.J. Aug. 16, 2012). The Court concludes Plaintiff's claims arose in the Eastern District of Pennsylvania, and thus this factor weighs heavily in favor of transfer. Plaintiff's Amended Complaint challenges the methodology employed by Defendant to score its examinations. Indeed, each of Plaintiff's eighty-six (86) counts allege that Defendant "[has] committed and/or will commit discrimination in *grading/scoring* their examinations." (*See, e.g.*, Amend. Compl. at ¶ 126) (emphasis added).[4] Plaintiff claims that, after failing multiple examinations administered and graded by NBME, he began researching how the NBME examinations "were set up and scored." (*Id.* at ¶¶ 50–51.) He alleges that he "discovered his cause of action against Defendants" when he "found out these examinations . . . were scored using complex methods that were comparing his score to scores of others." (*Id.* at ¶ 53.) Plaintiff proceeds to describe NBME's alleged scoring methods and how "this scoring violates federal and state laws and regulations." (*See, e.g., id.* at ¶¶ 63, 68; *see also id.* at ¶ 84 ("[s]coring this exam in this manner is a violation of numerous federal and state laws"); *id.* at ¶ 101 ("Defendants scoring methods utilized are discriminatory."))

Simply put, the alleged violative conduct in this case is limited to Defendant's *scoring* of examinations. Plaintiff attempts to broaden the scope of this case by stating that this action "arises from those business activities in relation to including, but not limited to creating, administering and scoring examinations and collecting fees from Plaintiff and others." (*Id.* at ¶ 9.) However, the Court has carefully reviewed Plaintiff's one hundred and eighty-four-page (184), eight hundred

---

[4] *See also* Amend. Compl. at ¶¶ 131, 136, 146, 151, 156, 161, 166, 171, 176, 181, 186, 191, 196, 201, 206, 211, 216, 221, 226, 231, 236, 241, 246, 251, 256, 261, 266, 271, 276, 286, 296, 306, 316, 326, 336, 346, 356, 366, 376, 386, 396, 406, 416, 426, 436, 446, 456, 466, 476, 486, 496, 506, 516, 526, 536, 546, 556, 566, 576, 586, 596, 606, 616, 626, 636, 646, 656, 666, 676, 686, 696, 706, 716, 726, 736, 746, 756, 766, 776, 786, 796, 806, 816, 826.

and thirty-six-paragraph (836) Amended Complaint and concludes that Plaintiff's allegations are all based on NBME's scoring methods.

In considering this third factor, the Court finds that the central, allegedly wrongful acts giving rise to Plaintiff's claims—*i.e.* scoring of examinations—were performed in the Eastern District of Pennsylvania. Plaintiff does not allege that Defendant's scoring activities occurred in New Jersey.[5] Indeed, nothing in the Amended Complaint suggests to the Court any facts to support that NBME has any offices or employees located in New Jersey, let alone that NBME scores examinations in New Jersey. Moreover, in its Motion to Dismiss, Defendant represents that examination scoring takes place at NBME's offices in Philadelphia. (ECF No. 55 at 10–11.) In his opposition brief, Plaintiff does not contest this fact or present any conflicting evidence to suggest that scoring takes place in New Jersey. The Court therefore finds that Plaintiff's claims arose in the Eastern District of Pennsylvania, favoring transfer of this case there.

Next, the Court considers the fourth private interest factor: the convenience of the parties as indicated by their relative physical and financial condition. Neither party has indicated any physical or financial difficulties would stem from transfer, nor could they, given the proximity of the transferor and transferee districts. Transfer is not inconvenient for Plaintiff: the Eastern District of Pennsylvania is this District's neighbor. In addition, as the Court has noted multiple times, NBME is headquartered in the Eastern District of Pennsylvania, making it a more convenient

---

[5] The Court also points out that Plaintiff's Amended Complaint does not make clear that he even took any NBME examinations in New Jersey. Plaintiff alleges that he resides in Somerset County, New Jersey, but that he is enrolled as a medical student at Caribbean Medical University on the island of Curacao. (Amend. Compl. at ¶¶ 2, 14). The sole assertion that the Court has identified as to where Plaintiff's alleged test-taking took place is in Plaintiff's Certification in support of his first Motion for Preliminary Injunction, which was denied by the Honorable Georgette Castner, in which Plaintiff states that he took the CBSE and Subject Examinations in New Jersey. (ECF No. 19-3 at ¶¶ 23, 25).

venue for Defendant to litigate this case. The Court therefore finds that the fourth factor strongly weighs in favor of transfer.

The Court finds that the fifth factor, the convenience of the witnesses, is neutral. While the forum encompassing Defendant's headquarters is likely the most convenient location for the attendance of most of the witnesses in this case, this factor is only relevant "to the extent that witnesses may actually be unavailable for trial." *Jumara*, 55 F.3d at 879. Given this District's proximity to the Eastern District of Pennsylvania, it is unlikely that witnesses would be unavailable in either forum.

The final private interest factor is the location of books and records. Defendant's headquarters is also the likely site of most of the records that would be issue in this case. However, to the extent that these records can be produced electronically, their location is "of little relevance." *Deibler, et al*, 2023 WL 6058866, at *7 (citing *See Lang v. Patients Out of Time*, No. 20-615, 2020 WL 5531249, at *5 (D.N.J. Sept. 15, 2020) ("Given the prevalence of electronically stored information and technological advances, documents or records can be easily moved electronically to different venues.")). The Court thus finds the location of records to be neutral as to transfer to the extent that relevant records may be transmitted electronically. Having considered all six private interest factors, the Court concludes that, on balance, the private interest factors favor transfer.

2. *Public Interests*

The Court now turns to the public interest factors. The Court finds that these factors also support transfer. The first factor is the enforceability of the judgment. This factor is "not concerned with the *convenience* with which the parties may obtain a judgment; rather, this factor concerns whether a judgment is *capable* of being enforced at all." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 406 n.10 (3d Cir. 2017) (emphasis in original). "[W]hen both forums are federal district

courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *Interlink Prod. Int'l, Inc. v. Crowfoot*, No. 20-10566, 2020 WL 6707946, at *8 (D.N.J. Nov. 16, 2020); *see also In re Howmedica Osteonics Corp.*, 867 F.3d at 410. However, a party may obtain relief from a final judgment under Federal Rule of Civil Procedure 60(b)(4) "if the court that rendered [the judgment] lacked personal jurisdiction over the defendant." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). Here, both the transferor and transferee forums are federal district courts. However, as this Court will discuss further below, the Court's personal jurisdiction over Defendant is disputed, and if this Court were to lack jurisdiction over Defendant, it would, as a result, lack the authority to enforce a judgment against Defendant. Accordingly, this factor favors transfer.

The second public interest factor is the practical considerations in making the trial easy, expeditious, or inexpensive. This factor is "especially critical." *Care One, LLC v. Nat'l Lab. Rels. Bd.*, No. 23-3221, 2023 WL 4156859, at *5 (D.N.J. June 23, 2023). Courts in the Third Circuit have also referred to this factor as the interest in "conserving judicial resources," *Interlink Prod. Int'l, Inc.*, 2020 WL 6707946, at *8, and have found it appropriate to consider, at this step, whether the existence of personal jurisdiction in the transferor district is disputed, *see id.*; *see also Deibler, et al*, 2023 WL 6058866, at *10. "The Third Circuit has held that where there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could clearly have been brought." *Amtrust at Lloyd's Ltd. v. Breslin*, No. 14-7761, 2015 WL 1399588, at *4 (D.N.J. Mar. 26, 2015) (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981)); *see also Interlink Prod. Int'l, Inc.*, 2020 WL 6707946, at *8–9 ("Transfer . . . obviates the need for the parties and the Court to expend

limited resources on jurisdictional preliminaries."); *Societe Novelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F.Supp. 153, 155 (E.D. Pa. 1985) ("If the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought.").

As noted above, the Court has serious reservations regarding whether Defendant is subject to personal jurisdiction in this District.[6] The only allegations in Plaintiff's Amended Complaint connecting Defendant's activities to New Jersey are the following: (1) Defendant "administers the USMLE throughout the country, including the State of New Jersey" and (2) examinations developed by Defendant are required as a condition of medical licensure "in all states, including [New Jersey]." (Amend. Compl. at ¶¶ 5–8.) It bears repeating that Plaintiff's claims all pertain to the allegedly discriminatory method that Defendant employs to score examinations, which appears to take place at its offices in Philadelphia, and Plaintiff does not allege that Defendant has any offices or employees located in New Jersey. The existence of personal jurisdiction over Defendant in this District appears tenuous, counseling strongly in favor of transfer to the Eastern District of Pennsylvania, where neither party contests that they are subject to personal jurisdiction. The Court also notes that the proximity of Defendant's headquarters to the Eastern District of Philadelphia courthouse would also facilitate case administration. *Wenzhou Xin Xin Sanitary Ware Co., Ltd., v. Delta Faucet Co.*, No. 23-2038, 2023 WL 6158942, at *6 (D.N.J. Sept. 21, 2023). In addition, this case is still in its infancy in this District, and "no practical consideration concerning this Court's management of the case is served by retention in the District of New Jersey." *Id.* For these reasons, this critical factor weighs in favor of transfer.

---

[6] Judge Castner, as noted previously herein, expressed similar concerns regarding personal jurisdiction over Defendant in this case. (*See* ECF No. 40.)

The third public interest factor is the relative administrative difficulty in the two fora resulting from court congestion. Both this District and the Eastern District of Pennsylvania have congested dockets, and the Court recognizes that transfer to the Eastern District of Pennsylvania would add to the important and difficult work being conducted there. Courts in this Circuit have also counseled that the "'relative congestion of the respective courts' dockets' has minimal importance in the overall transfer inquiry . . . ." *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 390 (D.N.J. Dec. 18, 2015) (quoting *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. June 16, 2008)). Accordingly, this factor is neutral.

Fourth, the Court will consider the local interest in deciding controversies at home. Plaintiff is a New Jersey resident, and, as such, New Jersey has an interest in protecting its citizens from the harm alleged. However, the Court points out that Plaintiff also alleges that he attends Caribbean Medical University on the island of Curacao and that the Amended Complaint does not evidence any unique relationship between Plaintiff's claims and the District of New Jersey, other than this citizenship in this state. Defendant is a resident of Pennsylvania, and Pennsylvania has an interest in deciding claims levied against one of its home corporations. This factor is therefore neutral.

The fifth factor is the public policies of the fora. Plaintiff brings his claims under the Americans with Disabilities Act ("ADA"), Section 504 of Rehabilitation Act, Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Civil Rights Act ("NJCRA"). The Court is not aware of any difference between New Jersey and Pennsylvania policy with regard to the ADA, Rehabilitation Act, and Title VII claims in this case, each federal statutes. However, considerations of public policy may weigh in favor of adjudicating claims brought under New Jersey law in New Jersey. Nonetheless, as the Court has mentioned, the conduct giving rise to Plaintiff's claims occurred outside of the state of New Jersey, and courts in

this District have counseled that jury duty should not be imposed on the citizens of New Jersey under such circumstances. *Rubes v. Kohl's*, 17-04161, 2017 WL 4167457, at *2 (D.N.J. Sept. 19, 2017) (holding that the public policies of the fora weigh in favor of transfer because New Jersey jurors should not be burdened with jury duty regarding conduct that occurred almost exclusively outside New Jersey); *see also Foster v. Marriott Resort Hosp. Corp.*, 17-12901, 2018 WL 3360763, at *4 (D.N.J. July 10, 2018) (same). The Court therefore finds that this factor is also neutral.

The final public interest factor is the familiarity of the trial judge with the applicable state law in diversity cases. This is not a diversity case. Plaintiff's Amended Complaint states that his case is brought under the laws, regulations, and statutes of the United States, pursuant to this Court's federal question jurisdiction. (Amend. Compl. at ¶ 10). However, Plaintiff also alleges that Defendants violated the NJLAD and NJCRA and asserts that the Court has supplemental jurisdiction over these state law claims. Because there are New Jersey statutes at issue in this case, this factor counsels against transfer.

The Court finds that, on balance, the public interest factors support transfer. Having reviewed both the private and public interest factors, the Court concludes that the interests of justice favor transfer to the Eastern District of Pennsylvania.

    C.  <u>Futility of Transfer</u>

Finally, the Court addresses Defendant's objection to transfer on the basis that Plaintiff's claims are without merit. Defendant argues that transfer would be "a futile waste of judicial and party resources." (ECF No. 48 at 2.) The Court is not persuaded. The Court acknowledges that the Third Circuit has stated in dicta that dismissal in lieu of transfer best serves the interests of justice where it is clear that transfer would be a "futile waste of judicial and party resources." *United*

*States v. Foy*, 803 F.3d 128, 136 n.7 (3rd Cir. 2015). The single case that Defendant cites to support its objection to transfer on this basis is *Sciore v. Phung*, No. 19-13775, 2022 WL 950261 (D.N.J. Mar. 30, 2022). In *Sciore*, the court cited *Foy* to conclude that transfer was not in the interests of justice since the plaintiffs' claims were "clearly futile" and dismissed the case. *Id.* at *19–20. Defendant argues that, as in *Sciore*, Plaintiff's claims are meritless, making dismissal the only appropriate remedy.

However, this case is distinguishable from *Sciore* for two reasons. First, the court in *Sciore* reasoned that the plaintiffs' motion to transfer was a "last-ditch" request. *Id.* at *17. In *Sciore*, the plaintiffs first filed suit in August 2018. The parties negotiated and reached a settlement agreement, and the plaintiffs voluntarily dismissed the case. In June 2019, the plaintiffs filed a second action. The defendants filed a counterclaim in March 2020, and the parties began engaging in discovery. Ultimately, the parties filed multiple discovery motions and participated in multiple discovery conferences. The plaintiffs moved to dismiss the counterclaim, and the defendants filed a cross motion for summary judgment. Thereafter, the parties continued to file motions including multiple motions to dismiss and for sanctions. Finally in June 2021, almost three years after filing their first action and after extensive motions practice and discovery, the plaintiffs moved to transfer the case. In short, *Sciore* had a lengthy history before the plaintiff sought to transfer the case. *See Sciore v. Phung*, No. 1:19-cv-13755, ECF No. 14 (cataloguing the history of the case); *see also id.* at ECF Nos. 16, 22, 30, 32, 34, 71, 72, 78, 87, 94). Not so here. This case is in an inchoate phase. During the Court's telephonic conference with the parties, Defendant conceded that no discovery has been taken in this case and that this case has not moved beyond the pleading phase. This case was filed in 2022, and the Court does not view Plaintiff's April 2023 motion to transfer as a "last-ditch"

17

request. Nor does the Court perceive any prejudice whatsoever to Defendant in transferring this case to Defendant's home venue, and none has been articulated by Defendant to the Court.

Second, in *Sciore*, the court considered allegations that negative restaurant reviews posted on Yelp.com ("Yelp") constituted defamation, trade libel, and tortious interference with contractual relations and prospective contractual relations. The court concluded that "[e]ven a cursory examination" of the complaint evinced its futility. *Id.* at *18. For example, the allegedly defamatory Yelp reviews would most likely be found to be nothing more than opinion not capable of being proven false, which is a defense that necessitates dismissal in defamation cases. *Id.* at *9–14, 18. Likewise, in *Foy*, the Third Circuit commented that transfer would be futile because the transferee district had recently denied the defendant the exact relief the plaintiff sought. *Foy*, 803 F.3d at 136 n.7.[7]

The Court is unable to conclude at this early phase of this litigation that Plaintiff's Amended Complaint is so lacking in merit that Plaintiff's claims must be dismissed with prejudice. Neither the Undersigned nor the previous judges hearing this case have reached the merits of Plaintiff's claims. The only orders entered to date in this case, other than the Court's previous

---

[7] The Court also notes that, in another district court case in this Circuit, the court cited *Foy* for the proposition that "dismissal in lieu of transfer is appropriate where it is clear that" transfer would be futile. *Qayyum v. Tillerson*, No. 17-6780, 2018 WL 2095603, at *3 (D.N.J. May 7, 2018). In that case, the plaintiff, albeit *pro se*, attempted to state a claim for individual liability against one of the defendants under Title VII of the Civil Rights Act. *Id.* at *4. Even a cursory review of the plaintiff's claims revealed that they were without merit because it is settled law in this Circuit that Title VII does not provide for individual liability, and thus individuals cannot be named as defendants in Title VII cases. *See Newsome v. Admin. Office of the Courts of the State of New Jersey*, 51 F. App'x 76, 79 n.1 (3d Cir. 2002); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002); *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc). Moreover, the court pointed out that it was unclear that the remaining defendants, who had not yet been served, would be subject to personal jurisdiction in any forum to which transfer of the action would be appropriate, likely resulting in "severance of the case, and the maintenance of separate proceedings with substantially overlapping issues of law and fact [that] would give rise to judicial inefficiency." *Qayyum*, 2018 WL 2095603, at *4. No such obvious bases for dismissal or concerns about judicial inefficiency exist here. Indeed, this Court has already determined that the parties would both be subject to personal jurisdiction in the transferee forum and transfer would likely result in more efficient administration of this case.

order denying Plaintiff's reconsideration and transfer requests, have either been administrative orders or orders finding that Defendant was not subject to personal jurisdiction in this District. (ECF No. 41.) Here, a preliminary review of the claims does not clearly evince that transfer is inappropriate, and, once transferred, the case's disposition is not a foregone conclusion. This conclusion is bolstered by the fact that, unlike the plaintiffs in *Sciore* who were represented by competent counsel, Plaintiff in this case is *pro se*. It is well established that a *pro se* complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is obligated to construe *pro se* claims liberally and afford *pro se* plaintiffs the benefit of every doubt. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005). The Court finds that, given Plaintiff's *pro se* status, dismissal with prejudice at this stage would not serve the interests of justice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint shall be transferred to the United States District Court for the Eastern District of Pennsylvania. Accordingly, the pending motions in this case, Plaintiff's Motion for Preliminary Injunction (ECF No. 53) and Defendant's Motion to Dismiss (ECF No. 55), are **DENIED** as moot.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 6, 2023